# EXHIBIT A

# Civil Part Case Summary

**Case Number:** CAM L-003082-25

**Case Caption:** Gulf Coast Bank & Tr Ust Co  Vs Prestige Infusion

| | | |
|---|---|---|
| **Court:** Civil Part | **Venue:** Camden | **Case Initiation Date:** 09/16/2025 |
| **Case Type:** Book Account (Debt Collection Matters Only) | **Case Status:** Closed | **Jury Demand:** None |
| **Case Track:** 1 | **Judge:** Frank C Testa | **Team:** 301 |
| **Original DED:** | **Current DED:** | **# of DED Extensions:** 0 |
| **Original Arb Date:** | **Current Arb Date:** | **# of Arb Adjournments:** 0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Adjournments:** 0 |
| **Disposition Date:** 03/27/2026 | **Case Disposition:** Transferred To Another County | **Statewide Lien:** J -149691-25 |

## Plaintiffs
### Gulf Coast Bank & Trust Co

| | | |
|---|---|---|
| **Party Description:** Business | **Phone:** | |
| **Address Line 1:** | | |
| **Address Line 2:** | | |
| **City:** | **State:** NJ | **Zip:** 00000 |
| **Attorney Name:** Saldutti Robert L | | **Attorney Bar ID:** 006871992 |
| **Attorney Email:** | | |

## Defendants
### Prestige Infusions Llc

| | | |
|---|---|---|
| **Party Description:** Business | **Phone:** | |
| **Address Line 1:** 116 Boonton Ave | | |
| **Address Line 2:** | | |
| **City:** Kinnelon | **State:** NJ | **Zip:** 07405 |
| **Attorney Name:** | | **Attorney Bar ID:** |
| **Attorney Email:** | | |

### Ali  Atshan

| | | |
|---|---|---|
| **Party Description:** Individual | **Phone:** | |
| **Address Line 1:** 1210 91St St  2 | | |
| **Address Line 2:** | | |
| **City:** North Bergen | **State:** NJ | **Zip:** 07047 |
| **Attorney Name:** Ukegbu          John    N | | **Attorney Bar ID:** 005771991 |
| **Attorney Email:** | | |

## Case Proceeding

| Proceeding Date | Actual Time | Court Room | Judge Name | Proceeding Description | Motion Type | Proceeding Status | Motion Status |
|---|---|---|---|---|---|---|---|
| 03/13/2026 | 09:00 | 41 | FRANK C TESTA | MOTION HEARING | MOTION TO VACATE DEFAULT JUDGMENT & RESTORE | RSCHED | |
| 03/27/2026 | 09:00 | 41 | FRANK C TESTA | MOTION HEARING | MOTION TO VACATE DEFAULT JUDGMENT & RESTORE | COMPLETED | CM |

## ACMS Documents

| Filed Date | Doc Number | Document Type | Filing Party | Doc Status | CO ID | Type | Date Served | Service Status | Party Served |
|---|---|---|---|---|---|---|---|---|---|
| 09/16/2025 | 001 | COMPLAINT | GULF COAST BANK & TR | | | | | | |
| 10/14/2025 | 002 | STPULTN DISMISL | GULF COAST BANK & TR | | | | | | |

003

| 12/08/2025 | 003 | PRF SERVC | GULF COAST BANK & TR | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 12/08/2025 | 004 | REQ DEFLT | GULF COAST BANK & TR | | | | | | |
| 12/08/2025 | 005 | CERTIFICTN | GULF COAST BANK & TR | | | | | | |
| 12/08/2025 | 006 | PRF MAIL | GULF COAST BANK & TR | | | | | | |
| 12/08/2025 | 007 | AFFDVT NMS | GULF COAST BANK & TR | | | | | | |
| 12/16/2025 | 008 | AFF PRF AMT DUE | GULF COAST BANK & TR | | | | | | |
| 12/16/2025 | 009 | CERT ATTY FEES | GULF COAST BANK & TR | | | | | | |
| 12/16/2025 | 010 | FIN JUDG DEFLT | GULF COAST BANK & TR | | | | | | |
| 02/05/2026 | 011 | APPEARANCE | ATSHAN | | | | | | |
| 02/13/2026 | 012 | MOTN VAC DEF&RE | ATSHAN | GR | | | | | |
| 02/11/2026 | 013 | APPL-WAGE EXEC | GULF COAST BANK & TR | | | | | | |
| 03/03/2026 | 014 | ORDR WAGE EXEC | COURT INIT | GR | | | | | |
| 03/11/2026 | 015 | OBJECT MOTION | GULF COAST BANK & TR | | | | | | |
| 03/27/2026 | 016 | ORDR VAC DEF&RE | ATSHAN | GR | | | | | |
| 03/27/2026 | 017 | ORD TRN AND VEN | ATSHAN | GR | | | | | |

| Case Actions | | | |
|---|---|---|---|
| **Filed Date** | **Docket Text** | **Transaction ID** | **Entry Date** |
| 09/16/2025 | Complaint for CAM-L-003082-25 submitted by SALDUTTI, ROBERT L, SALDUTTI LAW GROUP on behalf of GULF COAST BANK & TRUST CO against PRESTIGE INFUSIONS LLC, ALI ATSHAN | LCV20252556982 | 09/16/2025 |
| 09/17/2025 | TRACK ASSIGNMENT Notice submitted by Case Management | LCV20252563739 | 09/17/2025 |
| 10/14/2025 | NOTICE OF PARTIAL DISMISSAL submitted by SALDUTTI, ROBERT, L of SALDUTTI LAW GROUP on behalf of GULF COAST BANK & TRUST CO against PRESTIGE INFUSIONS LLC | LCV20252782827 | 10/14/2025 |
| 12/16/2025 | Default has been entered against the following party/parties: ALI ATSHAN. Default date entered is 12/16/2025 | LCV20253520394 | 12/16/2025 |
| 12/08/2025 | REQUEST FOR DEFAULT submitted by SALDUTTI, ROBERT, L of SALDUTTI LAW GROUP on behalf of GULF COAST BANK & TRUST CO against PRESTIGE INFUSIONS LLC, ALI  ATSHAN | LCV20253446814 | 12/08/2025 |
| 12/10/2025 | Default has been entered against the following party/parties: ALI ATSHAN. Default date entered is 12/08/2025 | LCV20253477799 | 12/10/2025 |

004

| | | | |
|---|---|---|---|
| 12/15/2025 | FINAL JUDGMENT BY DEFAULT submitted by SALDUTTI, ROBERT, L of SALDUTTI LAW GROUP on behalf of GULF COAST BANK & TRUST CO against PRESTIGE INFUSIONS LLC, ALI  ATSHAN | LCV20253501739 | 12/15/2025 |
| 12/16/2025 | DEFICIENCY NOTICE: re: FINAL JUDGMENT BY DEFAULT [LCV20253501739] -Default judgment cannot be entered against Defendant Prestige Infusions LLC as they were dismissed without prejudice on 10/14/25. Please submit a revised order, thank you. | LCV20253513516 | 12/16/2025 |
| 12/16/2025 | DEFICIENCY CORRECTION submitted by SALDUTTI, ROBERT, L of SALDUTTI LAW GROUP on behalf of GULF COAST BANK & TRUST CO against ALI  ATSHAN | LCV20253513839 | 12/16/2025 |
| 12/16/2025 | Final Judgment By Default submitted by Staff | LCV20253514552 | 12/16/2025 |
| 12/17/2025 | JUDGMENT BY DEFAULT - J submitted by SALDUTTI, ROBERT, L of SALDUTTI LAW GROUP on behalf of GULF COAST BANK & TRUST CO against ALI  ATSHAN | LCV20253522498 | 12/17/2025 |
| 12/19/2025 | CLERK NOTICE:  re: JUDGMENT BY DEFAULT - J [LCV20253522498] -Entered in the Civil Judgment and Order Docket in the Superior Court Clerk's Office. J  149691 25 | LCV20253550295 | 12/19/2025 |
| 01/16/2026 | WRIT OF EXECUTION - J submitted by SALDUTTI, ROBERT, L of SALDUTTI LAW GROUP on behalf of GULF COAST BANK & TRUST CO against ALI  ATSHAN | LCV2026137102 | 01/16/2026 |
| 01/20/2026 | DEFICIENCY NOTICE: re: WRIT OF EXECUTION - J [LCV2026137102] -RECEIVED BUT NOT FILED. DEBTOR NAME DOES NOT MATCH CJOD. PRESTIGE INFUSION WAS DISMISSED FROM CASE. | LCV2026146722 | 01/20/2026 |
| 02/04/2026 | WRIT OF EXECUTION - J submitted by SALDUTTI, ROBERT, L of SALDUTTI LAW GROUP on behalf of GULF COAST BANK & TRUST CO against ALI  ATSHAN | LCV2026280078 | 02/04/2026 |
| 02/05/2026 | NOTICE OF APPEARANCE (NOT THE FIRST PAPER) submitted by UKEGBU, JOHN, N of NORTHEAST NJ LEGAL SVCS on behalf of ALI  ATSHAN against GULF COAST BANK & TRUST CO, PRESTIGE INFUSIONS LLC | LCV2026292883 | 02/05/2026 |
| 02/09/2026 | CLERK NOTICE:  re: WRIT OF EXECUTION - J [LCV2026280078] -Entered in the Civil Judgment and Order in the Superior court Clerk's Office. | LCV2026310924 | 02/09/2026 |
| 02/09/2026 | Writ Of Execution - J submitted by Court | LCV2026311028 | 02/09/2026 |
| 02/11/2026 | APPLICATION FOR WAGE EXECUTION submitted by SALDUTTI, ROBERT, L of SALDUTTI LAW GROUP on behalf of GULF COAST BANK & TRUST CO against ALI  ATSHAN | LCV2026332005 | 02/11/2026 |
| 02/13/2026 | MOTION TO VACATE DEFAULT JUDGMENT & RESTORE submitted by UKEGBU, JOHN, N of NORTHEAST NJ LEGAL SVCS on behalf of ALI  ATSHAN against GULF COAST BANK & TRUST CO, PRESTIGE INFUSIONS LLC *LINKED FILING* | LCV2026364617 | 02/13/2026 |
| 02/19/2026 | The motion filed on 02/13/2026 will be decided on 03/13/2026. Do not come to the courthouse because no oral argument has been requested. The court's decision will be provided to you. Re: MOTION TO VACATE DEFAULT JUDGMENT & RESTORE [LCV2026364617] | LCV2026403506 | 02/19/2026 |
| 03/04/2026 | CLERK NOTICE:  re: MOTION TO VACATE DEFAULT JUDGMENT & RESTORE [LCV2026364617] -A paper courtesy copy of all motion-related papers must be received by Judge Testa's chambers within two days of e-filing. If you have not yet sent the required courtesy copy, kindly deliver it to chambers as soon as possible. Thank you. | LCV2026524296 | 03/04/2026 |
| 03/03/2026 | Order Wage Execution - Granted by Judge TESTA, FRANK, C | LCV2026526986 | 03/04/2026 |
| 03/06/2026 | CLERK NOTICE:  re: MOTION TO VACATE DEFAULT JUDGMENT & RESTORE [LCV2026364617] -Please mail a courtesy copy of your filing to Judge Polansky's chambers within two (2) business days. Judge Polansky will hear the portion of the motion related to transfer of venue. Thank you. | LCV2026545247 | 03/06/2026 |
| 03/11/2026 | OPPOSITION TO MOTION submitted by SALDUTTI, ROBERT, L of SALDUTTI LAW GROUP on behalf of GULF COAST BANK & TRUST CO against PRESTIGE INFUSIONS LLC, ALI  ATSHAN *LINKED FILING* | LCV2026637821 | 03/11/2026 |
| 03/12/2026 | CLERK NOTICE:  re: OPPOSITION TO MOTION [LCV2026637821] -Please mail a courtesy copy of your filing to Judge Polansky's chambers within two (2) business days. Judge Polansky will hear the portion of the opposition related to transfer of venue. Thank you. | LCV2026641753 | 03/12/2026 |
| 03/12/2026 | The motion filed on 02/13/2026 was rescheduled to 03/27/2026. Oral argument has been requested. You will be notified if oral argument is scheduled. Do not come to the courthouse unless you are notified. Re: MOTION TO VACATE DEFAULT JUDGMENT & RESTORE [LCV2026364617] | LCV2026651016 | 03/12/2026 |
| 03/24/2026 | CLERK NOTICE:  re: MOTION TO VACATE DEFAULT JUDGMENT & RESTORE [LCV2026364617] -Oral argument is granted and scheduled with Judge Polansky on March 27, 2026 at 9:00AM. This will be conducted IN PERSON in Courtroom 63. | LCV2026753564 | 03/24/2026 |

| 03/24/2026 | CLERK NOTICE: re: MOTION TO VACATE DEFAULT JUDGMENT & RESTORE [LCV2026364617] - Please disregard the time of day in the previous clerk's notice. Please be advised instead that oral argument is granted and scheduled with Judge Polansky on March 27, 2026 at 10:00AM. This will be conducted IN PERSON in Courtroom 63. | LCV2026753888 | 03/24/2026 |
| 03/24/2026 | GENERAL CORRESPONDENCE submitted by UKEGBU, JOHN, N of NORTHEAST NJ LEGAL SVCS on behalf of ALI  ATSHAN against GULF COAST BANK & TRUST CO, PRESTIGE INFUSIONS LLC | LCV2026754518 | 03/24/2026 |
| 03/24/2026 | CLERK NOTICE: re: GENERAL CORRESPONDENCE [LCV2026754518] -Please be advised that the request to appear virtually at the oral argument scheduled for Friday March 27, 2026 at 10:00AM is denied. | LCV2026758036 | 03/24/2026 |
| 03/25/2026 | CLERK NOTICE: re: MOTION TO VACATE DEFAULT JUDGMENT & RESTORE [LCV2026364617] - Counsel: Oral argument is granted and scheduled with Judge Testa on 3/27/26 at 9am in Courtroom 41. | LCV2026771787 | 03/25/2026 |
| 03/27/2026 | ORDER TO VACATE DEFAULT JUDGMENT AND RESTORE-Granted by Judge TESTA, FRANK, C re: MOTION TO VACATE DEFAULT JUDGMENT & RESTORE [LCV2026364617] | LCV2026789607 | 03/27/2026 |
| 03/27/2026 | Order To Transfer To Another Venue - Granted by Judge POLANSKY, STEVEN, J | LCV2026792604 | 03/27/2026 |
| 04/01/2026 | Answer W/CounterClaim ,3rd Party Claim W/Jury Demand  submitted by UKEGBU, JOHN, N of NORTHEAST NJ LEGAL SVCS on behalf of ALI  ATSHAN against GULF COAST BANK & TRUST CO, PRESTIGE INFUSIONS LLC | LCV2026826234 | 04/01/2026 |
| 04/08/2026 | DEFICIENCY NOTICE: re: Answer w/CounterClaim ,3rd Party Claim [LCV2026826234] -Venue Incorrect.  THE CSE HAS BEEN TRANSFERRED TO HUDSON COUNTY PER THE ORDER SIGNED ON 3/27/26. PLEASE SUBMIT TO THE CORRECT COUNTY. | LCV2026876787 | 04/08/2026 |

## STATEWIDE LIEN(S)

| Judgment Number | Case Status | Status Date |
| --- | --- | --- |
| J -149691-25 | OPEN | 12/19/2025 |

# Civil Part Case Summary

**Case Number:** HUD L-001304-26

**Case Caption:** Gulf Coast Bank & Tr Ust Co  Vs Prestige Infusion

| | | |
|---|---|---|
| **Court:** Civil Part | **Venue:** Hudson | **Case Initiation Date:** 09/16/2025 |
| **Case Type:** Book Account (Debt Collection Matters Only) | **Case Status:** Reinstated | **Jury Demand:** None |
| **Case Track:** 1 | **Judge:** Anthony V Delia | **Team:** 1 |
| **Original DED:** 06/05/2026 | **Current DED:** 06/05/2026 | **# of DED Extensions:** 0 |
| **Original Arb Date:** | **Current Arb Date:** | **# of Arb Adjournments:** 0 |
| **Original Trial Date:** | **Current Trial Date:** | **# of Trial Adjournments:** 0 |
| **Disposition Date:** 03/27/2026 | **Case Disposition:** Reinstated | **Statewide Lien:** |

## Plaintiffs

### Gulf Coast Bank & Trust Co

| | | |
|---|---|---|
| **Party Description:** Business | **Phone:** | |
| **Address Line 1:** | | |
| **Address Line 2:** | | |
| **City:** | **State:** NJ | **Zip:** 00000 |
| **Attorney Name:** Saldutti Robert L | | **Attorney Bar ID:** 006871992 |
| **Attorney Email:** | | |

### Ali  Atshan

| | | |
|---|---|---|
| **Party Description:** Individual | **Phone:** | |
| **Address Line 1:** | | |
| **Address Line 2:** | | |
| **City:** | **State:** NJ | **Zip:** 00000 |
| **Attorney Name:** Ukegbu John N | | **Attorney Bar ID:** 005771991 |
| **Attorney Email:** | | |

## Defendants

### Syed  Hassan

| | | |
|---|---|---|
| **Party Description:** Individual | **Phone:** | |
| **Address Line 1:** | | |
| **Address Line 2:** | | |
| **City:** | **State:** NJ | **Zip:** 00000 |
| **Attorney Name:** | | **Attorney Bar ID:** |
| **Attorney Email:** | | |

### Iqra  Khan

| | | |
|---|---|---|
| **Party Description:** Individual | **Phone:** | |
| **Address Line 1:** | | |
| **Address Line 2:** | | |
| **City:** | **State:** NJ | **Zip:** 00000 |
| **Attorney Name:** | | **Attorney Bar ID:** |
| **Attorney Email:** | | |

### Prestige Infusions Llc

| | | |
|---|---|---|
| **Party Description:** Business | **Phone:** | |
| **Address Line 1:** 116 Boonton Ave | | |
| **Address Line 2:** | | |
| **City:** Kinnelon | **State:** NJ | **Zip:** 07405 |
| **Attorney Name:** | | **Attorney Bar ID:** |

007

**Attorney Email:**

| Ali  Atshan | | |
|---|---|---|
| **Party Description:** Individual | **Phone:** | |
| **Address Line 1:** 1210 91St St  2 | | |
| **Address Line 2:** | | |
| **City:** North Bergen | **State:** NJ | **Zip:** 07047 |
| **Attorney Name:** Ukegbu        John    N | | **Attorney Bar ID:** 005771991 |

**Attorney Email:**

| Aysha  Khan | | |
|---|---|---|
| **Party Description:** Individual | **Phone:** | |
| **Address Line 1:** | | |
| **Address Line 2:** | | |
| **City:** | **State:** NJ | **Zip:** 00000 |
| **Attorney Name:** | | **Attorney Bar ID:** |

**Attorney Email:**

| Areeba  Khan | | |
|---|---|---|
| **Party Description:** Individual | **Phone:** | |
| **Address Line 1:** | | |
| **Address Line 2:** | | |
| **City:** | **State:** NJ | **Zip:** 00000 |
| **Attorney Name:** | | **Attorney Bar ID:** |

**Attorney Email:**

| Humza  Khan | | |
|---|---|---|
| **Party Description:** Individual | **Phone:** | |
| **Address Line 1:** | | |
| **Address Line 2:** | | |
| **City:** | **State:** NJ | **Zip:** 00000 |
| **Attorney Name:** | | **Attorney Bar ID:** |

**Attorney Email:**

| Santander Bank | | |
|---|---|---|
| **Party Description:** Bank | **Phone:** | |
| **Address Line 1:** | | |
| **Address Line 2:** | | |
| **City:** | **State:** NJ | **Zip:** 00000 |
| **Attorney Name:** | | **Attorney Bar ID:** |

**Attorney Email:**

| Mbf Auto Llc D/B/A Mercedes-Benz Of Caldwell AKA  Mercedes-Benz Of Caldwell | | |
|---|---|---|
| **Party Description:** Company | **Phone:** | |
| **Address Line 1:** | | |
| **Address Line 2:** | | |
| **City:** | **State:** NJ | **Zip:** 00000 |
| **Attorney Name:** | | **Attorney Bar ID:** |

**Attorney Email:**

| Adbuallah  Alaqrabawi | | |
|---|---|---|
| **Party Description:** Individual | **Phone:** | |
| **Address Line 1:** | | |

**Address Line 2:**

**City:**                                    **State:** NJ                                    **Zip:** 00000

**Attorney Name:**                                                                        **Attorney Bar ID:**

**Attorney Email:**

## ACMS Documents

| Filed Date | Doc Number | Document Type | Filing Party | Doc Status | CO ID | Type | Date Served | Service Status | Party Served |
|---|---|---|---|---|---|---|---|---|---|
| 03/27/2026 | 001 | TRAN ORDR | GULF COAST BANK & TR | | | | | | |
| 09/16/2025 | 002 | COMPLAINT | GULF COAST BANK & TR | | | | | | |
| 10/14/2025 | 003 | STPULTN DISMISL | GULF COAST BANK & TR | | | | | | |
| 12/08/2025 | 004 | PRF SERVC | GULF COAST BANK & TR | | | | | | |
| 12/08/2025 | 005 | REQ DEFLT | GULF COAST BANK & TR | | | | | | |
| 12/08/2025 | 006 | CERTIFICTN | GULF COAST BANK & TR | | | | | | |
| 12/08/2025 | 007 | PRF MAIL | GULF COAST BANK & TR | | | | | | |
| 12/08/2025 | 008 | AFFDVT NMS | GULF COAST BANK & TR | | | | | | |
| 12/16/2025 | 009 | AFF PRF AMT DUE | GULF COAST BANK & TR | | | | | | |
| 12/16/2025 | 010 | CERT ATTY FEES | GULF COAST BANK & TR | | | | | | |
| 12/16/2025 | 011 | FIN JUDG DEFLT | GULF COAST BANK & TR | | | | | | |
| 02/05/2026 | 012 | APPEARANCE | ATSHAN | | | | | | |
| 02/13/2026 | 013 | MOTN VAC DEF&RE | ATSHAN | GR | | | | | |
| 02/11/2026 | 014 | APPL-WAGE EXEC | GULF COAST BANK & TR | | | | | | |
| 03/03/2026 | 015 | ORDR WAGE EXEC | COURT INIT | GR | | | | | |
| 03/11/2026 | 016 | OBJECT MOTION | GULF COAST BANK & TR | | | | | | |
| 03/27/2026 | 017 | ORDR VAC DEF&RE | ATSHAN | GR | | | | | |
| 03/27/2026 | 018 | ORD TRN AND VEN | ATSHAN | GR | | | | | |
| 04/15/2026 | 019 | ANS CNTR & 3RD | ATSHAN | | | | | | |

009

**Case Actions**

| Filed Date | Docket Text | Transaction ID | Entry Date |
|---|---|---|---|
| 04/02/2026 | TRACK ASSIGNMENT Notice submitted by Case Management | LCV2026835320 | 04/02/2026 |
| 04/15/2026 | Answer W/CounterClaim ,3rd Party Claim W/Jury Demand  submitted by UKEGBU, JOHN, N of NORTHEAST NJ LEGAL SVCS on behalf of ALI  ATSHAN against GULF COAST BANK & TRUST CO, PRESTIGE INFUSIONS LLC | LCV2026954060 | 04/15/2026 |

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire – 006871992
Thomas B. O'Connell, Esquire - 031102008
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ  08034
(856) 779-0300
Attorneys for Plaintiff/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC<br>AND ALI ATSHAN<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO.<br><br>Civil Action<br><br>**COMPLAINT** |

Plaintiff, Gulf Coast Bank & Trust Co, a bank authorized to do business in the State of New Jerey and in Camden County, by way of Complaint against the Defendants, Prestige Infusions LLC and Ali Atshan hereby says:

**FIRST COUNT**

1.      On December 10, 2020, the Defendants, Prestige Infusions LLC and Ali Atshan executed  various financial Agreements payable to Santander Bank, N.A. (hereinafter the "Agreements") which Defendants promised to pay a certain sum, with interest thereon in monthly payments all as is more particularly set forth in the Agreements.

2.      Effective as of January 9, 2025, this loan, including all notes, mortgages and all other documents related thereto was sold and transferred to Plaintiff, Gulf Coast Bank & Trust Co.

3.      Defendants have failed to pay Plaintiff the monthly payments required under the terms of the Agreements and are in default of the Agreements.

4.      The Plaintiff has made demand of Defendants for payment; however, Defendants refused and still refuse to pay as promised under the Agreements.

5.      Plaintiff is entitled to collect full costs, principal, interest, and attorney's fees, pursuant to the terms of the Agreements.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, Prestige Infusions LLC and Ali Atshan jointly, severally, and in the alternative for $65,356.44, together with accrued Agreements interest on the unpaid principal, attorneys' fees, and costs of suit.

## SECOND COUNT

Plaintiff repeats each and every allegation of the First Count and incorporates the same herein.

6.      Under the terms of the Agreements, Defendants agreed to pay monthly payments of principal and interest each month all as is more particularly set forth in the Agreements.

7.      The Agreements provide that if any scheduled monthly payment should remain unpaid after the sum should fall due, the whole principal sum, with all accrued, but unpaid interest would, at the option of the Plaintiff, become immediately due, without prior notice to the Defendants.

8.      Defendants failed to pay the aforesaid scheduled monthly payments when due.

9.      As a result of Defendants' failure to pay the above scheduled monthly payments when due the Plaintiff has declared the whole principal sum and accrued interest thereon, immediately due and payable.

10.     There is due from the Defendants $65,356.44 under the Agreements with all accrued interest thereon.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, Prestige Infusions LLC and Ali Atshan jointly, severally, and in the alternative for $65,356.44, together with accrued Agreements interest on the unpaid principal, attorneys' fees, and costs of suit.

## THIRD COUNT

Plaintiff repeats each and every allegation of the First through Second Counts and incorporates the same herein as if set forth at length.

11.     The Agreements provide that if the Agreements were turned over to an attorney for collection, then Defendants agreed to pay Plaintiff's reasonable attorneys' fees due and payable to the Plaintiff.

12.     As a result of the Defendants' default, Plaintiff has instructed their attorney to institute this action to collect those monies due and owing to Plaintiff from Defendants under the Agreements.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, Prestige Infusions LLC and Ali Atshan jointly, severally, and in the alternative for $65,356.44, together with accrued Agreements interest on the unpaid principal, attorneys' fees, and costs of suit.

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: 09/16/2025

## CERTIFICATION

Pursuant to R. 4:5-1 this controversy is not the subject of any other action pending in any court or any pending arbitration proceeding and no other action or arbitration proceedings are contemplated at this time.

The following parties should be joined in the action:  None.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

## CERTIFICATION PURSUANT TO (R.1:38-7)

I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: 09/16/2025

# Civil Case Information Statement

## Case Details: CAMDEN | Civil Part Docket# L-003082-25

**Case Caption:** GULF COAST BANK & TR UST CO  VS PRESTIGE INFUSION

**Case Initiation Date:** 09/16/2025

**Attorney Name:** ROBERT L SALDUTTI

**Firm Name:** SALDUTTI LAW GROUP

**Address:** 1040 KINGS HIGHWAY NORTH STE 100 CHERRY HILL NJ 08034

**Phone:** 8564374035

**Name of Party:** PLAINTIFF : GULF COAST BANK & TRUST CO

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** BOOK ACCOUNT (DEBT COLLECTION MATTERS ONLY)

**Document Type:** Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: GULF COAST BANK & TRUST CO? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/16/2025
Dated

/s/ ROBERT L SALDUTTI
Signed

**SALDUTTI LAW GROUP**
Robert L. Saldutti, Esquire-006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC<br>AND ALI ATSHAN<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br><br>Civil Action<br><br>**REQUEST TO ENTER DEFAULT<br>AND CERTIFICATION** |

To the Clerk of the above-named Court:

Please enter upon the docket the default of the Defendant, Ali Atshan in the above-entitled

action for failure to plead or otherwise defend as provided by the rules of civil practice or by an Order

of this Court, or because the Answer of defendant has been stricken.

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE
Attorney for Plaintiff

## CERTIFICATION

1.      I am Robert L. Saldutti, Esquire, from the law firm of Saldutti Law Group, attorney for the plaintiff in the above-entitled action.

2.      The Summons and a copy of the Complaint in this action were served upon Defendant, Ali Atshan on October 8, 2025 as appears from the Affidavit of Process Server attached hereto.

3.      The time within which Defendant may answer or otherwise move as to said Complaint has expired, has not been extended or enlarged, and no Defendant named herein has answered or otherwise moved.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated:  December 8, 2025

018

| GULF COAST BANK & TRUST CO | Plaintiff | Superior Court of New Jersey, Camden County Law Division |
|---|---|---|
| vs. | | |
| PRESTIGE INFUSIONS LLC AND ALI ATSHAN | Defendant | Docket Number L-3082-25 |



86536

Person to be served (Name & Address):

**ALI ATSHAN**
**1210 91ST ST 2, North Bergen, NJ 07047**

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)

Attorney: Robert Saldutti, Esq.,Saldutti Law Group, 1040 N Kings Hwy Ste 100
Cherry Hill, NJ 08034

Cost of Service pursuant to R. 4:4-3 (c)

$ _____

Papers Served: **NJ Summons, Complaint, Track Assignment Notice, and Civil Case Information Statement**

Service Data:

Served Successfully __X__    Not Served _____    Date: **Oct 8, 2025**    Time: **9:32 PM**

Attempts: **1**

___ Delivered a copy to him / her personally

**X** Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

___ Left a copy with a person authorized to accept service, e.g., managing agent, registered agent, etc.
(Indicate name & official title at right)

Name of Person Served and relationship / title:
**BASAN ATSHAN, Son**

Description of Person Accepting Service:

Sex: **Male**    Age: **45**    Height: **5' 9"**    Weight: **200**    Skin/Race: **Middle Eastern** Hair Color: **Black**

Unserved:
( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquires suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on:
( ) _(Military Time)_
( ) Other:

Doug R Voight
NOTARY PUBLIC
STATE OF NEW JERSEY
ID # 50034598
MY COMMISSION EXPIRES March 29 2026

Subscribed and Sworn to me this
**November 7, 2025**

Notary Signature
Name of Notary / commission expiration

I, **Manny Bayo**, was at the time of service a competent adult not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

_____ Date, **Nov 7, 2025**
Process Server Signature

**LawServe LLC, 123 South 22nd Street, Philadelphia, PA 19103**

**SALDUTTI LAW GROUP**
Robert L. Saldutti, Esquire-006871992
1040 North Kings Highway, Suite 100
Cherry Hill, NJ 08034
(856) 779-0300
Attorneys for Plaintiff

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC<br>AND ALI ATSHAN<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br><br>Civil Action<br><br>**SUMMONS** |

From The State of New Jersey
To The Defendant(s) Named Above: ALI ATSHAN
The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within 35 days from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at https://www.njcourts.gov/public/directories/court-services/civil-dir)  If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, PO Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at https://www.njcourts.gov/public/directories/court-services/clerks-legal-offices.

Dated: 09/17/2025                              *Michelle M. Smith*
                                               Michelle M. Smith, Clerk of the Superior Court


Name of Defendant to be served:        ALI ATSHAN
                                       1210 91ST ST  2
                                       NORTH BERGEN, NJ 07047

**SALDUTTI LAW GROUP**
Robert L. Saldutti, Esquire-006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO, <br><br> Plaintiff, <br><br> v. <br><br> PRESTIGE INFUSIONS LLC AND ALI ATSHAN <br><br> Defendant(s). | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> CAMDEN COUNTY <br><br> DOCKET NO. L-3082-25 <br><br> Civil Action <br><br> **CERTIFICATION OF COUNSEL AS TO LAST KNOWN MAILING ADDRESS AND NON-MILITARY SERVICE** |

I, Robert L. Saldutti, Esquire, hereby certify as follows:

1. I am an attorney admitted to practice law in the state of New Jersey and am fully familiar with the facts of this case.

2. Pursuant to New Jersey Court Rule 6:6-3(a), we believe based upon our investigation that the last known address of the Defendant is correct. No regular mail has been returned and/or our equifax search as well as other skip tracing techniques indicate that this is a viable address.

3. We have also performed a database search of active military records, and I hereby certify that the Defendant is not actively serving in the military service (see attached).

I certify that the above statements made by me are true and correct to the best of my knowledge. I am aware that if any of the foregoing statements made by me are incorrect, I am subject to punishment.

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: December 8, 2025

Department of Defense Manpower Data Center

Results as of : Dec-08-2025 11:04:24 AM EST

SCRA 5.27



# Status Report
## Pursuant to Servicemembers Civil Relief Act

SSN: XXX-XX-1571

Birth Date: Jan-XX-1952

Last Name: ATSHAN

First Name: ALI

Middle Name:

Status As Of: Dec-08-2025

Certificate ID: PXRYPV9WR0K0JMS

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

**SALDUTTI LAW GROUP**
Robert L. Saldutti, Esquire-006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>      Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC<br>AND ALI ATSHAN<br><br>      Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br><br>   Civil Action<br><br>**PROOF OF MAILING** |

The within Request to Enter Default has been filed with the Clerk of the Superior Court in the County of Camden, at 101 South 5th Street Camden, NJ 08105.

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

**PROOF OF MAILING:** On December 8, 2025, I the undersigned mailed to Defendant, Ali Atshan by regular mail, the following:

**Request to Enter Default; Certification of Non-Military Service;
Affidavit of Service; and Proof of Mailing**

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: December 8, 2025

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following was filed by  on 12/10/2025:

| | |
|---|---|
| Plaintiff Name : | GULF COAST BANK & TR UST CO |
| Defendant Name: : | PRESTIGE INFUSIONS L LC, ALI ATSHAN |
| Case Caption: | GULF COAST BANK & TR UST CO  VS PRESTIGE INFUSION |
| Case Number: | CAM L 003082-25 |
| Docket Text: | Default has been entered against the following party/parties: ALI ATSHAN. Default date entered is 12/08/2025 |
| Transaction ID: | LCV20253477799 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | ROBERT L SALDUTTI | LMARCIANO@SLGCOLLECT.COM |
| | | PWIRTH@SLGCOLLECT.COM |
| | | MBURRUEZO@SLGCOLLECT.COM |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | PRESTIGE INFUSIONS L LC | 116 BOONTON AVE, KINNELON, NJ 07405 |
| Defendant | ALI ATSHAN | 1210 91ST ST  2, NORTH BERGEN, NJ 07047 |

Login to eCourts to view the Case Jacket. You will need a valid user ID (Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

Case 2:26-cv-04496-ES-SDA    Document 2    Filed 04/23/26    Page 25 of 286 PageID: 32

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following was filed by  on 12/16/2025:

| | |
|---|---|
| Plaintiff Name : | GULF COAST BANK & TR UST CO |
| Defendant Name: : | PRESTIGE INFUSIONS L LC, ALI ATSHAN |
| Case Caption: | GULF COAST BANK & TR UST CO  VS PRESTIGE INFUSION |
| Case Number: | CAM L 003082-25 |
| Docket Text: | Default has been entered against the following party/parties: ALI ATSHAN. Default date entered is 12/16/2025 |
| Transaction ID: | LCV20253520394 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | ROBERT L SALDUTTI | LMARCIANO@SLGCOLLECT.COM |
| | | PWIRTH@SLGCOLLECT.COM |
| | | MBURRUEZO@SLGCOLLECT.COM |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | PRESTIGE INFUSIONS L LC | 116 BOONTON AVE, KINNELON, NJ 07405 |
| Defendant | ALI ATSHAN | 1210 91ST ST  2, NORTH BERGEN, NJ 07047 |

Login to eCourts to view the Case Jacket. You will need a valid user ID (Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

Case 2:26-cv-04496-ES-SDA    Document 2    Filed 04/23/26    Page 26 of 286 PageID: 33

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following clerk notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | GULF COAST BANK & TR UST CO |
| Defendant Name: | PRESTIGE INFUSIONS L LC, ALI ATSHAN |
| Case Caption: | GULF COAST BANK & TR UST CO  VS PRESTIGE INFUSION |
| Case Number: | CAM L 003082-25 |
| Docket Text: | CLERK NOTICE: re: JUDGMENT BY DEFAULT - J LCV20253522498 -Entered in the Civil Judgment and Order Docket in the Superior Court Clerk's Office. J  149691 25 |
| Transaction ID: | LCV20253550295 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | ROBERT L SALDUTTI | LMARCIANO@SLGCOLLECT.COM |
| | | PWIRTH@SLGCOLLECT.COM |
| | | MBURRUEZO@SLGCOLLECT.COM |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | PRESTIGE INFUSIONS L LC | 116 BOONTON AVE, KINNELON, NJ 07405 |
| Defendant | ALI ATSHAN | 1210 91ST ST  2, NORTH BERGEN, NJ 07047 |

Login to eCourts to view the Case Jacket. You will need a valid user ID (Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC<br>AND ALI ATSHAN<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br><br>Civil Action<br><br>**NOTICE OF DISMISSAL WITHOUT**<br>**PREJUDICE AS TO PRESTIGE**<br>**INFUSIONS, LLC ONLY** |

PLEASE TAKE NOTICE that this matter is dismissed as to Defendant Prestige

Infusions, LLC, ONLY. Dismissal is without prejudice and without costs to either party.

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: October 13, 2025

Q- 52263

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Ste 100
Cherry Hill, New Jersey 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN<br><br>Defendant | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25;  J-149691-25<br><br>Civil Action<br><br>**SUPPLEMENTAL PROOF OF SERVICE** |

I am an attorney at law in the State of New Jersey associated with the firm of Saldutti Law Group attorneys for the plaintiff and am familiar with the facts of this case.

The plaintiff's application for wage execution was served by sending it simultaneously by regular and certified mail, return receipt requested, to the defendant's last known address at:

365 W Passaic St Ste 400 Rochelle Park, NJ 07662

The certified mail was:

(xx)    accepted on January 23, 2026

(  )    returned to my office "unclaimed" on _____; regular mail was not returned.

(  )    refused and returned to my office on _____

(  )    returned to my office on _____ marked:

    ( )    moved, left no forwarding address

    ( )    forwarding time expired

        ( )    Pursuant to Rule 1:5-2, a copy of the application for wage execution was served upon the Clerk of the Court on _____.

I certify that the foregoing statements made by me are true.  I am aware at if any of the foregoing statements made by me are willfully false, I am subject to punishment.

        SALDUTTI LAW GROUP

        /s/ Robert L. Saldutti

        _____
        ROBERT L. SALDUTTI, ESQUIRE

Dated: February 11, 2026

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Ste 100
Cherry Hill, New Jersey 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN<br><br>Defendant | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25;  J-149691-25<br><br>Civil Action<br><br>**ORDER, CERTIFICATION AND<br>EXECUTION AGAINST EARNINGS** |

**DEFENDANT:** Ali Atshan
**EMPLOYER:** Hudson County Parks Department
**ADDRESS:** 1 County Road 605, Jersey City, NJ 07304

The certification set forth below being considered, it is on this ___day of _____,
ORDERED that execution issue against the earnings of the judgment debtor, Ali Atshan from
judgment debtor's employer, Hudson County Parks Department, located at 1 County Road 605,
Jersey City, NJ 07304 for the lesser of the following: (a) 10 percent of your gross salary when
the same shall equal or exceed the amount of $217.50 per week; or (b) 25 percent of your
disposable earnings for that week; or (c) the amount, if any, by which your disposable weekly
earnings exceed $217.50, until the total amount due has been deducted or the complete
termination of employment.  Upon either of these events, an immediate accounting is to be made
to an officer of the Court.

Disposable earnings are defined as that portion of the earnings remaining after the
deduction from the gross earnings of any amounts required by law to be withheld.  In the event
the disposable earnings so defined are $217.50 or less, if paid weekly, or $435.00 or less, if paid
every two weeks, of $471.25 or less, if paid twice per month, of $942.50, or less, if paid monthly
then no amount shall be withheld under this execution.  In no event shall more than 10 percent of
gross salary be withheld. The employer shall immediately give the designated defendant a copy
of this order. The designated defendant may object to the wage execution or apply for a

reduction in the amount withheld at any time. To object or apply for a reduction, a written

statement of the objection or reasons for a reduction must be filed with the Clerk of the Court

and a copy must be sent to the creditor's attorney or directly to the creditor if there is no attorney.

A hearing will be held within 7 days after filing the objection or application for a reduction.

According to law, no employer may terminate an employee because of a garnishment.


_____
J.S.C

## CERTIFICATION

I, Robert L. Saldutti, Esquire, hereby certify as follows:

1.      I am an attorney admitted to practice law in the state of New Jersey and am fully familiar with the facts of this case.

2.      On December 16. 2025, this Court entered Judgment in favor of plaintiff and against the defendant in the amount of $82,948.66.

3.      There is still due on said judgment $82,948.66, plus interest of $0.00, making a total of $82,948.66, besides costs.  Judgment-debtor is to pay all court officer fees and post judgment interest.

4.      The said judgment-debtor is employed by Hudson County Parks Department, located at 1 County Road 605, Jersey City, NJ 07304.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


/s/ Robert L. Saldutti

_____
ROBERT L. SALDUTTI, ESQUIRE

Date: February 11, 2026

## HOW TO CALCULATE PROPER GARNISHMENT AMOUNT

(1)     Gross Salary per pay period . . . . . . . . . . . . . . . . . . . . . . . . ..  . . . . . . $_____

(2)     LESS:
        Amounts Required by Law to be Withheld:
        (a)     U.S. Income Tax . . . . . . . . . . . . . . . . . .$ _____

        (b)     FICA (social security)  . . . . . . . . . . . . . .$_____

        (c)     State Income Tax, ETT, etc. . . . . . . . . . . _$_____

        (d)     N.J. SUI . . . . . . . . . . . . . . . . . . . . . . . . $_____

        (e)     Other state or Municipal
                Withholding . . . . . . . . . . . . . . . . . . . . . . $_____

        (f)     Total . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____   - $_____

(3)     EQUALS "disposable earnings" . . . . . . . . . . . . . . . . . . . . . . . . . .= $_____

(4)     If salary is paid:
        -- weekly, then subtract $217.50
        -- every two weeks, then subtract $435.00
        -- twice per month, then subtract $471.25
        -- monthly, then subtract $942.50
        (Federal law prohibits any garnishment when
        "disposable earnings" are smaller than the
        amount on line 4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .- $_____

(5)     Equals the amount potentially subject to garnishment
        (If less than zero, enter zero) . . . . . . . . . . . . . . . . . . . . . . . . . . . =$_____

(6)     Take "disposable earnings" (Line 3) and multiply
        by .25: $_____ x .25=$_____ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

(7)     Take the gross salary (Line 1) and multiply by .10
        $_____ x.10=$_____ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

(8)     Compare lines 5, 6, and 7 - the amount which may
        lawfully be deducted is the smallest amount on
        line 5, line 6, or line 7, i.e., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

Source:  15 U.S.C. 1671 et seq.; 29 C.F.R. 5870; N.J.S.A. 2A:17-50 et seq.

**UNITED STATES**
**POSTAL SERVICE** ™

Date Produced: 01/26/2026

ConnectSuite Inc.:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 9403 8352 4985 64. Our records indicate that this item was delivered on 01/23/2026 at 03:15 p.m. in NORTH BERGEN, NJ 07047. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :          **1210 91ST ST, NORTH BERGEN, NJ 07047**

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

This USPS proof of delivery is linked to the customers mail piece information on file as shown below:

ALI ATSHAN
1210 91ST ST
# 2
NORTH BERGEN NJ 07047-4419

Customer Reference Number:        C6504207.39785636

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ  08034
(856) 779-0300
Attorneys for Plaintiff/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN<br><br>Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br><br>Civil Action<br><br>**NOTICE OF APPLICATION**<br>**FOR WAGE EXECUTION** |

TO:   Ali Atshan                           Hudson County Parks Department
      1210 91st St 2                       1 County Road 605
      North Bergen, NJ 07047               Jersey City, NJ 07304
      Social Security #xxx-xx-x571

TAKE NOTICE that an application is being made by the judgment-creditor to the above-named Court, located at 101 South 5th Street, Camden, NJ 08105, for a Wage Execution Order to issue against your salary, to be served on your employer, Hudson County Parks Department 1 County Road 605, Jersey City, NJ 07304, for: (a) 10% of your gross salary when the same shall equal or exceed the amount of $217.50 per week; or (b) 25% of your disposable earnings for that week; or (c) the amount, if any, by which your disposable weekly earnings exceed $217.50, whichever shall be the least.  Disposable earnings are defined as that portion of the earnings remaining after the deduction from the gross earnings of any amounts required by law to be withheld.  In the event the disposable earnings so defined are $217.50 or less, if paid weekly, or $435.00 or less, if paid every two weeks, of $471.25 or less, if paid twice per month, of $942.50, or less, if paid monthly then no amount shall be withheld under this execution.  In no event shall more than 10% of gross salary be withheld and only one execution against your wages shall be satisfied at a time.  Your employer may not discharge, discipline or discriminate against you

because your earnings have been subjected to garnishment.

You may notify the Clerk of the Court and the attorneys for judgment-creditor, whose address appears above, in writing, within ten (10) days after service of this notice upon you, why such Order should not be issued, and thereafter the application for the Order will be set down for a hearing of which you will receive notice of the date, time and place.

If you do not notify the Clerk of the Court and judgment-creditor's attorney, or the judgment-creditor if there is no attorney, in writing of your objection, you will receive no further notice and the Order will be signed by the Judge as a matter of course.

You also have the continuing right to object to the wage execution or apply for a reduction in the amount withheld even after it has been issued by the Court. To object or apply for a reduction, file a written statement of your objection or reasons for a reduction with the Clerk of the Court and send a copy to the creditor's attorney or directly to the creditor if there is no attorney. You will be entitled to a hearing within 7 days after you file your objection or application for reduction.

## CERTIFICATION OF SERVICE

I served the within Notice upon the judgment-debtor, Ali Atshan on this date by sending it simultaneously by regular and certified mail, return receipt requested, to the judgment-debtor's last known address, set forth above.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to the punishment.

/s/Robert L. Saldutti

_____
ROBERT L SALDUTTI, ESQUIRE
Attorney for Judgment-Creditor

Dated: January 16, 2026

Case 2:26-cv-04496-ES-SDA   Document 2   Filed 04/23/26   Page 38 of 286 PageID: 45

038

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following clerk notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | GULF COAST BANK & TR UST CO |
| Defendant Name: | PRESTIGE INFUSIONS L LC, ALI ATSHAN |
| Case Caption: | GULF COAST BANK & TR UST CO  VS PRESTIGE INFUSION |
| Case Number: | CAM L 003082-25 |
| Docket Text: | CLERK NOTICE: re: WRIT OF EXECUTION - J LCV2026280078 -Entered in the Civil Judgment and Order in the Superior court Clerk's Office. |
| Transaction ID: | LCV2026310924 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | ROBERT L SALDUTTI | LMARCIANO@SLGCOLLECT.COM |
| | | PWIRTH@SLGCOLLECT.COM |
| | | MBURRUEZO@SLGCOLLECT.COM |
| Defendant Attorney | JOHN N UKEGBU | JUKEGBU@LSNJ.ORG |
| | | NNJLS_JC_JEFIS_NOTICES@LSNJ.ORG |
| | | JULAWYER@VERIZON.NET |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | PRESTIGE INFUSIONS L LC | 116 BOONTON AVE, KINNELON, NJ 07405 |

Login to eCourts to view the Case Jacket. You will need a valid user ID (Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Ste 100
Cherry Hill, New Jersey 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN<br><br>Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25; J-149691-25<br><br>Civil Action<br><br>**WRIT OF EXECUTION** |

**THE STATE OF NEW JERSEY**
**TO THE SHERIFF OF THE COUNTY OF CAMDEN**

**WHEREAS**, on **12/16/2025**, judgment was recovered by the Plaintiff, in an action in the Superior Court of New Jersey, Law Division, Camden County, against **ALI ATSHAN**, for **$82,948.66** in damages, interest and taxed cost of suits; and

**WHEREAS**, on **12/19/2025** the judgment was entered as Judgment Number **J-149691-25** and there remains due thereon **$82,948.66** in damages plus costs, together with post-judgment interest.

**THEREFORE, WE COMMAND YOU** that you satisfy the said judgment out of the personal property of the said Judgment debtor(s) within your County; and if sufficient personal property cannot be found then, subsequent to your levy and only after receipt of an order of the court pursuant to *R.*4:59-1 (d), out of the real property in your County belonging to the judgment debtor(s) at the time when the judgment was entered or docketed in the office of the Clerk of this Court, or at any time thereafter, in whosesoever hands the same may be. Any levy pursuant to this writ shall exclude (1) all funds in an account of the debtor with a bank or other financial institution, if all deposits into the account during the 90 days immediately prior to service of the writ were electronic deposits, made on a recurring basis, of funds identifiable by the bank or other financial institution as exempt from execution, levy or attachment under New Jersey or federal law, and (2) all funds deposited electronically in an account of the debtor with a bank or other financial institution during the two months immediately prior to the account review undertaken by the bank or other financial institution in response to the writ that are identifiable by the bank or other financial institution as exempt from execution, levy or attachment under New Jersey or federal law. You

shall pay said monies realized by you from such property to Robert L. Saldutti, Esq., attorney in this action. Within twenty-four months after the date of its issuance you shall return this execution and your proceedings thereon to the Clerk of the Superior Court of New Jersey at Trenton.

**WE FURTHER COMMAND YOU**, that in case of a sale, you make your return of this Writ with your proceedings thereon before this Court and you pay to the Clerk thereof any surplus in your hands within thirty days after the sale.

Witness, Hon. Robert Lougy, A.J.S.C., Judge of the Superior Court,
This 9th of February 2026.

/s/ Michelle M. Smith, Esq.
Clerk of the Superior Court

Entered in the Records of Executions
Issued in the Superior Court Clerk's Office

## ENDORSEMENT

| | |
|---|---|
| Judgment Date: | **12/16/2025** |
| Judgment Amount*: | $82,948.66 |
| Additional Costs: | $35.00 |
| Credits: | $0.00 |
| Interest thereon: | $774.95 |
| Sheriff Fees: | $50.00 |
| Sheriff's Commission: | $Tbd |
| **TOTAL DUE THIS DATE:** | $83,808.61 |

\* "Judgment Amount" includes amount of verdict or settlement, plus pre-judgment court cost, plus any applicable statutory attorney's fees.

Post-judgment Interest applied pursuant to *R.* 4:42-11 has been calculated as **simple interest**. As required by *R.* 4:59-1, attached is the method by which interest has been calculated, taking into account all partial payments made by the defendant.
**Interest from 12/16/2025-01/01/2026 @ 7.5% = $272.71**
**Interest from 01/01/2026-02/04/2026 @ 6.5% = $502.24**

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: February 4, 2026

041

John Ukegbu, Esq.---005771991
Northeast New Jersey Legal Services, Inc.
574 Summit Avenue
Jersey City, New Jersey 07306-2797
(201) 792-6363 Ext. 3243
Attorneys for Defendant Ali Atshan

| | |
|---|---|
| GULF COAST BANK & TRUST CO.,<br><br>     Plaintiff,<br><br>     vs.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN,<br><br>     Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION-CAMDEN COUNTY<br><br>DOCKET NO.: CAM-L-003082-25<br><br>CIVIL ACTION<br><br>NOTICE OF APPEARANCE |

Notice is hereby given of the entry of Northeast New Jersey Legal Services, Inc. (John Ukegbu, Esq., appearing) as counsel for Defendant, Ali Atshan, in the above-captioned case. All future notices, pleadings, papers, and other relevant materials in this action should be served upon:

John Ukegbu, Esq.
Northeast New Jersey Legal Services Inc.
574 Summit Avenue Jersey City, New Jersey 07306
jukegbu@lsnj.org

Northeast New Jersey Legal Services, Inc.
Attorneys for Defendant Ali Atshan

*John Ukegbu*

_____

Dated: February 5, 2026          John Ukegbu, Esq.

NOTICE OF APPEARANCE-1

John Ukegbu, Esq.---005771991
Northeast New Jersey Legal Services, Inc.
574 Summit Avenue
Jersey City, New Jersey 07306-2797
(201) 792-6363 Ext. 3243
Attorneys for Defendant Ali Atshan

| | |
|---|---|
| GULF COAST BANK & TRUST CO.,<br><br>    Plaintiff,<br><br>    vs.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION-CAMDEN COUNTY<br><br>DOCKET NO.: CAM-L-003082-25<br><br>CIVIL ACTION<br><br>NOTICE OF MOTION TO VACATE THE JUDGMENT ENTERED ON DECEMBER 16, 2025, AND TRANSFERING THE CASE TO THE HUDSON VICINAGE.<br><br>**ORAL ARGUMENT REQUESTED** |

To:     SALDUTTI LAW GROUP
        Robert L. Saldutti, Esq.
        Thomas B. O'Connell, Esq.
        1040 N. Kings Highway, Suite 100
        Cherry Hill, New Jersey 08034

        PLEASE TAKE NOTICE that the undersigned attorneys for Ali Atshan are applying to the Superior Court of New Jersey, Law Division, Camden County at Fifth Street, Suite 150, Camden, New Jersey for an Order to vacate the judgment that was entered on December 16, 2025, and to transfer this case to the proper venue that is the Hudson Vicinage.

        NOTICE IF YOU WANT TO RESPOND TO THIS MOTION, YOU MUST DO SO IN WRITING. Your written response must be in the form of a certification or affidavit. That means that the person signing it swears to the truth of the statements in the certification or affidavit and is aware that the court can punish him or her if the statements are knowingly false. You may ask

NOTICE OF MOTION- 1

for oral argument, which means you can ask to appear before the court to explain your position. If the court grants oral argument, you will be notified of the time, date, and place.   Your response, if any, must be in writing even if you request oral argument.  Any papers you send to the court must also be sent to the opposing party's attorney or the opposing party if they are not represented by an attorney.

TAKE FURTHER NOTICE that the Defendant will rely on the Certification of Ali Atshan, Exhibits, and the Memorandum of Law in Support of the Motion submitted herewith.

TAKE FURTHER NOTICE that the Defendant hereby requests oral argument.

Northeast New Jersey Legal Services, Inc.
Attorneys for Defendant Ali Atshan

*John Ukegbu*

_____
John Ukegbu, Esq.

Dated: February 13, 2026

NOTICE OF MOTION- 2

<u>CERTIFICATION OF SERVICE</u>

I hereby certify that this motion was served upon all counsel of records by filing this motion electronically via eCourts. I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements by me are willfully false, I am subject to punishment.

*John Ukegbu*

_____

Dated: February 13, 2026                    John Ukegbu, Esq.

NOTICE OF MOTION- 3

John Ukegbu, Esq.---005771991
Northeast New Jersey Legal Services, Inc.
574 Summit Avenue
Jersey City, New Jersey 07306-2797
(201) 792-6363 Ext. 3243
Attorneys for Defendant Ali Atshan

| | |
|---|---|
| GULF COAST BANK & TRUST CO.,<br><br>Plaintiff,<br><br>vs.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-CAMDEN COUNTY<br><br>DOCKET NO.: CAM-L-003082-25<br><br>CIVIL ACTION<br><br>ORDER VACATING THE JUDGMENT ENTERED ON DECEMBER 16, 2025, AND TRANSFERRING THE CASE TO THE HUDSON VICINAGE |

This matter having been opened by Northeast New Jersey Legal Services, Inc. (John Ukegbu, Esq., appearing) attorneys for the Defendant Ali Atshan in the presence of Saldutti Law Group (Robert L. Saldutti, Esq., appearing) attorney for the Plaintiff and the Court having read and considered the submissions of counsel, it is on this         day of February, 2026.

ORDERED as follows:

The December 16, 2025, judgment is vacated under R. 4:50-1 on the grounds that Defendant Ali Atshan is a victim of identity theft and the underlying claim appears fraudulent.

This case shall be transferred to the Hudson Vicinage, where Defendant Ali Atshan resides, within five days of this Order's entry.

Within 20 days of transfer to the Hudson Vicinage, Defendant Ali Atshan shall file and serve an Answer.

This Order shall be deemed served upon all counsel of record with its online filing via eCourts in accordance with Rule 1:5-1 (a).

_____
Honorable Frank C. Testa, J.S.C.

Opposed___
Unopposed___
ORDER VACATING JUDGMENT AND TRANSFERRING TO HUDSON VICINAGE - 1

John Ukegbu, Esq.---005771991
Northeast New Jersey Legal Services, Inc.
574 Summit Avenue
Jersey City, New Jersey 07306-2797
(201) 792-6363 Ext. 3243
Attorneys for Defendant Ali Atshan

| | |
|---|---|
| GULF COAST BANK & TRUST CO.,<br><br>    Plaintiff,<br><br>    vs.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION-CAMDEN COUNTY<br><br>DOCKET NO.: CAM-L-003082-25<br><br>CIVIL ACTION<br><br>MEMRANDUM OF LAW IN SUPPORT OF THE MOTION TO VACATE THE JUDGMENT ENTERED ON DECEMBER 16, 2025, AND TRANSFERING THE CASE TO THE HUDSON VICINAGE |

## INTRODUCTION

This case arises from an alleged debt purportedly incurred by Prestige Infusions, LLC and Ali Atshan. Mr. Atshan maintains that the Promissory Note, Security Agreement, and Guaranty cited by Gulf Coast Bank & Trust Company are fraudulent; he never electronically executed these documents. Furthermore, the Federal Bureau of Investigation (FBI) has identified Mr. Atshan as a victim of aggravated identity theft perpetrated by a Humza Khan. Finally, venue in Camden County is improper, as neither the Plaintiff nor the Defendants have any connection to this jurisdiction.

Memorandum of Law Page -1

## LAW AND ARGUMENT

### POINT I

### RELIEF IS MANDATED UNDER RULE 4:50-1 BECAUSE THE JUDGMENT AGAINST DEFENDANT ALI ATSHAN IS A PRODUCT OF FRAUD.

### A.

### THE STANDARD FOR DECIDING THE MOTION

Ali Atshan is entitled to have the December 16, 2025, judgment vacated under Rule 4:50-1, which reads:

> On motion, with briefs, and upon such terms, as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

The motion should be returnable before the Honorable Frank C. Testa, J.S.C., unless he is unavailable or the situation is emergent. Quagliato v. Bodner, 115 N.J. Super. 133 (App. Div. 1971). "While it is useful, it is not absolutely imperative for the application to state the particular subsection pursuant to which relief from the judgment is sought" Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 4:50-1 (2026).

Memorandum of Law Page -2

B.

APPLICATION OF RULE 4:50-1

I.

The documents that Gulf Coast Bank & Trust Company relies upon—specifically, the Promissory Note, Security Agreement, and Guaranty—are fraudulent because Mr. Atshan never electronically executed them. Furthermore, the FBI has identified Mr. Atshan as a victim of aggravated identity theft perpetrated by Humza Khan. (See Exhibits 028-038). Finally, the filing in Camden Vicinage is improper, as neither the Plaintiff nor the Defendants maintain any ties to this jurisdiction. R.4:3-2, see also, Rutgers-The State University v. Fogel, 403 N.J. Super. 389 (App. Div. 2008) (Notwithstanding Rule 4:3-2, venue in actions to collect a debt subject to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, must be laid either in the county of the debtor's residence or in the county where the contract was signed.)

The Plaintiff relies on a Promissory Note, Security Agreement, and Guaranty allegedly executed via the DocuSign platform (See eCourts LCV2025-20253501739, entry date 12/15/2025). Critically, the record is devoid of a DocuSign "Certificate of Completion" or any corresponding audit trail. There is no evidence of an email address used for delivery, nor any timestamped log demonstrating that these documents were ever transmitted to or signed by Mr. Atshan. This absence of biometric or digital metadata confirms the documents' fraudulent nature.

The mere existence of an electronic signature is insufficient to prove authenticity, especially where security procedures are absent. Under the standard set in Mohammed v. Uber Technologies, 237 F. Supp. 3d. 719 (N.D. Ill. 2017), an electronic signature alone does not definitively prove that a specific individual executed a document. This is particularly relevant

Memorandum of Law Page -3

here, as the Plaintiff has failed to provide a DocuSign audit trail or any record of the email address used to transmit the email.

As the court held in <u>Kerr v. Dillard Store Services, Inc</u>., 2009 WL 385863 (D. Kan. 2009), a purported electronic signature cannot be attributed to a party when the proponent fails to demonstrate adequate security procedures, restricted access, or a reliable method for determining if the signature is genuine. Because the Plaintiff cannot provide this metadata, the judgment is a product of fraud and must be vacated.

The Plaintiff's claim is further undermined by the official corporate records of Prestige Infusions LLC, which confirm that Mr. Atshan held no legal authority to bind the entity. According to the Certificate of Formation on file with the New Jersey Department of Treasury, Division of Revenue and Enterprise Services (See Exhibits 018-025), the authorized representatives and members of Prestige Infusions LLC are exclusively identified as Aysha Khan, Abdullah Alaqrabawi, and Iqra Khan. The registered agent is listed as Areeba Khan.

Mr. Atshan is nowhere mentioned in the company's formation, ownership, or management structure. Consequently, even if the electronic signature were genuine—which it is not—Mr. Atshan lacked the corporate capacity to execute a Promissory Note, Security Agreement, or Guaranty on behalf of Prestige Infusions LLC. This discrepancy reinforces the conclusion that the loan documents are the product of identity theft and fraud. Query, why did the Plaintiff discontinue Prestige Infusions LLC as a defendant after obtaining default?

The existence of a parallel entity, "Prestige Infusions Mobile LLC," further evidences a pattern of fraud and identity theft. Public records reveal the existence of a second entity, Prestige Infusions Mobile LLC, which shares a nearly identical business purpose with the named Defendant Prestige Infusions LLC: "medical health clinic performing services for mobile

Memorandum of Law Page -4

patients" (See Exhibits 013 and 021). Notably, Prestige Infusions Mobile LLC maintains its registered office at 19 Amira Lane, Kinnelon, New Jersey—the personal residence of Aysha Khan.

As previously noted, Aysha Khan is also a member/manager of the named Defendant, Prestige Infusions LLC (Exhibits 018-020). The overlap among the Khan family members—whom the FBI has already linked to aggravated identity theft against Mr. Atshan—regarding management, business purpose, and residential addresses strongly suggests that the loan documents were part of a fraudulent scheme. This "corporate shell" structure was likely used to facilitate the unauthorized debt and to shield the actual perpetrators behind Mr. Atshan's stolen identity. Mr. Atshan has identified Aysha Khan, Areeba Khan, and Humza Khan as the specific individuals responsible for misappropriating his personal identifying information to facilitate this fraudulent debt. These individuals have engaged in a pattern of using Mr. Atshan's stolen identity for unauthorized commercial purposes, as further evidenced by their control over the entities listed in the New Jersey Treasury Records (Exhibits 018-025).

In summary, Gulf Coast Bank & Trust Company's claims are predicated on fraudulent loan documents that Mr. Atshan never executed and that are the direct result of aggravated identity theft, as confirmed by the FBI. The Plaintiff has produced no DocuSign Certificate of Completion, audit trail, delivery record, or metadata establishing that the Promissory Note, Security Agreement, or Guaranty were ever transmitted to or signed by Mr. Atshan, rendering the alleged electronic signatures legally unreliable. Courts have consistently held that an electronic signature, without proof of adequate security procedures, is insufficient to establish authenticity, and the absence of such proof here confirms that the judgment was procured by fraud and must be vacated. See, American Express Travel Related Services. Co. v. Vinhnee (In re Vinhnee), 336 B.R. 437 (B.A.P. 9th Cir. 2005). Independently, New Jersey Treasury records

Memorandum of Law Page -5

establish that Mr. Atshan had no ownership interest, management role, or authority to bind Prestige Infusions LLC, rendering execution of the loan documents legally impossible, even if the signatures were genuine. The existence of a parallel entity controlled by the same Khan family members—already linked by the FBI to the identity theft—further demonstrates a coordinated scheme using corporate shell entities to misuse Mr. Atshan's stolen identity, and venue in Camden County is improper because neither party has any connection to that jurisdiction. (Exhibits 010-012, 016-017).

It is important to note that the Plaintiff is not registered to conduct business in this state and does not hold a designation as a financial institution operating in New Jersey. This is supported by N.J.S.A. 17:9A-316 (https://www.nj.gov/dobi/index.html ), which highlights significant gaps in the Plaintiff's legal standing to bring this lawsuit in Camden Vicinage.

## II.

This motion is timely, as the judgment was entered less than 90 days ago. According to Rule 4:50-2, a motion must be made within a reasonable time and, for the reasons outlined in (a), (b), and (c) of Rule 4:50-1, must be filed no more than one year after the judgment, order, or proceeding was entered or taken. Defendant Ali Atshan attempted to represent himself with his daughter's assistance, as he could not afford an attorney after defending two similar collection lawsuits in Virginia and Florida. When the FBI and the United States Attorney's Office recommended that he seek legal services from his local legal aid, he promptly applied for services from Northeast New Jersey Legal Services, Inc. Certification of Ali Atshan ¶¶ 30-36.

Memorandum of Law Page -6

## CONCLUSION

For the foregoing reasons, Defendant Ali Atshan respectfully requests that the judgment entered against him on December 16, 2025, be vacated and this case transferred to the Hudson Vicinage where the defendant resides.

Respectfully Submitted,

*John Ukegbu*

Dated: February 13, 2026

John Ukegbu, Esq.
Northeast New Jersey Legal Services, Inc.
Attorneys for Defendant Ali Atshan

Cc: Robert L. Saldutti, Esq.
    Thomas B. O'Connell, Esq.

Memorandum of Law Page -7

056

CERTIFICATION OF SERVICE

I hereby certify that this motion was served upon all counsel of records by filing this motion electronically via eCourts. I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements by me are willfully false, I am subject to punishment.

*John Ukegbu*

_____

Dated: February 13, 2026                    John Ukegbu, Esq.

CERTIFICATION OF SERVICE- 1

CAM-L-003082-25   02/13/2026 7:59:12 PM   Pg 1 of 6   Trans ID: LCV2026364617

Case 2:26-cv-04496-ES-SDA   Document 2   Filed 04/23/26   Page 58 of 286 PageID: 65

Kerr v. Dillard Store Services, Inc., Not Reported in F.Supp.2d (2009)

105 Fair Empl.Prac.Cas. (BNA) 1298, 92 Empl. Prac. Dec. P 43,483

KeyCite Yellow Flag

Distinguished by   Beattie v. TTEC Healthcare Solutions, Inc.,   D.Colo., April 15, 2019

2009 WL 385863

United States District Court, D. Kansas.

Yolanda G. KERR, Plaintiff,

v.

DILLARD STORE SERVICES, INC., et al., Defendants.

Civil Action No. 07–2604–KHV.

|

Feb. 17, 2009.

West KeySummary

**1**   **Alternative Dispute Resolution**   Writing, signature, and acknowledgment

A department store failed to demonstrate by a preponderance of the evidence that a former employee knowingly and intentionally executed an electronic arbitration agreement and therefore, the purported electronic signature was not attributed to the former employee. The department store did not have adequate procedures to maintain the security of intranet passwords, to restrict authorized access to the screen which permitted electronic execution of the arbitration agreement, to determine whether electronic signatures were genuine or to determine who opened individual e-mails. It was not inconceivable that the secretary or a supervisor logged on to the former employee's account and executed the agreement.

2 Cases that cite this headnote

**Attorneys and Law Firms**

Cheryl A. Pilate, Patrick M. Lewis, Morgan Pilate LLC, Olathe, KS, G. Gordon Atcheson, The Atcheson Law Office, Westwood, KS, for Plaintiff.

Karen Kessler Cain, Lynn S. McCreary, Mark W. Brennan, Bryan Cave LLP, Kansas City, MO, for Defendants.

*MEMORANDUM AND ORDER*

KATHRYN H. VRATIL, District Judge.

**\*1**   Yolanda G. Kerr brings suit against Dillard Store Services, Inc., Construction Developers, Inc. and Dillard's Inc. (hereinafter "Dillard's"). Plaintiff alleges that in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and 42 U.S.C. § 1981, defendants discriminated on the basis of race (Count I) and retaliated because she complained of race discrimination (Count II). On January 29, 2008, defendants filed their *Motion To Dismiss And Compel Arbitration Or, In the Alternative, To Stay Proceedings Pending Arbitration* (Doc. # 5). On May 21, 2008, the Court overruled defendants' motion and ordered a jury trial on the issue whether plaintiff had executed an arbitration agreement. *See Order* (Doc. # 22). On October 13, 2008, plaintiff waived her right to a jury trial and consented to a bench trial on that issue. *See Plaintiff Kerr's Waiver Of Jury Trial* (Doc. # 67). On November 12 and 13, 2008, the Court held a bench trial concerning the existence of an enforceable agreement to arbitrate.[1]   After careful consideration, the Court makes the following findings of fact and conclusions of law, as required by Rule 52(a)(1) of the Federal Rules of Civil Procedure.

*Findings of Fact*

Dillard's Inc. is the owner of Construction Developers, Inc., which owns Dillard Store Services, Inc. Dillard Store Services conducts business as Dillard's Department Store at the Oak Park Mall in Overland Park, Kansas. Dillard Store Services also conducted business at the Mission Center Mall in Mission, Kansas, until that store closed in November of 2005. From March of 2004 until the fall of 2005, plaintiff (a black woman) worked in customer service at the Mission Center store. Plaintiff signed a paper arbitration agreement when she began her employment with Dillard's in 2004, but none of the parties claim that the paper agreement is enforceable. In the fall of 2005, plaintiff transferred to the Oak Park store.

**Kerr v. Dillard Store Services, Inc., Not Reported in F.Supp.2d (2009)**

105 Fair Empl.Prac.Cas. (BNA) 1298, 92 Empl. Prac. Dec. P 43,483

Since 2004, if not before, Dillard's has required job applicants and employees to agree to arbitrate employment disputes. In October of 2005, Dillard's began to require current and new associates to memorialize their arbitration agreements by executing electronic arbitration agreements through an intranet computer system, mydillards.com. The intranet system was available only to Dillard's associates and was the only means whereby an employee could execute an arbitration agreement. To access the intranet each associate had a unique, confidential password that was created by and known only to the associate. Executing the agreement to arbitrate required the associate to (1) enter his or her social security number or associate identification number (AIN); (2) enter his or her secure password and; (3) click the "accept" option at the bottom of the arbitration agreement screen. After the Oak Park store instituted the arbitration policy, store personnel repeatedly asked plaintiff to electronically execute the arbitration agreement. [2] Plaintiff refused to do so because she thought that agreeing to arbitrate had not been a requirement when she was first employed at Dillard's, and she was concerned about "giving up any legal rights." *See* Trial Tr. 407:10–13.

 **\*2** Dillard's instituted various policies and procedures which were aimed at keeping all sensitive intranet information, especially employee passwords, confidential. Supervisors could log in to an associate's account, however, by resetting the associate's confidential password and logging in under the associate's default password. Dillard's System Security Access Policy, which was included in the paper arbitration agreement which plaintiff executed on her first day of employment, prohibited associates from sharing passwords. The paper arbitration agreement admonished employees not to share userids or passwords and further explained: "[p]asswords are an important aspect of computer security. They are the front line of protection for user accounts. Passwords are to be treated as sensitive, confidential information." Dillard's also posted notices on bulletin boards which advised associates to maintain the confidentiality of their passwords.

On April 26, 2006, plaintiff missed a day of work without reporting her absence. Two days later, on April 28, 2006, the store secretary, Shelly Champlin, instructed plaintiff that she needed to work her assigned schedule. [3] When plaintiff claimed that she did not know that she was scheduled to work on April 26, Champlin told plaintiff that she should access her schedule on the mydillards intranet. Plaintiff responded that she did not know how to do so and that she

did not know her password. Shortly thereafter, Champlin accompanied plaintiff to the employee break room to assist her in accessing her schedule on one of three computer kiosks. Champlin reset plaintiff's password to a default password and then stepped away from the keyboard and demonstrated how to access the system. Champlin watched while plaintiff entered her default password to log into her intranet account. Champlin then took control of the computer and navigated through various screens while plaintiff stood next to her at the kiosk. Plaintiff alleges that during this interaction, and without her knowledge, Champlin electronically signed an agreement to arbitrate for plaintiff. Champlin never mentioned an arbitration agreement, however, and plaintiff never saw Champlin execute any such agreement. After the interaction at the computer, plaintiff and Champlin left the employee break room with Champlin following one or two steps behind plaintiff.

According to Dillard's electronic database, plaintiff executed her agreement to arbitrate on April 28, 2006, at 3:26 p.m. Five minutes later, someone opened an email which confirmed plaintiff's execution of the agreement. The email provided as follows:

> Arbitration Agreement
>
> Thank you for electronically signing your arbitration agreement on 2006–04–28, at 3:26:20 PM.
>
> If you deny that you electronically signed your agreement, please respond immediately. To respond, select your e-mail "reply" option.
>
> If you fail to deny that you signed your arbitration agreement, you will be deemed to have agreed and signed it personally by electronic signature.

 **\*3** *See Ex. 435* at DIL0094, entry 604.

Dillard's records indicate that emails on plaintiff's intranet account were opened on only three occasions: February 10, April 28 and August 24, 2006. Plaintiff denies that she opened the email about the arbitration agreement and she never responded to it.

Dillard Store Services terminated plaintiff's employment in March of 2007, allegedly because she called a supervisor a profane name. Following her termination, plaintiff filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). On October 3, 2007, the EEOC issued plaintiff a right to sue letter.

CAM-L-003082-25   02/13/2026 7:59:12 PM   Pg 3 of 6   Trans ID: LCV2026364617

Case 2:26-cv-04496-ES-SDA   Document 2   Filed 04/23/26   Page 60 of 286 PageID: 67

*Kerr v. Dillard Store Services, Inc.*, Not Reported in F.Supp.2d (2009)

105 Fair Empl.Prac.Cas. (BNA) 1298, 92 Empl. Prac. Dec. P 43,483

On December 28, 2007, plaintiff filed with Dillard's Inc. a notice of intent to arbitrate under defendants' alternative dispute resolution procedure. The statement which plaintiff attached to the notice largely mirrors the allegations which she makes in this case. On December 31, 2007, plaintiff filed this action. By letter dated January 11, 2008, the American Arbitration Association acknowledged receipt of the parties' request for arbitration. Defendants seek to stay the litigation pending resolution of the arbitration proceedings.

### Conclusions Of Law

Under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "[a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable...." 9 U. S .C. § 2. Section 3 of the FAA permits the Court to stay litigation in favor of arbitration as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

*Id.* § 3. The FAA establishes a federal policy favoring arbitration agreements and requires that the court rigorously enforce such agreements. *Shearson/Am. Exp., Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The FAA generally applies to employment contracts.

*See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001).

Typically, on a motion to compel arbitration under the FAA, the Court applies a strong presumption in favor of arbitration. *See ARW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir.1995) (FAA evinces strong federal policy in favor of arbitration). Where the parties dispute the existence of a valid and enforceable arbitration agreement, however, this presumption of arbitrability disappears. *Riley Mfg. Co. v. Anchor Glass Container Corp.,* 157 F.3d 775, 779 (10th Cir.1998). The Court may compel arbitration only when satisfied that the making of the agreement is not at issue. *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.,* 362 F.3d 1288, 1290 (10th Cir.2004). Generally, state law principles of contract formation govern whether a valid arbitration agreement exists. *Hardin v. First Cash Fin. Servs., Inc.,* 465 F.3d 470, 475 (10th Cir.2006). Under Kansas law, the question whether the parties have created a binding contract depends on their intent and is a question of fact. *Reimer v. Waldinger Corp.,* 265 Kan. 212, 214, 959 P.2d 914, 916 (1998).

**\*4** Plaintiff argues that she never executed the electronic arbitration agreement and that her purported signature is not valid. She also argues that even if her electronic signature is valid, the agreement violates public policy because it denies her various discovery tools which are available under the Federal Rules of Civil Procedure.

### I. Existence Of Electronic Arbitration Agreement

Plaintiff claims that she did not knowingly execute the electronic arbitration agreement and that it is therefore invalid.

In seeking to compel arbitration, defendants bear the burden to present evidence sufficient to demonstrate an enforceable agreement to arbitrate. *SmartText Corp. v. Interland, Inc.,* 296 F.Supp.2d 1257, 1263 (D.Kan.2003). When parties dispute the making of an agreement to arbitrate, a trial is necessary if the material facts are disputed. *Avedon Engineering, Inc. v. Seatex,* 126 F.3d 1279, 1283 (10th Cir.1997).

Kansas law defines an electronic signature as "an electronic sound, symbol or process attached to or logically associated

**Kerr v. Dillard Store Services, Inc., Not Reported in F.Supp.2d (2009)**

105 Fair Empl.Prac.Cas. (BNA) 1298, 92 Empl. Prac. Dec. P 43,483

with a record and executed or adopted by a person with the intent to sign the record." K.S.A. § 16–1602(i). An electronic signature is legally recognized, K.S.A. § 16–1607(a), and may be attributed to plaintiff as her own act through circumstantial evidence "including a showing of the efficacy of any security procedure applied to determine the person to which the ... electronic signature was attributable," *id.* § 16–1609(a). Further, the effect of an electronic signature is determined from the context and surrounding circumstances at the time of its execution, including the parties' agreement. *Id.* § 16–1609(b). A party cannot void a contract by claiming to be ignorant of its contents. ⚑ *Flight Concepts Ltd. P'ship v. Boeing Co.,* 38 F.3d 1152, 1157 (10th Cir.1994).

Defendants have not demonstrated by a preponderance of the evidence that plaintiff knowingly and intentionally executed an arbitration agreement. The Court is not suggesting that Champlin executed plaintiff's electronic agreement, either fraudulently or by mistake. It is difficult to believe that Champlin would have fraudulently executed the agreement with plaintiff standing at her elbow, and the record suggests no credible reason why she would have done so. In fact, during her interaction with Champlin, plaintiff may have executed the agreement intentionally or by mistake, by clicking the "accept" button. By her own admission, plaintiff was not paying attention. Trial Tr. 354:4–8 and 19–21. At the same time, it is hard to believe that after steadfastly refusing to execute the arbitration agreement for five or six months, plaintiff spontaneously reversed her decision while she was standing with Champlin at the computer kiosk on April 28. The record contains no evidence that Champlin or plaintiff clicked the "accept" button by mistake and thus inadvertently executed the arbitration agreement, or that either of them opened or read the email which arrived several minutes later. The Court therefore declines to attribute the purported electronic signature to plaintiff.

**\*5** The problem with Dillard's position is that it did not have adequate procedures to maintain the security of intranet passwords, to restrict authorized access to the screen which permitted electronic execution of the arbitration agreement, to determine whether electronic signatures were genuine or to determine who opened individual emails. While the record establishes that Champlin and plaintiff were at the kiosk on April 28, it does not show that they were there at precisely 3:26:20 p.m. Therefore, it is not inconceivable Champlin or a supervisor logged on to plaintiff's account and executed the agreement. The Court recognizes that defendants' burden of proof is not absolute certainty, but merely a preponderance of

the evidence. At the same time, Dillard's has not demonstrated the efficacy of its security procedures with regard to electronic signatures. Therefore, its version of events is no more likely true than plaintiff's. For these reasons, this case basically turns on the burden of proof. Dillard's has the burden of proof and its evidence that plaintiff executed the arbitration agreement is not persuasive. On this record, the Court cannot find that it is more likely than not true that plaintiff executed the electronic agreement to arbitrate.

**II. Enforceability Of Electronic Arbitration Agreement**

Plaintiff asserts that even if her electronic signature is valid, the agreement to arbitrate claims is unenforceable as a matter of public policy with respect to federal claims based on violations of antidiscrimination statutes. *See Plaintiff's Proposed Findings Of Fact And Conclusions Of Law* (Doc. # 97) at 14, filed December 16, 2008. Plaintiff claims that the electronic arbitration agreement reserves to the arbitrator unlimited discretion to allow or deny discovery and therefore denies plaintiff rights available under Rule 26, Fed.R.Civ.P.

Section 10, 9 U.S.C., governs the enforceability of an arbitration award and provides that, "the United States court in and for the district wherein [an arbitration] award was made may make an order vacating the award upon the application of any party to the arbitration ... where the arbitrators were guilty of misconduct ... in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." Generally, arbitration proceedings are not constrained by formal rules of procedure or evidence. ⚑ *Robbins v. Day,* 954 F.2d 679, 685 (11th Cir.1992). Further, where an arbitration agreement limits the scope of discovery which would otherwise be available under the Federal Rules of Civil Procedure, this limitation does not violate public policy merely because the agreement does not require all discovery tools available under Rule 26, Fed.R.Civ.P. ⚑ *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 31, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (limited discovery permissible because age discrimination claims did not require more extensive discovery than other claims found to be arbitrable); *see also* ⚑ *Sobol v. Kidder, Peabody & Co., Inc.,* 49 F.Supp.2d 208, 223 (S.D.N.Y.,1999) (limited scope of pre-arbitration discovery did not warrant vacating arbitration decision in employment discrimination claim).

Kerr v. Dillard Store Services, Inc., Not Reported in F.Supp.2d (2009)

105 Fair Empl.Prac.Cas. (BNA) 1298, 92 Empl. Prac. Dec. P 43,483

**\*6**   Dillard's agreement to arbitrate includes the following provision concerning pre-hearing discovery:

You and the Company can require each other to:

• Provide relevant documents.

• Answer questions.

•  Ensure the attendance of and ask questions of witnesses (including any expert witnesses) under oath at depositions.

You and the Company are each entitled to know who the other witnesses will be and to see all relevant documents before the arbitration hearing. Before the hearing, the arbitrator will require you and the Company to submit to each other in writing (by the dates selected by the arbitrator) the names and addresses of any witnesses to be called, documents to be presented and a list of all exhibits to be used at the hearing.

The arbitrator may decide the form, amount and frequency of discovery permitted before the hearing, giving due consideration to:

• The proof requirements imposed by the law on the party making the claim or defense.

• Both your and the Company's desire for a quick and cost-effective alternative to courtroom litigation.

• Any other factors the arbitrator believes are appropriate.

Pre-hearing discovery may take any form allowed by the Federal Rules of Civil Procedure, subject to any restrictions the arbitrator imposes to meet the objectives of the arbitration process.

*See Ex. 400* at 4–5.

While the pre-hearing discovery provision does permit the arbitrator to potentially limit the scope of discovery, plaintiff's contention that she will be denied the "tools necessary to obtain evidence essential to proving a claim of racial discrimination" is unfounded. Nothing in the pre-hearing discovery provision creates a per se limitation on the discovery tools available to the parties prior to arbitration. The provision provides all forms of discovery allowable under the Federal Rules of Civil Procedure and does not expressly limit any type of discovery. The mere fact that the arbitrator reserves the right to tailor discovery to serve the purposes of arbitration does not in any way offend public policy. The same is essentially true with regard to judges in federal lawsuits. Further, plaintiff cites no precedent that race discrimination claims are entitled to a heightened opportunity for discovery during the arbitration process. Considering all these factors, the Court finds that the arbitration agreement does not offend public policy and would be enforceable against plaintiff if Dillard's had presented persuasive evidence that she executed it.

**IT IS THEREFORE ORDERED** that defendants' *Motion To Dismiss And Compel Arbitration Or, In the Alternative, To Stay Proceedings Pending Arbitration* (Doc. # 5) filed January 29, 2008 be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that plaintiff's *Motion To Bring Essential Facts To Court's Attention* (Doc. # 89) filed November 14, 2008, be and hereby is **OVERRULED.**

**IT IS FURTHER ORDERED** that plaintiff's *Unopposed Motion To File Out Of Time By One Half Day Plaintiff's Proposed Findings of Fact and Conclusions of Law* (Doc. # 98) filed December 16, 2008, be and hereby is **GRANTED.**

**\*7**  **IT IS FURTHER ORDERED** that *Plaintiff's Request For Closing Argument In Bench Trial* (Doc. # 100) filed January 16, 2008, be and hereby is **OVERRULED.**

**All Citations**

Not Reported in F.Supp.2d, 2009 WL 385863, 105 Fair Empl.Prac.Cas. (BNA) 1298, 92 Empl. Prac. Dec. P 43,483

---

**Footnotes**

1       Plaintiff seeks leave to file out of time her proposed findings of fact and conclusions of law. *See Unopposed Motion To File Out Of Time By One Half Day Plaintiff's Proposed Findings of Fact and Conclusions of Law*

(Doc. # 98) filed December 16, 2008. Rule 6(b)(1)(B), Fed.R.Civ.P., provides that "[w]hen an act may or must be done within a specified time, the court may for good cause shown, extend the time ... on motion made after the time has expired if the party failed to act because of excusable neglect." In determining whether neglect is "excusable," in addition to all other relevant circumstances surrounding a party's omission, the following specific factors must be considered: (1) the danger of prejudice to the non-moving party; (2) the length of the delay and its impact on the proceedings; (3) the reason for the delay, including whether it was under the control of the movant; and (4) whether the movant acted in good faith. *Lewis v. Sprint Nextel,* No. 08–2458–JAR, 2008 WL 5263782, at *1 (D.Kan.2008) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)).

Here, the length of plaintiff's delay was less than 24 hours and it did not prejudice defendants in any way. In addition, plaintiff was acting in good faith and had unforeseen computer problems which arose during her attempt to timely file her proposed findings of fact and conclusions of law. Therefore the Court finds that plaintiff's failure resulted from excusable neglect and grants plaintiff's motion.

2      Plaintiff claims that Shelly Champlin, a store secretary at the Oak Park store, harassed her and repeatedly told her that she would be fired if she did not sign the arbitration agreement. The Court is not convinced that Champlin harassed plaintiff, but several employees did tell plaintiff that she needed to sign the arbitration agreement and that continued employment was contingent on her execution of the agreement.

3      Plaintiff seeks leave of court to have a portion of Champlin's deposition testimony, which was not introduced at trial, included in the record. *See Motion To Bring Essential Facts To Court's Attention* (Doc. # 89) filed November 14, 2008. Plaintiff offers this testimony to establish that Champlin and plaintiff interacted on April 28, 2006, at which time Champlin helped plaintiff access her schedule on a computer kiosk in the employee break room. The Court overrules this motion as moot. The evidence at trial established that this interaction occurred on April 28, 2006, following plaintiff's absence from work on April 26, 2006. *See* Defendant's Ex. 453; *see also* Trial Tr. 279:5–8. The evidence from Champlin's deposition testimony is cumulative.

In addition, the Court also overrules *Plaintiff's Request For Closing Argument In Bench* Trial (Doc. # 100) filed January 16, 2008. The Court believes that any presentation of evidence at this point would be cumulative as both parties have had the opportunity to present their proposed findings of fact and conclusions of law, and to present oral argument.

---

**End of Document**                                   © 2026 Thomson Reuters. No claim to original U.S. Government Works.

---

**WESTLAW**   © 2026 Thomson Reuters. No claim to original U.S. Government Works.                          6

064

John Ukegbu, Esq.---005771991
Northeast New Jersey Legal Services, Inc.
574 Summit Avenue
Jersey City, New Jersey 07306-2797
(201) 792-6363 Ext. 3243
Attorneys for Defendant/Third-Party Plaintiff Ali Atshan

| | |
|---|---|
| GULF COAST BANK & TRUST CO., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-CAMDEN COUNTY |
| Plaintiff, | |
| vs. | DOCKET NO.: CAM-L-003082-25 |
| PRESTIGE INFUSIONS LLC AND ALI ATSHAN, | CIVIL ACTION |
| Defendants/Third-Party Plaintiff, | |
| vs. | |
| SANTANDER BANK, N.A., HUMZA KHAN, AREEBA KHAN, AYSHA KHAN, ADBUALLAH ALAQRABAWI, SYED HASSAN, IQRA KHAN, MBF AUTO LLC DOING BUSINESS AS MERCEDES-BENZ OF CALDWELL, DOES 1-10 AND ABC CORPORATIONS 1-10. | ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT WITH DEMAND FOR TRIAL BY JURY |
| Third-Party Defendants. | |

Defendant Ali Atshan whose address is 1210 91st Street, North Bergen, New Jersey, by way of answer to the complaint, says that:

## ANSWER

### FIRST COUNT

1. Denied.

2. Defendant is without knowledge or information sufficient to form a belief as to the truth

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 1

of the allegations contained in paragraph 2 and, on that basis, denies the same.

3. Denied.

4. Denied.

5. Denied.

SECOND COUNT

6. Denied.

7. Denied.

8. Denied.

9. Denied.

10. Denied.

THIRD COUNT

11. Denied as to the Defendant agreeing to pay Plaintiff's attorneys' fees.

12. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 and, on that basis, denies the same.

**AFFIRMATIVE DEFENSES**

13. Plaintiff's claim is a product of fraud.

14. Plaintiff has no standing to bring this claim.

15. Plaintiff has failed to state a claim upon which relief can be granted.

16. N.J.S.A. 2A:25-1 subjects Plaintiff to all claims and defenses that Defendant may have against the original creditor.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 2

066

## STATEMENT OF FACTS

17. Defendant Ali Atshan (hereinafter "Defendant" or "Mr. Atshan") is a natural person who resides in North Bergen, Hudson County, New Jersey.

18. Plaintiff Gulf Coast Bank & Trust Co., is a Louisiana State Chartered Bank established on June 8, 1990, with its principal place of business located at 200 Saint Charles Avenue, New Orleans, Louisiana. https://ofi.la.gov/depository/banks/bank-websites/  (last visited 02/09/2026).

19. Plaintiff Gulf Coast Bank & Trust Co., is insured by the Federal Deposit Insurance Corporation (hereinafter "FDIC"). https://www.gulfbank.com/ (last visited 02/09/2026).

20. Plaintiff Gulf Coast Bank & Trust Co., (hereinafter "Plaintiff" or "Gulf Coast") has locations in Louisiana, Alabama, Arizonia, Florida, Minnesota, Tennessee, and Texas, however, it has no location in New Jersey. (Exhibit 012).

21. The Plaintiff is not registered with the New Jersey Department of Banking and Insurance (hereinafter "NJDOBI") as a bank, consumer lender, or sales finance company. https://www.nj.gov/dobi/division_banking/index.htm (last visited 02/09/2026).

22. Third-Party Defendant Santander Bank, N.A., (hereinafter "Santander") is a national bank with its primary regulator being the Comptroller of the Currency and the address of the corporate headquarters at 824 North Market Street, Suite 100, Wilmington, Delaware. https://banks.data.fdic.gov/bankfindsuite/bankfind?activeStatus=0%20OR%201&branchOffices=true&name=Santander%20Bank%2C%20N.A.&pageNumber=1&resultLimit=25&searchPush=true (last visited 02/09/2026).

23. Third-Party Defendant Santander is the original creditor of the alleged debt assigned to

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 3

Gulf Coast and that undergirds this collection action.

24. Defendant Prestige Infusions LLC is a New Jersey limited liability company with its main business address as 116 Boonton Avenue, Kinnelon, New Jersey. (Exhibit 019).

25.  Third-Party Defendants Areeba Khan, Aysha Khan, Abduallah Alaqrabawi, and Iqra Khan are either registered agents, members, managers, or authorized representatives of Defendant Prestige Infusions LLC. (Exhibit 019).

26. Third-Party Defendant Humza Khan and Syed Hassan are either registered agents, members or managers of Prestige Infusions Mobile LLC. (Exhibit 026).

27. Third-Party Defendant Prestige Infusions Mobile LLC is a New Jersey limited liability company with its main business address at 19 Amira Lane, Kinnelon, New Jersey. (Exhibit 019).

28. Defendant/Third-Party Plaintiff Ali Atshan has identified Third-Party Defendants Aysha Khan, Areeba Khan, and Humza Khan as amongst those individuals who stole his personal identifying information (hereinafter "PII") and misused it for their personal gain. (Exhibit 002).

29. Third-Party Defendant MBF Auto LLC D/B/A Mercedes-Benz of Caldwell is a New Jersey licensed motor vehicle seller and a Florida limited liability company with its principal place of business at 1230 Bloomfield Avenue, Fairfield, New Jersey. https://www-dobi.nj.gov/DOBI_LicSearch/bnkLicenseeSearchServlet (lasted visited 02/09/2026).

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 4

068

30. Does 1-10, is a fictitious name, the party or parties intended being one or more persons whose identities are presently unknown but will be ascertained during the course of pre-trial discovery.

31. ABC Corporations 1-10, is a fictitious corporate entity, the entity or entities intended being one or more corporate entities whose identities are presently unknown but will be ascertained during the course of pre-trial discovery.

32. The United States has filed a two-count criminal complaint against Third-Party Defendant Humza Khan, charging wire fraud in violation of 18 U.S.C. § 1343 and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), (Case No. 2:25-MJ-15086-SDA (Exhibits 031–036)).

33. More importantly, the United States has identified Mr. Atshan as a victim of Humza Khan's criminal conduct, specifically the unauthorized use of his personally identifying information to perpetrate a fraudulent scheme against companies without his knowledge or consent (Exhibit 033).

34.  The Promissory Note, Security Agreement, and Guaranty that the Plaintiff relies upon is devoid of a DocuSign "Certificate of Completion" or any corresponding audit trial.

35. There is no evidence of an email address used for delivery, nor any timestamped log demonstrating the documents were ever transmitted to or signed by Mr. Atshan.

36. The absence of biometric or digital metadata demonstrates the documents' fraudulent nature.

37. It is consistent with the pattern of fraud that the North Bergen Police Department and the FBI has identified as Humza Khan's modus operandi. (Exhibits 009, 035).

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 5

## FIRST COUNT OF THE COUNTERCLAIM

## <u>DECLARATORY JUDGMENT</u>

38. Defendant realleges and incorporates herein the allegations of all the preceding and following paragraphs.

39. Defendant seeks relief under the Declaratory Judgment Act, <u>N.J.S.A.</u> 2A:16-50 to-62.

40. The Act allows parties to sue for a judicial declaration to adjudicate and settle the rights and obligations of the parties.

41. Defendant seeks a declaration that the Promissory Note, Security Agreement, and Guaranty are null and void because the alleged electronic signature is fraudulent.

WHEREFORE, Defendant demands judgment against Plaintiff:

    A.  Declaring the Promissory Note, Security Agreement, and Guaranty null and void because the electronic signature is fraudulent;

    B.  Awarding reasonable attorney's fees, and the cost incurred in the pursuit of this action; and

    C.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

## SECOND COUNT OF THE COUNTERCLAIM

## <u>CONSUMER FRAUD ACT</u>

42. Defendant realleges and incorporates herein the allegations of all the preceding and following paragraphs.

43. Plaintiff is a person as defined by <u>N.J. S. A.</u> 56:8-1 (d).

44. Defendant is a person as defined by <u>N.J. S. A.</u> 56:8-1 (d).

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 6

45. The transaction that is the subject of this lawsuit involves a sale as defined by N.J.S.A. 56:8-1 (e).

46. The sale involved merchandise as defined by N.J.S.A. 56:8-1 (c).

47. The Consumer Fraud Act applies to all the parties that employ deception, fraud, pretenses, false promises, misrepresentations, or knowing concealment, suppression, or omission, in connection with the sale of any merchandise. N.J.S.A. 56:8-2.

48. The commercial practices of Plaintiff in this consumer transaction were deceptive, fraudulent, and unconscionable.

49. Plaintiff knew or should have known that the signatures on the Promissory Note, Security Agreement, and Guaranty were fraudulent since there is no evidence of an email address used for delivery, nor any timestamped log demonstrating that the documents were transmitted to or electronically signed by Mr. Atshan.

50. Plaintiff has no record of a DocuSign "Certificate of Completion" or any corresponding audit trail.

51. Plaintiff has failed to demonstrate any compliance with the Electronic Signatures in Global and National Commerce Act (hereinafter "ESIGN"), 15 U.S.C. §§ 7001-7031 and the Uniform Electronic Transactions Act (hereinafter "UETA"), N.J.S.A. 12A:12-1 to-26.

52. Plaintiff knew or should have known that Mr. Atshan has no ownership interest in Prestige Solutions LLC and is nowhere mentioned in the company's formation or management structure.

53. The unlawful commercial practices of Plaintiff in this consumer transaction were deceptive, fraudulent, and unconscionable.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 7

54. Plaintiff's acts and omissions were intentional, deceptive, and unconscionable commercial practices under the CFA.

55. The unlawful commercial practices of Plaintiff in this consumer transaction caused Defendant to suffer ascertainable losses.

WHEREFORE, Defendant demands judgment against Plaintiff:

    A.  Awarding actual damages;

    B.  Awarding consequential damages;

    C.  Awarding treble damages pursuant to N.J.S.A. 56:8-19;

    D.  Awarding reasonable attorney's fees and the cost incurred pursuant to N.J.S.A. 56:8-19; and

    E.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

## THIRD COUNT OF THE COUNTERCLAIM

## COMMON LAW FRAUD

56. Defendant realleges and incorporates herein the allegations of all the preceding and following paragraphs.

57. Plaintiff's conduct constitutes fraud through (a) misrepresentation; (b) concealment; and (c) falsification of the Defendant's electronic signatures.

58. Specifically, Plaintiff willfully and wantonly failed to conduct any kind of due diligence to determine whether Mr. Atshan had any ownership or management interest in Prestige Solutions LLC.

59. Plaintiff willfully and wantonly ignored that that the signatures on the Promissory Note,

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 8

Security Agreement, and Guaranty were fraudulent since there is no evidence of an email address used for delivery, nor any timestamped log demonstrating that the documents were transmitted to or electronically signed by Mr. Atshan.

60. In obtaining the judgment against Mr. Atshan, Plaintiff deliberately failed to submit a DocuSign "Certificate of Completion" or any corresponding audit trial because Plaintiff knew the electronic signature was fraudulent.

WHEREFORE, Defendant demands judgment against Plaintiff:

    A.  Awarding actual damages;

    B.  Awarding consequential damages;

    C.  Awarding Punitive damages; and

    D.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

**FIRST COUNT OF THE THIRD-PARTY COMPLAINT**

**<u>THEFT OF IDENTITY AND IMPERSONATION</u>**

61. Third-Party Plaintiff realleges and incorporates herein the allegations of all the preceding and following paragraphs.

62. <u>N.J.S.A.</u> 2C:21-17(a)(1) provides that a person commits identity theft by impersonating another or assuming a false identity for the purpose of obtaining a benefit or defrauding another.

63. Third-Party Defendants Aysha Khan, Areeba Khan, and Humza Khan misappropriated Third-Party Plaintiff Ali Atshan's personal identifying information (hereinafter "PII").

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 9

64. They impersonated him and assumed his identity to defraud others, including the alleged original creditor in this lawsuit, Third-Party Defendant Santander Bank.

65. Third-Party Defendant Santander Bank accepted the fraudulent documents in this case despite the irregularities in the electronic signature audit trial.

66. Third-Party Plaintiff Ali Atshan has suffered an ascertainable loss, including out-of-pocket expenses and emotional distress, directly caused by the unlawful conduct of the Third-Party Defendants.

WHEREFORE, Third-Party Plaintiff demands judgment against Third-Party Defendants Aysha Khan, Areeba Khan, and Humza Khan:

    A.  Awarding actual damages;

    B.  Awarding consequential damages;

    C.  Awarding treble damages pursuant to N.J.S.A. 2C:21-17.4(a);

    D.  Reasonable attorney's fees and costs pursuant to N.J.S.A. 2C:21-17.4(a); and

    E.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

**SECOND COUNT OF THE THIRD-PARTY COMPLAINT**

**NEGLIGENT ENABLEMENT OF FRAUD**

67. Third-Party Plaintiff realleges and incorporates herein the allegations of all the preceding and following paragraphs.

68. Third-Party Defendants Santander Bank and Mercedes-Benz of Caldwell owed a duty to exercise reasonable care in verifying the identity of the purchaser and the borrower in connection with the subject motor vehicle transaction and related financing.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 10

69. The transaction at issue was purportedly executed through electronic signatures on a Promissory Note, Security Agreement, and Guaranty, and related financing documents.

70. Given the use of electronic signatures and remote processing, Third-Party Defendants had a heightened duty to implement commercially reasonable identity-verification procedures, including but not limited to verifying government-issued identification, confirming biometric or multi-factor authentication data, cross-checking identifying information, and ensuring that the individual executing the documents was in fact the true purchaser/borrower.

71. Third-Party Defendants failed to employ reasonable verification safeguards and failed to confirm that the individual electronically executing the documents was Mr. Atshan.

72. The transaction was processed and funded without adequate authentication protocols, without meaningful review of identity discrepancies, and without compliance with industry standards designed to prevent identity theft and electronic fraud.

73. As a direct and proximate result of Third-Party Defendants' failure to verify the purchaser's identity, a third party was able to fraudulently obtain financing and possession of the vehicle using Mr. Atshan's identity.

74. Third-Party Defendants' conduct substantially assisted and enabled the fraudulent scheme by providing the instrumentalities—financing approval, documentation, and transfer of the vehicle—without reasonable safeguards.

75. The harm suffered by Mr. Atshan, including financial damage, reputational harm, credit impairment, and related losses, was a foreseeable consequence of Third-Party Defendants' failure to implement and follow adequate identity-verification procedures.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 11

76. Third-Party Defendants' acts and omissions constitute negligence and/or negligent facilitation of fraud and were a substantial factor in causing Mr. Atshan's damages.

WHEREFORE, Third-Party Plaintiff demands judgment against Third-Party Defendants Santander Bank, and Mercedes-Benz of Caldwell:

    A.  Awarding actual damages;

    B.  Awarding consequential damages; and

    C.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

## THIRD COUNT OF THE THIRD-PARTY COMPLAINT

### AIDING AND ABETTING FRAUD

77. Third-Party Plaintiff realleges and incorporates herein the allegations of all the preceding and following paragraphs.

78. A third party committed a fraud by knowingly misrepresenting his identity as Mr. Atshan in order to purchase and finance the motor vehicle from Mercedes-Benz of Caldwell, including executing financing and sale documents through unauthorized electronic signatures.

79. The third party's conduct constitutes common law fraud under New Jersey law in that it involved material misrepresentations of identity, knowledge of falsity, intent that Third-Party Defendants rely upon the misrepresentations, actual reliance, and resulting damages.

80. A party is liable for aiding and abetting when:

(a) a wrongful act has been committed;

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 12

(b) the defendant had knowledge of the wrongful act; and

(c) the defendant knowingly and substantially assisted in the commission of the wrongful act.

81. Third-Party Defendants had knowledge, or were willfully blind to obvious indicators, that the transaction presented clear and significant red flags of identity fraud, including but not limited to irregularities in identifying information, discrepancies in documentation, and the use of electronic signatures without adequate identity authentication procedures.

82. The circumstances surrounding the transaction were sufficiently suspicious that Defendants' continued processing and approval of the transaction constituted knowing participation rather than mere negligence.

83. Despite such knowledge, Defendants knowingly and substantially assisted the fraud by:

(a) Accepting and approving electronically signed financing documents without commercially reasonable authentication safeguards;

(b) Failing to verify government-issued identification or confirm the true identity of the purported purchaser;

(c) Funding the loan and/or transferring possession of the vehicle; and

(d) Providing the instrumentalities necessary to complete the fraudulent transaction.

84. Third-Party Defendants' substantial assistance was a proximate cause of Mr. Atshan's damages, including financial loss, credit impairment, reputational harm, and other consequential damages.

85. As a direct and proximate result of Third-Party Defendants' knowing and/or reckless assistance of the fraud, Mr. Atshan has suffered damages, including but not limited to

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 13

financial loss, credit impairment, reputational harm, emotional distress, and other consequential damages.

86. Third-Party Defendants' conduct was undertaken with reckless indifference to the rights of Mr. Atshan and supports an award of punitive damages under New Jersey law.

WHEREFORE, Third-Party Plaintiff demands judgment against Third-Party Defendants Santander Bank, and Mercedes-Benz of Caldwell:

    A. Awarding actual damages;

    B. Awarding consequential damages;

    C. Punitive damages; and

    D. Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

**FOURTH COUNT OF THE THIRD-PARTY COMPLAINT**

**NEW JERSEY RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**

87. Third-Party Plaintiff realleges and incorporates herein the allegations of all the preceding and following paragraphs.

88. The New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJ RICO"), N.J.S.A. 2C:41-1 to-6.2, provides a civil cause of action to any person injured in his business or property by reason of a violation of N.J.S.A. 2C:41-2.

89. At all relevant times, the Third-Party Individual Defendants (the "RICO Defendants") were persons within the meaning of N.J.S.A. 2C:41-1(a).

90. The RICO Defendants associated together for the common purpose of unlawfully obtaining financing, and/or other property by means of identity theft, fraud, and

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 14

deception.

91. The RICO Defendants constituted an "enterprise" as defined by N.J.S.A. 2C:41-1(c), consisting of an association-in-fact engaged in a course of conduct with a shared purpose, relationships among those associated with the enterprise, and sufficient longevity to pursue the enterprise's objectives.

92. The RICO Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity in violation of N.J.S.A. 2C:41-2(c).

93. The predicate acts of racketeering activity included, but were not limited to:

(a) Identity theft, N.J.S.A. 2C:21-17;

(b) Theft by deception, N.J.S.A. 2C:20-4;

(c) Forgery, N.J.S.A. 2C:21-1;

(d) Falsifying or tampering with records; and/or

(e) Other indictable offenses constituting racketeering activity under N.J.S.A. 2C:41-1(a).

94. The RICO Defendants knowingly and unlawfully used Third-Party Plaintiff's personal identifying information—including but not limited to his name, date of birth, Social Security number, and/or other identifying data—without authorization in order to obtain financing and/or purchase the subject motor vehicle.

95. The racketeering acts were related to one another, shared a common purpose, involved the same victim (Third-Party Plaintiff), and were not isolated events, thereby constituting a "pattern of racketeering activity" under N.J.S.A. 2C:41-1(d).

96. The RICO Defendants' conduct was continuous and posed a threat of ongoing criminal

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 15

activity.

97. As a direct and proximate result of the RICO Defendants' violations of N.J.S.A. 2C:41-2, Third-Party Plaintiff suffered injury to his person and property, including but not limited to financial loss, damage to credit, reputational harm, costs incurred to remediate the identity theft, and other consequential damages.

98. Pursuant to N.J.S.A. 2C:41-4(c), Third-Party Plaintiff is entitled to recover treble damages, costs of suit, and reasonable attorney's fees.

WHEREFORE, Third-Party Plaintiff demands judgment against Third-Party Defendants Humza Khan, Areeba Khan, Aysha Khan, Adbuallah Alaqrabawi, Syed Hassan, and Iqra Khan:

      A.  Awarding actual damages;

      B.  Awarding consequential damages;

      C.  Punitive damages;

      D.  Reasonable attorney's fees and costs pursuant to N.J.S.A. 2C:41-4(c); and

      E.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

### DEMAND FOR JURY TRIAL

Defendant/Third-Party Plaintiff demands a trial of this action by jury.

### DEMAND FOR DOCUMENTS PURSUANT TO R. 4:18-2

Within five (5) days, you shall furnish the undersigned with a copy of each paper referred to in the complaint. Specifically, documents showing that the Defendant is indebted to Plaintiff. If Plaintiff is suing on an account, it should provide a copy of the application with the Defendant's signature and the last 12 monthly billing statement.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 16

## NOTICE REGARDING THE PRESERVATION OF ELECTRONICALLY STORED INFORMATION

Plaintiff and Third-Party Defendants have a duty to preserve evidence relevant to this action even without a court order. Since electronically stored information (hereinafter "ESI") may be an irreplaceable source of discovery in this matter, it is your duty to preserve all potentially relevant ESI.  Consistent with that duty all ESI should be preserved and maintained in native format. 1) ESI from shared networks including ESI archived in the cloud, zip, or external drives. 2) ESI from personal networks including ESI archived in the cloud, zip, or external drives. 3) ESI from handheld devices, emails/attachments (live and archived), SMS/MMS text messages, and messaging apps like WhatsApp and Telegram. 4) ESI from social media like Facebook, Snapchat, Instagram, Tik-Tok, and Twitter. 5) ESI from portable electronic devices like smartphones, external storage devices like CDs, DVDs, external hard drives and flash drives, personal fitness devices, smart home devices and the Internet of Things (hereinafter "IoT"). 7) The metadata for the items cited hereinabove should be preserved and not altered deleted and/or over-written.

Northeast New Jersey Legal Services, Inc.
Attorneys for Defendant/Third-Party Plaintiff

*John Ukegbu*

_____

Dated: February 13, 2026                John Ukegbu, Esq

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 17

## **CERTIFICATION**

I certify that a copy of the within Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint with Demand for Trial by Jury was served within the time prescribed by the rules of this court by filing same via eCourts.  I further certify that the matter in controversy is not the subject of any other court proceeding or arbitration and that to the best of my knowledge and belief, no other parties other than those listed on the caption need be joined at this time and no other proceedings are contemplated at this time.

I certify that all confidential personal identifiers have been redacted from all documents submitted to the court and that subsequent documents submitted to the court will not contain confidential personal identifiers per R. 1:38-7 (b).

Northeast New Jersey Legal Services, Inc.
Attorneys for Defendant/Third-Party Plaintiff

*John Ukegbu*

Dated: February 13, 2026          John Ukegbu, Esq.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 18

082

John Ukegbu, Esq.---005771991
Northeast New Jersey Legal Services, Inc.
574 Summit Avenue
Jersey City, New Jersey 07306-2797
(201) 792-6363 Ext. 3243
Attorneys for Defendant Ali Atshan

| | |
|---|---|
| GULF COAST BANK & TRUST CO., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-CAMDEN COUNTY |
| Plaintiff, | |
| vs. | DOCKET NO.: CAM-L-003082-25 |
| PRESTIGE INFUSIONS LLC AND ALI ATSHAN, | CIVIL ACTION |
| Defendants. | CERTIFICATION OF ALI ATSHAN |

I, Ali Atshan, certify that the following is true to the best of my knowledge and belief:

1.      I am the Defendant in the above-captioned collection action concerning an alleged unpaid debt to Gulf Coast Bank & Trust Company, which I did not incur.

2.      I have personal knowledge of the facts set forth in this Certification.

3.      I am a 74-year-old Social Security recipient who works part-time as a maintenance personnel for the Hudson County Parks Department at James J. Braddock Park in North Bergen, Hudson County.

4.      My household consists of my wife and me, and she has a medical condition that requires my care whenever I am not working.

5.      My wife's sole source of income is SSI due to her medical condition.

6.      When I am working, other family members care for my wife.

7.      I first became aware of Gulf Coast Bank & Trust Company when I received the summons and complaint.

CERTIFICATION OF ALI ATSHAN- 1

083

8.  I have never had any dealings with Gulf Coast Bank & Trust Company.

9.  I have no ownership interest in Prestige Infusion LLC.

10.  I have never been an owner, officer, director, member, manager, agent, or employee of Prestige Infusion LLC.

11.  I have no involvement whatsoever with Prestige Infusion LLC.

12.  I never executed or authorized the execution of the purported agreement between Prestige Infusion LLC and Santander Bank, the alleged original creditor.

13.  I did not receive any of the alleged funds, either personally or through Prestige Infusion LLC.

14.  The purported agreements underlying this litigation appears to have been electronically signed through the DocuSign platform.

15.  I never received any emails or DocuSign requests to execute documents from Santander Bank.

16.  The documents at issue—the alleged Promissory Note, Security Agreement, and Guaranty—lack a designated email address or audit trail indicating where they were sent for electronic signature.

17.  I maintain that I am not, and have never been, an owner, member, officer, or agent of Prestige Infusion LLC.

18.  Consequently, I did not—and could not—authorize the purported agreements between that entity and Santander Bank.

19.  I state again, under no circumstances did I receive the funds at issue in this litigation, whether in my personal capacity or through Prestige Infusion LLC.

20.  As established by the attached Exhibits, I am a victim of identity theft. I did not

CERTIFICATION OF ALI ATSHAN- 2

084

authorize the creation of these documents, nor did I have any knowledge of the underlying transactions.

21.    I believe that in 2020, my daughter-in-law's siblings misappropriated my Personal Identifying Information (PII). Without my knowledge or consent, they used my identity to incorporate businesses, open financial accounts, and obtain the loans or extensions of credit that are the subject of this litigation

22.    As further evidenced by the attached Exhibits, I was previously sued in 2023 in the Commonwealth of Virginia and the State of Florida for business debts I never incurred. These lawsuits underscore a broader pattern of identity theft involving the unauthorized use of my PII.

23.    I identified the perpetrators of the fraud as Aysha Khan, Areeba Khan, and Humza Khan. (See attached Affidavit In Support of Objection to Collections Enforcement—Fraud and Forgery ¶ 11 filed in the Circuit Court of the Seventh Judicial Circuit, Volusia, Florida, Case No.: 2023-11953-CDL).

24.    The criminal misuse of my identity has been formally documented with the North Bergen Police Department (Exhibits 001-009), further establishing my status as a victim of identity theft.

25.    The theft and criminal misuse of my PII is being investigated by the Federal Bureau of Investigation (FBI).

26.    As confirmed by the United States Department of Justice in a letter dated January 22, 2026, I am the identified victim in a federal criminal referral against Humza Khan for Aggravated Identity Theft. This federal investigation encompasses the fraudulent activities and unauthorized debts at issue in this case

27.    The federal criminal matter, United States of America v. Humza Khan, is documented

CERTIFICATION OF ALI ATSHAN- 3

085

under Case No. **25-MJ-15086** (DOJ Tracking No. **2025R00302**). Evidence of this prosecution and my status as a victim is confirmed in the U.S. Department of Justice letter to Ali Atshan dated January 22, 2026.

28.     Both the Virginia and Florida cases were dismissed because they were found to be the result of identity theft.

29.     As demonstrated throughout this Certification, the collection lawsuit currently before this Court is the direct product of fraud and the criminal misappropriation of my identity.

30.     Previously unaware of my eligibility for legal services and financially unable to retain private counsel as I had in Virginia and Florida cases, I initially attempted to defend this action *pro se* with the help of my daughter.

31.     I first became aware of my eligibility for legal services on January 21, 2026, when I reported this matter to the FBI and the United States Attorney.

32.     Following the referral from the U.S. Attorney's Office, I promptly applied to Northeast New Jersey Legal Services, Inc. (NNJLS) for legal assistance on January 22, 2026.

33.     NNJLS assigned John Ukegbu to my case.

34.     I meet with Mr. Ukegbu on January 22, 2026, by telephone.

35.     Mr. Ukegbu requested that I provide him with documents to support my claim that I was a victim of identity theft.

36.     I provided the requested documents to Mr. Ukegbu who then reviewed them and decided on February 2, 2026, that NNJLS would represent me in this case.

37.     I executed a retainer agreement with NNJLS to represent me in vacating the judgment and transferring this case to Hudson County since I have never lived, resided, or worked in Camden County.

CERTIFICATION OF ALI ATSHAN- 4

086

38.     In addition, Gulf Coast Bank & Trust Company is not a registered bank, consumer lender, or sales finance company with the New Jersey Department of Banking & Insurance. https://www.nj.gov/dobi/division_banking/index.htm

39.     Gulf Coast Bank & Trust Company is a Louisiana State Chartered Bank with its corporate headquarters located at 200 Saint Charles Avenue, New Orleans, Louisiana and with 38 domestic locations in 6 states. https://banks.data.fdic.gov/bankfind-suite/bankfind/details/32974

40.     Gulf Coast Bank & Trust Company has no location in the State of New Jersey. https://banks.data.fdic.gov/bankfindsuite/bankfind/details/32974?activeStatus=0%20OR%201&bankfindLevelThreeView=Locations&branchOffices=true&name=Gulf%20Coast%20Bank%20and%20Trust%20Company&pageNumber=1&resultLimit=25&searchPush=true

41.     Gulf Coast Bank & Trust Company is not registered to do business in the State of New Jersey. https://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName

42.     On October 20, 2025, I wrote a letter to the Honorable Frank Testa, J.S.C., explaining my situation and pleading for the Court's assistance (Exhibits 037-038).

43.     I expressed that I am a victim of identity theft and sought guidance on how I could clear my name regarding this matter. (Exhibits 037-038).

44.     Based on the advice of the North Bergen Police Department and the FBI, I have placed a security freeze on my credit report with the credit reporting agencies.

45.     I have dedicated considerable time to assisting the FBI with its investigation and defending myself against lawsuits for debts I never incurred.

46.     This ordeal has left me emotionally distressed and drained, causing worry, sleepless nights, stress, anger, and a sense of victimization and helplessness.

CERTIFICATION OF ALI ATSHAN- 5

087

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me is willfully false, I am subject to punishment.

Dated: February 5, 2026

Ali Atshan

**CERTIFICATION OF ALI ATSHAN- 6**

088

EXHIBITS
001

# North Bergen Police Department
4233 John Fitzgerald Kennedy Blvd, North Bergen, NJ 07047
Phone: 201-392-2100 Fax: 201-864-0370 Mun. Code: 0908

## Incident Report

### Incident Details:
### Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed X |
|---|---|---|---|---|---|---|---|---|---|
| 24-069067 | 10:42 | 07/25/24 | 10:42 | 07/25/24 | | | | | X |

### Incident Type:

General Information

### Incident Location:

| Street # Street Name | Apt # | Intersection / Cross Street of: |
|---|---|---|
| 4233 Kennedy Blvd | | Hillside Pl / Smith Ave |

Business / Common Location Name
hq

### Contact Information: Victim Suspect Complainant Witness Driver Arrest Passenger Missing Involved Other

| Code | Contact Name #1 | MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|---|
| V | Atshan, Ali | I | 72 | M | | ▓ | ▓ |

| Address | Phone / Email Address | Other Phone |
|---|---|---|
| 1210 91st St, No Bergen, NJ 07047-4419 | ▓ | ▓ |

| Code | Contact Name #2 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| I | ATSHAN, NOURA | 34 | F | 1A | ▓ | |

| Address | Phone / Email Address | Other Phone |
|---|---|---|
| 1210 91ST STREET, NORTH BERGEN, NJ 07047 | W ▓ | |

| Code | Contact Name #3 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| I | Khan, Ayesha | | F | | | |

| Address | Phone / Email Address | Other Phone |
|---|---|---|
| | ▓ | |

| Code | Contact Name #4 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| I | Khan, Areeba | | F | | | |

| Address | Phone / Email Address | Other Phone |
|---|---|---|
| | ▓ | |

| Code | Contact Name #5 Suffix MI | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| I | Khan, Hamza | | M | | | |

| Address | Phone / Email | Other Phone |
|---|---|---|
| | | |

| **EXHIBITS 002** | | | | Address | | | | |
|---|---|---|---|---|---|---|---|---|

| Code | Contact Name #6 MI Suffix | | Age | Sex | Race | DOB | SSN | |
|---|---|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | | Other Phone | |

| Code | Contact Name #7 MI Suffix | | Age | Sex | Race | DOB | SSN | |
|---|---|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | | Other Phone | |

| Code | Contact Name #8 MI Suffix | | Age | Sex | Race | DOB | SSN | |
|---|---|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | | Other Phone | |

## Property Information:

| | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Value of Stolen Property | | | | | | | |
| Property Recovered | | | | | | | |

## Automobile Information:

| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration State | |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Case #: | Page 1 BWC: |
|---|---|---|---|---|
| Det. Richard Rodri | | ghenry | | 24-069067 |

# North Bergen Police Department

**4233 John Fitzgerald Kennedy Blvd, North Bergen, NJ 07047**
**Phone: 201-392-2100 Fax: 201-864-0370 Mun. Code: 0908**
**~~Incident Report~~**

On July 25, 2024 Mr. Ali Atshan and his daughter Ms. Nour Atshan responded to our headquarters to report a fraud. Utilizing a digital recorder a voluntary statement was obtained. The following is a synopsis of the statement.

Mr. Atshan explained to us that he is a victim of fraud and believes that the possible suspect to be Ayesha Khan, Areeba Khan, or Humza Khan. Mr. Atshan received a letter in the mail in June 2024 with Kapitus Servicing, Inc as the plaintiff and Delton Medical Arts Pharmacy, Inc. D/B/A Saxon Medical Pharmacy D/B/A Town Center Pharmacy and Ali Atshan as the defendants from Volusia County, Florida

090

with a court date of August 13, 2024 Case Number 2023-11953-CIDL .

Exhibit
003

Mr. Atshan is unsure how much is owed but believes that it may be over $200000. Mr. Atshan believes it could be Humza Khan because he assisted Humza Khan with a loan to obtain a vehicle through MT Bank. Mr. Atshan informed us that Humza Khan took care of all the paper work. At the time he agreed to assist due to trusting and being family with Humza Khan. Mr. Atshan explained that due to him signing a loan for Humza Khan, Humza Khan has all of Mr. Atshan's information needed to take out a loan. Mr. Atshan text Humza Khan asking him what this was all about but he never responded.

I asked Mr. Atshan who Delton Medical Arts Pharmacy, Inc. D/B/A Saxon Medical Pharmacy D/B/A Town Center Pharmacy was and he responded and said its their pharmacy. Ms. Nour Atshan elaborated that there are text messages between her brother Abrahim Atshan, his wife Singhar Khan(also referred to as Iman) with Ayesha Khan. Ayesha Khan text Singhar Khan telling her to go into Abrahim Atshan's e mail. That the loan that Areeba and Humza Khan signed for is suing Deltona which she warned them not to do this but they didand for Singhar Khan to delete the e-mail sent from Chris stating the loan defaulted. Ms. Nour Atshan does not know who Chris is but believes it could be Ayesha Khan's lawyer. Ayesha Khan then states in texts that this has nothing to do with her but to contact Areeba and Humza Khan. On a separate text between Singhar Khan and Humza Khan, where Humza Khan informs her that it must have gone through a docusign to Areeba Khan and I have nothing to do with this it is Humza and Areeba.

It was reported to the Federal Bureau of Investigation located in Woodland Park to Special Agent Chris Gailliard on July 22, 2024 and they would reach out to them at a later time. Mr. Atshan states that he was not aware of what was happening until he received the subpoena, he did not sign, nor did he give authorization to take out any loan.

The audio statement was burned onto a compact disc and entered into the Barcode Evidence Analysis Statistical Tracking system as evidence.

Ms. Nour Atshan was provided my department e-mail and will forward all texts and e-mails pertaining to this incident.

The text messages from Areeba Khan(862-228-5704) to Singar Khan dated May 31, 2022 stating that the loan Humza and Areeba Khan signed is suing Deltona. Areeba instructed Singar to go into Abrahim Atshan e-mail to delete the e-mail that Chris sent saying Deltona defaulted. Areeba Khan states that Humza Khan did not pay and used the funds and goes on to say that is based off of a docusign which went

| Officer of Record: | Date: | Reviewed By: | Case #: Page 2 BWC: |
|---|---|---|---|
| Det. Richard Rodri | | ghenry | 24-069067 |

EXHIBITS
004

# North Bergen Police Department
4233 John Fitzgerald Kennedy Blvd, North Bergen, NJ 07047
Phone: 201-392-2100 Fax: 201-864-0370 Mun. Code: 0908
## Supplemental Investigation Report

**Incident Details:**
**Incident Details:**

| Case Number 24-069067A | Time Reported | Date Reported 09/06/24 | Time Occurred | Date Occurred 09/06/24 | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 91 1 | Completed X |
|---|---|---|---|---|---|---|---|---|---|

**Incident Type:**

**Incident Location:**

| Incident Type | Street # Street Name | Apt # | Intersection / Cross Street of: |
|---|---|---|---|
| Investigation Follow-Up | 4233 Kennedy Blvd | | Hillside Pl / Smith Ave |

Business / Common Location Name
hq

**Contact Information:** Victim Suspect Complainant Witness Driver Arrest Passenger Missing Involved Other

| Code | Contact Name #1 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #2 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #3 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #4 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #5 Suffix MI | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #6 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #7 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #8 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|

092

| Address | EXHIBITS 005 | | | | | Phone / Email Address | | Other Phone |
|---|---|---|---|---|---|---|---|---|

**Property Information:**

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

**Automobile Information:**

| | | Year | Make | Body Type | Model | Color | Registration State | |
|---|---|---|---|---|---|---|---|---|
| 1 | Vehicle Code | | | | | | | |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Case #: Page 1 | BWC: |
|---|---|---|---|---|
| Det. Richard Rodri | | ddowd | | 24-069067A |

# North Bergen Police Department
### 4233 John Fitzgerald Kennedy Blvd, North Bergen, NJ 07047
**Phone: 201-392-2100 Fax: 201-864-0370 Mun. Code: 0908**
~~Supplemental Investigation Report~~

On September 5, 2024 I spoke with Mr. Ali Atshan's Attorney Joe Knape. Knape provided me a copy of the contract Docusign (Envelope ID: 7C1CA762-50BB-4808-81EB-2EC0C0BDDB08) in which Mr. Atshan's name was fraudulently signed. The document has been attached to this report. A subpoena for the above mentioned envelope ID was generated and submitted for approval.

| Officer of Record: | Date: | Reviewed By: | Case #: Page 2 | BWC: |
|---|---|---|---|---|
| Det. Richard Rodri | | ddowd | | 24-069067A |

EXHIBITS
006

# North Bergen Police Department

**4233 John Fitzgerald Kennedy Blvd, North Bergen, NJ 07047**

**Phone: 201-392-2100 Fax: 201-864-0370 Mun. Code: 0908**

## Supplemental Investigation Report

### Incident Details:
### Incident Details:

| Case Number 24-069067B | Time Reported | Date Reported 10/16/24 | Time Occurred | Date Occurred 10/16/24 | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 911 | Completed X |
|---|---|---|---|---|---|---|---|---|---|

### Incident Type:
### Incident Location:

| Incident Type | Street # Street Name | Apt # | Intersection / Cross Street of: |
|---|---|---|---|
| Investigation Follow-Up | 4233 Kennedy Blvd | | Hillside Pl / Smith Ave |

Business / Common Location Name
hq

### Contact Information: Victim Suspect Complainant Witness Driver Arrest Passenger Missing Involved Other

| Code | Contact Name #1 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |
| Code | Contact Name #2 MI Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Phone / Email Address | | Other Phone |
| Code | Contact Name #3 MI Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Phone / Email Address | | Other Phone |
| Code | Contact Name #4 MI Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Phone / Email Address | | Other Phone |
| Code | Contact Name #5 Suffix MI | Age | Sex | Race | DOB | SSN |
| Address | | | | Phone / Email Address | | Other Phone |
| Code | Contact Name #6 MI Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Phone / Email Address | | Other Phone |
| Code | Contact Name #7 MI Suffix | Age | Sex | Race | DOB | SSN |
| Address | | | | Phone / Email Address | | Other Phone |
| Code | Contact Name #8 MI Suffix | Age | Sex | Race | DOB | SSN |

| Address | **EXHIBITS 007** | | Phone / Email Address | Other Phone |
|---|---|---|---|---|

**Property Information:**

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

**Automobile Information:**

| | Vehicle Code | Year | Make | Body Type | Model | Color | Registration State | |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Case #: | Page 1 | BWC: |
|---|---|---|---|---|---|
| Det. Richard Rodri | | ddowd | | | 24-069067B |

# North Bergen Police Department
**4233 John Fitzgerald Kennedy Blvd, North Bergen, NJ 07047**
**Phone: 201-392-2100 Fax: 201-864-0370 Mun. Code: 0908**
**Supplemental Investigation Report**

On October 16, 2024 I received the approved subpoena for Docusign Envelope ID: 7C1CA762-50BB-4808-81EB-2EC0C0BDDB08. I was informed via e-mail by Ezra Denman Sr. Paralegal (legalprocess@docusign) that Docusign does not accept service by e-mail and the subpoena was sent to the address provided via certified mail (9589071052702100897655).

Docusign, Inc.
c/o United Agent Group, Inc.
707 W. Main Avenue, #B1
Spokane, Washington 99201

| Officer of Record: | Date: | Reviewed By: | Case #: | Page 2 | BWC: |
|---|---|---|---|---|---|
| Det. Richard Rodri | | ddowd | | | 24-069067B |

EXHIBITS
008

# North Bergen Police Department

### 4233 John Fitzgerald Kennedy Blvd, North Bergen, NJ 07047
### Phone: 201-392-2100 Fax: 201-864-0370 Mun. Code: 0908

## Supplemental Investigation Report

### Incident Details:
### Incident Details:

| Case Number | Time Reported | Date Reported | Time Occurred | Date Occurred | Occurrence Between Date / Time of | Time Occurred | Date Occurred | 91 1 | Completed X |
|---|---|---|---|---|---|---|---|---|---|
| 24-069067C | | 12/09/24 | | 12/09/24 | | | | | |

### Incident Type:

Investigation Follow-Up

### Incident Location:

| Street # Street Name | Apt # | Intersection / Cross Street of: |
|---|---|---|
| 4233 Kennedy Blvd | | Hillside Pl / Smith Ave |

Business / Common Location Name
hq

### Contact Information: Victim Suspect Complainant Witness Driver Arrest Passenger Missing Involved Other

| Code | Contact Name #1 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #2 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #3 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #4 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #5 Suffix MI | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #6 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #7 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|
| Address | | | | Phone / Email Address | | Other Phone |

| Code | Contact Name #8 MI Suffix | Age | Sex | Race | DOB | SSN |
|---|---|---|---|---|---|---|

| Address | **EXHIBITS 009** | | | | | Phone / Email Address | | Other Phone | |

**Property Information:**

| Value of Stolen Property | Currency | Jewelry | Furs | Clothing | Auto | Misc. | Total |
|---|---|---|---|---|---|---|---|
| Property Recovered | | | | | | | |

**Automobile Information:**

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | Vehicle Code | Year | Make | Body Type | Model | Color | Registration State | |
| 2 | | | | | | | | |
| 3 | | | | | | | | |
| 4 | | | | | | | | |

| Officer of Record: | Date: | Reviewed By: | Case #: | Page 1 | BWC: |
|---|---|---|---|---|---|
| Det. Richard Rodri | | jcastill | | 24-069067C | |

# North Bergen Police Department
### 4233 John Fitzgerald Kennedy Blvd, North Bergen, NJ 07047
### Phone: 201-392-2100 Fax: 201-864-0370 Mun. Code: 0908
### ~~Supplemental Investigation Report~~

The subpoena return for Docusign Envelope ID: 7C1CA762-50BB-4808-81EB-2EC0C0BDDB08 yielded the signers e-mail which came back to hkhan@prestigeinfusions.com using IP address 68.199.64.209. I then conducted an internet search of the above mentioned e-mail and located on Linkedin a profile for Humza Khan which states that he serves as the co-founder of Prestige Infusions in partnership with Aysha Khan. The subpoena return was forwarded to FBI Agent Mary Gardocki and attached to this report.

On December 9, 2024 I contacted Agent Gardocki requesting an update. She informed me that the matter is currently being investigated by their agency and she could not disclose any details. I then called Nor Atshan and informed her that this case was referred to the FBI and they are investigating the incident.

| Officer of Record: | Date: | Reviewed By: | Case #: | Page 2 | BWC: |
|---|---|---|---|---|---|
| Det. Richard Rodri | | jcastill | | 24-069067C | |

Case 2:26-cv-04496-ES-SDA    Document 2    Filed 04/23/26    Page 97 of 286 PageID: 104

CAM-L-003082-25  02/13/2026 7:59:12 PM  Pg 16 of 48  Trans ID: LCV2026364617

097

< 🏛 BankFind Suite Home    |    Back to Institution Details

# BankFind Suite: Summary of Deposits—Branch Office Deposits

This Branch Office Locator allows you to get a listing of branch offices, and their reported deposits (as of June 30 per year), for both institutions and holding companies. You can search using the parent institution or holding company's name or ID number, and include geographic location for highly targeted searches. Or you can search with geographic criteria only to reveal matching institutions to investigate in-depth. Ultimately, the listings will provide a specific institution's branch office data by state, county, city, ZIP, and MSA.

Provide feedback or submit a question about this page.



**Institution Type** ^

Banks    BHCs

⑦    ⑦

**Name / Cert / ID**

Select Search Type ▼

Make Selection Above

**Reporting Period Ending**

## Gulf Coast Bank and Trust Company

Data as of 06/30/2025

## Institution Details

**FDIC Cert #**
32974

**Established**
06/08/1990

**Bank Charter Class**
State Chartered Banks, not member of the Federal Reserve System (FRS)

**Main Office Address**
200 Saint Charles Ave
New Orleans, LA 70130

**Primary Federal Regulator**
Federal Deposit Insurance Corporation

**OTS Docket Number**
9265

**Federal Reserve ID**
1458608

**Consumer Assistance**
Complaints & Questions with Personal Information

**Contact the FDIC**
Questions about Bank Information

BankFind Suite

CAM-L-003082-25   02/13/2026 7:59:12 PM   Pg 17 of 48   Trans ID: LCV20263364617
Case 2:26-cv-04496-ES-SDA   Document 2   Filed 04/23/26   Page 98 of 286 PageID: 105
098



011
06/30/2025

**Locations**

Select Location Type

Generate Report

**Selected Search Criteria**

Reporting Period: 06/30/2025     Cert: 32974 ⊗

Download Results

| te / County / eet Address | Open All | City (USPS) | Zip | Matching Offices | Unique Number | Office Number | Service Type | Office Code | (Th |
|---|---|---|---|---|---|---|---|---|---|
| › **Florida** | | | | 1 | | | | | |
| › **Louisiana** | | | | 21 | | | | | 2 |
| otals | | | | 22 | | | | | 3 |

Home > Resources > Data Tools > BankFind Suite > Find Institutions by Name & Location

Help ⑦

[ 🏛 BankFind Suite Home ]     [ Back to Search Results ]

# Gulf Coast Bank and Trust Company

[ Download Results ]

Data as of 01/16/2026

| Institution Details | Locations | History | Financials | Other Names |
|---|---|---|---|---|

## 38 Branch Offices

[ Open All ]

| | City (USPS) | ZIP | UNINUM | Office Number | Service Type | Established | Acquired |
|---|---|---|---|---|---|---|---|
| › Arizona | 1 | | | | | | |
| › Florida | 6 | | | | | | |
| › Louisiana | 25 | | | | | | |
| › Minnesota | 1 | | | | | | |
| › Tennessee | 1 | | | | | | |
| › Texas | 4 | | | | | | |
| Total Offices | 38 | | | | | | |

CAM-L-003082-25   02/13/2026 7:59:12 PM  Pg 18 of 48  Trans ID: LCV2026364617
Case 2:26-cv-04496-ES-SDA   Document 2   Filed 04/23/26   Page 99 of 286 PageID: 106

099

**EXHIBITS
013**

### NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES

## CERTIFICATE OF FORMATION

## PRESTIGE INFUSIONS MOBILE LLC
## 0450521703

The above-named DOMESTIC LIMITED LIABILITY COMPANY was duly filed in accordance with New Jersey State Law on 07/30/2020 and was assigned identification number 0450521703. Following are the articles that constitute its original certificate.

1. **Name:**
   PRESTIGE INFUSIONS MOBILE LLC

2. **Registered Agent:**
   SYED HASSAN

3. **Registered Office:**
   19 AMIRA LN
   KINNELON, NEW JERSEY 07405

4. **Business Purpose:**
   MOBILE WELLNESS PROCEDURES TO PROMOTE OVERALL HEALTH.

5. **Duration:**
   PERPETUAL

6. **Effective Date of this Filing is:**
   07/30/2020

7. **Members/Managers:**
   SYED HASSAN
   19 AMIRA LN
   KINNELON, NEW JERSEY 07405


   HUMZA KHAN
   19 AMIRA LN
   KINNELON, NEW JERSEY 07405

8. **Main Business Address:**
   19 AMIRA LN
   KINNELON, NEW JERSEY 07405

   **Signatures:**
   LOVETTE DOBSON
   AUTHORIZED REPRESENTATIVE

Continued on next page ...

Page 1 of 2

**EXHIBITS
014**

## NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES

### CERTIFICATE OF FORMATION

### PRESTIGE INFUSIONS MOBILE LLC
**0450521703**



Certificate Number : 4109163339
Verify this certificate online at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

*IN TESTIMONY WHEREOF, I have
hereunto set my hand and
affixed my Official Seal
30th day of July, 2020*

Elizabeth Maher Muoio
State Treasurer

Page 2 of 2

EXHIBITS
015

Home > Resources > Data Tools > BankFind Suite > Find Institutions by Name & Location

Help ⑦

CAM-L-003082-25  02/13/2026 7:59:12 PM  Pg 21 of 48  Trans ID: LCV2026364617

Case 2:26-cv-04496-ES-SDA  Document 2  Filed 04/23/26  Page 102 of 286 PageID: 109

102

1/22/26, 3:38 PM EXHIBITS

016

BankFind Suite Home

BankFind Suite: Institution Details

Back to Search Results

Download Results

# Gulf Coast Bank and Trust Company

Data as of 01/16/2026

| Institution Details | Locations | History | Financials | Other Names |

## Institution Details

FDIC Insured
Since 06/08/1990

**FDIC Cert #**
32974

**Established**
06/08/1990

**Bank Charter Class**
State Chartered Banks, not member
of the Federal Reserve System (FRS)

**Primary Federal Regulator**
Federal Deposit Insurance
Corporation

**Corporate Headquarters**
200 Saint Charles Ave
New Orleans, LA 70130

**Primary Website**
www.gulfbank.com

**Locations**
38 domestic locations: 6 states and 0
territories.
0 in foreign locations.

**Consumer Assistance**
Complaints & Questions with
Personal Information

**Contact the FDIC**
Questions about Bank Information

## Other Institution Identifiers used by Regulatory Agencies

| Identifier Name (Hover for description) | Identifier Value |
| --- | --- |
| FDIC Unique Number (UNINUM) |  46153 |
| FRB ID (RSS-ID) | 1458608 |
| Docket Number (DOCKET) | 9265 |

CAM-L-003082-25  02/13/2026 7:59:12 PM  Pg 23 of 48  Trans ID: LCV2026364617

Case 2:26-cv-04496-ES-SDA  Document 2  Filed 04/23/26  Page 104 of 286 PageID: 111

105

**EXHIBITS**

*New Jersey Division of Revenue & Enterprise Services*

*Certificate Of Amendment*

*NJSA 42:2C-19*

*New Jersey Limited Liability Company Act*

```
State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
Business Amendments
Filed

Validation Number: 4125407971
01/26/21 03:30:08

Verify this certificate online at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp
```

This Limited Liability Company filed with the Division of Revenue and Enterprise Services to amend its Certificate of Formation. The filer is responsible for ensuring strict compliance with NJSA 42:2C, the Revised Uniform New Jersey Limited Liability Company Act.

1. Name of Limited Liability Company: PRESTIGE INFUSIONS LLC

2. Business ID Number: 0450327727

3. Amendments:

    Article 7, the Members are amended to the following:

        AYSHA KHAN, MEMBER
        19 AMIRA LANE
        KINNELON , NJ 07405

The undersigned represent(s) that this filing complies with State law as detailed in NJSA 42:2C and that they are authorized to sign this form on behalf of the NJ Limited Liability Company on January 26, 2021.

**Signature**

AYSHA KHAN

EXHIBITS
019

## NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES

### CERTIFICATE OF FORMATION

### PRESTIGE INFUSIONS LLC
### 0450327727

The above-named DOMESTIC LIMITED LIABILITY COMPANY was duly filed in accordance with New Jersey State Law on 12/02/2018 and was assigned identification number 0450327727. Following are the articles that constitute its original certificate.

1. **Name:**
   PRESTIGE INFUSIONS LLC

2. **Registered Agent:**
   AREEBA KHAN

3. **Registered Office:**
   116 BOONTON AVE
   KINNELON , NEW JERSEY 07405

4. **Business Purpose:**
   TO PROVIDE HEALTH CARE SERVICES TO PATIENTS (INFUSIONS, MEDICAL)

5. **Effective Date of this Filing is:**
   12/02/2018

6. **Members/Managers:**
   AYSHA KHAN
   19 AMIRA LANE
   KINNELON , NEW JERSEY 07405


   ABDUALLAH ALAQRABAWI
   27 HUDSON AVE
   RIDGEFEILD PARK , NEW JERSEY 07660

7. **Main Business Address:**
   116 BOONTON AVE
   PRESTIGE INFUSIONS
   KINNELON, NEW JERSEY 07405

   **Additional Articles/Provisions:**

8. THE COMPANY MAY ADD MORE MEMBERS/MANAGERS

   **Signatures:**
   AYSHA KHAN
   AUTHORIZED REPRESENTATIVE

   ABDUALLAH ALAQRABAWI
   AUTHORIZED REPRESENTATIVE

   IQRA KHAN
   AUTHORIZED REPRESENTATIVE

Continued on next page ...                    Page 1 of 2

**EXHIBITS
020**

## NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES

### CERTIFICATE OF FORMATION

### PRESTIGE INFUSIONS LLC
#### 0450327727



*Certificate Number : 4066668529*
*Verify this certificate online at*
*https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp*

*IN TESTIMONY WHEREOF, I have
hereunto set my hand and
affixed my Official Seal
2nd day of December, 2018*

*Elizabeth Maher Muoio*
*State Treasurer*

EXHIBITS
021

## NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES
### CERTIFICATE OF ALTERNATE NAME

### PRESTIGE INFUSIONS LLC
### 0450327727

I, the Treasurer of the State of New Jersey, do hereby certify that the above-name did on the 1st of August, 2021, file and record in this department a Certificate of Alternate Name.

1. **Business Name:** PRESTIGE INFUSIONS LLC

2. **New Jersey Business Entity ID:** 0450327727

3. **Alternate Name:**

> **Name:** PRESTIGE INFUSIONS
>
> **Activity To Be Conducted Using Alternate Name**
> MEDICAL HEALTH CLINIC PERFORMING SERVICES FOR MOBILE PATIENTS.
>
> **Alternate Name is Valid Until:** 08/01/2026

**Signature and Title**

AYSHA KHAN, MEMBER



*IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official Seal at Trenton, this 1st day of August, 2021*

*Elizabeth M. Muoio*
*State Treasurer*

*Certificate Number : 4144578322*

*Verify this certificate online at*

*https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp*

**EXHIBITS
022**

## NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES
### CERTIFICATE OF ALTERNATE NAME

### PRESTIGE INFUSIONS LLC
### 0450327727

I, the Treasurer of the State of New Jersey, do hereby certify that the above-name did on the 1st of August, 2021, file and record in this department a Certificate of Alternate Name.

1. **Business Name:** PRESTIGE INFUSIONS LLC

2. **New Jersey Business Entity ID:** 0450327727

3. **Alternate Name:**

   **Name:** PRESTIGE INFUSIONS

   **Activity To Be Conducted Using Alternate Name**
   MEDICAL HEALTH CLINIC PERFORMING SERVICES FOR MOBILE PATIENTS.

   **Alternate Name is Valid Until:** 08/01/2026

   **Signature and Title**
   AYSHA KHAN, MEMBER



IN TESTIMONY WHEREOF, I have
hereunto set my hand and affixed
my Official Seal at Trenton, this
1st day of August, 2021

Elizabeth M. Muoio
State Treasurer

Certificate Number : 4144578322

Verify this certificate online at

https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

**EXHIBITS**

*New Jersey Division of Revenue & Enterprise Services*

*Certificate Of Amendment*

*NJSA 42:2C-19*

*New Jersey Limited Liability Company Act*

State of New Jersey
Department of the Treasury
Division of Revenue & Enterprise Services
Business Amendments
Filed

Validation Number: 4125407971
01/26/21 03:30:08

Verify this certificate online at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

This Limited Liability Company filed with the Division of Revenue and Enterprise Services to amend its Certificate of Formation. The filer is responsible for ensuring strict compliance with NJSA 42:2C, the Revised Uniform New Jersey Limited Liability Company Act.

1. Name of Limited Liability Company: PRESTIGE INFUSIONS LLC

2. Business ID Number: 0450327727

3. Amendments:

   Article 7, the Members are amended to the following:

        AYSHA KHAN, MEMBER
        19 AMIRA LANE
        KINNELON , NJ 07405

The undersigned represent(s) that this filing complies with State law as detailed in NJSA 42:2C and that they are authorized to sign this form on behalf of the NJ Limited Liability Company on January 26, 2021.

        **Signature**

        AYSHA KHAN

EXHIBITS
024

## NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES

## CERTIFICATE OF FORMATION

### PRESTIGE INFUSIONS LLC
### 0450327727

The above-named DOMESTIC LIMITED LIABILITY COMPANY was duly filed in accordance with New Jersey State Law on 12/02/2018 and was assigned identification number 0450327727. Following are the articles that constitute its original certificate.

1. **Name:**
   PRESTIGE INFUSIONS LLC

2. **Registered Agent:**
   AREEBA KHAN

3. **Registered Office:**
   116 BOONTON AVE
   KINNELON , NEW JERSEY 07405

4. **Business Purpose:**
   TO PROVIDE HEALTH CARE SERVICES TO PATIENTS (INFUSIONS, MEDICAL)

5. **Effective Date of this Filing is:**
   12/02/2018

6. **Members/Managers:**
   AYSHA KHAN
   19 AMIRA LANE
   KINNELON , NEW JERSEY 07405


   ABDUALLAH ALAQRABAWI
   27 HUDSON AVE
   RIDGEFEILD PARK , NEW JERSEY 07660

7. **Main Business Address:**
   116 BOONTON AVE
   PRESTIGE INFUSIONS
   KINNELON, NEW JERSEY 07405

   **Additional Articles/Provisions:**

8. THE COMPANY MAY ADD MORE MEMBERS/MANAGERS

   **Signatures:**
   AYSHA KHAN
   AUTHORIZED REPRESENTATIVE
   ABDUALLAH ALAQRABAWI
   AUTHORIZED REPRESENTATIVE
   IQRA KHAN
   AUTHORIZED REPRESENTATIVE

Continued on next page ...

Page 1 of 2

**EXHIBITS
025**

## NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES

## CERTIFICATE OF FORMATION

### PRESTIGE INFUSIONS LLC
### 0450327727



*IN TESTIMONY WHEREOF, I have
hereunto set my hand and
affixed my Official Seal
2nd day of December, 2018*

*Elizabeth Maher Muoio*
*State Treasurer*

*Certificate Number : 4066668529*
*Verify this certificate online at*
*https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp*

Page 2 of 2

**EXHIBITS
026**

### NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES

## CERTIFICATE OF FORMATION

### PRESTIGE INFUSIONS MOBILE LLC
### 0450521703

The above-named DOMESTIC LIMITED LIABILITY COMPANY was duly filed in accordance with New Jersey State Law on 07/30/2020 and was assigned identification number 0450521703. Following are the articles that constitute its original certificate.

1. **Name:**
   PRESTIGE INFUSIONS MOBILE LLC

2. **Registered Agent:**
   SYED HASSAN

3. **Registered Office:**
   19 AMIRA LN
   KINNELON, NEW JERSEY 07405

4. **Business Purpose:**
   MOBILE WELLNESS PROCEDURES TO PROMOTE OVERALL HEALTH.

5. **Duration:**
   PERPETUAL

6. **Effective Date of this Filing is:**
   07/30/2020

7. **Members/Managers:**
   SYED HASSAN
   19 AMIRA LN
   KINNELON, NEW JERSEY 07405


   HUMZA KHAN
   19 AMIRA LN
   KINNELON, NEW JERSEY 07405

8. **Main Business Address:**
   19 AMIRA LN
   KINNELON, NEW JERSEY 07405

**Signatures:**
LOVETTE DOBSON
AUTHORIZED REPRESENTATIVE

Continued on next page ...                                    Page 1 of 2

**EXHIBITS
027**

## NEW JERSEY DEPARTMENT OF THE TREASURY
### DIVISION OF REVENUE AND ENTERPRISE SERVICES

### CERTIFICATE OF FORMATION

### PRESTIGE INFUSIONS MOBILE LLC
### 0450521703



Certificate Number : 4109163339
Verify this certificate online at
https://www1.state.nj.us/TYTR_StandingCert/JSP/Verify_Cert.jsp

*IN TESTIMONY WHEREOF, I have
hereunto set my hand and
affixed my Official Seal
30th day of July, 2020*

*Elizabeth Maher Muoio
State Treasurer*

Page 2 of 2

**EXHIBITS**
**028**

January 22, 2026

Ali Atshan
1210 91st Street
North Bergen, NJ 07047

KHAN
U.S. Department of Justice United States
Attorney's Office  USAO - District of New
Jersey  Peter Rodino Federal Bldg.  970
Broad St.
Suite 700
Newark, NJ 07102
Phone: (973) 297-2073  Fax: (973)
645-2702

Re:  United States v. Defendant(s) HUMZA

Case Number 2025R00302 and Court Docket Number 25-MJ-15086

Dear Ali Atshan:

The enclosed information is provided by the United States Department of Justice Victim Notification System (VNS). As a victim witness professional, my role is to assist you with information and services during the prosecution of this case. I am contacting you because you were identified by law enforcement as a victim or potential victim during the investigation of the above criminal case.

Charges have been filed against defendant(s) HUMZA KHAN. The lead prosecutor for this case is GEORGE BRANDLEY. The main charge is categorized as Aggravated Identity Theft.

Pursuant to the Crime Victims' Rights Act, found at Title 18 U.S.C. § 3771, victims have the following rights:

(1) The right to be reasonably protected from the accused; (2) The right to reasonable, accurate, and timely notice of any public court proceeding, or any parole proceeding, involving the crime or of any release or escape of the accused; (3) The right not to be excluded from any such public court proceeding, unless the court, after receiving clear and convincing evidence, determines that testimony by the victim would be materially altered if the victim heard other testimony at that proceeding; (4) The right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding; (5) The reasonable right to confer with the attorney for the Government in the case; (6) The right to full and timely

restitutions provided in law; (7) The right to proceedings free from unreasonable delay; (8) The right to be treated with fairness and with respect for the victim's dignity and privacy; (9) The right to be informed in a timely manner of any plea bargain or deferred prosecution agreement; and (10) The right to be informed of the rights under this section and the services described in section 503(c) of the Victims' Rights and Restitution Act of 1990 (34 U.S.C. § 20141 (c)) and provided contact information for the Office of the Victims' Rights Ombudsman of the Department of Justice.

We will make our best efforts to ensure you are provided the rights to which you are entitled by law. Please understand that these rights apply only to victims of the counts charged in federal court. If you have any questions about what this means for you, please contact our office. Separately, victims of all crimes under federal investigation are entitled to services under the Victims' Rights and Restitution Act (VRRA), including notification of court events. For further details, please refer to Title 34 U.S.C. § §20141 or the VRRA link posted at www.notify.usdoj.gov (under the "Related Links" tab, see "Victim Rights").

It is important to keep in mind that the defendant(s) is/are presumed innocent until proven guilty. Additionally, please be aware that many criminal cases are resolved by a plea agreement between the prosecutor's office and the defendant. You should also know that it is not unusual for a defendant to seek to negotiate a plea agreement shortly before a trial is scheduled to begin. If the court schedules a plea hearing in this case, we will make our best efforts to notify you as soon as practicable.

As mentioned above, you have the right to confer with the attorney for the government. If you would like to speak with the prosecutor to inform the prosecutor of your views regarding potential plea agreements or discuss any other aspect of the case, please contact our office at (973) 297-2073 and ask to speak to the victim assistance staff, and we will arrange for you to speak with the prosecutor. While our office cannot act as your attorney or provide you with legal advice, you can seek the advice of an attorney with respect to the rights described above or other related legal matters.

If you believe that a Department of Justice employee has not provided you with your rights under the Crime Victims' Rights Act, you may file a complaint with the Department of Justice Victims' Rights Ombudsman (or "Ombuds"). For more information, go to www.justice.gov/usao/office-victims-rights-ombuds. If you have questions about filing a complaint, you may contact the Ombudsman by phone at 1-877-574-9302 or by email at USAEO.VictimOmbudsman@usdoj.gov.

If you have questions about the progress of your case, the rights you are entitled to, or how you can assert your rights during court proceedings, please contact our office at (973) 297-2073 .

Through the Victim Notification System (VNS) we will continue to provide you with updated scheduling and event information as the case proceeds through the criminal justice system. You may obtain current information about this case on the VNS website at https://www.notify.usdoj.gov or from the VNS Call Center at 1-866-DOJ-4YOU (1-866-365-4968) (TDD/TTY: 1-866-228-4619) (International: 1-502-213-2767). In addition, you may use the Call Center or Internet to update your contact information and/or change your decision about participation in the notification program.

You will use your Victim Identification Number (VIN) '7683637' and Personal Identification Number (PIN) '5760' anytime you contact the Call Center and the first time you log into VNS on the website. If you are receiving notifications with multiple victim ID/PIN codes please contact the VNS Call Center. In addition, the first time you access the VNS website, you will be prompted to enter your last name (or business name) as currently contained in VNS. The name you should enter is Atshan.

Remember, VNS is an automated system and cannot answer questions. If you have other questions which

in this matter, please contact this office at the number listed above.

EXHIBITS
030

Sincerely,

*Rosa Salloum*

Rosa Salloum

EXHIBITS
031

2025R00302/GLB

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA :  Hon. Stacey D. Adams

:

v.                                Magistrate. No. 25-15086

## CRIMINAL COMPLAINT

:

HUMZA KHAN

:

I, Laura Behlmann-Brase, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## SEE ATTACHMENT A

I further state that I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and that this complaint is based on the following facts:

## SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

/s Laura Behlmann-Brase

_____
Laura Behlmann-Brase, Special Agent
Federal Bureau of Investigation

Special Agent Behlmann-Brase attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(B)(2)(A) on this 11th day of April, 2025.

EXHIBITS
032

*/s Honorable Stacey D. Adams*
_____
Hon. Stacey D. Adams
United States Magistrate Judge

Case 2:25-mj-15086-SDA Document 1 Filed 04/11/25 Page 2 of 6 PageID: 2

## ATTACHMENT A

### COUNT ONE
(Wire Fraud)

In or around December 2020, in the District of New Jersey and elsewhere, defendant,

## HUMZA KHAN,

did knowingly and intentionally devise a scheme and artifice to defraud Company-1 and Company-2, and to obtain money and property by means of materially fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute such scheme and artifice, did transmit and cause to be transmitted, by means of wire communications in interstate commerce and foreign commerce, certain writings, signs, signals, pictures, and sounds,

In violation of Title 18, United States Code, Section 1343.

Case 2:25-mj-15086-SDA Document 1 Filed 04/11/25 Page 3 of 6 PageID: 3

### COUNT TWO
(Aggravated Identity Theft)

In or around December 2020, in Hudson County, in the District of New Jersey and elsewhere, defendant,

## HUMZA KHAN,

did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, namely the name, social security number, and signature of Victim-1, during and in relation to a violation of Title 18, United States Code, Section 1343, as described in Count One of this Complaint, knowing that the means of identification belonged to another actual person:

All in violation of Title 18, United States Code, Section 1028A(a)(1).

Case 2:25-mj-15086-SDA Document 1 Filed 04/11/25 Page 4 of 6 PageID: 4

EXHIBITS
033

## ATTACHMENT B

I, Laura Behlmann-Brase, am a Special Agent of the Federal Bureau of Investigation ("FBI"). I am fully familiar with the facts set forth herein based on my own investigation and my review of reports and discussions with other law enforcement personnel and other individuals. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact known to me concerning this investigation. Where the contents of documents and the actions and statements of others are reported, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

## BACKGROUND

1. At all times relevant to this Criminal Complaint:

   a. Defendant HUMZA KHAN ("KHAN") is an individual who has lived in New Jersey.

   b. "Victim-1" is an individual who lives in North Bergen, New Jersey. Victim-1's son is married to KHAN's sister.

   c. "Company-1" is a finance company that, among other things, provides loan brokerage services connecting customers to direct lenders.

   d. "Company-2" is a finance company that, among other things, provides direct lending services to small- and medium-sized businesses across the United States and worldwide, including in New Jersey. Company-2 is located in California, New York, and Virginia.

   e. "Pharmacy-1" is a specialty pharmacy located in Orange City, Florida.

   f. "Individual-1" owned Pharmacy-1 and resides in New Jersey.

## OVERVIEW

2. As set forth in detail below, KHAN engaged in a fraudulent scheme to defraud Company-1 and Company-2 by obtaining personal identifying information ("PII") belonging to another individual ("Victim-1") and using Victim-1's PII to apply for and obtain a loan without Victim-1's knowledge or permission. Specifically, in or around December 2020, KHAN applied for a $150,000 accounts receivable finance loan on behalf of Pharmacy-1 that was brokered by Company-1 and fulfilled by Company-2 (the "Pharmacy Loan"). KHAN applied for and obtained the Pharmacy

EXHIBITS
034

Loan using Victim-1's PII without Victim-1's, Company-1's, and/or Company-2's knowledge or permission.

## SUMMARY OF INVESTIGATION

3. In or around early 2020, KHAN asked Victim-1 to co-sign an automobile loan with KHAN to assist KHAN in obtaining a new vehicle (the "Auto Loan"). Victim-1 agreed and provided KHAN with Victim-1's PII—including Victim-1's date of birth and social security number—to include on the Auto Loan application.

4. Victim-1 provided KHAN Victim-1's PII while located in New Jersey.

5. The Auto Loan was approved on or about September 9, 2020. Other than applying for the Auto Loan, Victim-1 did not authorize KHAN to use Victim-1's PII to apply for loans.

6. On or about December 3, 2020, KHAN used Victim-1's PII to apply for the Pharmacy Loan without Victim-1's knowledge or permission.

7. To do so, KHAN sent a loan application (the "Pharmacy Loan Application") to Company-1 that contained Victim-1's PII and certain materially false representations.

a. The Pharmacy Loan Application falsely represented that Victim 1 was the sole owner of Pharmacy-1 and provided Victim-1's name, address, date of birth and social security number. In reality, Individual-1 owned Pharmacy-1.

b. The Pharmacy Loan Application provided KHAN's email address (not Victim-1's email address) in the contact information such that KHAN—not Victim-1—would receive correspondence concerning the Pharmacy Loan Application.

c. The Pharmacy Loan Application included bank records and statements from Pharmacy-1's bank account (the "Pharmacy Bank Account") and requested the proceeds of the Pharmacy Loan be deposited into the Pharmacy Account. Victim-1 had no control over or access to the Pharmacy Bank Account.

8. As the loan broker, Company-1 sent the Pharmacy Loan Application to Company-2 to be fulfilled.

9. Company-2 approved the Pharmacy Loan based on the representations contained in the Pharmacy Loan Application.

**EXHIBITS 035**

10. Company-2 sent the loan agreement (the "Pharmacy Loan Agreement") to KHAN's email address through DocuSign—a cloud-based platform that allows users to send and sign documents electronically—for signature.

11. The Pharmacy Loan Agreement obligated Company-2 to provide Pharmacy-1 an upfront payment of $150,000 in return for $202,500 of Pharmacy-1's future accounts receivable to be paid in monthly installments.

12. The Pharmacy Loan Agreement also obligated Victim-1 to personally guarantee the Pharmacy Loan if Pharmacy-1 defaulted on its obligations.

13. On or about December 14, 2020, KHAN accessed the Pharmacy Loan Agreement through his DocuSign account and electronically signed the Pharmacy Loan Agreement using Victim-1's name and date of birth without Victim-1's and/or Company-2's knowledge or permission.

14. After the Pharmacy Loan Agreement was fully executed, Company-2 wired approximately $150,000 to the Pharmacy Bank Account per the terms of the Pharmacy Loan Agreement.

15. Company-2's bank account was located in California and the Pharmacy Bank Account was located in New Jersey.

16. In or around July 2021, KHAN and/or Pharmacy-1 defaulted on the Pharmacy Loan Agreement for failing to make the monthly payments required under the Pharmacy Loan Agreement.

**EXHIBITS
036**

- 3 -

**EXHIBITS**
**037**

Docket NO. L - 3082-25
**Ali Atshan**
 1210 91 street
North Bergen, NJ 07047
551-655-7041
**Date:** 10/20/2025

**Honorable Judge Frank Testa**
 NJ Superior Court

101 South 5th Street
Camden, NJ 08103

**Statement Regarding Fraudulent Activity Involving Prestige Infusions LLC**

Dear Judge Testa,

I am writing to respectfully explain my situation and to affirm my innocence in the matter currently before the court regarding Gulf Coast Bank & Trust CO. Vs. *Prestige Infusions LLC &. Ali Atshan* . I am a victim of fraud and identity misuse, carried out by individuals who have previously been under investigation by federal authorities ( *Prestige Infusions LLC)* . A few months ago, I was involved in another case concerning fraudulent activity committed by the same individuals,  my daughter in- law's siblings (owners of *Prestige Infusions LLC)* . With the help of the **Federal Bureau of Investigation (FBI)**, it was proven that I had no involvement in their actions and was in fact a victim of their fraud. That investigation confirmed my innocence and established that my identity and personal information had been misused without my knowledge or consent. My name was cleared and charges against me were dropped.  There was an article published in the NJToday.news stating Humza Khan used my name electronically and is being charged. Unfortunately, I am now facing a new case involving similar circumstances. I want to make it absolutely clear that I **have never signed my name, nor given permission for anyone to sign my name**, as the owner or representative of *Prestige Infusions LLC*. I had no role or involvement in the formation, operation, or financial activities of this business. I understand the seriousness of this matter and deeply respect the judicial process. I am fully willing to cooperate with the court and any investigative authorities to demonstrate my innocence and to help expose those responsible for the fraudulent activity.Thank you for your time, understanding, and consideration of my situation. Please let me know if any additional information or documentation from the FBI case is needed to support this statement and what is expected of me after this.

**EXHIBITS
038**

Respectfully,

**Ali Atshan**

**EXHIBITS**
**039**

To Whom It May Concern,

I am writing this letter to formally address and document the ongoing identity theft and fraud committed against me.

Around 2020, I became the victim of fraud perpetrated by my daughter-in-law's siblings, who used my name and personal information without my knowledge or permission. I did not authorize anyone to use my identity, sign documents on my behalf, obtain loans, or conduct any business in my name.

Last year, I was served with legal papers regarding loans issued from Florida and Virginia related to a pharmacy business with which I have absolutely no involvement. I have never owned, operated, invested in, or given consent to any pharmacy business, nor did I sign any loan documents connected to such entities. With the assistance of federal authorities, including the FBI, and verified DocuSign records, it was proven that I did not sign or authorize any loan agreements. The investigation identified Humza Khan as the individual connected to the fraudulent activity. I was found innocent in that matter.

Unfortunately, in October of this year, I was served again—this time through the Camden County, New Jersey courts—for yet another loan taken out under my name without my knowledge or authorization. I am currently working diligently to clear my name once again and to ensure that those responsible are held accountable.

I am a hardworking and honest man who has never been involved in fraud or any criminal activity. I work only two days per week with Hudson County Park and also collect SSI. In addition, I am the primary caregiver for my wife, who suffers from dementia. My time and energy are devoted to supporting my family and caring for my wife's medical needs. It is deeply distressing to continue facing legal and financial hardship due to fraudulent actions committed by others.

The Khan family took advantage of my trust and used my identity without permission to further their own business interests. These actions constitute identity theft and fraud, and I should not be held responsible for any debts or obligations resulting from the criminal misuse of my name.

I respectfully request that this information be taken into serious consideration and that my record be cleared of any liability connected to these fraudulent activities.

Sincerely,
Ali Atshan

**EXHIBITS**
**040**

## IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT, IN AND FOR VOLUSIA, FLORIDA

KAPITUS SERVICING INC.,
    Plaintiff,

and

                                  CASE NO: 2023-11953-CIDL

DELTONA MEDICAL ARTS PHARMACY INC
D B A SAXON MEDICAL PHARMACY DBA
TOWN CENTER PHARMACY, ETC. AND
ALI ATSHAN,
    Defendants.

_____/

### Affidavit In Support of Objection to Collections Enforcement---Fraud and Forgery

BEFORE ME, PERSONALLY APPEARED ALI ATSHAN, WHO WAS SWORN AND SAYS THE FOLLOWING:

1. My name is ALI ATSHAN.

2. I have personal knowledge of the facts set forth herein.

3. I am not the officer/owner/director/member/manager of Deltona Medical Arts Pharmacy, Inc. d/b/a Saxon Medical Pharmacy, also d/b/a Town Center Pharmacy.

4. On or about December 14, 2020 I never received any Future Receivables Factoring Agreement with Plaintiff Kaptius Servicing.

5. On or about December 14, 2020 I never received any Security Agreement and Guaranty.

6. I never executed either of these two documents.

7. I never had any contact with any representative from Kapitus Servicing or received any funds from these agreements.

8. I had no knowledge that I was the victim of forgery and fraud until I received correspondence from a Florida Court.

9. I retained counsel for investigation and dispute regarding the Florida case.

10. I reported the identity theft to the North Bergen Police Department as well as the FBI.

11. In the criminal investigation I disclosed that Ayesha Khan, Areeba Khan, and Hamza Khan were the perpetrators as they have stolen my identity to commit this fraud against me.

12. The lawsuit from Virginia when obtained by counsel provided me with more information about the fraud of which I was unaware.

**EXHIBITS**
**041**

13. I did not knowingly and intentionally diver Merchant's receivables to a different bank account.

14. I have never had any access to any funding or bank accounts related to the Deltona Medical Arts Pharmacy, Inc. d/b/a Saxon Medical Pharmacy, also d/b/a Town Center Pharmacy.

15. I will be filing a motion to vacate the judgment in Virginia and an additional affidavit in connection with that case.

16. All of the agreements that were submitted in the Virginia lawsuit were DocuSign.

17. I never received any email or DocuSign for me to execute any document from Kapitus Servicing.

18. There is no email listed for where the DocuSign was sent but under no circumstances was I in control of that email account.

19. I reiterate that I have never been associated with Deltona Medical Arts Pharmacy, Inc. d/b/a Saxon Medical Pharmacy, also d/b/a Town Center Pharmacy.

20. I swear under oath and penalty of perjury that the email provided to Kapitus was not under my control or under the control of my agent to act in any capacity for me to engage in this agreement and personally guaranty said agreement.

21. At the time I executed this statement, I was lucid and not under the influences of drugs/alcohol/medication to the extent that my ability to recall is impaired.

22. By my signature, I approve of all of the contents herein and swear that they are true and correct.

23. No one has forced me, coerced me, or promised me anything in order to entice me to make this statement.

I HEREBY SWEAR THAT THE FOREGOING IS TRUE AND CORRECT.

_____

ALI ATSHAN

STATE OF NEW JERSEY
COUNTY OF _____

    Sworn to (or affirmed) and subscribed before me by means of ☐ physical presence or ☐ online notarization, this _____ day of _____ 2024, by _____, who did take an oath that the above information is true and correct to the best of his knowledge.

**EXHIBITS
042**

---

Signature of Notary Public-State of New Jersey

---

Name of Notary

Personally Known _____ OR Produced Identification _____
Type of Identification Produced_____

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing has been furnished this 27th day of August 2024 to Attorney Luis Orengo Jr. for the Plaintiffs at e-service to their designated email address lorengo@carltonfields.com

Joseph Knape, Esq.
Florida Bar No. 63287
P.O. Box 1909
Orlando, FL 32802
(850) 225-5563
joe@850calljoe.com

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire – 006871992
Thomas B. O'Connell, Esquire - 031102008
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ  08034
(856) 779-0300
Attorneys for Plaintiff/ 52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br><br>Civil Action<br><br>**BRIEF IN OPPOSITION TO DEFENDANT ALI ATSHAN'S MOTION TO VACATE JUDGMENT** |

## STATEMENT OF FACTS  & PROCEDURAL HISTORY

Gulf Coast Bank & Trust Co. ("Plaintiff") is a bank authorized to conduct business by the Federal Deposit Insurance Corporation ("FDIC") (O'Connell Cert. at Ex. A).  Plaintiff has branch offices in six (6) states that do not include New Jersey (O'Connell Cert. at Ex. A). Santander Bank, N.A. ("Plaintiff") is a bank authorized to conduct business by the FDIC with branch offices in nine (9) states, including New Jersey (O'Connell Cert. at Ex. B).  Plaintiff purchases loans from Santander, and Judgments arising from those loans from Santander, including loan obligors and judgment debtors in Camden County (O'Connell Cert. at Exs. L at Exs. A-B and O'Connell Cert. at Ex. M.).

On or about January 9, 2025, Plaintiff purchased from Santander Bank, N.A ("Santander") a Promissory Note and Security Agreement dated December 10, 2020 between Santander and Prestige Infusions, LLC ("Prestige Infusions") for a commercial loan ("the Loan")

Q- 14380/mb

1

and the Guaranty of Ali Atshan ("Defendant") guaranteeing payment and performance of Prestige Infusions' obligations on the Loan (Daste Cert. at Exs. A-C).  The allonge to the Note provided that Plaintiff was to be the payee on the Loan (Daste Cert. at Ex. C).

On September 3, 2025, Plaintiff, through counsel, sent a written notice of default and demand ("Notice of Default") to Prestige Infusions and Defendant (O'Connell Cert. at Ex. C). Plaintiff sent the Notice of Default to Defendant by regular mail to 1210 91st Street, North Bergen, New Jersey ("the North Bergen address").

On September 17, 2025, Plaintiff filed the above-captioned Complaint (O'Connell Cert. at Ex. D).  On October 8, 2025, Plaintiff effectuated service of the Complaint upon Defendant by serving Basan Atshan, Defendant's son, at the North Bergen address (O'Connell Cert. at Ex. E). Defendant failed to respond.  Defendant's certification acknowledges that he was aware of the Complaint at the time of service.  Defendant certifies:

> 7.      I first became aware of Gulf Coast & Trust Company when I received the summons and complaint.

> [Atshan Cert. at ¶7.]

On December 8, 2025, Plaintiff served upon Defendant, by regular mail to the North Bergen address, the Request to Enter Default (O'Connell Cert. at Ex. F).  Defendant failed to respond.  The Court entered default.

On December 15, 2025, Plaintiff applied to enter default judgment.  On December 16, 2025, the Court entered Default Judgment against Defendant (O'Connell Cert. at Ex. G).  On December 17, 2026, Plaintiff served an Information Subpoena on Defendant by regular mail to the North Bergen address (O'Connell Cert. at Ex. H).  Defendant failed to respond.

Q- 14380/mb

2

On January 16, 2026, Plaintiff sent Defendant a copy of Plaintiff's Notice of Application for a Wage Execution by regular and certified mail to the North Bergen address (O'Connell Cert. at Ex. I).  On January 26, 2026, Defendant signed the certified mail acknowledging his receipt of the application sent to the North Bergen address – the same address to which the preceding Notice of Default, Complaint, Request to Enter Default, and Information Subpoena had all been mailed or personally served without any response from Defendant (O'Connell Cert. at Ex. J).

Date Produced: 01/26/2026

ConnectSuite Inc.:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 9403 8352 4985 64. Our records indicate that this item was delivered on 01/23/2026 at 03:15 p.m. in NORTH BERGEN, NJ 07047. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :   **1210 91ST ST, NORTH BERGEN, NJ 07047**

[O'Connell Cert. at Ex. J pg. 7).

On February 9, 2026, the Court entered a Writ of Execution directing the Sheriff to levy upon Defendant's assets (O'Connell Cert. at Ex. K).  On February 11, 2026, Plaintiff applied for the wage execution with the proof of certified mail service accepted by Defendant on January 26, 2026  (O'Connell Cert. at Ex. J).  On February 13, 2026, Defendant moved to vacate the Default Judgment.  Defendant's motion fails to acknowledge or address at what stage Defendant became aware of the demand, Complaint, default for failure to file an Answer, Default Judgment,

Q- 14380/mb

3

Information Subpoena, or wage execution application – all of which were sent to the same North

Bergen address.  For the reasons that follow, Defendant's motion must be denied.

Q- 14380/mb

## DISCUSSION

## I.  DEFENDANT FAILS TO SATISFY THE REQUIREMENT OF <u>R.</u> 4:50-1

To vacate Default Judgment, Defendant must demonstrate both excusable neglect and a meritorious defense.  <u>R.</u> 4:50-1.  As Defendant cannot demonstrate these, the Court must deny the motion.

i.    <u>Defendant acknowledges being served with the Summons & Complaint but failing to take any action until after execution on the Judgment</u>

Defendant acknowledges being served with the Summons and Complaint.  Defendant failed to take any response.  Thereafter, Defendant disregarded the Request to Enter Default and Information Subpoena.  Only after being served with the Notice of Wage Execution did Defendant seek to vacate the Default Judgment.

Besides the failure to demonstrate excusable neglect, laches precludes Defendant from being aware of the Complaint and litigation and taking no action.  Laches preclude judgment debtors from vacating otherwise void judgments, even if not properly served.  In <u>Wohlegmuth v. 560 Ocean Club</u>, 302 <u>N.J. Super</u>. 306 (App. Div. 1997), the Appellate Division considered the issues of laches and estoppel, and reasoned:

> Although the judgment in <u>Last [v. Audobon Park Associates</u>, 227 <u>N.J. Super</u>. 602 (App. Div. 1988), <u>certif. denied</u>, 114 <u>N.J.</u> 491 (1989)] was voidable rather than void, Judge D'Annunzio there also cited the Kansas case of <u>Ford v. Willitis</u>, <u>supra</u>, 237 Kan. 13, for the proposition that "laches may be applicable to bar an action to set aside a void judgment."
>
> [<u>Wohlegmuth</u>, <u>supra</u>, 302 <u>N.J. Super</u>. at 316 (quoting <u>Last</u>, <u>supra</u>, 227 <u>N.J. Super</u>. at 608 (emphasis added).]

The Appellate Division applied the reasoning from <u>Rosa</u>, <u>supra</u>, 260 <u>N.J. Super</u>. at 458.

Q- 14380/mb

5

> In Rosa, this court found a waiver of the defendant's right to
> contest the judgment, notwithstanding the deficient service.
> Plaintiff should therefore also have been given an opportunity to
> prove waiver, as well as estoppel or laches, as bases to avoid the
> defense of lack of in personam jurisdiction.
> . . .
> [D]efendant may be estopped or barred by laches from challenging
> either the service of process or the judgment itself.
>
> [Wohlegmuth, supra, 302 N.J. Super. at 317 (emphasis added).]

The Court Rules also provide:

> While a judgment void for lack of personal jurisdiction must be
> timely challenged, the consequences of defendants' failure to do so
> must be determined by balancing the weight of estoppel and laches
> considerations favoring each party in the circumstances.
>
> [Pressler & Verniero, Current N.J. Court Rules, Comment 5.4.2 on
> R. 4:50-1 (citing Wohlgemuth v. 560 Ocean Club, 302 N.J. Super.
> 306 (App. Div. 1997); City of Passaic v. Shennet, 390 N.J. Super.
> 475, 486 (App. Div. 2007); I.E.'s L.L.C. v. Simmons, 392 N.J.
> Super. 520, 530 (Law Div. 2006)].

Here, Defendant is not even disputing proper service.  Defendant ignored the Default

Letter, Summons and Complaint, Information Subpoena, and appears to have taken action only

when the subject of execution.  Defendant cannot show excusable neglect.

ii.    Venue remains proper in Camden County

Venue is proper in any county in which a plaintiff "resides at the time of its

commencement."  R. 4:3-2(a).Plaintiff is a business.  Under the Court Rules, a business is

deemed to reside "in the county in which its registered office is located **or in any county in**

**which it is actually doing business**."  R.4:32(b).  Plaintiff conducts business in Camden

County, including the purchase of Judgments venued in Camden County and/or arising from

Q- 14380/mb

6

defaulted obligations of loan obligors located in Camden County.  Defendant does not elect venue.

### iii.      The FDCPA does not apply to commercial debt

The Fair Debt Collection Practices Act ("FDCPA") defines debt as

> any obligation or alleged obligation of a consumer to pay money
> arising out of a transaction in which the money, property,
> insurance or services which are the subject of the transaction are
> primarily for personal, family, or household purposes.

[15 USC §1692(a)(5).]

The underlying debt is a commercial loan to a business borrower and secured by business assets.  The FDCPA fails to apply.

### iv.      The New Jersey Banking Act permits Plaintiff and out-of-state banks to acquire and enforce loans from New Jersey banks, including in litigation and judgment

The Foreign Banks section of the New Jersey Banking Act permits out-of-state banks to acquire and enforce loans from New Jersey banks without having to register as New Jersey banks.  N.J.S.A. 17A:9-331.  The Supreme Court and Appellate Division have relied on this statute in permitting foreign banks to execute and sell foreclosed property via foreclosure judgment execution without registering to do business in New Jersey.  American Bank & Trust Co. of Pa. v. Lott, 99 N.J. 32 (1985).

More recently the Appellate Division relied upon American Bank & Trust in finding a foreign bank need to register to business in New Jersey under N.J.S.A. 14A:13-11 to obtain a foreclosure judgment and proceed to Sheriff's sale via execution.  Capital One, N.A. v. Franklin, No. A-899-18 (Nov. 4, 2019) (Slip Op.) (O'Connell Cert. at Ex. N).  There, the Appellate Division relied upon the Supreme Court in finding:

Q- 14380/mb

7

Defendant contends plaintiff was precluded from obtaining judgment and proceeding to a sheriff's sale because it is a foreign bank and is not registered to conduct business in New Jersey pursuant to N.J.S.A. 14A:13-11. We disagree.

Plaintiff was not the original lender. The Foreign Banks section under Article 44 of The Banking Act of 1948, N.J.S.A. 17:9A-315 to-332, states in pertinent part:

> Nothing in this article shall prohibit a foreign bank from
>
> . . . .
>
> (2) contracting in this State with a banking institution to acquire, and acquiring in this State from such banking institution, a part interest in or the entire interest in any loan heretofore or hereafter made by such banking institution, together with a like interest in any security and any security instrument heretofore or hereafter given to such banking institution to secure or evidence such loan;
>
> (3) enforcing in this State obligations heretofore or hereafter acquired by it in the transaction of business outside of this State, or in the transaction of any business authorized by paragraph (1) or (2) of this section;
>
> (4) acquiring, holding, leasing, mortgaging, contracting with respect to, or otherwise protecting or conveying property in this State heretofore or hereafter assigned, transferred, mortgaged or conveyed to it as security for, or in whole or part satisfaction of a loan or loans made by it or obligations acquired by it in the transaction of business outside of this State, or in the transaction of any business authorized by paragraphs (1) or (2) of this section.
>
> [N.J.S.A. 17:9A-331.]

Accordingly, plaintiff was not precluded from obtaining judgment and proceeding to a sheriff's sale even though it was not registered to do business in New Jersey pursuant to N.J.S.A. 14A:13.

Defendant further argues plaintiff is barred by N.J.S.A. 14A:13-20 from bringing this foreclosure action because it failed

Q- 14380/mb

8

to file a business activity report in New Jersey pursuant to N.J.S.A. 14A:13-15. We disagree.

Our Supreme Court addressed whether a foreign bank may maintain a mortgage foreclosure action, notwithstanding its failure to comply with the filing requirements of the Corporate Business Activities Reporting Act (the Reporting Act), N.J.S.A. 14A:13-14 to -23, by not filing a notice of business activities report as required by N.J.S.A. 14A:13-15. Am. Bank & Tr. Co. of Pa. v. Lott, 99 N.J. 32, 33-34 (1985). The Court concluded that "[n]either the terms of the Reporting Act nor its legislative history suggests that the Legislature intended to include foreign banks within the definition of `corporation' contained in N.J.S.A. 14A:13-17(b)." Id. at 35. The Court also noted that "the Reporting Act was designed to facilitate the collection of corporate taxes, an endeavor that has no application to a foreign bank." Id. at 40.

The Court held "the Legislature did not intend the Reporting Act to apply to foreign banks. Because the Reporting Act does not apply, the requirements of that Act . . . are irrelevant to the determination whether [the foreign bank] can maintain the [foreclosure] action." Id. at 34.[3]

Accordingly, plaintiff's alleged failure to file a business activity report is not a bar to filing this foreclosure action and obtaining judgment.

. . .

[3]   In reaching this decision, the Court expressly overruled Bank Leumi Trust Company v. Schneider, 188 N.J. Super. 423 (App. Div. 1982); Lott, 99 N.J. at 41.

[O'Connell Cert. at Ex. N (Slip Op.) (footnote in original).]

Defendant's claim that Gulf Coast, a foreign bank, is precluded from enforcing the Judgment arising out of a loan originated by a New Jersey bank is in conflict with the statutes and common law. This is neither a defense nor a cause of action.

Q- 14380/mb

9

v.      Electronically signed agreements are enforceable under N.J.S.A. 12A:12-1, the Uniform Electronic Transactions Act

Defendant assumes additional requirements for the enforceability of electronically signed documents.  Defendant's assumptions are inconsistent with the law.

The Uniform Electronic Transactions Act ("UETA"), N.J.S.A. 12A:12-1 et. seq., provides:

**12A:12-7. Legal effect and enforceability**

a. A record or signature may not be denied legal effect or enforceability solely because it is in electronic form.

b. A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation.

c. If a law requires a record to be in writing, an electronic record satisfies the law.

d. If a law requires a signature, an electronic signature satisfies the law.

[N.J.S.A. 12A:12-7 (emphasis in original).]

Defendant's demand for additional metadata and information is inconsistent with the statute.

Defendant's reliance on American Express Travel Related Services Co. v. Vinhnee (In re Vinhnee), 336 B.R. 437 (B.A.P. 9th Cir. 2005), is misplaced. That decision is neither binding on this Court nor applicable to the evidentiary issues presented here. Vinhnee involved the authentication of computerized account records in a bankruptcy proof-of-claim proceeding where the creditor failed to present any testimony regarding the reliability of its electronic record-keeping system. Id. at 446–47. The court excluded the records because the proponent failed to establish a foundation explaining how the electronic records were created, stored, and

Q- 14380/mb

10

maintained. The case did **not** hold that electronic agreements are unenforceable absent IP logs, audit trails, or other technical metadata.

New Jersey law expressly recognizes the validity of electronic contracts and signatures in the UETA. Accordingly, the absence of additional electronic metadata does not render an electronically signed agreement unenforceable.

Further, authentication of a document in New Jersey requires only "evidence sufficient to support a finding that the matter is what its proponent claims." N.J.R.E. 901. This is a minimal threshold that may be satisfied through witness testimony, circumstantial evidence, or the distinctive characteristics of the document itself. See State v. Hannah, 448 N.J. Super. 78, 89–90 (App. Div. 2014) (holding electronic evidence may be authenticated through circumstantial evidence and testimony connecting the evidence to the party). Electronic records maintained in the ordinary course of business are also admissible under N.J.R.E. 803(c)(6), which does not require technical forensic proof regarding the operation of the underlying computer system.

Courts applying New Jersey law consistently recognize that electronic assent is legally equivalent to a handwritten signature. See Skuse v. Pfizer, Inc., 244 N.J. 30, 49–50 (2020) (enforcing arbitration agreement accepted through an electronic acknowledgment and recognizing the validity of electronic acceptance of contract terms). Consistent with the UETA, courts focus on whether the evidence demonstrates that the party assented to the agreement—not on the existence of specific forms of electronic metadata.

Here, Defendant asserts that the lack of IP and other information submitted in support of Plaintiff's application for default judgment renders the Judgment void, and subjects Plaintiff to a cause of action for "fraud."  Defendant cannot offer any support for this proposition.

Q- 14380/mb

11

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that Defendant's motion to vacate Default Judgment should be denied.

Respectfully submitted,
SALDUTTI LAW GROUP

**/s/  Thomas B. O'Connell**

THOMAS B. O'CONNELL, ESQUIRE

Dated: March 5, 2026

Q- 14380/mb

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ  08034
(856) 779-0300
Attorneys for Plaintiff/ 52263

| GULF COAST BANK & TRUST CO, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION CAMDEN COUNTY |
|---|---|
| Plaintiff, | |
| v. | DOCKET NO. L-3082-25 |
| PRESTIGE INFUSIONS LLC AND ALI ATSHAN | Civil Action |
| Defendant(s). | **CERTIFICATION IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE JUDGMENT** |

I, Thomas B. O'Connell, Esquire, hereby certify as follows:

1.      I am an attorney admitted to practice law in the state of New Jersey.  I am a partner with Saldutti Law Group, counsel for Gulf Coast Bank & Trust Co. ("Plaintiff").  I have personal knowledge of the following facts and procedural history.

2.      A true and correct copy of the Federal Deposit Insurance Corporation's ("FDIC") publicly available documents related to Plaintiff is attached as Exhibit A.

3.      A true and correct copy of the FDIC's publicly available documents related to Santander Bank, N.A. ("Plaintiff") is attached as Exhibit B.

4.      A true and correct copy of the September 3, 2025 Notice of Default sent to Prestige Infusions, LLC and Ali Atshan ("Defendant") is attached as Exhibit C.  Defendant failed to respond.

5.      A true and correct copy of Plaintiff's Complaint in this matter is attached as Exhibit D.

Q- 14380/mb

13

6.      A true and correct copy of the Affidavit of Service in this matter is attached as Exhibit E.

7.      A true and correct copy of the Proof of Service of the request to enter default is attached as Exhibit F.

8.      A true and correct copy of the Default Judgment is attached as Exhibit G.

9.      A true and correct copy of the Information Subpoena served upon Defendant by first class mail is attached as Exhibit H.

10.     A true and correct copy of the Writ of Execution is attached as Exhibit I.

11.     A true and correct copy of the Notice of Application for Wage Execution served upon Defendant by first class and certified mail is attached as Exhibit J.

12.     A true and correct copy of the Application for Wage Execution with the Proof of Service of the Notice of Application for wage execution is attached as Exhibit K.

13.     A true and correct copy of the Certification of Alan Fern filed in the matter of Santander Bank, N.A. v. Heine Associates, P.C. et. al., Docket No. CAM-L-4874-17 is attached as Exhibit L.

14.     A true and correct copy of the publicly available Judgment Search identifying the Judgments entered in Santander Bank, N.A. v. Heine Associates, P.C. et. al., Docket No. CAM-L-4874-17 is attached as Exhibit M.

15.     A true and correct copy of the Appellate Division's decision in Capital One, N.A. v. Franklin, No. A-899-18 (Nov. 4, 2019) (Slip Op.) is attached as Exhibit N.

Q- 14380/mb

14

I certify that the above statements made by me are true and correct to the best of my knowledge. I am aware that if any of the foregoing statements made by me are incorrect, I am subject to punishment.

SALDUTTI LAW GROUP

/s/  **Thomas B. O'Connell**

_____

THOMAS B. O'CONNELL, ESQUIRE

Dated: March 5, 2026

Q- 14380/mb

15

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ  08034
(856) 779-0300
Attorneys for Plaintiff/ 52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>                    Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN<br><br>                    Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br><br>     Civil Action<br><br>**CERTIFICATION IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE JUDGMENT** |

I, Thomas B. O'Connell, Esquire, hereby certify as follows:

1.      I am an attorney admitted to practice law in the state of New Jersey.  I am a partner with Saldutti Law Group, counsel for Gulf Coast Bank & Trust Co. ("Plaintiff").  I have personal knowledge of the following facts and procedural history.

2.      A true and correct copy of the Federal Deposit Insurance Corporation's ("FDIC") publicly available documents related to Plaintiff is attached as Exhibit A.

3.      A true and correct copy of the FDIC's publicly available documents related to Santander Bank, N.A. ("Plaintiff") is attached as Exhibit B.

4.      A true and correct copy of the September 3, 2025 Notice of Default sent to Prestige Infusions, LLC and Ali Atshan ("Defendant") is attached as Exhibit C.  Defendant failed to respond.

5.      A true and correct copy of Plaintiff's Complaint in this matter is attached as Exhibit D.

Q- 14380/mb

6.      A true and correct copy of the Affidavit of Service in this matter is attached as Exhibit E.

7.      A true and correct copy of the Proof of Service of the request to enter default is attached as Exhibit F.

8.      A true and correct copy of the Default Judgment is attached as Exhibit G.

9.      A true and correct copy of the Information Subpoena served upon Defendant by first class mail is attached as Exhibit H.

10.      A true and correct copy of the Writ of Execution is attached as Exhibit I.

11.      A true and correct copy of the Notice of Application for Wage Execution served upon Defendant by first class and certified mail is attached as Exhibit J.

12.      A true and correct copy of the Application for Wage Execution with the Proof of Service of the Notice of Application for wage execution is attached as Exhibit K.

13.      A true and correct copy of the Certification of Alan Fern filed in the matter of Santander Bank, N.A. v. Heine Associates, P.C. et. al., Docket No. CAM-L-4874-17 is attached as Exhibit L.

14.      A true and correct copy of the publicly available Judgment Search identifying the Judgments entered in Santander Bank, N.A. v. Heine Associates, P.C. et. al., Docket No. CAM-L-4874-17 is attached as Exhibit M.

15.      A true and correct copy of the Appellate Division's decision in Capital One, N.A. v. Franklin, No. A-899-18 (Nov. 4, 2019) (Slip Op.) is attached as Exhibit N.

Q- 14380/mb

I certify that the above statements made by me are true and correct to the best of my knowledge. I am aware that if any of the foregoing statements made by me are incorrect, I am subject to punishment.

SALDUTTI LAW GROUP

**/s/  Thomas B. O'Connell**

THOMAS B. O'CONNELL, ESQUIRE

Dated: March 4, 2026

Q- 14380/mb

# EXHIBIT A

Home > Resources > Data Tools > BankFind Suite > Find Insured Banks

Help

  ‹  🏛  BankFind Suite Home       Back to Search Results

# Gulf Coast Bank and Trust Company

Download Results

Data as of 02/27/2026

| Institution Details | Locations | History | Financials | Other Names |

## Institution Details



**FDIC Insured**
Since 06/08/1990

**FDIC Cert #**
32974

**Established**
06/08/1990

**Bank Charter Class**
State Chartered Banks, not member of the Federal Reserve System (FRS)

**Primary Federal Regulator**
Federal Deposit Insurance Corporation

**Corporate Headquarters**
200 Saint Charles Ave
New Orleans, LA 70130

**Primary Website**
www.gulfbank.com

**Locations**
38 domestic locations: 6 states and 0 territories. 0 in foreign locations.

**Consumer Assistance**
Complaints & Questions with Personal Information

**Contact the FDIC**
Questions about Bank Information

### Other Institution Identifiers used by Regulatory Agencies

| Identifier Name (Hover for description) | | Identifier Value |
| --- | --- | --- |
| FDIC Unique Number (UNINUM) | ? | 46153 |
| FRB ID (RSS-ID) | ? | 1458608 |
| Docket Number (DOCKET) | ? | 9265 |

Home > Resources > Data Tools > BankFind Suite > Find Insured Banks

Help ⓘ

 BankFind Suite Home          Back to Search Results

# Gulf Coast Bank and Trust Company

Download Results

Data as of 02/27/2026

| Institution Details | **Locations** | History | Financials | Other Names |
|---|---|---|---|---|

## 38 Branch Offices

| | Open All | | City (USPS) | ZIP | UNINUM | Office Number | Service Type | Es |
|---|---|---|---|---|---|---|---|---|
| > Arizona | | 1 | | | | | | |
| > Florida | | 6 | | | | | | |
| > Louisiana | | 25 | | | | | | |
| > Minnesota | | 1 | | | | | | |
| > Tennessee | | 1 | | | | | | |
| > Texas | | 4 | | | | | | |
| Total Offices | | 38 | | | | | | |

◀ ▬▬▬▬▬▬▬▬▬▬▬▬ ▶

# **EXHIBIT B**

 BankFind Suite Home          Back to Search Results

# Santander Bank, N.A.

Download Results

Data as of 02/27/2026

| **Institution Details** | Locations | History | Financials | Other Names |

## Institution Details



**FDIC Insured**
Since 08/09/1989

**FDIC Cert #**
29950

**Established**
01/01/1907

**Bank Charter Class**
National Banks, member of the Federal Reserve Systems (FRS)

**Primary Federal Regulator**
Comptroller of the Currency

**Secondary Federal Regulator**
CFPB

**Corporate Headquarters**
824 N Market St
Ste 100
Wilmington, DE 19801

**Primary Website**
www.santander.com

**Locations**
373 domestic locations: 9 states and 0 territories. 0 in foreign locations.

**Consumer Assistance**
HelpWithMyBank.gov

**Contact the FDIC**
Questions about Bank Information

## Other Institution Identifiers used by Regulatory Agencies

| Identifier Name (Hover for description) | | Identifier Value |
| --- | --- | --- |
| FDIC Unique Number (UNINUM) | ⑦ | 42784 |
| FRB ID (RSS-ID) | ⑦ | 722777 |
| FRB ID for Bank Holding Company (RSSDHCR) | ⑦ | 1239254 |
| OCC Charter Number (CHARTER) | ⑦ | 25022 |
| Docket Number (DOCKET) | ⑦ | 4410 |

Home  >  Resources  >  Data Tools  >  BankFind Suite  > Find Insured Banks

Help  ?

<  🏛  BankFind Suite Home

Back to Search Results

# Santander Bank, N.A.

Download Results

Data as of 02/27/2026

| Institution Details | Locations | History | Financials | Other Names |
|---|---|---|---|---|

## 373 Branch Offices

Open All

| | | City (USPS) | ZIP | UNINUM | Office Number | Service Type | E: |
|---|---|---|---|---|---|---|---|
| > Connecticut | 13 | | | | | | |
| > Delaware | 1 | | | | | | |
| > Florida | 2 | | | | | | |
| > Massachusetts | 120 | | | | | | |
| > New Hampshire | 10 | | | | | | |
| > New Jersey | 86 | | | | | | |
| > New York | 59 | | | | | | |
| > Pennsylvania | 63 | | | | | | |
| > Rhode Island | 19 | | | | | | |
| Total Offices | 373 | | | | | | |

◀ ━━━━━━━━━━━━━━━━━━━ ▶

# EXHIBIT C

# SALDUTTI
### L A W   G R O U P

1040 North Kings Highway • Suite 100 • Cherry Hill, NJ 08034
Tel: 856-779-0300 • Fax:856-281-3778

September 3, 2025

Prestige Infusions LLC
116 Boonton Ave
Kinnelon, NJ 07405

Ali Atshan
1210 91st St. 2
North Bergen, NJ 07047

RE:   Creditor to whom Debt is owed: Gulf Coast Bank and Trust Co. (the "Bank")
      Prestige Infusions LLC (the "Borrower") and Ali Atshan (the "Guarantor")
      Loan No. 255552
      Our File No. 52263

Dear Sir/Madam:

Please be advised that I am counsel for Gulf Coast Bank and Trust Co. Accordingly, I am placing you on notice that if you do not contact my office to make arrangements to immediately cure this debt within 48 hours, we will proceed with the applicable civil remedies.

Reference is made to the Promissory Note of the Borrower in the original principal amount of $189,332.63 dated December 10, 2020, and payable to the order of the Santander Bank, as modified and amended from time to time (collectively, the "Note"). The Bank is the holder of the Note. The Borrower is in default under the Note in that the Borrower has failed to, among other things, make payments when due (the "Default"). This letter constitutes formal notice to the Borrower and Guarantor of the occurrence of the Default.

As a result of the Borrower's default, the Bank has elected to exercise its option to declare the entire unpaid principal balance of the Note and all accrued and unpaid interest to be immediately due and payable. As of September 2, 2025, there is unpaid, due and owing to the Bank under the Note the amount of $65,356.44, plus interest.

Demand is hereby made for the immediate payment in full of all amounts which are due and which may become due under the Notes. The balances due under the Notes may increase or decrease as a result of the receipt of payments and the proceeds of collateral securing the Notes and the accrual of interest, late charges, costs of collection and other fees, costs and expenses. Please contact the undersigned immediately to cure this debt.

Nothing contained in this letter is intended as a waiver or release of any of the terms or provisions of the Note or any of any and all other notes, instruments or agreements between the Bank and the Borrower and/or Guarantor (the "Loan Documents"). The Bank reserves all rights and remedies available to it under the Loan Documents, and applicable law, all of which are expressly reserved. No discussions between the Bank or its counsel and the Borrower and/or Guarantor concerning this notification, other loan relationships between the Bank and the Borrower and/or Guarantor, or any other matter shall imply an agreement on the part of the Bank to waive any of its rights and remedies or to forbear from taking any action authorized by the

---

Page -2-

September 3, 2025
52263

Loan Documents or applicable law, whether or not such discussions may be continuing. The acceptance of any partial payment of any of the obligations of the Borrower and/or Guarantor to the Bank shall not be deemed a waiver or limitation of any of the Bank's rights reserved herein as to the full amount of any unpaid balance. Any delay or forbearance by the Bank in the enforcement or pursuit of any of its rights and remedies under the Loan Documents or applicable law shall not constitute a waiver thereof, nor shall it be a bar to the exercise of the Bank's rights or remedies at a later date.

Very truly yours,
SALDUTTI LAW GROUP

ROBERT L. SALDUTTI, ESQUIRE

RLS/mb

# EXHIBIT D

CAMDEN COUNTY SUPERIOR COURT
101 S FIFTH STREET
SUITE 150
CAMDEN             NJ 08103
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (856) 650-9100
COURT HOURS  8:30 AM - 4:30 PM


                    DATE:    SEPTEMBER 16, 2025
                    RE:      GULF COAST BANK & TR UST CO  VS PRESTIGE INFUSION
                    DOCKET:  CAM L -003082 25


     THE ABOVE CASE HAS BEEN ASSIGNED TO:  TRACK 1.

     THE MANAGING JUDGE ASSIGNED IS:  HON FRANK C. TESTA

     IF YOU HAVE ANY QUESTIONS, CONTACT TEAM 301
AT: (856) 650-9100 EXT 44162.

     THE ABOVE CASE HAS BEEN REMOVED FROM THE EXPEDITED CIVIL ACTIONS (ECA) PILOT
PROGRAM PURSUANT TO AN ORDER OF THE COURT.  DISCOVERY IS THE APPLICABLE NUMBER OF DAYS FOR
A STANDARD TRACK    1 CASE. RUNNING FROM THE DATE OF THE FILING OF THE FIRST RESPONSIVE
PLEADING.

     IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
     PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                    ATTENTION:
                              ATT: ROBERT L. SALDUTTI
                              SALDUTTI LAW GROUP
                              1040 KINGS HIGHWAY NORTH
                              STE 100
                              CHERRY HILL     NJ 08034
ECOURTS

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire – 006871992
Thomas B. O'Connell, Esquire - 031102008
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ  08034
(856) 779-0300
Attorneys for Plaintiff/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>    Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC<br>AND ALI ATSHAN<br><br>    Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO.<br><br>  Civil Action<br><br>**COMPLAINT** |

Plaintiff, Gulf Coast Bank & Trust Co, a bank authorized to do business in the State of New Jerey and in Camden County, by way of Complaint against the Defendants, Prestige Infusions LLC and Ali Atshan hereby says:

**FIRST COUNT**

1. On December 10, 2020, the Defendants, Prestige Infusions LLC and Ali Atshan executed  various financial Agreements payable to Santander Bank, N.A. (hereinafter the "Agreements") which Defendants promised to pay a certain sum, with interest thereon in monthly payments all as is more particularly set forth in the Agreements.

2. Effective as of January 9, 2025, this loan, including all notes, mortgages and all other documents related thereto was sold and transferred to Plaintiff, Gulf Coast Bank & Trust Co.

3. Defendants have failed to pay Plaintiff the monthly payments required under the terms of the Agreements and are in default of the Agreements.

4. The Plaintiff has made demand of Defendants for payment; however, Defendants refused and still refuse to pay as promised under the Agreements.

5. Plaintiff is entitled to collect full costs, principal, interest, and attorney's fees, pursuant to the terms of the Agreements.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, Prestige Infusions LLC and Ali Atshan jointly, severally, and in the alternative for $65,356.44, together with accrued Agreements interest on the unpaid principal, attorneys' fees, and costs of suit.

## SECOND COUNT

Plaintiff repeats each and every allegation of the First Count and incorporates the same herein.

6. Under the terms of the Agreements, Defendants agreed to pay monthly payments of principal and interest each month all as is more particularly set forth in the Agreements.

7. The Agreements provide that if any scheduled monthly payment should remain unpaid after the sum should fall due, the whole principal sum, with all accrued, but unpaid interest would, at the option of the Plaintiff, become immediately due, without prior notice to the Defendants.

8. Defendants failed to pay the aforesaid scheduled monthly payments when due.

9. As a result of Defendants' failure to pay the above scheduled monthly payments when due the Plaintiff has declared the whole principal sum and accrued interest thereon, immediately due and payable.

10. There is due from the Defendants $65,356.44 under the Agreements with all accrued interest thereon.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, Prestige Infusions LLC and Ali Atshan jointly, severally, and in the alternative for $65,356.44, together with accrued Agreements interest on the unpaid principal, attorneys' fees, and costs of suit.

## THIRD COUNT

Plaintiff repeats each and every allegation of the First through Second Counts and incorporates the same herein as if set forth at length.

11.    The Agreements provide that if the Agreements were turned over to an attorney for collection, then Defendants agreed to pay Plaintiff's reasonable attorneys' fees due and payable to the Plaintiff.

12.    As a result of the Defendants' default, Plaintiff has instructed their attorney to institute this action to collect those monies due and owing to Plaintiff from Defendants under the Agreements.

**WHEREFORE**, Plaintiff demands judgment against the Defendants, Prestige Infusions LLC and Ali Atshan jointly, severally, and in the alternative for $65,356.44, together with accrued Agreements interest on the unpaid principal, attorneys' fees, and costs of suit.

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: 09/16/2025

## **CERTIFICATION**

Pursuant to R. 4:5-1 this controversy is not the subject of any other action pending in any court or any pending arbitration proceeding and no other action or arbitration proceedings are contemplated at this time.

The following parties should be joined in the action:  None.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

## **CERTIFICATION PURSUANT TO (R.1:38-7)**

I hereby certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with Rule 1:38-7(b).

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: 09/16/2025

# Civil Case Information Statement

## Case Details: CAMDEN | Civil Part Docket# L-003082-25

**Case Caption:** GULF COAST BANK & TR UST CO  VS PRESTIGE INFUSION

**Case Initiation Date:** 09/16/2025

**Attorney Name:** ROBERT L SALDUTTI

**Firm Name:** SALDUTTI LAW GROUP

**Address:** 1040 KINGS HIGHWAY NORTH STE 100 CHERRY HILL NJ 08034

**Phone:** 8564374035

**Name of Party:** PLAINTIFF : GULF COAST BANK & TRUST CO

**Name of Defendant's Primary Insurance Company**

(if known): None

**Case Type:** BOOK ACCOUNT (DEBT COLLECTION MATTERS ONLY)

**Document Type:** Complaint

**Jury Demand:** NONE

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: GULF COAST BANK & TRUST CO? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** NO

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
        **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
        **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** NO **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

09/16/2025                                                                    /s/ ROBERT L SALDUTTI
Dated                                                                              Signed

# EXHIBIT E

**GULF COAST BANK & TRUST CO**

Plaintiff

**Superior Court of New Jersey, Camden County Law Division**

vs.

**PRESTIGE INFUSIONS LLC AND ALI ATSHAN**

Defendant

Docket Number **L-3082-25**

Person to be served (Name & Address):

**ALI ATSHAN**
**1210 91ST ST 2, North Bergen, NJ 07047**

**AFFIDAVIT OF SERVICE**
(For Use by Private Service)



86536

Attorney: Robert Saldutti, Esq.,Saldutti Law Group, 1040 N Kings Hwy Ste 100 Cherry Hill, NJ 08034

Cost of Service pursuant to R. 4:4-3 (c)

$ _____

Papers Served: **NJ Summons, Complaint, Track Assignment Notice, and Civil Case Information Statement**

Service Data:
  Served Successfully __**X**__    Not Served _____    Date: **Oct 8, 2025** _____    Time: **9:32 PM** _____
  Attempts:__**1**_____

___ Delivered a copy to him / her personally

_**X**_ Left a copy with a competent household member over 14 years of age residing therein (indicate name & relationship at right)

___ Left a copy with a person authorized to accept service, e.g., managing agent, registered agent, etc.
(indicate name & official title at right)

Name of Person Served and relationship / title:
**BASAN ATSHAN, Son**

Description of Person Accepting Service:

Sex: **Male**_____    Age: **45**_____    Height:_**5' 9"**_____    Weight: **200**_____    Skin/Race: **Middle Eastern**Hair Color: **Black**_____

Unserved:
( ) Defendant is unknown at the address furnished by the attorney
( ) All reasonable inquires suggest defendant moved to an undetermined address
( ) No such street in municipality
( ) No response on:
  (Military Time)
( ) Other:

Doug R Voight
NOTARY PUBLIC
STATE OF NEW JERSEY
ID # 50034598
MY COMMISSION EXPIRES March 29 2026

Subscribed and Sworn to me this
**November 7, 2025**

Notary Signature
Name of Notary / commission expiration

I, **Manny Bay**, was at the time of service a competent adult not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

_____Date, **Nov 7, 2025**
Process Server Signature

**LawServe LLC, 123 South 22nd Street, Philadelphia, PA 19103**

# EXHIBIT F

**SALDUTTI LAW GROUP**
Robert L. Saldutti, Esquire-006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC<br>AND ALI ATSHAN<br><br>Defendant(s). | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br><br>Civil Action<br><br>**PROOF OF MAILING** |

On December 8, 2025, I the undersigned mailed to defendants, PRESTIGE INFUSIONS LLC AND ALI ATSHAN by regular mail, the following documents filed on 12/8/2025:

**Request to Enter Default; Certification of Non-Military Service;
Affidavit of Service; and Proof of Mailing**

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

SALDUTTI LAW GROUP


/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: December 15, 2025

# EXHIBIT G

**SALDUTTI LAW GROUP**
Robert L. Saldutti, Esquire-006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO, <br><br> Plaintiff, <br><br> v. <br><br> PRESTIGE INFUSIONS LLC <br> AND ALI ATSHAN <br><br> Defendant(s). | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> CAMDEN COUNTY <br><br> DOCKET NO. L-3082-25 <br><br> Civil Action <br><br> **FINAL JUDGMENT BY DEFAULT** <br> **AND TAXING OF COSTS** |

THIS MATTER coming before the court by Robert L. Saldutti, Esquire, from the Saldutti Law Group, appearing on behalf of the Plaintiff and it appearing that a Complaint was filed in this matter and that the Defendant was served with the Summons and Complaint and it further appearing that no Answer or appearance has been entered on behalf of the Defendant and that the time within which to file a responsive pleading having past and default having been entered and proper notice having been given pursuant to R.4:43-2(d) and other good cause having been shown;

IT IS on __16th__ day of __December__, 20__25__, ORDERED that judgment be and hereby is entered against the Defendant, Ali Atshan, and in favor of the Plaintiff, Gulf Coast Bank & Trust Co., in the amount of $66,126.93, together with contractual attorney's fees in the amount of $16,531.73 and court costs in the amount of $250.00, and attorney allowance for $40.00, for a total of $82,948.66.

/s/ Michelle M. Smith
Michelle M. Smith, Esq.
Clerk of the Superior Court

# EXHIBIT H

**INFORMATION SUBPOENA AND WRITTEN QUESTIONS**

**IMPORTANT NOTICE - PLEASE READ CAREFULLY**
**FAILURE TO COMPLY WITH THIS INFORMATION SUBPOENA**
**MAY RESULT IN YOUR ARREST AND INCARCERATION**

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Ste 100
Cherry Hill, NJ  08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>             Plaintiff,<br>v.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN,<br><br>             Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br>    Civil Action<br><br>**INFORMATION SUBPOENA** |

THE STATE OF NEW JERSEY, TO:

Ali Atshan
1210 91st St  2
North Bergen, NJ 07047

Judgment has been entered against you in the Superior Court of New Jersey, Law Division, Camden County, 12/16/2025, in the amount of $82,948.66 plus costs and interest from the date of Judgment.

Attached to this Information Subpoena is a list of questions that court rules require you to answer within 14 days from the date you receive this subpoena. If you do not answer the attached questions within the time required, the opposing party may ask the court to conduct a hearing in order to determine if you should be held in contempt.  You will be compelled to appear at the hearing and explain your reasons for your failure to answer.

If this judgment has resulted from a default, you may have the right to have this default judgment vacated by making an appropriate motion to the court. Contact an attorney or the clerk of the court for information on making such a motion. Even if you dispute the judgment you must answer all of the attached questions.

You must answer each question giving complete answers, attaching additional pages if necessary. False or misleading answers may subject you to punishment by the court. However, you need not provide information concerning the income and assets of others living in your household unless you have a financial interest in the assets or income. Be sure to sign and date your answers and return them to the address in the upper left-hand corner within 14 days.

SALDUTTI LAW GROUP
Attorneys for Plaintiff

*/s/ Robert L. Saldutti*                               */s/ Michelle M. Smith*
Robert L. Saldutti, Esquire                          Michelle M. Smith, Clerk
Dated: 12/17/2025

## QUESTIONS FOR INDIVIDUALS

1. Full name

_____

2. Address

_____

3. Birthdate

_____

4. Social Security #

_____

5. Driver's license # and expiration date

_____

6. Telephone                                    Cell
#_____    #_____

7. Full name and address of your employer

_____

_____

_____

(a) Your weekly salary: Gross _____ Net _____
(b) If not presently employed, name and address of last employer.

_____

_____

_____

8. Is there currently a wage execution on your salary? Yes _____ No _____

9. List the names, addresses and account numbers of all bank accounts on which your name appears.



10. If you receive money from any of the following sources, list the amount, how often, and the name and address of the source:

| Type | Amount & Frequency | Name & Address of Sources |
|---|---|---|
| Alimony | | |
| Loan Payments | | |
| Rental Income | | |
| Pensions | | |
| Bank Interest | | |
| Stock Dividends | | |
| Other | | |

11. Do you receive any of the following, which are exempt from levy? Any levy on disclosed exempt funds may result in monetary penalties including reimbursement of the debtor's out-of-pocket expenses.

| | | | |
|---|---|---|---|
| Social Security benefits | Yes ___ | Amount per month _____ | No___ |
| S.S.I. benefits | Yes ___ | Amount per month _____ | No___ |
| Welfare benefits | Yes ___ | Amount per month _____ | No___ |
| V.A. benefits | Yes ___ | Amount per month _____ | No___ |
| Unemployment benefits | Yes ___ | Amount per month _____ | No___ |
| Workers' compensation benefits | Yes ___ | Amount per month _____ | No___ |
| Child support payments | Yes ___ | Amount per month _____ | No___ |

Attach copies of the three most recent bank statements for each account listed in Question 9 that contains funds from these sources.

12. Do you own the property where you reside? Yes _____ No _____
If Yes, state the following:
(a) Name of the owner or owners

_____

(b) Date property was purchased

_____

(c) Purchase price

_____

(d) Name and address of mortgage holder

_____

_____

(e) Balance due on mortgage

_____

13. Do you own any other real estate? Yes _____ No _____
If Yes, state the following for each property:
(a) Address of property

_____

(b) Date property was purchased

_____

(c) Purchase price

_____

(d) Name and address of all owners

_____

_____

(e) Name and address of mortgage holder

_____

_____

(f) Balance due on mortgage

_____

(g) Name and address of all tenants and monthly rental paid by each tenant.

_____

_____

14. Does the present value of your personal property which includes automobiles, furniture, appliances, stocks, bonds, and cash on hand, exceed $1,000? Yes _____ No _____
If the answer is "yes," you must itemize all personal property owned by you.
Cash on hand: $_____

Other personal property: (Set forth make, model and serial number. If financed, give name and address of party to whom payments are made).

| Item | Date Purchased | Purchase Price | If Financed Balance Still Due | Present Value |
|------|----------------|----------------|-------------------------------|---------------|

15. Do you own a motor vehicle? Yes _____ No _____
If yes, state the following for each vehicle owned:
(a) Make, model and year of motor vehicle

_____
(b) If there is a lien on the vehicle, state the name and address of the lienholder and the amount due to the lienholder

_____
_____
(c) License plate number

_____
(d) Vehicle identification number

_____
16. Do you own or have an ownership interest in a business? Yes _____ No _____
If yes, state the following with respect to each business:
(a) Name and address of the business

_____
_____
_____
(b) Is the business a Corporation _____, sole proprietorship _____, partnership _____, or limited liability company_____?
(c) The name and address of all stockholders, officers, partners or members

_____
_____
_____
(d) The amount of income received by you from the business during the last twelve months

_____
_____
_____
17. Set forth all other judgments that you are aware of that have been entered against you and include:

| Creditor's Name | Creditor's Attorney | Amount Due | Name of Court | Docket # |
|---|---|---|---|---|
| | | | | |

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Date:_____          _____
                                                        ALI ATSHAN

# EXHIBIT I

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Ste 100
Cherry Hill, New Jersey 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN<br><br>Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25; J-149691-25<br><br>Civil Action<br><br>**WRIT OF EXECUTION** |

**THE STATE OF NEW JERSEY**
**TO THE SHERIFF OF THE COUNTY OF CAMDEN**

**WHEREAS**, on **12/16/2025**, judgment was recovered by the Plaintiff, in an action in the Superior Court of New Jersey, Law Division, Camden County, against **ALI ATSHAN**, for **$82,948.66** in damages, interest and taxed cost of suits; and

**WHEREAS**, on **12/19/2025** the judgment was entered as Judgment Number **J-149691-25** and there remains due thereon **$82,948.66** in damages plus costs, together with post-judgment interest.

**THEREFORE, WE COMMAND YOU** that you satisfy the said judgment out of the personal property of the said Judgment debtor(s) within your County; and if sufficient personal property cannot be found then, subsequent to your levy and only after receipt of an order of the court pursuant to *R*.4:59-1 (d), out of the real property in your County belonging to the judgment debtor(s) at the time when the judgment was entered or docketed in the office of the Clerk of this Court, or at any time thereafter, in whosesoever hands the same may be.  Any levy pursuant to this writ shall exclude (1) all funds in an account of the debtor with a bank or other financial institution, if all deposits into the account during the 90 days immediately prior to service of the writ were electronic deposits, made on a recurring basis, of funds identifiable by the bank or other financial institution as exempt from execution, levy or attachment under New Jersey or federal law, and (2) all funds deposited electronically in an account of the debtor with a bank or other financial institution during the  two months immediately prior to the account review undertaken by the bank or other financial institution in response to the writ that are identifiable by the bank or other financial institution as exempt from execution, levy or attachment under New Jersey or federal law.  You

shall pay said monies realized by you from such property to Robert L. Saldutti, Esq., attorney in this action. Within twenty-four months after the date of its issuance you shall return this execution and your proceedings thereon to the Clerk of the Superior Court of New Jersey at Trenton.

**WE FURTHER COMMAND YOU**, that in case of a sale, you make your return of this Writ with your proceedings thereon before this Court and you pay to the Clerk thereof any surplus in your hands within thirty days after the sale.

Witness, Hon. Robert Lougy, A.J.S.C., Judge of the Superior Court,
This 9th of February 2026.

/s/ Michelle M. Smith, Esq.
Clerk of the Superior Court

Entered in the Records of Executions
Issued in the Superior Court Clerk's Office

## ENDORSEMENT

| | |
|---|---|
| Judgment Date: | **12/16/2025** |
| Judgment Amount*: | $82,948.66 |
| Additional Costs: | $35.00 |
| Credits: | $0.00 |
| Interest thereon: | $774.95 |
| Sheriff Fees: | $50.00 |
| Sheriff's Commission: | $Tbd |
| **TOTAL DUE THIS DATE:** | $83,808.61 |

\* "Judgment Amount" includes amount of verdict or settlement, plus pre-judgment court cost, plus any applicable statutory attorney's fees.

Post-judgment Interest applied pursuant to *R.* 4:42-11 has been calculated as **simple interest**. As required by *R.* 4:59-1, attached is the method by which interest has been calculated, taking into account all partial payments made by the defendant.
**Interest from 12/16/2025-01/01/2026 @ 7.5% = $272.71**
**Interest from 01/01/2026-02/04/2026 @ 6.5% = $502.24**

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti
ROBERT L. SALDUTTI, ESQUIRE

Dated: February 4, 2026

# EXHIBIT J



1040 North Kings Highway • Suite 100 • Cherry Hill, NJ 08034
Tel: 856-779-0300 • Fax:856-281-3778

Robert L. Saldutti, Esquire
Direct: 856-437-4033
email: rsaldutti@slgcollect.com

January 16, 2026

**SENT VIA FIRST CLASS AND CERTIFIED MAIL**

Ali Atshan
1210 91st St  2
North Bergen, NJ 07047

RE:     Gulf Coast Bank & Trust Co v. Prestige Infusions LLC and Ali Atshan
        Docket No.: L-3082-25;  J-149691-25
        Our File No.: 52263

Dear Sir/Madam:

        Enclosed please find a Notice of Application for Wage Execution in regard to the above-captioned matter.

        Accordingly, I am notifying your employer of same.

                            Very truly yours,
                            SALDUTTI LAW GROUP

                            /s/Robert L. Saldutti

                            _____
                            ROBERT L. SALDUTTI, ESQUIRE

RLS/sd
Enclosures

Philadelphia, PA        Cherry Hill, NJ        Pittsburgh, PA        Woodbridge, NJ

www.SLGCollect.com



1040 North Kings Highway • Suite 100 • Cherry Hill, NJ 08034
Tel: 856-779-0300 • Fax:856-281-3778

Robert L. Saldutti, Esquire
Direct: 856-437-4033
email: rsaldutti@slgcollect.com

January 16, 2026

Hudson County Parks Department
Attn: Personnel Dept.
1 County Road 605
Jersey City, NJ 07304

RE:     Gulf Coast Bank & Trust Co v. Prestige Infusions LLC and Ali Atshan
        Docket No.: L-3082-25; J-149691-25
        Our File No: 52263

Dear Sir/Madam:

        Enclosed please find a Notice of Application for Wage Execution in regard to the above-captioned matter.

        Kindly notify my office in writing if the Defendant referenced on the Notice is not working for you, otherwise, a court Order to garnish will follow.

        Accordingly, I am notifying the Defendant of the same.

                                        Very truly yours,
                                        SALDUTTI LAW GROUP

                                        /s/Robert L. Saldutti
                                        _____
                                        ROBERT L. SALDUTTI, ESQUIRE

RLS/sd
Enclosures

Philadelphia, PA        Cherry Hill, NJ        Pittsburgh, PA        Woodbridge, NJ

www.SLGCollect.com

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ  08034
(856) 779-0300
Attorneys for Plaintiff/52263

| GULF COAST BANK & TRUST CO,<br><br>Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN<br><br>Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br><br>Civil Action<br><br>**NOTICE OF APPLICATION**<br>**FOR WAGE EXECUTION** |

TO:    Ali Atshan                                          Hudson County Parks Department
          1210 91st St 2                                    1 County Road 605
          North Bergen, NJ 07047                    Jersey City, NJ 07304
          Social Security #xxx-xx-x571

TAKE NOTICE that an application is being made by the judgment-creditor to the above-named Court, located at 101 South 5th Street, Camden, NJ 08105, for a Wage Execution Order to issue against your salary, to be served on your employer, Hudson County Parks Department 1 County Road 605, Jersey City, NJ 07304, for: (a) 10% of your gross salary when the same shall equal or exceed the amount of $217.50 per week; or (b) 25% of your disposable earnings for that week; or (c) the amount, if any, by which your disposable weekly earnings exceed $217.50, whichever shall be the least.  Disposable earnings are defined as that portion of the earnings remaining after the deduction from the gross earnings of any amounts required by law to be withheld.  In the event the disposable earnings so defined are $217.50 or less, if paid weekly, or $435.00 or less, if paid every two weeks, of $471.25 or less, if paid twice per month, of $942.50, or less, if paid monthly then no amount shall be withheld under this execution.  In no event shall more than 10% of gross salary be withheld and only one execution against your wages shall be satisfied at a time.  Your employer may not discharge, discipline or discriminate against you

because your earnings have been subjected to garnishment.

You may notify the Clerk of the Court and the attorneys for judgment-creditor, whose address appears above, in writing, within ten (10) days after service of this notice upon you, why such Order should not be issued, and thereafter the application for the Order will be set down for a hearing of which you will receive notice of the date, time and place.

If you do not notify the Clerk of the Court and judgment-creditor's attorney, or the judgment-creditor if there is no attorney, in writing of your objection, you will receive no further notice and the Order will be signed by the Judge as a matter of course.

You also have the continuing right to object to the wage execution or apply for a reduction in the amount withheld even after it has been issued by the Court. To object or apply for a reduction, file a written statement of your objection or reasons for a reduction with the Clerk of the Court and send a copy to the creditor's attorney or directly to the creditor if there is no attorney. You will be entitled to a hearing within 7 days after you file your objection or application for reduction.

## **CERTIFICATION OF SERVICE**

I served the within Notice upon the judgment-debtor, Ali Atshan on this date by sending it simultaneously by regular and certified mail, return receipt requested, to the judgment-debtor's last known address, set forth above.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to the punishment.

/s/Robert L. Saldutti

_____
ROBERT L SALDUTTI, ESQUIRE
Attorney for Judgment-Creditor

Dated: January 16, 2026

# EXHIBIT K

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Ste 100
Cherry Hill, New Jersey 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| | |
|---|---|
| GULF COAST BANK & TRUST CO, <br><br> Plaintiff, <br><br> v. <br><br> PRESTIGE INFUSIONS LLC AND ALI ATSHAN <br><br> Defendant | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> CAMDEN COUNTY <br><br> DOCKET NO. L-3082-25;  J-149691-25 <br><br> Civil Action <br><br> **SUPPLEMENTAL PROOF OF SERVICE** |

I am an attorney at law in the State of New Jersey associated with the firm of Saldutti Law Group attorneys for the plaintiff and am familiar with the facts of this case.

The plaintiff's application for wage execution was served by sending it simultaneously by regular and certified mail, return receipt requested, to the defendant's last known address at:

365 W Passaic St Ste 400 Rochelle Park, NJ 07662

The certified mail was:

(xx)    accepted on January 23, 2026

(  )    returned to my office "unclaimed" on _____; regular mail was not returned.

(  )    refused and returned to my office on _____

(  )    returned to my office on _____ marked:

    ( )    moved, left no forwarding address

    ( )    forwarding time expired

       ( )    Pursuant to Rule 1:5-2, a copy of the application for wage execution was served upon the Clerk of the Court on _____.

I certify that the foregoing statements made by me are true.  I am aware at if any of the foregoing statements made by me are willfully false, I am subject to punishment.

SALDUTTI LAW GROUP

/s/ Robert L. Saldutti

_____
ROBERT L. SALDUTTI, ESQUIRE

Dated: February 11, 2026

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Ste 100
Cherry Hill, New Jersey 08034
(856) 779-0300
ATTORNEYS FOR PLAINTIFF/52263

| GULF COAST BANK & TRUST CO, <br><br> Plaintiff, <br><br> v. <br><br> PRESTIGE INFUSIONS LLC AND ALI ATSHAN <br><br> Defendant | SUPERIOR COURT OF NEW JERSEY LAW DIVISION CAMDEN COUNTY <br><br> DOCKET NO. L-3082-25;  J-149691-25 <br><br> Civil Action <br><br> **ORDER, CERTIFICATION AND EXECUTION AGAINST EARNINGS** |
|---|---|

**DEFENDANT:** Ali Atshan
**EMPLOYER:** Hudson County Parks Department
**ADDRESS:** 1 County Road 605, Jersey City, NJ 07304

The certification set forth below being considered, it is on this ___day of _____, ORDERED that execution issue against the earnings of the judgment debtor, Ali Atshan from judgment debtor's employer, Hudson County Parks Department, located at 1 County Road 605, Jersey City, NJ 07304 for the lesser of the following: (a) 10 percent of your gross salary when the same shall equal or exceed the amount of $217.50 per week; or (b) 25 percent of your disposable earnings for that week; or (c) the amount, if any, by which your disposable weekly earnings exceed $217.50, until the total amount due has been deducted or the complete termination of employment.  Upon either of these events, an immediate accounting is to be made to an officer of the Court.

Disposable earnings are defined as that portion of the earnings remaining after the deduction from the gross earnings of any amounts required by law to be withheld.  In the event the disposable earnings so defined are $217.50 or less, if paid weekly, or $435.00 or less, if paid every two weeks, of $471.25 or less, if paid twice per month, of $942.50, or less, if paid monthly then no amount shall be withheld under this execution.  In no event shall more than 10 percent of gross salary be withheld. The employer shall immediately give the designated defendant a copy of this order. The designated defendant may object to the wage execution or apply for a

reduction in the amount withheld at any time. To object or apply for a reduction, a written statement of the objection or reasons for a reduction must be filed with the Clerk of the Court and a copy must be sent to the creditor's attorney or directly to the creditor if there is no attorney. A hearing will be held within 7 days after filing the objection or application for a reduction. According to law, no employer may terminate an employee because of a garnishment.

_____

J.S.C

## CERTIFICATION

I, Robert L. Saldutti, Esquire, hereby certify as follows:

1.      I am an attorney admitted to practice law in the state of New Jersey and am fully familiar with the facts of this case.

2.      On December 16. 2025, this Court entered Judgment in favor of plaintiff and against the defendant in the amount of $82,948.66.

3.      There is still due on said judgment $82,948.66, plus interest of $0.00, making a total of $82,948.66, besides costs.  Judgment-debtor is to pay all court officer fees and post judgment interest.

4.      The said judgment-debtor is employed by Hudson County Parks Department, located at 1 County Road 605, Jersey City, NJ 07304.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

/s/ Robert L. Saldutti

_____
ROBERT L. SALDUTTI, ESQUIRE

Date: February 11, 2026

**HOW TO CALCULATE PROPER GARNISHMENT AMOUNT**

(1)     Gross Salary per pay period . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . $_____

(2)     LESS:
        Amounts Required by Law to be Withheld:
        (a)     U.S. Income Tax . . . . . . . . . . . . . . . . .$ _____

        (b)     FICA (social security) . . . . . . . . . . . . . .$_____

        (c)     State Income Tax, ETT, etc. . . . . . . . . . ._$_____

        (d)     N.J. SUI . . . . . . . . . . . . . . . . . . . . . . . . $_____

        (e)     Other state or Municipal
                Withholding . . . . . . . . . . . . . . . . . . . . . $_____

        (f)     Total . . . . . . . . . . . . . . . . . . . . . . . . . . $_____   - $_____

(3)     EQUALS "disposable earnings" . . . . . . . . . . . . . . . . . . . . . . . . .= $_____

(4)     If salary is paid:
        -- weekly, then subtract $217.50
        -- every two weeks, then subtract $435.00
        -- twice per month, then subtract $471.25
        -- monthly, then subtract $942.50
        (Federal law prohibits any garnishment when
        "disposable earnings" are smaller than the
        amount on line 4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .- $_____

(5)     Equals the amount potentially subject to garnishment
        (If less than zero, enter zero) . . . . . . . . . . . . . . . . . . . . . . . . . . . . =$_____

(6)     Take "disposable earnings" (Line 3) and multiply
        by .25: $____ x .25=$_____ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

(7)     Take the gross salary (Line 1) and multiply by .10
        $____ x.10=$_____ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

(8)     Compare lines 5, 6, and 7 - the amount which may
        lawfully be deducted is the <u>smallest</u> amount on
        line 5, line 6, or line 7, i.e., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $_____

Source:  15 U.S.C. 1671 et seq.; 29 C.F.R. 5870; N.J.S.A. 2A:17-50 et seq.

**UNITED STATES POSTAL SERVICE**

Date Produced: 01/26/2026

ConnectSuite Inc.:

The following is the delivery information for Certified Mail™/RRE item number 9214 8901 9403 8352 4985 64. Our records indicate that this item was delivered on 01/23/2026 at 03:15 p.m. in NORTH BERGEN, NJ 07047. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :       **1210 91ST ST, NORTH BERGEN, NJ 07047**

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance, please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal Service. It is solely for customer use.

This USPS proof of delivery is linked to the customers mail piece information on file as shown below:

ALI ATSHAN
1210 91ST ST
# 2
NORTH BERGEN NJ 07047-4419

Customer Reference Number:       C6504207.39785636

SALDUTTI LAW GROUP
Robert L. Saldutti, Esquire - 006871992
1040 N. Kings Highway, Suite 100
Cherry Hill, NJ  08034
(856) 779-0300
Attorneys for Plaintiff/52263

| GULF COAST BANK & TRUST CO,<br><br><br>            Plaintiff,<br><br>v.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN<br><br><br>            Defendants | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION<br>CAMDEN COUNTY<br><br>DOCKET NO. L-3082-25<br><br>   Civil Action<br><br>**NOTICE OF APPLICATION**<br>**FOR WAGE EXECUTION** |

TO:    Ali Atshan                                           Hudson County Parks Department
       1210 91st St 2                                       1 County Road 605
       North Bergen, NJ 07047                               Jersey City, NJ 07304
       Social Security #xxx-xx-x571

TAKE NOTICE that an application is being made by the judgment-creditor to the above-named Court, located at 101 South 5th Street, Camden, NJ 08105, for a Wage Execution Order to issue against your salary, to be served on your employer, Hudson County Parks Department 1 County Road 605, Jersey City, NJ 07304, for: (a) 10% of your gross salary when the same shall equal or exceed the amount of $217.50 per week; or (b) 25% of your disposable earnings for that week; or (c) the amount, if any, by which your disposable weekly earnings exceed $217.50, whichever shall be the least.  Disposable earnings are defined as that portion of the earnings remaining after the deduction from the gross earnings of any amounts required by law to be withheld.  In the event the disposable earnings so defined are $217.50 or less, if paid weekly, or $435.00 or less, if paid every two weeks, of $471.25 or less, if paid twice per month, of $942.50, or less, if paid monthly then no amount shall be withheld under this execution.  In no event shall more than 10% of gross salary be withheld and only one execution against your wages shall be satisfied at a time.  Your employer may not discharge, discipline or discriminate against you

because your earnings have been subjected to garnishment.

You may notify the Clerk of the Court and the attorneys for judgment-creditor, whose address appears above, in writing, within ten (10) days after service of this notice upon you, why such Order should not be issued, and thereafter the application for the Order will be set down for a hearing of which you will receive notice of the date, time and place.

If you do not notify the Clerk of the Court and judgment-creditor's attorney, or the judgment-creditor if there is no attorney, in writing of your objection, you will receive no further notice and the Order will be signed by the Judge as a matter of course.

You also have the continuing right to object to the wage execution or apply for a reduction in the amount withheld even after it has been issued by the Court.  To object or apply for a reduction, file a written statement of your objection or reasons for a reduction with the Clerk of the Court and send a copy to the creditor's attorney or directly to the creditor if there is no attorney.  You will be entitled to a hearing within 7 days after you file your objection or application for reduction.

## **CERTIFICATION OF SERVICE**

I served the within Notice upon the judgment-debtor, Ali Atshan on this date by sending it simultaneously by regular and certified mail, return receipt requested, to the judgment-debtor's last known address, set forth above.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to the punishment.

/s/Robert L. Saldutti

_____
ROBERT L SALDUTTI, ESQUIRE
Attorney for Judgment-Creditor

Dated: January 16, 2026

# EXHIBIT L

**SALDUTTI LAW GROUP**
Robert L. Saldutti, Esquire – 006871992
Thomas B. O'Connell, Esquire - 031102008
800 N. Kings Highway, Suite 300
Cherry Hill, NJ 08034
(856) 779-0300
Attorneys for Plaintiff

| | |
|---|---|
| SANTANDER BANK, N.A., F/K/A SOVEREIGN BANK, N.A., <br><br> Plaintiff, <br><br> v. <br><br> HEINE ASSOCIATES, P.A. AND MICHAEL HEINE <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> CAMDEN COUNTY <br><br> DOCKET NO. L-4399-18 <br><br> Civil Action <br><br> **CERTIFICATION OF ALAN FERN** |

I, Alan Fern, of full age, hereby certifies as follows:

1.     I am a Vice President of Santander Bank, N.A., formerly known as Sovereign Bank, N.A. ("Plaintiff" or "Santander").

2.     I have personal knowledge of the facts set forth herein. I am familiar with Santander's books and business records, including the financial obligation for which Santander seeks relief in this litigation.

### i.     Loan and Guaranty

3.     In 2013, Michael Heine, Esq. ("Heine"), on behalf of Heine Associates, P.A. ("Heine Associates"), entered into a loan agreement with Santander Bank, N.A., formerly known as Sovereign Bank, N.A. ("Santander" or "Plaintiff") for a commercial line of credit ("the Loan") in the principal amount of $50,000.00. Heine executed a promissory note ("the Note") memorializing Heine Associates' obligations under the Loan, including the obligation to

make monthly payments to Santander. A true and correct copy of the Note is attached as Exhibit A.

4.      Heine executed an unconditional, personal guaranty ("the Guaranty") of the obligations of Heine Associates to Santander. A true and correct copy of the Guaranty is attached as Exhibit B.

5.      Heine Associates agreed that the failure to make payment on the Loan, when due, was an Event of Default (a). Heine Associates agreed that the failure of Heine Associates or Heine (collectively, "Defendants" ) to make payment of "any obligations to others as they mature" was as an Event of Default (b). Heine Associates agreed that the entry of any judgment against Defendants that remained unsatisfied for thirty (30) days was an Event of Default (c). Heine Associates agreed that the issuance of any levy or attachment against any property of Defendants was an Event of Default (d). Heine Associates agreed that the occurrence of any substantial change in the financial or other condition of Defendants that, in the sole judgment of Santander, was materially adverse was an Event of Default (e). Heine Associates agreed that the failure of Defendants to timely furnish to Santander financial information requested was an Event of Default (i). Heine Associates agreed that Santander deemed itself insecure, an Event of Default (j) occurred.

6.      By its express terms, the Note provided:

> **EVENTS OF DEFAULT.** Each of the following shall be an "Event of Default" hereunder: (a) the nonpayment when due of any amount owing by Borrower to Lender hereunder . . . . (b) if Borrower or any Guarantor becomes insolvent . . . or fails to pay any obligations to others as they mature . . . . (c) the entry of any judgment against any Borrower or any Guarantor . . . which remains unsatisfied for thirty (30) days; (d) the issuing of any attachment, levy or garnishment against any property of Borrower or any Guarantor; (e) the occurrence of any substantial change in

the condition (financial or otherwise) of any Borrower or any Guarantor that, in the sole judgment of Lender, is materially adverse . . . (i) the failure of Borrower or any Guarantor to timely furnish to Lender such financial information and other information as Lender may reasonably request or require pursuant to the Loan Documents or otherwise; or (j) Lender deems itself insecure.

**EFFECTS OF AN EVENT OF DEFAULT.** If any Event of Default shall occur . . . all commitments and obligations of Lender under this Note or any other agreement will immediately terminate (including any obligation to make further advances or disbursements), and, at Lender's option, at any time and from time to time, any or all obligations, in whole or in part, of Borrower to Lender immediately will become due and payable, all without notice of any kind of Borrower or any Guarantor, except that in the case of an Event of Default of the type described in subsection (b) of the EVENTS OF DEFAULT section above, such acceleration shall be automatic and not optional.

. . . .

**EXPENSES.** Lender shall be entitled to collect all expenses incurred in pursuing any payment due hereunder that is not paid when due, whether in accordance with the terms hereof, or by acceleration or otherwise (including all costs and attorney's fees incurred in connection with any collection proceedings . . . involving Borrower), and Borrower agrees to pay all costs of collection including, without limitation, reasonable attorneys' fees and costs of in-house and/or outside counsel.

. . . .

**WAIVERS; AMENDMENTS.** Borrower waives the requirements of demand . . . and all other demands or notices of any kind in connection with the . . . acceptance, performance, default, dishonor or enforcement of this Note. No amendment of this Note and no waiver of any one or more provisions hereof shall be effective unless set forth in writing signed by Borrower and Lender.

[Exhibit A.]

7.   The Note required Heine Associates to "maintain its primary deposit

relationship" with Santander (Exhibit A).

### ii. Notices of Default, Acceleration, and Demand for Payment in full

8. Defendants failed to submit timely payments, when due, under the Note and Guaranty. As a result of Defendants' default on the Note and Guaranty, Santander terminated Heine Associates' ability to obtain further advances of credit and, on November 3, 2017, sent written notice of default via regular and certified mail in which Santander advised Defendants of the default, demanded payment immediately and in full ("the November 3, 2017 Notice of Default"). A true and correct copy of the November 3, 2017 Notice of Default is attached as Exhibit C.

9. Santander has never knowingly, expressly, or voluntarily waived the notice of default, acceleration, or demand for payment in the November 3, 2017 Notice of Default.

10. Defendants failed to submit the payment demanded by the November 3, 2017 Notice of Default. Defendants failed to respond to the November 3, 2017 Notice of Default.

11. On November 10, 2017, Santnader sent another Notice of Default to Defendants ("the November 10, 2017 Notice of Default"). A true and correct copy of the November 10, 2017 Notice of Default is attached as Exhibit D.

12. The November 10, 2017 Notice of Default advised Defendants, in writing, that "one or more Events of Default exist under the Loan . . . . including, but not limited to your failure to make payments when due under the Notes (the "Default") (Exhibit D).

13. The November 10, 2017 Notice of Default advised Defendants that "Failure to immediately cure this default will leave the Bank with no choice but to pursue its rights and remedies under the loan documentation. Please contact the undersigned upon receipt of this letter so we may discuss the resolution of your defaulted loan arrangement." (Exhibit D).

14. The November 10, 2017 Notice of Default advised Defendants that responsibility for the loan had been transferred to Santander's Workout Division and "all future correspondence should be directed to my attention at the address above." (Exhibit D).

15. Santander has never knowingly, expressly, or voluntarily waived the Notice of Default and "Events of Default" in the November 10, 2017 Notice of Default.

16. Defendants failed to contact Santander's Workout Division in response to the November 10, 2017 Notice of Default. Defendants failed to submit any payment in response to the November 10, 2017 Notice of Default.

### iii. Referral to counsel, litigation, and instructions to Defendants to communicate with counsel

17. As of December 7, 2017, Santander had retained outside counsel, Saldutti Law Group, to pursue the accelerated balance on Defendants' defaulted loan.

18. Santander has never knowingly, expressly, or voluntarily waived Saldutti Law Group's authority to represent Santander in Saldutti Law Group's communications with Defendants.

19. Santander has never knowingly, expressly, or voluntarily waived Saldutti Law Group's authority to represent Santander in the pleadings filed with the Court in this litigation.

20. Saldutti Law Group, on behalf of Santander, sent written notice of default, acceleration, and demand for payment to Defendants on December 7, 2017 (O'Connell Cert. at Ex. A). Santander has never knowingly, expressly, or voluntarily waived the December 7, 2017 Notice of Default sent by Saldutti Law Group to Defendants on behalf of Santander.

21. On December 12, 2017, Saldutti Law Group instructed Defendants, in writing, to submit any proposed offers in writing along with a request for specific financial disclosures

(O'Connell Cert. at Ex. B). Santander has never knowingly, expressly, or voluntarily waived the demand for financials made by Saldutti Law Group, on behalf of Santander.

22.    On December 20, 2017, Santander filed the above-captioned Complaint against Defendants alleging breach of contract (O'Connell Cert. at Ex. C). Santander has never knowingly, expressly, or voluntarily waived the allegations in the Complaint filed in this litigation.

23.    On December 21, 2017, Mr. Heine attempted to contact the Workout Division, the department identified on the November 10, 2017 Notice of Default. Mr. Heine spoke with Barbara Burkes, the Workout Officer identified on the November 10, 2017 letter. Ms. Burkes conversation with Mr. Heine, in which she advised Defendants to communicate with Santander's outside counsel, was memorialized in the following call log entry

| 12/21/17 | BB recd call from Borrower, does not want file to be assigned to an attorney, want to continue to pay, advised Borrower must speak with attorney to resolve matter at this time |
|---|---|

A true and correct copy of the call log is attached as Exhibit E.

24.    Santander has never knowingly, expressly, or voluntarily waived any instructions for Defendants to communicate with Saldutti Law Group, as counsel for Santander, including Ms. Burkes December 21, 2017 communication memorialized in the call log attached as Exhibit E.

25.    Defendants have apparently received or procured invoices after the matter was referred to Saldutti Law Group. Defendants' receipt or procurement of invoices by mail or email at any time since November 3, 2017 has not been a knowing, intentional, or voluntary waiver of the November 3, 2017 Notice of Default, November 10, 2017 Notice of Default,

Saldutti Law Group's December 7, 2017 Notice of Default made on behalf of Santander, Saldutti Law Group's December 12, 2017 demand for financials, or the allegations in the Complaint.

26.     Santander's accounting system automatically generates and prepares monthly statements on all loans, regardless of whether or not the loan has been accelerated, defaulted, or is the subject of litigation. The automatically-generated monthly statements identify a percentage of the principal balance owed based on an algorithm. The automatically-generated monthly statements are not representative of any knowing, intentional, or voluntary waiver or settlement.

27.     After Santander sent Defendants written Notice of Default on November 3, 2017 and November 10, 2017, Santander did not stop generating or mailing the automatically-generated monthly statements, which were not a knowing, intentional, or voluntary waiver of Defendants' default, the accelerated amount due, or the claims asserted in this litigation. After Santander retained counsel and commenced litigation, Santander did not stop generating or mailing the automatically-generated invoices, which were not a knowing, intentional, or voluntary waiver of Defendants' default, the accelerated amount due, or the claims asserted in this litigation. After learning of Defendants' attempt to mischaracterize the monthly, automatically-generated statement dated December 22, 2017 as a "settlement" or "waiver," Santander stopped mailing Defendants monthly, automatically-generated statements on January 21, 2018.

28.     Although Santander has stopped mailing Defendants monthly, automatically-generated statements, Santander's internal system continues to automatically generate monthly statements based on an algorithm. It is my understanding that Defendants have contacted

customer service representatives to request and procure these monthly statements that Santander deliberately stopped mailing. Santander's customer service representatives, unaware and uninvolved with the litigation, have provided these automatically-generated monthly statements to Defendants by email. Santander has never sent these automatically-generated monthly statements as part of a "settlement" or knowing waiver of Defendants' default.

29.    Santander has a procedure for resolving defaulted loans such as the one at issue. Santander requires financial disclosures. Defendants have not produced the financial disclosures required by Santander and initially requested by counsel in December of 2017. Santander's mailing and/or emailing automatically-generated monthly statements is not a waiver of Santander's settlement procedures and requirements for Defendants to produce financial disclosures. Santander does not send automatically-generated monthly statements in lieu of its procedure for obtaining financial disclosures to resolve defaulted loans and litigation.

30.    Santander enters into written resolutions for defaulted loans and litigation. Santander's mailing and/or emailing automatically-generated monthly statements is not a waiver of Santander's settlement procedures and requirements for written agreements resolving defaulted loans and litigation. Santander does not send automatically-generated monthly statements in lieu of its procedure for entering into written agreements to resolve defaulted loans and litigation.

31.    As early as January 21, 2018, Santander deliberately stopped mailing invoices to Defendants.

32.    Since that time, Defendants have attempted to directly contact Santander's Workout Division. We have advised Defendants to communicate with Saldutti Law Group, as Plaintiff's counsel.

33.     Defendants appear to have communicated with departments of Santander other than the Workout Department, including a local branch and customer service representatives by telephone and email.  The Workout Division and Saldutti Law Group, as outside counsel on behalf of Santander, have retained responsibility for this Loan during these communications.

**iv.     Santander learns of additional events of default, advises Defendants of additional events of default, instructs Defendants to communicate with Santander's counsel**

34.     During the course of this litigation, Santander has learned about additional events of default besides non-payment.  Public court filings confirm that Corinne Davies obtained judgment against Heine Associates in May of 2018 in the case captioned as Davies v. Heine Associates, WC-1371-1217-022, a judgment entered for Heine Associates' failure to pay mature financial obligations to a third party, was docketed on June 18, 2018 under docket DJ-096267 ("the Davies Judgment") (O'Connell Cert. at Ex. O).  Public court filings confirm Heine Associates failed to satisfy the Davies Judgment within thirty (30) days (O'Connell Cert. at Ex. O).  Public court filings confirm Heine Associates' request for a *de novo* appeal of the Department of Wage and Hour's entry of the Davies Judgment was denied on February 15, 2019 (O'Connell Cert. at Ex. AM).

35.     The entry of the Davies Judgment, Heine Associates' failure to satisfy the Davies Judgment within thirty (30) days of its entry, and Heine Associates failure to notify Santander of the Davies Judgment – an adverse, material financial change arising from Heine Associates' failure to pay mature financial obligations to a third party - is an Event of Default under provisions (b), (c), (e) and (j) of the Note.  As a result of the Davies Judgment, Santander deems itself insecure, an Event of Default under provision (j) of the Note.

36.     Santander has never knowingly, expressly, or voluntarily waived any events of default resulting from the Davies Judgment.

37.     Without waiving any prior notices of default, demand for payment, and acceleration of all sums due, Santander demands all sums due under the Loan as a result of Defendants' default under provisions (b), (c), (e) and (j) relating to the Davies Judgment.

38.     Without waiving any prior notices of default, demand for payment, and acceleration of all sums due, Defendants' default under provision (b) relating to the Davies Judgment is "automatic and not optional" for Heine Associates' failure to pay obligations as they matured. As a result of the "Event of Default" under provision (b) relating to the Davies Judgment, all sums are automatically accelerated, demanded, and due and owing.

39.     Public court filings confirm that on July 8, 2014, 1008 Astoria Boulevard Associates, LLC obtained judgment against Heine Associates, P.A. in the matter of 1008 Astoria Boulevard Associates, LLC v. Heine Associates, P.A., Docket No. DC-015950-13 and docketed under DJ-165984-14 ("the Astoria Boulevard Judgment") (O'Connell Cert. at Exs. Q & R). Public court filings confirm Heine Associates failed to satisfy the Astoria Boulevard Judgment within thirty (30) days (O'Connell Cert. at Exs. Q & R).

40.     The entry of the Astoria Boulevard Judgment, Heine Associates' failure to satisfy the Astoria Boulevard Judgment within thirty (30) days of its entry, and Heine Associates' failure to advise Santander of the Astoria Boulevard Judgment – an adverse, material financial change arising from Heine Associates' failure to pay mature financial obligations to a third party - is an Event of Default under provisions (b), (c), (e) and (j) of the Note. As a result of the Davies Judgment, Santander deems itself insecure, an Event of Default under provision (j) of the Note.

41.     Santander has never knowingly, expressly, or voluntarily waived any events of default resulting from the Astoria Boulevard Judgment.

42.     Without waiving any prior notices of default, demand for payment, and acceleration of all sums due, Santander demands all sums due under the Loan as a result of Defendants' default under provisions (b), (c), (e) and (j) relating to the Astoria Boulevard Judgment.

43.     Without waiving any prior notices of default, demand for payment, and acceleration of all sums due, Defendants' default under provision (b) relating to the Astoria Boulevard Judgment is "automatic and not optional" for Heine Associates' failure to pay obligations as they matured.  As a result of the "Event of Default" under provision (b) relating to the Astoria Boulevard Judgment, all sums are automatically accelerated, demanded, and due and owing.

44.     Public court records confirm that in November of 2016, a Writ of Execution was issued upon the Astoria Boulevard Judgment and an account of Heine Associates was levied upon ("the Astoria Boulevard levy") (O'Connell Cert. at Exs. T & U).  The Astoria Boulevard Levy is another event of default under provision (d), (e) and (j) of the Note, as a result of  for which Santander deems itself insecure.

45.     Santander has never knowingly, expressly, or voluntarily waived any events of default resulting from the Astoria Boulevard levy.

46.     Without waiving any prior notices of default, demand for payment, and acceleration of all sums due, Santander demands all sums due under the Loan as a result of Defendants' default under provisions (b), (c), (e) and (j) relating to the Astoria Boulevard levy.

47.     Public court records confirm that on December 21, 2016, the State of New Jersey

Division of Employer Accounts obtained judgment against Heine Associates, P.A. in the matter of State of New Jersey v. Heine Associates, Docket No. EA-00650-16 ("the 2016 Judgment") (O'Connell Cert. at Ex. V). Public court records confirm Heine Associates failed to satisfy the Astoria Boulevard Judgment within thirty (30) days.

48.     The entry of the 2016 Judgment, Heine Associates' failure to satisfy the 2016 Judgment within thirty (30) days of its entry, and Heine Associates' failure to advise Santander of the 2016 Judgment – an adverse, material financial change arising from Heine Associates' failure to pay mature financial obligations to a third party - is an Event of Default under provisions (b), (c), (e) and (j) of the Note. As a result of the 2016 Judgment, Santander deems itself insecure, an Event of Default under provision (j) of the Note.

49.     Santander has never knowingly, expressly, or voluntarily waived any events of default resulting from the 2016 Judgment.

50.     Without waiving any prior notices of default, demand for payment, and acceleration of all sums due, Santander demands all sums due under the Loan as a result of Defendants' default under provisions (b), (c), (e) and (j) relating to the 2016 Judgment.

51.     Without waiving any prior notices of default, demand for payment, and acceleration of all sums due, Defendants' default under provision (b) relating to the 2016 Judgment is "automatic and not optional" for Heine Associates' failure to pay obligations as they matured. As a result of the "Event of Default" under provision (b) relating to the 2016 Judgment, all sums are automatically accelerated, demanded, and due and owing.

52.     Defendants have never produced financials in response to the request for financials made on December 12, 2017. Defendants' failure to produce financials in response to the request made on December 12, 2017 is an Event of Default under provision (i).

53. On August 28, 2018, Santander's counsel, on behalf of Santander, advised Defendants of the additional events of default arising from the Davies Judgment, Astoria Boulevard Judgment and levy, and 2016 Judgment and demanded financials from Defendants (O'Connell Cert. at Exs. W & X).

54. Defendants' failure to produce financials is an Event of Default under provision (i).

55. Without waiving any prior notices of default, demand for payment, and acceleration of all sums due, Santander demands all sums due under the Loan as a result of Defendants' default under "Event of Default" provision (i).

56. As of March 7, 2019, Defendants' balance is the total of the principal of $20,663.41, interest of $662.35, and late fees of $146.10, for a total of $21,471.86, not including contractual costs and attorney's fees.

57. Santander has never knowingly, willingly, or voluntarily waived any events of default arising from Defendants' failure to pay financial obligations to third parties; the entry of Judgment against Defendants by third-parties; any levy or execution by third-party Judgment Creditors against Defendants; and Defendants' failure to provide financials for which Santander has declared default and seeks relief in this litigation.

58. Santander has never knowingly, willingly, or voluntarily waived any events of default arising from Santander's deeming itself insecure for which Santander has declared default and seeks relief in this litigation.

I certify that the foregoing statements are true to the best of my knowledge, information and belief. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

SANTANDER BANK, N.A.

ALAN FERN
Vice President

Date: March 7, 2019

# EXHIBIT A

CAM-L-003082-25   03/11/2026 4:38:58 PM   Pg 67 of 85   Trans ID: LCV2026637821
Case 2:26-cv-04496-ES-SDA   Document 2   Filed 04/23/26   Page 212 of 286 PageID: 219

Page 1 of 5
212



## AUTHORIZING RESOLUTION
(For corporation, limited liability company and other entity applicants.)

RESOLVED, That _Michael Heine, President_ is authorized to apply for credit on behalf of _Heine Associates, P.A._ (the "Borrower"); and

FURTHER RESOLVED,That each of the above-named individual(s) is(are) authorized to sign and deliver any notes, in any amount, security agreements encumbering all or any of the Borrower's assets and any renewals, modifications, extensions and other agreements related thereto on behalf of this Borrower.

CERTIFICATION. I certify that: I am the Secretary, Assistant Secretary or other authorized official of the Borrower; the foregoing resolutions were adopted by the Borrower's Board of Directors, General Partners, Managers or other governing body; are in conformity with the provisions or the Borrower's organizational documents; are in full force and effect and have not been modified or revoked; and the signatures and titles set forth in the attached documents are the genuine signatures and titles of the persons indicated.

Signature of Secretary or Assistant Secretary,
General Partner or Member

Date   9/5/13

## PROMISSORY NOTE

Dated as of: _9/5/2013_

Loan/Line No. _

FOR VALUE RECEIVED, ON THE DAY ONE YEAR FROM THE DATE HEREOF, subject to extension on the terms and conditions provided herein (the "Maturity Date"), _Heine Associates, P.A._ (jointly and severally as applicable, the "Borrower") with an address at _1060 Kings Highway North,   Cherry Hill, N.J. 08034-1910_ unconditionally, and without setoff, promises to pay to the order of Sovereign Bank, N.A. (the "Lender") the principal sum of _$50,000.00_ (or such lesser amount as may have been advanced by Lender to or on behalf of Borrower in connection with the loan evidenced hereby and shall be outstanding) plus interest at the rate and according to the terms provided for in this Promissory Note (this "Note") until paid in full.

This Note evidences a line of credit (the "Line of Credit"). All unpaid principal, interest, late charges and all other amounts recoverable hereunder and under any other documents executed in connection herewith (the "Loan Documents") shall be due and payable on the Maturity Date. Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning on _October 05, 2013_, with all subsequent interest payments to be due on the same day of each month thereafter. Except as may otherwise be provided or modified herein, interest shall accrue on all amounts outstanding from time to time at a variable per annum rate equal to the sum of the Prime Rate (as defined herein) plus _8.00 %_. Under no circumstances will the interest rate on this Note be less than _10.75%_ per annum (calculated on the basis of a 360-day year, counting the actual number of days elapsed) or more than the maximum rate allowed by applicable law.

The Maturity Date shall automatically extend for one year, and from year to year, so long as Lender does not give Borrower notice of maturity at least sixty (60) days prior to the then effective Maturity Date. The Borrower promises to pay to the Lender in addition to all other amounts due and payable respecting this Note, on or before each anniversary date of this Note, a renewal fee ("the Credit Line Renewal Fee") in the amount of _$250.00_, which Credit Line Renewal Fee shall be fully earned and is non-refundable.

INTEREST. Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed. "Prime Rate" shall mean the variable per annum rate of interest so designated from time to time by Lender as its prime rate. Borrower acknowledges that the Prime Rate, as designated from time to time, is subject to change without prior notice to Borrower and is not represented or intended to be the lowest or most favorable rate of interest offered by Lender. Each time Lender's Prime Rate changes, the interest rate hereunder shall change contemporaneously with such change effective as of the opening on the date of change. Subsequent to an Event of Default, interest shall accrue on any outstanding Obligations (as defined below) at an annual rate equal to eight percent (8%) above the interest rate otherwise payable hereunder (the "Default Rate").

ADVANCES. All advances hereunder shall be made at the discretion of Lender. Any advance hereunder by Lender shall be conclusively presumed to have been made at the request of Borrower when (1) deposited or credited to an account of Borrower with Lender, or (2) made in accordance with the oral or written instructions of Borrower, or a party authorized to transact business on behalf

Promissory Note

of Borrower. Borrower shall obtain advances from Lender up to the principal face amount of this Note (the "Credit Limit") by drawing a Business Line of Credit Check. Any advances, either using Business Line of Credit Checks or otherwise, which cause the outstanding principal balance of the loan to exceed the face amount of this Note, will be added to the principal amount evidenced by this Note and Borrower promises to pay Lender all interest accrued on this amount as well as all additional monies advanced over the face amount.

**LATE CHARGES.** If any payment due under this Note is not received by Lender within Fifteen (15) days after it is due, Borrower shall pay a late charge to Lender equal to Five (5%) percent of the overdue payment, but in no event will the late charge be less than Twenty-five ($25.00) Dollars. Any such late charge assessed is immediately due and payable.

**FINANCIAL RECORDS.** Borrower shall maintain its books and records at all times in accordance with generally accepted accounting principles in the United States of America, applied on a consistent basis, and permit Lender (upon request) to examine and audit Borrower's books and records at all reasonable times.

**FINANCIAL INFORMATION.** Borrower shall furnish, and shall cause any Guarantor to furnish, within a reasonable time upon Lender's request, all financial information pertaining to Borrower and Guarantors including, but not limited to, tax returns.

**CHANGE IN FINANCIAL CONDITIONS.** Borrower shall notify Lender, within five (5) business days, of any substantial change in Borrower's or any Guarantor's financial condition.

**DEPOSIT RELATIONSHIP.** Borrower shall maintain its primary deposit relationship with Lender for the term of this Note.

**APPLICATION OF PAYMENTS; ADDITIONAL INTEREST RATE PROVISIONS.** *Unless otherwise agreed to by Lender in writing or required by applicable law, all payments will be applied first to interest, then to fees and other charges, and then to principal.* Interest shall accrue at a per annum rate which shall be one-half of one percent (.50%) plus the interest rate otherwise payable hereunder if: (i) Borrower does not open a Sovereign Bank, N.A. Business Checking account from which the monthly payments due under this Note and the Loan Documents are automatically deducted for the term of this loan; (ii) Borrower refuses the pre-authorized internal transfer on an existing Sovereign Bank, N.A. Business Checking account; (iii) Borrower cancels the pre-authorized internal transfer during the term of this loan; or (iv) there are three (3) consecutive monthly occurrences of insufficient funds to pay Borrower's obligations that are due and payable; and in the case of clause (iv), Borrower's pre-authorized transfer shall be cancelled.

Regardless of whether the pre-authorized internal transfer is in effect or has been revoked, Lender shall have the right, in addition to all other rights and remedies available to it, to set off against the unpaid balance of this Note and any debt owing by Borrower to Lender, any funds in any deposit account maintained by Borrower with Lender, and any other property of Borrower that may be in the possession of Lender or its affiliates without regard to the adequacy of other collateral. Borrower shall not be obligated to pay and Lender shall not collect interest at a rate in excess of the maximum permitted by law or the maximum that will not subject Lender to any civil or criminal penalties. If, because of the acceleration, the payment of interest in advance or any other reason, Borrower is required, under the provisions of any Loan Document or otherwise, to pay interest at a rate in excess of such maximum rate, the rate of interest under such provisions shall immediately and automatically be reduced to such maximum rate, and any payment made in excess of such maximum rate, together with interest thereon at the rate provided herein from the date of such payment, shall be immediately and automatically applied to the reduction of the unpaid principal balance of this Note as of the date on which such excess payment was made. If the amount to be so applied to the reduction of the unpaid principal balance exceeds the unpaid principal balance, the amount of such excess shall be refunded by Lender to Borrower.

**CYCLE DOWN PROVISION.** During each twelve month period that this Note is outstanding (including the initial twelve months), Borrower shall pay down the outstanding balance of principal and accrued interest under this Note and refrain from requesting advances such that the outstanding balance does not exceed forty (40%) percent of the Credit Limit for a period of thirty (30) consecutive days. Failure to maintain such balance for such period shall be an Event of Default under this Note.

**BUSINESS LINE OF CREDIT CHECKS.** Borrower acknowledges that Business Line of Credit Checks ("Business Line of Credit Checks") are not the same as checks drawn on a demand deposit account, but constitute requests for advances on the Line of Credit, which may be honored at Lender's sole discretion. The amount of each Business Line of Credit Check must be at least Five Hundred ($500.00) Dollars. Lender may refuse to honor any Business Line of Credit Check if: (i) it is received by Lender after termination of the Line of Credit; (ii) honoring such check would cause the total of all Borrower's obligations on the loan to exceed the Credit Limit; (iii) it is received by Lender after an Event of Default has occurred; (iv) the amount of such check is less than Five Hundred ($500.00) Dollars; or (v) Lender for any other reason in good faith deems the prospect of repayment of this Note in full to be impaired. If, however, Lender honors such a Business Line of Credit Check causing the outstanding principal balance of the loan to exceed the Credit Limit, the excess amount will be added to the principal amount evidenced by this Note and Borrower promises to pay Lender all interest accrued on this amount as well as all additional monies advanced over the Credit Limit. Business Line of Credit Checks may not be used to make any payment due to Lender. Any authorized representative of Borrower may stop payment on any Business Line of Credit Check. A stop payment order must be given in time for Lender to act upon it and must state the exact amount, exact date and precise identity of the payee of the Business Line of Credit Check. Oral stop payment orders must be confirmed in writing within 14 days. Subject to the provisions of this paragraph, Business Line of Credit Checks are subject to the same rules and regulations as apply to Lender's business checking accounts.

**EVENTS OF DEFAULT.** Each of the following shall be an "Event of Default" hereunder: (a) the nonpayment when due of any amount owing by Borrower to Lender hereunder or under any other promissory note, instrument or obligation of whatever kind owing to Lender, heretofore or hereafter incurred, whether due or to become due, fixed or matured, and all interest, late charges, collection

https://www.sb2.gov/appPromissorydocs.aspx?appID=93917&product=1                           9/5/2013

Promissory Note

agency fees, costs and attorneys' fees (collectively, "Obligations"), or any default or event of default by Borrower under any document executed in connection with this Note, or the failure of Borrower or any other person or persons liable on the Obligations to Lender arising in connection herewith (collectively, "Guarantors") to observe or perform any agreement of any nature whatsoever with Lender or with any affiliate of Lender; (b) if Borrower or any Guarantor becomes insolvent or makes an assignment for the benefit of creditors, or fails to pay any obligations to others as they mature, or if any petition is filed by or against Borrower or any Guarantor under any provision of any state or federal law or statute alleging that Borrower or such Guarantor is insolvent or unable to pay debts as they mature or under any provision of the United States Bankruptcy Code; (c) the entry of any judgment against any Borrower or any Guarantor or any of Borrower's or any Guarantor's property which remains unsatisfied for thirty (30) days; (d) the issuing of any attachment, levy or garnishment against any property of Borrower or any Guarantor; (e) the occurrence of any substantial change in the condition (financial or otherwise) of any Borrower or any Guarantor that, in the sole judgment of Lender, is materially adverse; (f) the sale of a substantial portion of the assets of Borrower or any Guarantor or any change in ownership or management of Borrower, or the dissolution, liquidation, merger, consolidation or reorganization of Borrower, without the express prior written consent of Lender; (g) the death, incarceration or adjudication of legal incompetence of Borrower or any Guarantor; (h) if any information or signature furnished to Lender by Borrower or any Guarantor at any time is false or incorrect in any material respect; (i) the failure of Borrower or any Guarantor to timely furnish to Lender such financial and other information as Lender may reasonably request or require pursuant to the Loan Documents or otherwise; or (j) Lender deems itself insecure.

EFFECT OF AN EVENT OF DEFAULT. If any Event of Default shall occur, except where otherwise provided in this Note, all commitments and obligations of Lender under this Note or any other agreement will immediately terminate (including any obligation to make further advances or disbursements), and, at Lender's option, at any time and from time to time, any or all obligations, in whole or in part, of Borrower to Lender immediately will become due and payable, all without notice of any kind to Borrower or any Guarantor; except that in the case of an Event of Default of the type described in subsection (b) of the EVENTS OF DEFAULT section above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Loan Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Guarantor shall not affect Lender's right to declare a default and to exercise its rights and remedies. At the sole discretion of the Lender, if an Event of Default has occurred and the Lender has terminated its commitment to make advances but has not demanded full payment on the balance, on each payment date the Borrower shall pay the Lender: (a) all accrued and unpaid interest and other charges assessed to the account through the payment due date; and (b) one forty-eighth (1/48th) of the principal balance outstanding as of the date the Lender terminated its commitment to make advances.

GENERAL PROVISIONS. Lender may delay or forgo enforcing any of its rights under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. If any portion of this Note is for any reason determined to be unenforceable, it will not affect the enforceability of any other provisions of this Note.

EXPENSES. Lender shall be entitled to collect all expenses incurred in pursuing any payment due hereunder that is not paid when due, whether in accordance with the terms hereof, or by acceleration or otherwise (including all costs and attorneys fees incurred in connection with any collection proceedings, bankruptcy or insolvency proceeding involving Borrower), and Borrower agrees to pay all costs of collection including, without limitation, reasonable attorneys' fees and costs of in-house and/or outside counsel.

INDEMNIFICATION. The Borrower will indemnify and hold the Lender harmless from any loss, liability, damages, judgments, and costs of any kind relating to or arising directly or indirectly out of (a) this Note or any document required hereunder, (b) any credit extended or committed by the Lender to the Borrower hereunder, and (c) any litigation or proceeding related to or arising out of this Note, any such document, or any such credit. This indemnity includes but is not limited to attorneys' fees (including the allocated cost of in-house counsel). This indemnity extends to the Lender, its parent, subsidiaries and all of their directors, officers, employees, agents, successors, attorneys, and assigns. This indemnity will survive repayment of the Borrower's obligations to the Lender. All sums due to the Lender hereunder shall be obligations of the Borrower, due and payable immediately without demand.

WAIVERS; AMENDMENTS. Borrower waives the requirements of demand, presentment, protest, notice of protest and dishonor and all other demands or notices of any kind in connection with the delivery, acceptance, performance, default, dishonor or enforcement of this Note. Borrower shall not be released from liability upon a change in the terms of this Note. No amendment of this Note and no waiver of any one or more of the provisions hereof, shall be effective unless set forth in writing signed by Borrower and Lender.

ENTIRE AGREEMENT. This Note and the Loan Documents constitute the entire agreement of the parties hereto relating to its subject matter and supersede any and all prior and concurrent oral and written communications with respect to the subject matter herein.

SUCCESSORS AND ASSIGNS. The Loan Documents shall be binding upon Borrower and its successors and assigns and shall inure to the benefit of Lender, its successors and assigns. Borrower may not assign or transfer Borrower's rights or obligations under this Note or the Loan Documents. The Lender shall have the unrestricted right at any time or from time to time, and without the Borrower's (or any Guarantor's) consent, to sell, assign, endorse, or transfer all or any portion of its rights and obligations hereunder to one or more

banks or other entities (each, an "Assignee") and, the Borrower agrees that it shall execute, or cause to be executed such documents including without limitation, amendments to this Note and to any other documents, instruments and agreements executed in connection herewith as the Lender shall deem necessary to effect the foregoing. In addition, at the request of the Lender and any such Assignee, the Borrower shall issue one or more new promissory notes, as applicable, to any such Assignee and, if the Lender has retained any of its rights and obligations hereunder following such assignment, to the Lender, which new promissory notes shall be issued in replacement of, but not in discharge of, the liability evidenced by the note held by the Lender prior to such assignment and shall reflect the amount of the respective commitments and loans held by such Assignee and the Lender after giving effect to such assignment. Upon the execution and delivery of appropriate assignment documentation, amendments and any other documentation required by the Lender in connection with such assignment, and the payment by Assignee of the purchase price agreed to by the Lender and such Assignee, such Assignee shall be a party to this Agreement and shall have all of the rights and obligations of the Lender hereunder (and under any and all other guaranties, documents, instruments and agreements executed in connection herewith) to the extent that such rights and obligations have been assigned by the Lender pursuant to the assignment documentation between the Lender and Assignee, and the Lender shall be released from its obligations hereunder and thereunder to a corresponding extent.

SEVERABILITY. If any provision of this Note or the Loan Documents is found to be invalid or unenforceable, such provision shall be stricken and all remaining provisions of this Note and the Loan Documents shall remain valid and enforceable.

FEDERAL RESERVE. The Lender may at any time pledge, endorse, assign, or transfer all or any portion of its rights under the Loan Documents including any portion of this Note to any of the twelve (12) Federal Reserve Banks organized under Section 4 of the Federal Reserve Act. 12 U.S.C. Section 341. No such pledge or enforcement thereof shall release the Lender from its obligations under any of the Loan Documents.

GOVERNING LAW. The construction, interpretation and enforcement of this Note shall be governed by the internal laws of New Jersey, excluding its principles of conflict of laws.

USE OF PROCEEDS. Borrower represents to Lender that the proceeds of this Note WILL NOT be used for personal, family or household purposes.

WAIVER OF JURY TRIAL. BORROWER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING IN ANY MANNER ARISING IN CONNECTION WITH, OR RELATED TO, THE FINANCIAL TRANSACTION OF WHICH THIS NOTE IS A PART OR THE ENFORCEMENT OF LENDER'S RIGHTS AND REMEDIES WITH REGARD TO SUCH TRANSACTION.

WAIVER OF RIGHTS TO PREJUDGMENT REMEDY NOTICE AND HEARING. BORROWER WAIVES ANY RIGHT WHICH IT MAY HAVE TO NOTICE AND A HEARING OR A PRIOR COURT ORDER AS PROVIDED UNDER ANY APPLICABLE FEDERAL OR STATE LAW, IN THE EVENT LENDER SEEKS ANY PREJUDGMENT REMEDY IN CONNECTION WITH THIS NOTE.

CAM-L-003082-25   03/11/2026 4:38:58 PM   Pg 71 of 85   Trans ID: LCV2026637821
Case 2:26-cv-04496-ES-SDA      Document 2      Filed 04/23/26      Page 216 of 286 PageID:
223

Page 5 of 5

Promissory Note

IN WITNESS WHEREOF, and intending to be legally bound hereby, Borrower or its duly authorized representative has caused this Note to be executed as of the date above.

WITNESS/ATTEST:

BORROWER: Heine Associates, P.A.

Name:

Title (if applicable): President

# EXHIBIT B

Promissory Note

## UNCONDITIONAL PERSONAL GUARANTY OF PAYMENT

In consideration of the undertakings of Sovereign Bank, N.A. (the "Lender") pursuant to that certain Promissory Note (the "Note"), dated _September 5, 2013_, by _Heise Associates, P.A._ (the "Borrower"), each of the undersigned (each a "Guarantor") hereby, individually and jointly and severally, guarantees and becomes surety for all amounts owing by Borrower to Lender under any promissory note, instrument or obligation of Borrower of whatever kind, heretofore or hereafter incurred, whether due or to become due, fixed, contingent or matured, and all interest, late charges, collection agency fees, costs and attorneys' fees (collectively, the "Obligations").

This agreement shall remain in full force and effect until: (i) all of the Obligations have been paid in full, including as the case may be, if payment of any of the Obligations is rescinded, avoided or otherwise returned or disgorged; and (ii) all the of Lender's commitments under the Obligations are terminated. The liability of the Guarantor is irrevocable, absolute and unconditional irrespective of: (a) any lack of validity or enforceability of the Note or any other document executed in connection therewith; (b) any change in the time, manner, place or amount of payment or in any other term of all or any of the Obligations, or any other amendment or waiver of or any consent to departure from any of the terms of the Obligations; (c) any exchange, release or non-perfection of any collateral or lien securing all or any part of the Obligations (which exchange, release or non-perfection the Guarantor expressly agrees will not be deemed an unjustifiable impairment of the collateral); (d) any release or amendment or waiver of or consent to departure from any other guaranty, for all or any part of the Obligations; (e) any settlement or compromise with any Borrower or any other person relating to the Obligations; or (f) any other circumstances which might otherwise constitute a defense available to, or a discharge of, any Borrower or other obligor in respect of the Obligations or the Guarantor in respect of this Guaranty.

Each Guarantor hereby grants to Lender a lien, security interest and a right of set off as security for all of the Obligations, upon and against all deposits, credits, collateral and property, now or hereafter in the possession, custody, safekeeping or control of Lender or any entity under the control of Lender, or in transit to any of them. At any time, without demand or notice, Lender may set off the same or any part thereof and apply the same to any liability or obligation of Guarantor even though unmatured and regardless of the adequacy of any other collateral securing the Obligations.

Lender shall be entitled to collect all expenses incurred in pursuing any payment due hereunder that is not paid when due, whether in accordance with the terms hereof, or by acceleration or otherwise (including all costs and attorneys fees incurred in connection with any bankruptcy or insolvency proceeding involving Guarantor), and each Guarantor jointly and severally agrees to pay all costs of collection including, without limitation, reasonable attorneys fees and costs of in-house and/or outside counsel.

Each Guarantor hereby waives all suretyship defenses and notice of the incurring of indebtedness by Borrower to Lender, acceptance of this Guaranty by Lender, presentment and demand for payment, protest, notice of protest and notice of dishonor or nonpayment of any Obligations of the Borrower, any right to have security applied before enforcing this Guaranty, and all other notices and demands otherwise required by law which the Guarantor may lawfully waive.

WAIVER OF JURY TRIAL. EACH GUARANTOR AND LENDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY SUIT, ACTION OR PROCEEDING IN ANY MANNER ARISING IN CONNECTION WITH, OR RELATED TO, THE FINANCIAL TRANSACTION OF WHICH THIS GUARANTY IS A PART OR THE ENFORCEMENT OF LENDER'S RIGHTS AND REMEDIES WITH REGARD TO SUCH TRANSACTION.

IN WITNESS WHEREOF, and intending to be legally bound hereby, each Guarantor or its duly authorized representative has caused this Guaranty to be executed as of the date below.

_____(Seal)   9/5/13    Michael Heine
Signature of Guarantor           Date      Print Name      Michael Heine

# EXHIBIT C

# EXHIBIT M

**JUDGMENT SEARCH**

Need Step-By-Step Help?      Judgment Public Search Demo Videos      Contact Us

## Judgment Search Result Details

**Note: If you have pop-up blocker installed, you must disable it to view party details**

Search for a Judgment by selecting one of the following tabs below.

| Name | **Judgment #** | Docket # |

Judgment Number: **J 103758 20- SANTANDER BANK, N.A. VS HEINE ASSOCIATES P.A .**

| Docket Number: **L 004399 18** | Venue-Id: **CAM** | Filing Location: **CAMDEN** | Court: **LCV** | Judgment Status: **Open** |
| Status Date: **12/03/2020** | Judgment Amount: **$151269.15** | Court Costs: **$0.00** | Interest: **$0.00** | Attorney Fee: **$0.00** |
| Other Amount: **$0.00** | Processing Location: **CAMDEN** | Judgment Enter Date: **12/03/2020** | Time: **2:49PM** | Judgment Filing Date: **11/13/2020** |

### Party/Debt Summary

Debt ID: **1**     Debt Status: **Open**     Debt Amount: **$151269.15**     Attorney Fee: **$0.00**     Cost: **$0.00**     Interest: **$0.00**     Other Amount: **$0.00**     Debt Enter Date: **12/03/2020**

| Name(Last, First MI, Suffix) | Role | Alternate Names | Party Debt Status | Status Date |
|---|---|---|---|---|
| HINE, I MICHAEL | DEBTOR | | Open | 12/03/2020 |
| HEINE ASSOCIATES PA | DEBTOR | | Open | 12/03/2020 |
| SANTANDER BANK NA | CREDITOR | SOVEREIGN BANK NA | Open | 12/03/2020 |

### Document Summary

1.

| Document Type | Document File Date | Document Status |
|---|---|---|
| | 12/03/2020 | |
| WRIT EXEC ISSUED | 05/18/2021 | |

| Party Name (Party Doc Role) |
|---|
| SANTANDER BANK NA , (P) |
| HEINE ASSOCIATES PA , (T) |

2.

| Document Type | Document File Date | Document Status |
|---|---|---|
| | 12/03/2020 | |
| WRIT EXEC ISSUED | 05/18/2021 | |

| Party Name (Party Doc Role) |
|---|
| SANTANDER BANK NA , (P) |
| HEINE ASSOCIATES PA , (T) |

Print  Search Again  Back

Screen Id 123456      © Copyright NJ Judiciary 2018

BUILD:2022.05.20.00.057

# EXHIBIT N

« Citation Data

Original Wordprocessor Version

(NOTE: The status of this decision is **Unpublished**.)

```
                    NOT FOR PUBLICATION WITHOUT THE
                    APPROVAL OF THE APPELLATE DIVISION
      This opinion shall not "constitute precedent or be binding upon any court ." Although it is posted on the
     internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.




                                            SUPERIOR COURT OF NEW JERSEY
                                            APPELLATE DIVISION
                                            DOCKET NO. A-0899-18T1

CAPITAL ONE, N.A.,

          Plaintiff-Respondent,

v.

LAURENCE FRANKLIN,

          Defendant-Appellant,

and

MRS. FRANKLIN, unknown
spouse of LAURENCE FRANKLIN,
TRACY VILLAGE CONDOMINIUM
ASSOCIATION, INC., RARITAN
BAY FEDERAL CREDIT UNION,
DISCOVERY BANK, STATE OF
NEW JERSEY, and TD BANK, N.A.,

      Defendants.
_____

                Submitted October 21, 2019 â€" Decided November 4, 2019

                Before Judges Sabatino and Geiger.
                On appeal from the Superior Court of New Jersey,
                Chancery Division, Monmouth County, Docket No. F-
                006480-14.

                Rubenstein Business Law, attorneys for appellant
                (David A. Rubenstein, on the brief).

                Milstead & Associates, LLC, attorneys for respondent
                (Bernadette Irace, on the brief).

PER CURIAM
```

In this residential mortgage foreclosure action, defendant Laurence

Franklin appeals from a Chancery Division order denying his motion to vacate

the final judgment and stay the September 24, 2018 sheriff's sale.[1] We affirm.

I.

The record reveals the following information.  [2] On November 28, 2006,

defendant borrowed $700,400 from Chevy Chase Bank, F.S.B. and executed a

promissory note to evidence the loan. To secure the note, defendant executed a

mortgage affecting his residence in Clarksburg to Mortgage Electronic

Registration Systems, Inc. (MERS), as nominee for Chevy Chase Bank, F.S.B.

The mortgage was recorded on December 12, 2006.

---

[1]  In this opinion we refer to Laurence Franklin as "defendant." The other
defendants have not participated in this appeal.

[2]  The table of contents, statement of facts, and table of other authorities sections
of defendant's brief do not meet the requirements of Rule 2:6-2(a), (c).

A-0899-18T1

« Citation Data

2

In January 2012, defendant executed a loan modification agreement, which adjusted the unpaid principal balance to $975,444.83 and deferred $560,366.89 of the principal balance.

On July 1, 2013, defendant defaulted on the loan and has failed to make any payments since that date. Plaintiff Capital One, N.A. mailed a notice of intent to foreclose to defendant by certified and regular mail on October 8, 2013.

The mortgage was assigned by MERS to plaintiff on February 3, 2014. Plaintiff filed the complaint on February 21, 2014.     The assignment was recorded on March 6, 2014. On April 4, 2014, defendant filed a contesting answer. He subsequently filed an amended answer.

On May 9, 2014, plaintiff moved for summary judgment. On June 6, 2014, defendant moved for summary judgment. The motion judge granted plaintiff's motion and denied defendant's motion. Defendant's amended answer and affirmative defenses were stricken with prejudice and the matter was returned to the Office of Foreclosure as an uncontested foreclosure. Defendant moved for reconsideration.     On August 8, 2014, the motion judge denied reconsideration.

On October 24, 2014, defendant's motion to stay the foreclosure action pending appeal was denied. In February 2015, plaintiff moved for entry of

A-0899-18T1

3

default judgment. Defendant did not oppose the application. A final judgment of foreclosure and writ of execution, in the amount of $1,006,681.06, were entered in favor of plaintiff on April 2, 2015. Defendant did not appeal from the entry of judgment.

A sheriff's sale of the mortgaged premises was initially scheduled for December 12, 2016. The sale was adjourned to January 23, 2017, as a result of defendant utilizing his two statutory adjournments.

On January 23, 2017, defendant filed a Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the District of New Jersey. It was dismissed by the Bankruptcy Court on April 10, 2017.

Plaintiff placed the foreclosure on hold from May 2017 to February 7, 2018, while it attempted to pursue loss mitigation options with defendant. When those efforts proved unsuccessful, on January 2, 2018, plaintiff's Loss Mitigation Department mailed defendant a notice of action taken advising defendant it had denied his loan modification request. Plaintiff reactivated the foreclosure action and obtained an alias writ of execution on February 14, 2018.

A sheriff's sale was then scheduled for April 16, 2018. The sale was adjourned to May 14, 2018, as a result of defendant, again, utilizing his two statutory adjournments.    The sheriff's sale was then stayed as a result of

A-0899-18T1

4

defendant filing a second Chapter 13 bankruptcy petition on May 14, 2018. It

was dismissed by the Bankruptcy Court on August 22, 2018.

The sheriff's sale was rescheduled for September 24, 2018. Defendant filed an emergent application to stay the sheriff's sale on September 17, 2018. The stay application was denied by the motion judge that same day. The judge further declared there shall be no further adjournments of the sheriff's sale. The sale took place on September 24, 2018, with plaintiff the successful bidder.

Defendant then filed a motion to stay the sale and to vacate the final judgment. Plaintiff opposed the motion, arguing, in part, that it was time barred because it was not filed within a reasonable period after the entry of judgment in April 2015.

The motion judge issued an oral decision denying the motion on September 28, 2018. The judge made the following findings. Defendant did not raise the issue of standing before the entry of judgment. "Lack of standing is not a meritorious defense to a foreclosure when raised post judgment as a basis to vacate the judgment." Pursuant to Rule 4:34-3, plaintiff is permitted to continue with the foreclosure despite the transfer of its interest. Defendant did not dispute that the prima facie requirements for foreclosure were met. Defendant "could have and should have" raised any argument that plaintiff was

A-0899-18T1

not permitted to proceed with this foreclosure action "long ago, not in this post judgment setting." The judgment was entered in 2015. The motion to vacate the judgment was filed more than three years after it was entered. The judge rejected defendant's argument that plaintiff violated 12 C.F.R. Â§ 1024.41 (2019), finding plaintiff advised defendant that his request for loan modification had been denied by letter dated January 2, 2018. This appeal followed.

Defendant argues he is entitled to have the judgment and sheriff's sale vacated because he established exceptional circumstances sufficient to require relief pursuant to Rule 4:50-1(f). He contends plaintiff is barred from bringing this action because it is a foreign entity not registered to conduct business in New Jersey pursuant to  N.J.S.A. 14A:13-11 and did not file a business activities report pursuant to  N.J.S.A. 14A:13-15. He also contends the sale must be vacated because plaintiff was in violation of 12 C.F.R. Â§ 1024.1(c), promulgated by the Consumer Financial Protection Bureau pursuant 12 U.S.C. Â§ 5512 (2018). Finally, plaintiff contends plaintiff lacked standing to foreclose because the assignment of the mortgage is invalid.

II.

This case proceeded to the second stage of the default process, entry of a default judgment pursuant to Rule 4:43-2, before defendant sought relief from

A-0899-18T1

the order striking his answer and affirmative defenses. Therefore, defendant must meet the standard of Rule 4:50-1. U.S. Bank Nat'l Ass'n v. Guillaume,  209 N.J. 449, 467 (2012).

Relief from judgment under Rule 4:50-1 "is not to be granted lightly."

« Citation Data

Bank v. Kim,  361 N.J. Super. 331, 336 (App. Div. 2003). Moreover, "the showing of a meritorious defense is a traditional element necessary for setting aside both a default and a default judgment." Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 4:43-3 (2020). That is so because when a party has no meritorious defense, "[t]he time of the courts, counsel and litigants should not be taken up by such a futile proceeding." Guillaume,  209 N.J. at 469 (quoting Schulwitz v. Shuster,  27 N.J. Super. 554, 561 (App. Div. 1953)).

Before the trial court and on appeal, defendant relied upon Rule 4:50-1(f), "which permits courts to vacate judgments for 'any other reason justifying relief from the operation of the judgment or order.'" Id. at 484 (quoting R. 4:50-1(f)). Relief under the subsection (f) "is available only when 'truly exceptional circumstances are present.'" Ibid. (quoting Hous. Auth. of Morristown v. Little,  135 N.J. 274, 286 (1994)). Subsection (f) "is limited to 'situations in which, were it not applied, a grave injustice would occur.'" Ibid. (quoting Little,  135 N.J. at 289).

A-0899-18T1

7

"We review the trial court's decision for abuse of discretion." Deutsche Bank Nat'l Trust Co. v. Russo,  429 N.J. Super. 98, 101 (App. Div. 2012) (citing Guillaume,  209 N.J. at 467). "'The trial court's determination under the [Rule 4:50-1] warrants substantial deference,' and the abuse of discretion must be clear to warrant reversal." Ibid. (quoting Guillaume,  209 N.J. at 467). A reviewing court "finds an abuse of discretion when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Ibid. (quoting Iliadis v. Wal-Mart Stores, Inc.,  191 N.J. 88, 123 (2007)). On this record, we find no abuse in the trial court's decision.

III.

Defendant contends plaintiff was precluded from obtaining judgment and proceeding to a sheriff's sale because it is a foreign bank and is not registered to conduct business in New Jersey pursuant to  N.J.S.A. 14A:13-11. We disagree.

Plaintiff was not the original lender. The Foreign Banks section under Article 44 of The Banking Act of 1948,  N.J.S.A. 17:9A-315 to -332, states in pertinent part:

> Nothing in this article shall prohibit a foreign bank from
>
> ....

A-0899-18T1

8

> (2) contracting in this State with a banking institution to acquire, and acquiring in this State from such banking institution, a part interest in or the entire interest in any loan heretofore or hereafter made by such banking institution, together with a like interest in any security and any security instrument heretofore or hereafter given to such banking institution to secure or evidence such loan;
>
> (3) enforcing in this State obligations heretofore or hereafter acquired by it in the transaction of business outside of this State, or in the transaction of any business authorized by paragraph (1) or (2) of this

« Citation Data

section;

(4) acquiring, holding, leasing, mortgaging, contracting with respect to, or otherwise protecting or conveying property in this State heretofore or hereafter assigned, transferred, mortgaged or conveyed to it as security for, or in whole or part satisfaction of a loan or loans made by it or obligations acquired by it in the transaction of business outside of this State, or in the transaction of any business authorized by paragraphs (1) or (2) of this section.

[N.J.S.A. 17:9A-331.]

Accordingly, plaintiff was not precluded from obtaining judgment and proceeding to a sheriff's sale even though it was not registered to do business in New Jersey pursuant to N.J.S.A. 14A:13-11.

Defendant further argues plaintiff is barred by N.J.S.A. 14A:13-20 from bringing this foreclosure action because it failed to file a business activity report in New Jersey pursuant to N.J.S.A. 14A:13-15. We disagree.

A-0899-18T1

9

Our Supreme Court addressed whether a foreign bank may maintain a mortgage foreclosure action, notwithstanding its failure to comply with the filing requirements of the Corporate Business Activities Reporting Act (the Reporting Act), N.J.S.A. 14A:13-14 to -23, by not filing a notice of business activities report as required by N.J.S.A. 14A:13-15. Am. Bank & Tr. Co. of Pa. v. Lott, 99 N.J. 32, 33-34 (1985). The Court concluded that "[n]either the terms of the Reporting Act nor its legislative history suggests that the Legislature intended to include foreign banks within the definition of 'corporation' contained in N.J.S.A. 14A:13-17(b)." Id. at 35. The Court also noted that "the Reporting Act was designed to facilitate the collection of corporate taxes, an endeavor that has no application to a foreign bank." Id. at 40.

The Court held "the Legislature did not intend the Reporting Act to apply to foreign banks. Because the Reporting Act does not apply, the requirements of that Act . . . are irrelevant to the determination whether [the foreign bank] can maintain the [foreclosure] action." Id. at 34.3 Accordingly, plaintiff's alleged failure to file a business activity report is not a bar to filing this foreclosure action and obtaining judgment.

___

3  In reaching this decision, the Court expressly overruled Bank Leumi Trust Company v. Schneider, 188 N.J. Super. 423 (App. Div. 1982). Lott, 99 N.J. at 41.

A-0899-18T1

10

Defendant also contends plaintiff is barred from moving forward with the foreclosure because it did not meet the condition precedent imposed by 12 C.F.R. § 1024.41(c). We disagree.

The regulation provides that if a loan servicer receives a completed loss mitigation application more than thirty-seven days before a foreclosure sale, the servicer must, within thirty days, evaluate the borrower for all loss mitigations options available and provide the borrower with written notice "stating the servicer's determination." 12 C.F.R. § 1024.41(c)(1).   Plaintiff received a completed loss mitigation application from defendant on December 29, 2017.

« Citation Data

Plaintiff gave defendant written notice that it could not offer him a loan modification and provided the other information required by the regulation in its letter dated January 2, 2018. By doing so, plaintiff timely satisfied the condition precedent imposed by the regulation. Plaintiff did not undertake the next step in the foreclosure, obtaining an alias writ of execution, until February 9, 2018. Accordingly, the motion judge correctly determined that plaintiff was not precluded from moving forward with the foreclosure.

The motion judge determined that plaintiff had standing to initiate the foreclosure since it owned or controlled the underlying debt when the complaint

A-0899-18T1

was filed, citing Wells Fargo Bank, N.A. v. Ford,  418 N.J. Super. 592, 597 (App. Div. 2011). We agree.

In order to have standing, "a party seeking to foreclose a mortgage must own or control the underlying debt." Ibid. (quoting Bank of N.Y. v. Raftogianis,  418 N.J. Super. 323, 327-28 (Ch. Div. 2010)). Without ownership or control of the underlying debt, "the plaintiff lacks standing to proceed with the foreclosure action and the complaint must be dismissed." Ibid. "The essential holding of Raftogianis was that to establish standing to maintain a foreclosure action, a plaintiff generally must have had ownership or control of the underlying debt as of the date of the filing of the complaint." Id. at 597 n.1.

The record demonstrates that the note and mortgage were assigned by MERS to plaintiff three weeks before the complaint was filed. Plaintiff owned and controlled the note and mortgage at the time the complaint was filed, giving it standing to initiate the foreclosure. The fact that the assignment was recorded thirteen days after the complaint was filed did not affect plaintiff's standing. See EMC Mortg. Corp. v. Chaudhri,  400 N.J. Super. 126, 141 (App. Div. 2008) (noting that "[t]he fact that assignments of mortgages may be recorded does not affect the validity of an assignment of a mortgage which has not been recorded") (alteration in original) (citations omitted); 29 N.J. Practice, Law of Mortgages §

A-0899-18T1

11.3, at 762 (Myron C. Weinstein) (2001) (noting an assignment of mortgage is effective even if not recorded). The motion judge correctly decided that plaintiff had standing to initiate the foreclosure.

In any event, "standing is not a jurisdictional issue in our State court system and, therefore, a foreclosure judgment obtained by a party that lacked standing is not 'void' within the meaning of Rule 4:50-1(d)." Deutsche Bank Nat'l Trust Co. v. Russo,  429 N.J. Super. 91, 101 (App. Div. 2012).

Defendant's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Based on our careful review of the record in light of the applicable

« Citation Data

principles of law, we find no basis for relief from the final judgment or sheriff's sale under Rule 4:50-1(f). Defendant has not met his burden of demonstrating a meritorious defense, see Guillaume, 209 N.J. at 467, much less demonstrated any exceptional circumstances or that a grave injustice will result if the final judgment and sheriff's sale are not vacated. The denial of defendant's Rule 4:50-1(f) motion was not an abuse of discretion.

Affirmed.

A-0899-18T1

13

*This archive is a service of Rutgers School of Law.*

**SALDUTTI LAW GROUP**
Robert L. Saldutti, Esquire – 006871992
Thomas B. O'Connell, Esquire - 031102008
1040 N. King Highway, Suite 100
Cherry Hill, NJ  08034
(856) 779-0300
Attorneys for Plaintiff

| | |
|---|---|
| GULF COAST BANK & TRUST CO, <br><br> Plaintiff, <br><br> v. <br><br> PRESTIGE INFUSIONS LLC <br> AND ALI ATSHAN <br><br> Defendant(s). | SUPERIOR COURT OF NEW JERSEY <br> LAW DIVISION <br> CAMDEN COUNTY <br><br> DOCKET NO. L-3082-25 <br><br> Civil Action <br><br> **CERTIFICATION OF JOEL DASTE** |

I, Joel Daste, of full age, hereby certifies as follows:

1. I am the Division President for Gulf Coast Bank & Trust Co ("Plaintiff"). I am familiar with Plaintiff's books and records, including the business books and records relating to the underlying loan that is the subject of this litigation.

2. A true and correct copy of the Promissory Note and Security Agreement dated December 10, 2020 ("the Note") evidencing a commercial loan ("the Loan") between Santander Bank, N.A. ("Santander") and Prestige Infusions, LLC ("Prestige Infusions") is attached as Exhibit A.

3. A true and correct copy of the Guaranty of Ali Atshan ("Defendant") of the Loan and Note is attached as Exhibit B.

4. A true and correct copy of the Allonge to the Note identifying Plaintiff as the payee is attached as Exhibit C.

5. Plaintiff purchases loans originated by banks to New Jersey obligors, including obligors located in Camden County. Plaintiff purchases Judgments venued in Camden County.

A true and correct copy of a portion of the Asset Sale Agreement identifying the loan resulting in the Judgment entered in <u>Santander Bank v. Heine Associates, et. al.</u>, Docket No. CAM-L-4874-17 is attached as Exhibit D.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

GULF COAST BANK & TRUST CO.

*Joel M Daste*
Joel M Daste (Mar 5, 2026 08:49:31 CST)

JOEL DASTE
DIVISION PRESIDENT

Dated: March 4, 2026

# Daste Cert - unsigned add exhibits

Final Audit Report                                                                2026-03-05

| | |
|---|---|
| Created: | 2026-03-04 |
| By: | Tom O'Connell (toconnell@slgcollect.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA_BoPOk1XkeEWsn6GAlyKyqCwheEessOq |

## "Daste Cert - unsigned add exhibits" History

📄 Document created by Tom O'Connell (toconnell@slgcollect.com)
2026-03-04 - 9:00:08 PM GMT

📧 Document emailed to joeldaste@gulfbank.com for signature
2026-03-04 - 9:00:20 PM GMT

📄 Email viewed by joeldaste@gulfbank.com
2026-03-05 - 2:47:43 PM GMT

✍ Signer joeldaste@gulfbank.com entered name at signing as Joel M Daste
2026-03-05 - 2:49:29 PM GMT

✍ Document e-signed by Joel M Daste (joeldaste@gulfbank.com)
Signature Date: 2026-03-05 - 2:49:31 PM GMT - Time Source: server

✅ Agreement completed.
2026-03-05 - 2:49:31 PM GMT

**Adobe Acrobat Sign**

# EXHIBIT "A"

# PROMISSORY NOTE AND SECURITY AGREEMENT

**Note #:** 002-0025790-000

| | |
|---|---|
| Secured Party: | **Santander Bank, N.A.** |
| Address: | **3 Huntington Quadrangle Ste 101N** |
| | **Melville, NY 11747** |
| Tel: | **631-531-0600** |

| | |
|---|---|
| Debtor: | Prestige Infusions LLC |
| Address: | 116 Boonton Ave |
| | Kinnelon                              NJ          07405 |
| Tel: | 866-490-0898 |

| | |
|---|---|
| Dealer/Seller | Mercedes-Benz of Caldwell |
| | 1230 Bloomfield Ave |
| | Fairfield                   NJ      07004 |

| | |
|---|---|
| Location of Collateral (if different) | 116 Boonton Ave |
| | Kinnelon          NJ          07405 |

| | |
|---|---|
| Loan Amount | $ SEE ATTACHED SCHEDULE(S) |

**Collateral Description:** SEE ATTACHED SCHEDULE(S)

1.     Promise To Pay. FOR VALUE RECEIVED, Debtor promises to pay to the order of the above named secured party or assigns (the "Secured Party") the Loan Amount(s) plus interest, in installments, payable per the ATTACHED SCHEDULE(S), commencing thirty (30) days after the date set forth on any Schedule(s) attached hereto and forming part of this Promissory Note and Security Agreement (the "Note"), or such later date as designated in writing by the Secured Party, and continuing on a like day in each month thereafter. All payments shall be made to the address of Secured Party or such other address designated in writing by Secured Party.

2.     Grant of Security Interest. To secure the prompt payment by Debtor of this Note and the prompt payment and performance by Debtor of every liability, obligation and indebtedness of Debtor to Secured Party whether now existing or hereafter arising (collectively, the "Obligations"), Debtor hereby grants a security interest to Secured Party in and to the vehicle/equipment described on any Schedule annexed hereto (the "Vehicle/Equipment"), together with all related equipment ("Equipment" or "Additional Equipment") and all accessions, parts, replacements, substitutions, accessories, attachments and appurtenances in any way used with, attached to or installed in or on the Vehicle or Equipment, as well as all contract and warranty rights and all proceeds thereof, including, but not limited to, insurance proceeds (collectively, "Collateral"). Debtor will execute and deliver to Secured Party such state motor vehicle lien applications ("Motor Vehicle Documents") and Uniform Commercial Code financing statements, and all amendments thereto and extensions thereof ("UCC Documents") necessary or appropriate in Secured Party's sole and absolute discretion to perfect or maintain the security interest herein granted and its priority. To the extent permitted by applicable law, Secured Party is authorized to sign and file such Motor Vehicle Documents and UCC Documents and any other security documents as Debtor's attorney-in-fact.

3.     Location of Vehicle and/or Equipment. Debtor will garage the Vehicle and all Equipment and other Collateral at the location set forth above or on any Schedule (the "Location"), and shall not change the garage location of the Vehicle/Equipment from the Location unless Debtor (i) gives Secured Party written notice of such change and the new location at least thirty (30) days prior to removal and (ii) executes such documents as Secured Party requires to continue the perfection and priority of its security interest.

4.     Representations and Warranties. Debtor represents and warrants that:

    4.1     This Note and all other agreements and instruments executed in connection herewith are valid and binding upon and enforceable against Debtor in accordance with their respective terms.

    4.2     Debtor has good and merchantable title to and sole ownership of the Collateral, free and clear of all liens, claims, security interests and encumbrances except those of Secured Party. The security interest granted by Debtor to Secured Party in the Collateral constitutes a valid first perfected lien and security interest in the Collateral.

    4.3     Debtor is not in violation of any law, statute, regulation or ordinance of any governmental entity or authority, which could in any respect materially and adversely affect the Collateral or Debtor's business, property, assets, operations or condition, financial or otherwise.

    4.4     Debtor is not in default in any material respect under any indenture, loan agreement, mortgage, lease, deed of trust or other agreement relating to the borrowing of monies to which Debtor is a party, or by which Debtor or Debtor's assets may be bound.

    4.5     Debtor has delivered to Secured Party Debtor's financial statements as part of Secured Party's credit review. Such financial statements fully and fairly present the assets, liabilities and financial condition of Debtor as of the respective dates thereof and for the periods covered thereby; there are no omissions of other facts or circumstances which are or may be material and there has been no material adverse change in the financial condition of Debtor or its shareholders since the date of such financial statements.

    4.6     There are no actions or proceedings which are pending or threatened in any court or before any governmental agency or instrumentality against Debtor, its assets, or the Collateral, which could materially adversely affect Debtor or the Collateral.

    4.7     Debtor has filed or has obtained extensions for the filing of all federal, state and local tax returns and other reports it is required by law to file and has paid all taxes, assessments and charges reflected thereon that are due and payable and has reserved funds or made adequate provision for the payment of such taxes, assessments and charges accruing but not yet payable.

    4.8     Debtor operates a commercial business and all Vehicles and/or Equipment financed herein will be used by Debtor solely for Debtor's usual and customary business, agricultural, or commercial purposes as presently conducted.

    4.9     All representations and warranties of Debtor are true at the time of Debtor's execution of this Note and shall survive the execution, delivery and acceptance hereof.

5.     Covenants of Debtor. Debtor covenants that:

    5.1     Preservation of Partnership/Corporate Existence. If Debtor is a partnership, a limited liability company, or a corporation, it will preserve and maintain its partnership, company, or corporate existence and good standing in each State where it conducts business.

    5.2     Liens. Debtor will not create or permit to exist any mortgage, pledge, title retention lien, or other lien, encumbrance or security interest with respect to the Collateral, other than encumbrances in favor of Secured Party.

    5.3     Insurance. Debtor will, at its own expense, keep all of the Collateral insured for its full replacement value thereof against all risks of loss and damage by policies of insurance issued by companies approved by Secured Party, but in no event shall insurance coverage for a Vehicle require a deductible in excess of $2,500.00 per occurrence. Debtor shall also, at its own expense, maintain such liability insurance policy in

Page 1

DocuSign Envelope ID: F25923B4-B245-4DDD-BA7E-51A08CED8109
237

amount and issued by such company as shall be approved by Secured Party, but in no event shall the policy limits for insurance coverage be less than: (a) for bodily injury - $250,000.00 per person and $500,000.00 per occurrence; and for property damage - $100,000.00; or (b) $500,000.00 combined single limit. The policies evidencing such insurance shall be duly endorsed in favor of Secured Party and its assigns with such loss payable and additional insured riders as Secured Party may designate and such policies shall be delivered to Secured Party and shall provide for: (a) at least thirty (30) days prior written notice to Secured Party or its assigns of the exercise of any right of cancellation or reduction of coverage; (b) right to cure monetary defaults; and (c) any default, misrepresentation or other breach by Secured Party or Debtor (or others) under this Note or the policy will not affect the insurance insofar as the interests of or any loss payee are concerned. Should Debtor and its assigns fail to furnish Secured Party with such insurance, Secured Party shall have the right, but not the obligation, to effect same to protect Secured Party's interest, which may or may not cover Debtor's interest in the Collateral, and charge the cost thereof to Debtor, together with interest thereon at eighteen percent (18%) per annum but in no event more than the maximum rate permitted by law. Such cost, including interest, shall be additional Obligations hereunder and secured by the Collateral. If the Collateral is stolen, lost, damaged or destroyed, Secured Party shall have no liability with respect to any theft, loss, damage, destruction or injury, and Secured Party's sole obligation hereunder shall be to choose either to (i) allow part or all of any insurance proceeds received on account of such theft, loss, damage or destruction ("Insurance Loss Proceeds") to be used by Debtor to repair the Collateral and/or (ii) to credit Debtor's account with part or all of the net Insurance Loss Proceeds . Whether or not the Collateral is insured, Debtor is obligated to continue to pay Secured Party for the Obligations owing under this Note even if the Collateral is stolen, lost, damaged or destroyed. In the event that any insurance payment is sent by an insurer, its broker, agent or representative to Debtor on account of theft, loss of, damage, destruction to the Collateral, Debtor shall immediately forward such insurance payment to Secured Party and shall not deposit or cash any such insurance payment without the prior express written consent of Secured Party. Debtor shall (i) file with Secured Party a complete report concerning any accident, damage or theft occurring to the Vehicle/Equipment within twenty-four (24) hours after said occurrence; (ii) cooperate with Secured Party and any insurers in the investigation, prosecution and defense of all claims resulting from the use or operation of the Vehicle and/or Equipment, and (iii) take all action necessary to comply with the provisions of any policy of insurance relating to the Vehicle/Equipment or the operation thereof. Debtor hereby appoints Secured Party as Debtor's attorney-in-fact to adjust all insurance claims and endorse all checks and drafts in settlement thereof.

        5.4      Financial Information. Debtor shall prepare and, upon request, furnish to Secured Party such quarterly and annual financial statements and such other financial information as Secured Party shall from time to time request.

        5.5      Litigation. Debtor will notify Secured Party in writing, promptly upon learning thereof, of the institution of any suit or administrative proceeding against Debtor with respect to the Collateral, whether directly or indirectly against the Collateral, whether or not the claim is considered by Debtor to be covered by insurance, and of the institution of any suit or administrative proceeding which could materially and adversely affect the operations, financial condition or business of Debtor or Secured Party's security interest in the Collateral.

        5.6      Payment of Taxes and Claims. Debtor will duly pay and discharge when due and payable, all taxes (including, without limitation, all sales taxes), assessments and governmental and other charges, levies or claims levied or imposed, which are, or which if unpaid might become, a lien or charge upon the Collateral or otherwise.

        5.7      Inspection. Debtor will permit Secured Party, its officers, employees and/or agents, at all times, during normal business hours to enter into and upon any premises where the Vehicle and/or Equipment are located for the purpose of inspecting the Vehicle and/or Equipment or otherwise protecting the interests of Secured Party therein.

        5.8      Maintenance of Collateral. Debtor will maintain the Collateral in good condition and repair (normal wear and tear excepted) and pay and discharge, or cause to be paid and discharged, when due, the cost of repairs or maintenance, and pay or cause to be paid all rent due on the premises where any Vehicle/Equipment is located.

        5.9      Landlord and Mortgagee Waivers. If requested by Secured Party, Debtor shall obtain and deliver to Secured Party any and all landlord's and mortgagee's waivers, estoppel, certificates and other similar documents to confirm, among other things, that such persons have no interest in the Collateral.

        5.10      Dispositions of Assets. Debtor shall not sell, convey, assign, lease, abandon or otherwise transfer or dispose of, voluntarily or involuntarily, the Collateral.

        5.11      Compliance with Law; Licenses and Permits. Debtor shall comply with all applicable laws with respect to the Vehicle/Equipment and its operation and use and permit the Vehicle/Equipment to be operated only by carefully selected licensed drivers. Debtor shall have and maintain all permits, licenses, consents, authorizations and approvals necessary or desirable for the operation of its business and the use and operation of the Vehicle and/or Equipment.

        5.12      Registration and Inspection: Debtor shall REGISTER AND TITLE the Vehicle/Equipment in conformity with the laws of the state of operation and shall pay all costs thereof. SUCH REGISTRATION AND TITLE SHALL INCLUDE THE PERFECTION OF THE SECURITY INTEREST FOR THE BENEFIT OF THE SECURED PARTY as set forth in Section 2 above. Debtor shall provide to Secured Party, within sixty (60) days after the date of this Note, a copy of such filing, including a copy of the motor vehicle registration for the Vehicle. If such registration does not contain the proper license plate number of the Vehicle, Debtor will provide such license plate number to Secured Party within such 60-day period. *Failure to register, title and perfect the security interest on behalf of the Secured Party within such 60-day period shall constitute an Event of Default and shall be subject to Secured Party's rights and remedies under Section 7 of this Note.* In all cases, Debtor shall, at its own expense, (a) have the Vehicle/Equipment (including all Additional Equipment) timely inspected in accordance with all applicable laws and (b) make any and all repairs that are necessary to enable the Vehicle/Equipment (and such Additional Equipment) to pass such inspections.

        6.      Prepayment. Debtor may prepay this Note in full and not in part on any payment date by payment of an amount equal to (i) all charges and fees then due and owing to Secured Party, (ii) all payments of principal and interest due and owing to Secured Party to the date of prepayment and (iii) the present value of all payments for the then remaining portion of the term hereof discounted at a rate (which Debtor and Secured Party agree is reasonable) equal to the discount rate of the Federal Reserve Bank of New York in effect on the date of this Note.

        7.      Events of Default; Rights and Remedies Upon Default.

        7.1      Event of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default":

        7.1.1 Debtor fails to pay any installment of this Note or any other Obligations on the due date thereof, including failing to pay upon maturity;

        7.1.2 Debtor fails to pay any other obligation due Secured Party or any of Secured Party's affiliates, however arising;

        7.1.3 Debtor fails or neglects to perform or observe any other term, covenant, warranty or representation contained in this Note or any other agreement, instrument or document with or for the benefit of Secured Party (other than for the payment of money) and the same is not cured to Secured Party's reasonable satisfaction within ten (10) days after the giving of notice by Secured Party to Debtor of such failure;

        7.1.4 The Collateral or a significant part of Debtor's other asset (as determined by Secured Party in its sole and absolute discretion) are attached, seized, levied upon or subjected to a writ or distress warrant, or come within the possession of any receiver, trustee, custodian or assignee for the benefit of creditors, or the Collateral is damaged or destroyed, and in any such case, the same is not cured within thirty (30) days thereafter;

7.1.5 There shall be a judgment or judgments against Debtor for an amount in excess of $10,000 singly or in the aggregate;

7.1.6 An application is made by Debtor or any person other than Debtor for the appointment of a receiver, trustee or custodian for the Collateral or any other of Debtor's assets and in the case of an application made by a third party, the same is not dismissed within sixty (60) days after the application therefor;

7.1.7 A petition under any provision of the Bankruptcy Code or any similar law or regulation shall be filed by or against Debtor or any of its affiliates, and in the case of any petition filed by any third party, such petition is not dismissed within forty-five (45) days of such filing or an Order for Relief or similar order is entered against Debtor, or Debtor or any of its affiliates makes an assignment for the benefit of its creditors or any case or proceeding is filed by or against Debtor for its dissolution, liquidation, or termination;

7.1.8 Debtor ceases to conduct its business or is enjoined, restrained or in any way prevented by court order from conducting all or any material part of its business affairs, or there is a sale of all or substantially all of the assets of the Debtor or any change in ownership or management of Debtor, or the dissolution, liquidation, merger, consolidation or reorganization of Debtor, without the express prior written consent of Secured Party; or

7.1.9 The death, incarceration, arrest, adjudication of legal incompetence of, or any criminal proceeding is brought against, Debtor of any of the Obligations.

7.1.10 Any of the foregoing occurs with respect to any guarantor of the Obligations, or any guarantor of the Obligations defaults under or otherwise breaches any of the terms of his, her or its guaranty of the Obligations or any other agreement, instrument or document with or for the benefit of Secured Party or any of Secured Party's affiliates;

7.2 Acceleration of the Entire Unpaid Balance. Upon and after an Event of Default, the entire unpaid balance of payments under this Note may, at the option of Secured Party and without presentment, demand, notice, protest or legal process of any kind, be declared, and immediately shall become, due and payable.

7.3 Remedies. Upon and after an Event of Default, Secured Party shall have the following rights and remedies:

7.3.1 All of the rights and remedies of a secured party under the Uniform Commercial Code or other applicable law, all of which rights and remedies shall be cumulative, and nonexclusive, to the extent permitted by law, in addition to any other rights and remedies contained in this Note;

7.3.2 The right to the extent permitted by law and at Debtor's expense, to enter upon the Location and any other premises of Debtor, or any other place or places where the Collateral is located and kept, without any obligation to pay rent to Debtor, through self-help and without judicial process, without first obtaining a final judgment or giving Debtor notice and opportunity for a hearing on the validity of Secured Party's claim, and remove the Collateral therefrom to the premises of Secured Party or any agent of Secured Party, for such time as Secured Party may desire in order to effectively collect or liquidate the Collateral. At Secured Party's request Debtor shall, at its own expense, assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party, in its sole discretion.

7.3.3 The right to sell or otherwise dispose of all or any Collateral in its then condition, or after any further manufacturing or processing thereof at public or private sale or sales, with such notice as may be required by law, in lots or in bulk, for cash or on credit, all as Secured Party, in its sole discretion, may deem advisable; such sales may be adjourned from time to time with or without notice. Secured Party shall have the right to conduct such sales on Debtor's premises or elsewhere and shall have the right to use Debtor's premises without charge for such sales for such time or times as Secured Party may see fit. Secured Party is hereby granted license or other right to use, without charge, Debtor's labels, patents, copyrights, rights of use of any matter, or any property of a similar nature, as it pertains to the Collateral, in advertising for sale and selling any Collateral and Debtor's rights under all licenses and all franchise agreements shall inure to Secured Party's benefit. Secured Party may purchase all or any part of the Collateral at public or, if permitted by law, private, sale and, in lieu of actual payment of such purchase price, may setoff the amount of such price against the Obligations. The proceeds realized from the sale of any Collateral shall be applied first to all costs, expenses and attorney's fees and expenses incurred by Secured Party for collection and enforcement of this Note and for acquisition, repair, completion, protection, removal, storage, sale and delivery of the Collateral; second to late charges; third to interest due upon any of the Obligations; and fourth to the principal balance of the Obligations. If any deficiency shall arise, Debtor shall remain liable to Secured Party therefor. If any excess shall arise, it shall, after ninety (90) days, be paid over to Debtor.

7.3.4 The right to take such other and further action as Secured Party may at law or in equity be entitled to take in Secured Party's sole and absolute discretion.

7.4 Notice. Any notice required to be given by Secured Party of a sale, lease, other disposition of the Collateral or any other intended action by Secured Party, may be given in any manner provided for delivery of notices in this Note, ten (10) days prior to such proposed action, and, if so given, shall constitute commercially reasonable and fair notice thereof to Debtor.

8. Default Interest; Administrative Charges.

8.1 Default Interest. Commencing with the day after any installment(s) or the entire unpaid balance of payment (by acceleration, maturity, or otherwise) hereunder shall have become due and payable, such installment(s) or the entire unpaid balance of payments (by acceleration, maturity, or otherwise) (as the case may be) shall bear interest at the rate of eighteen percent (18%) per annum, but not in excess of the maximum rate permitted by law.

8.2 Administrative Charges. If Debtor fails to make any installment within ten (10) days after the same is due, Debtor shall pay a late charge of five percent (5%) of the unpaid installment, but in no event higher than the maximum rate permitted by law, and such amount shall be payable upon demand. Such payment is not interest or for the use of money, but is used to offset Secured Party's administrative costs occasioned by such delay.

8.3 Costs and Expenses. Debtor shall pay (or at Secured Party's option, reimburse Secured Party for) all of Secured Party's fees, costs and expenses (including, but not limited to, attorneys' fees and expenses) incurred in connection with the enforcement of this Note and the transactions contemplated hereby and the collection of the Obligations (regardless of whether any action is commenced and if so commenced, whether incurred at trial or appeal, and whether incurred prior to or after the bankruptcy of Debtor). Debtor shall also pay (or at Secured Party's option, reimburse Secured Party for) all recording and filing fees and other costs and expenses incurred in connection with the transactions contemplated by this Note. In addition, Debtor shall pay Secured Party a disposition charge of $195.00 upon termination of a Schedule as reimbursement for all expenses associated with the release and transfer of liens and title with respect to the specific collateral contained within the particular Schedule.

9. Miscellaneous.

9.1 Maximum Rate. Interest charged hereunder shall not exceed the maximum rate permitted by law. Accordingly, if, for any reason, Debtor is required to pay, or has paid, interest at a rate in excess of the highest rate of interest which may be charged by Secured Party or which Debtor may legally contract to pay under applicable law, then the interest rate shall be deemed to be reduced, automatically and immediately, to such maximum rate, and interest payable hereunder shall be computed and paid at such maximum rate and the portion of all prior payments of interest in excess of such maximum rate shall be deemed to have been prepayments of outstanding principal and applied to the installments in the inverse order of their maturities.

Page 3

DocuSign Envelope ID: F25923B4-B245-4DDD-BA7E-51A08CED8109

9.2      Payments.

9.2.1 All payments under this Note shall be made by Debtor to Secured Party at its address set forth above (or such other place as the holder hereof shall designate to Debtor in writing) in lawful money of the United States in immediately available funds and without defense, set-off or counterclaim and without deduction for any present or future income, stamp, sales or other taxes, levies, imposts, deductions, charges or withholdings whatsoever imposed, assessed, levied or collected by or for the benefit of any jurisdiction or taxing authority. In addition, Debtor shall pay any and all taxes (stamp or otherwise) payable or determined to be payable in connection with the execution and delivery of this Note, and on all payments to be made by Debtor hereunder (other than Secured Party's income taxes) and all taxes payable in connection with or related to the Collateral.

9.2.2 All payments under this Agreement shall be applied first to costs and expenses of Secured Party incurred in connection with this Note, second to late charges, third to interest, and fourth to the principal balance and any other amounts due under this Note.

9.2.3 Secured Party shall not be deemed to have waived any rights or remedies hereunder or otherwise if it accepts any payment or payments from Debtor, marked payment "in full". Any such payment or payments that Secured Party accepts from Debtor shall be deemed to have been accepted by Secured Party without prejudice and under protest with full reservation of Secured Party's rights and remedies under this Note and applicable law.

9.3      Further Assurances. Debtor shall at any time and from time to time upon the written request of Secured Party, execute and deliver such further agreements, instruments and documents and do such further acts and things as Secured Party may reasonably request in order to effect the purposes of this Note.

9.4      Modification of Note. This Note may not be modified, altered or amended, except by an agreement in writing signed by Debtor and Secured Party.

9.5      Assignment. Debtor may not sell, assign or transfer this Note, or any portion thereof, including, without limitation, Debtor's obligations or duties hereunder. Debtor hereby consents to Secured Party's sale, assignment, transfer or other disposition at any time, of this Note, its security interest, or any portion thereof, including, without limitation, Secured Party's rights, title, interests, remedies and powers hereunder. To the extent permitted by applicable law, Debtor agrees not raise any claim, defense or offset arising out of this Note or otherwise which it may have against Secured Party as a defense. counterclaim or offset to any action by any assignee of Debtor hereunder.

9.6      Waiver by Debtor. Debtor hereby expressly waives presentment for payment, demand for payment, notice of dishonor, protest, notice of protest, notice of non-payment, and all lack of diligence or delays in collection or enforcement of this Note.

9.7      Waiver by Secured Party. Secured Party's failure, at any time or times hereafter, to require strict performance by Debtor of any provision of this Note shall not waive, affect or diminish any right of Secured Party thereafter to demand strict compliance and performance therewith. Any suspension or waiver by Secured Party of any Event of Default by Debtor under this Note shall not suspend, waive or affect any other Event of Default by Debtor under this Note, whether the same is prior or subsequent thereto and whether of the same or of a different type. None of the undertakings, agreements, warranties, covenants and representations of Debtor contained in this Note and no Event of Default by Debtor under this Note shall be deemed to have been suspended or waived by Secured Party, unless such suspension or waiver is by an instrument in writing specifying such suspension or waiver and signed by an officer or other authorized person of Secured Party and directed to Debtor.

9.8      Severability. Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note shall be prohibited by or be invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of this Note.

9.9      Parties. This Note shall be binding upon and inure to the benefit of the successors and assigns of Debtor (as limited by paragraph 9.5) and Secured Party.

9.10      Governing Law. THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN DELIVERED AT AND SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CONFLICTS OF LAW RULES.

9.11      Venue. DEBTOR IRREVOCABLY CONSENTS THAT ANY LEGAL ACTION OR PROCEEDING AGAINST IT UNDER, ARISING OUT OF OR IN ANY MANNER RELATING TO THIS AGREEMENT, MAY BE BROUGHT IN ANY COURT OF THE STATE OF NEW YORK OR IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK. DEBTOR, BY THE EXECUTION AND DELIVERY OF THIS AGREEMENT, EXPRESSLY AND IRREVOCABLY ASSENTS AND SUBMITS TO THE PERSONAL JURISDICTION OF ANY OF SUCH COURTS IN ANY SUCH ACTION OR PROCEEDING, AND FURTHER IRREVOCABLY CONSENTS TO THE SERVICE OF ANY COMPLAINT, SUMMONS, NOTICE OR OTHER PROCESS RELATING TO SUCH ACTION OR PROCEEDING BY DELIVERY THEREOF TO IT BY HAND OR BY MAIL IN THE MANNER PROVIDED FOR IN THIS NOTE. DEBTOR HEREBY EXPRESSLY AND IRREVOCABLY WAIVES ANY CLAIM OR DEFENSE IN ANY SUCH ACTION OR PROCEEDING BASED ON ANY ALLEGED LACK OF PERSONAL JURISDICTION, IMPROPER VENUE OR FORUM NON CONVENIENS OR ANY SIMILAR BASIS. DEBTOR SHALL NOT BE ENTITLED IN ANY SUCH ACTION OR PROCEEDING TO ASSERT ANY DEFENSE GIVEN OR ALLOWED UNDER THE LAWS OF ANY STATE OTHER THAN THE STATE OF NEW YORK UNLESS SUCH DEFENSE IS ALSO GIVEN OR ALLOWED BY THE LAWS OF THE STATE OF NEW YORK. NOTHING IN THIS AGREEMENT SHALL AFFECT OR IMPAIR IN ANY MANNER OR TO ANY EXTENT THE RIGHT OF SECURED PARTY TO COMMENCE LEGAL PROCEEDINGS OR OTHERWISE PROCEED AGAINST DEBTOR IN ANY JURISDICTION OR TO SERVE PROCESS IN ANY MANNER PERMITTED BY LAW.

9.12      Waiver of Jury Trial. DEBTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY ACTION OR PROCEEDING RELATING TO THIS AGREEMENT OR ANY AGREEMENT, INSTRUMENT OR DOCUMENT EXECUTED AND DELIVERED IN CONNECTION HEREWITH OR THEREWITH.

9.13      Notice. Any notice required hereunder shall be in writing, and shall be deemed to have been validly served when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, such as Federal Express or United Parcel Service, with proper postage prepaid, or when deposited in the United States mail, as first class, certified or registered mail postage prepaid, and addressed to the party to be notified at the address of such party set forth in this Note; provided, however, that notice to the Secured Party shall be deemed given only upon actual receipt. Any party may change its address for notices under this Note by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Debtor agrees to keep Secured Party informed at all times of Debtor's current address.

9.14      Complete Agreement. This Note, the Schedule(s), Riders, and the other agreements, instruments and documents referred to herein are the complete agreement of the parties with respect to the subject matter hereof and thereof and each of which may be executed in counterparts.

9.15      Sections Titles. The Section titles contained in this Note are and shall be without substantive meaning or content of any kind whatsoever and are not a part of the agreement between the parties hereto.

IN WITNESS WHEREOF, this Note has been duly executed as of the _____ day of _____, December 10, 2020

Debtor: Prestige Infusions LLC                                    Secured Party: Santander Bank, N.A.

By :X _____                 By: _Michael J. Parz_____

Title: __Member_____                  Title: __Senior Vice President___

# EXHIBIT "B"

DocuSign Envelope ID: F25923B4-B245-4DDD-BA7E-51A08CED8109

# GUARANTY

THIS GUARANTY OF PAYMENT AND PERFORMANCE dated December 10, 2020 (this "Guaranty"), by the undersigned (collectively and individually referred to herein as the "Guarantor"), in favor of **Santander Bank, N.A.** (together with each of its Affiliates, as defined below, collectively "Secured Party") having an office at 3 Huntington Quadrangle Suite 101N, Melville, NY 11747, on behalf of _____Prestige Infusions LLC_____, having an address of _____116 Boonton Ave_____ _____Kinnelon, New Jersey 07405_____, and its Affiliates (together with each of its Affiliates, collectively, "Debtor").

1.      Definitions. As used herein:

        (a)     "Affiliate" shall mean any corporation, partnership, person or other entity that now or hereafter directly or indirectly controls, is controlled by, or is under common control with, the referenced person or entity.

        (b)     "Liabilities" means any and all obligations of any kind owing from Debtor to Secured Party or its Affiliates, whether direct or indirect, absolute or contingent, joint, several or independent, now existing or hereafter arising, due or to become due, or created directly or acquired by Secured Party by assignment or otherwise and including, without limitation, all fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees and costs and expenses paid or incurred by the Secured Party in: (i) endeavoring to collect all or any part of the obligations from, or in prosecuting any action against, the Debtor and/or Guarantor; (ii) taking any action with respect to any security or collateral securing the obligations of the Debtor, and/or Guarantor under this Guaranty; and (iii) preserving, protecting or defending the enforceability of this Guaranty or its rights hereunder as well as pursuant to:

                (1)     each and every (A) Promissory Note and Security Agreement (the "Note") and any related Riders thereto (including without limitation any Open-End and other Purchase Option Riders) now or hereafter entered into by Secured Party with Debtor, (B) agreement relating to any security therefor, and (C) other lease, loan and/or sale (on credit or otherwise) of a motor vehicle (and any related accessories) and/or of any other equipment or goods now or hereafter entered into by Secured Party with Debtor; and

                (2)     any and all other notes, leases, loans, credits, financial accommodations and/or other agreements or transactions now or hereafter entered into by Secured Party or its Affiliates with Debtor;

all at such times, in such amounts, upon such terms and conditions and with or without such security, as Secured Party may in its sole discretion deem desirable, and with or without notice to or consent from Guarantor (collectively, "Agreements").

2.      Guaranty of Payment and Performance. To induce Secured Party to enter, in its sole discretion, into one or more Agreements, Guarantor hereby unconditionally, absolutely and irrevocably guarantees the full and punctual payment and performance by Debtor of all of the Liabilities.

3.      Agreements of Guarantor. Guarantor agrees that: (a) Secured Party may, at any time and from time to time (whether before or after revocation or termination of this Guaranty), without notice to and without incurring any responsibility whatsoever to Guarantor and without impairing or releasing any of the obligations of Guarantor hereunder, and upon or without any terms or conditions, and either in whole or in part: (i) change the manner, place or terms of payment of any of the Liabilities, including (without limitation) any increase or decrease in rent and/or other installment payments and/or any interest rate adjustments, and/or change or extend the time of payment or performance of, or renew, amend, alter, or restate, any of the Liabilities, or any security therefor, or any other liability incurred directly or indirectly in respect thereof, or make any other change in the Liabilities or consent to any change in Debtor itself, and this Guaranty shall apply to the Liabilities as so changed, extended, renewed, amended, altered or restated; (ii) take additional security for or sell, exchange, release, surrender, substitute, realize upon or otherwise deal with in any manner and in any order (A) any property at any time pledged or mortgaged by any entity or person to secure any of the Liabilities or any other liabilities (including without limitation, any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or (B) any set-off thereagainst; (iii) exercise or refrain from exercising any rights against Debtor or others (including, without limitation, Guarantor) or otherwise act or refrain from acting; (iv) settle or compromise any Liability, any security therefor, or any liability (including any of those hereunder) incurred directly or indirectly in respect thereof or hereof, and/or subordinate the payment of any of the Liabilities (whether due or not) to liabilities of creditors of Debtor other than Secured Party and Guarantor; (v) apply any sums paid by any entity or person (regardless of how realized) to the payment of any Liability, regardless of what Liabilities remain unpaid; (vi) cancel, compromise, modify, amend, restate or waive the provisions of any document relating to any Liabilities; (vii) release one or more of the entities or persons constituting Guarantor hereunder or any other guarantor or surety of any or all of the Liabilities; and (viii) grant Debtor any indulgence as Secured Party may, in its sole discretion, determine; (b) no payment by Guarantor except payment in full of all Liabilities shall entitle Guarantor to be subrogated to any of the rights of Secured Party; and (c) Guarantor shall have no right of reimbursement, subrogation or indemnity against Debtor whatsoever, and no right of recourse to or with respect to any assets of Debtor or any security for the Liabilities, unless and until the Liabilities have been indefeasibly paid in full.

4.      Certain Waivers and Consents and Covenants.

        (a) Guarantor covenants that this Guaranty will not be discharged, except by full, complete and indefeasible payment of the Liabilities in full and in furtherance of such covenants hereby irrevocably and unconditionally waives:

                (1)     any requirement of diligence, demand of payment or any other demand whatsoever, filings of claims with a court in the event of receivership or bankruptcy of Debtor, presentment, notice of dishonor and protest, notice of any default by Debtor or of any sale or other dealing of any kind with any security for any Liability, the benefit of any statutes of limitation, and any other notice to which Guarantor might otherwise be entitled; and
                (2)     the right to interpose in any action on this Guaranty any claim, counterclaim, defense, set-off or other right of any kind (including, without limitation, the right to consolidate with such action any other action), or any statute of limitation affecting its liability hereunder or the enforcement hereof.

        (b) Guarantor consents to the non-perfection, waiver, lapse, subordination, assignment, full or partial release or other disposition of, or any other dealing with, any rights, security interests, pledges, hypothecations, chattel mortgages or liens at any time granted to Secured Party as security for any of the Liabilities.

        (c) Guarantor shall furnish to Secured Party such annual financial statements as Secured Party shall from time to time request.

5.      Subordination; No Enforcement. The payment and enforcement of any and all present and future debts and obligations of any kind of Debtor to Guarantor (and any security therefor) are hereby postponed in favor of and subordinated to the full payment and performance of all of the Liabilities, and such debts and obligations are hereby assigned and transferred to Secured Party as security for the obligations of Guarantor hereunder. Guarantor shall from time to time promptly execute such instruments and documents (including but not limited to Uniform Commercial Code financing statements) to evidence such assignment and transfer as Debtor may request. Guarantor agrees that it shall not accept or receive any security, payment or other thing of value from Debtor or exercise any right against Debtor or its assets without obtaining the prior written consent of Secured Party.

Page 1

DocuSign Envelope ID: F25923B4-B245-4DDD-BA7E-51A08CED8109

6.  Reinstatement. If any payment on the Liabilities that was received by Secured Party from any source is revoked, set aside or required to be repaid, whether in connection with a bankruptcy or insolvency proceeding or otherwise, (a) this Guaranty shall remain in full force and effect (or, if previously terminated, be fully reinstated) until Secured Party has received full and final payment of all of the Liabilities, and (b) Guarantor shall immediately pay to Secured Party the amount of any such payment upon demand.

7.  Transfer of Assets. Guarantor agrees that it will not transfer any of its assets to any entity or person (except gifts of nominal value) without first obtaining full and valuable consideration (on a disinterested third-party basis) for each such transfer.

8.  Enforcement. This Guaranty is a guaranty of payment and not of collection and Guarantor hereby waives the right to require that (a) any action be brought first against Debtor or any other guarantors or any security, or (b) resort be made at any time to any security or to any security deposit held by Secured Party. Secured Party may enforce any or all Liabilities from time to time without resorting first to any other right, remedy or security. All Liabilities shall, unless paid in full, survive any repossession of any security therefor or of any motor vehicle or equipment or other goods sold or leased pursuant thereto, irrespective of whether such action constitutes an election of remedies against Debtor. Guarantor shall, upon demand, pay or reimburse Secured Party for all costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred or paid by Secured Party in enforcing any of its rights or remedies with respect to this Guaranty or any Liabilities.

9.  Continuing Guaranty. This Guaranty: (a) may not be terminated or changed orally and no provision hereof may be modified or waived except in writing by Secured Party in accordance with the notice provision set forth in section 11 below; (b) shall continue in full force and effect until Secured Party receives written notice of termination from Guarantor, except that no such termination shall release or affect in any way Guarantor's liability under this Guaranty with respect to any Liabilities created or incurred prior to Secured Party's receipt of such notice, and any extensions, modifications, consolidations, restatements, renewals or refinancings of such Liabilities; and (c) shall be binding upon Guarantor, jointly and severally if more than one, and its, his, her or their respective heirs, representatives, successors and assigns, and shall inure to the benefit of Secured Party, its successors and assigns.

10.  Assignment. This Guaranty is assignable by Secured Party from time to time in whole or in part in conjunction with the transfer or assignment of, or the grant of a security interest in, Secured Party's interest in any Agreement, and any such assignment of this Guaranty shall vest in the assignee the rights and powers (in whole or in part, as appropriate) herein conferred upon and granted to Secured Party. Guarantor agrees from time to time: (a) in connection with any such assignment, to provide such instruments, documents, acknowledgments and further assurances as Secured Party or any assignee may deem necessary or advisable to effectuate the purposes of this Guaranty and any such assignment, with respect to such matters as the validity and enforceability this Guaranty, Guarantor's obligations to such assignee and such other matters as may be reasonably requested; and (b) that after receipt by Guarantor of written notice of such an assignment from Secured Party or from any assignee, all amounts which are then and thereafter due under this Guaranty shall unconditionally be paid to such assignee as directed in such notice.

11.  Notices. Any notices required or permitted to be given hereunder shall be deemed have been served when actually delivered, when received by confirmed facsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier with proper postage prepaid, or when deposited in the United States mail, as first class, certified or registered mail, postage prepaid, and addressed to the party to be notified at the address of such party set forth in this Guaranty; provided, however, that notice to the Secured Party shall be deemed given only upon actual receipt.

12.  Jurisdiction; Service of Process. **GUARANTOR IRREVOCABLY SUBMITS TO THE JURISDICTION AND VENUE OF ALL FEDERAL AND STATE COURTS LOCATED IN SUFFOLK COUNTY, NEW YORK IN ANY ACTION OR PROCEEDING BROUGHT ON THIS GUARANTY (IF SECURED PARTY CHOOSES TO BRING SUCH ACTION OR PROCEEDING IN NEW YORK), AND GUARANTOR AGREES THAT ANY PROCESS, NOTICE OF MOTION OR OTHER APPLICATION TO ANY OF SAID COURTS (OR A JUDGE THEREOF) IN ANY SUCH ACTION OR PROCEEDING SHALL BE DULY SERVED IF SENT TO GUARANTOR BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE ADDRESS SET FORTH AT THE BEGINNING OF THIS GUARANTY (AND SERVICE SO MADE SHALL BE DEEMED COMPLETE FIVE (5) DAYS AFTER THE SAME HAS BEEN POSTED AS AFORESAID). THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF NEW YORK, WITHOUT REGARD TO PRINCIPLES OF CONFLICTS OF LAW OR CHOICE OF LAW. GUARANTOR HEREBY WAIVES THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BROUGHT ON OR RELATING TO THIS GUARANTY.**

13.  Severability. The invalidity or unenforceability of any portion of this Guaranty shall not affect the validity or enforceability of the remaining portions of this Guaranty.

14.  No Material Misstatements. To the best of the Guarantor's knowledge, no information contained in this Guaranty, or any other credit documents, or any written statement furnished by or on behalf of Guarantor, Debtor or any other party pursuant to the terms of any of the foregoing contains any untrue statement of a material fact or omits to state a material fact necessary to make any material statements contained herein or therein not misleading in light of the circumstances under which they were made. To the best of the Guarantor's knowledge, there is no fact or circumstance presently known to the Guarantor which has not been disclosed to Secured Party and which materially adversely affects, or is reasonably likely to materially adversely affect, Debtor, the Obligations or any collateral therefor, Guarantor or Debtor's or Guarantor's business, operations or condition (financial or otherwise).

15.  Miscellaneous. If more than one Guarantor is named below, or if any Guarantor executes any other Guaranty with respect to the Liabilities, the liabilities and obligations of each Guarantor hereunder or thereunder shall be joint and several with each other Guarantor. Section headings in this Guaranty are for convenience of reference only and shall not alter or affect the meaning or interpretation hereof. Guarantor is not a person (i) whose property or interest in property is blocked or subject to blocking pursuant to Section 1 of Executive Order 13224 of September 23, 2001 Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism (66 Fed. Reg. 49079 (2001)), (ii) who engages in any dealings or transactions prohibited by Section 2 of such executive order, or, to its knowledge, is otherwise associated with any such person in any manner violative of Section 2, or (iii) on the list of Specially Designated Nationals and Blocked Persons or subject to the limitations or prohibitions under any other U.S. Department of Treasury's Office of Foreign Assets Control regulation or executive order. Nothing contained herein shall constitute an obligation of Secured Party to act or refrain from taking any action.

This Guaranty has been duly executed by Guarantor as of the date set forth above.

(X): _____              (X): _____

Ali I Atsha           / NO TITLE                    / NO TITLE

1210 91st St
North Bergen     NJ   07047
Telephone No.                              Telephone No.
E-mail:                                    E-mail:

(X): _____              (X): _____

                  / NO TITLE                      / NO TITLE

Telephone No.                           Telephone No.
E-mail:                                    E-mail:

# EXHIBIT "C"

Confidential

## ATTACHMENT 2

### Allonge

Reference is made to Schedule No. 000 in the amount of $189,332.63 dated December 10, 2020 as a schedule to Promissory Note and Security Agreement No. 002-0025790 from **PRESTIGE INFUSIONS LLC** (the "Note") payable to the order of Santander Bank, N.A. ("Assignor"), as successor to Sovereign Bank, N.A. It is intended that this Allonge be attached to and made a permanent part of the Note.

Pay to the order of Gulf Coast Bank & Trust Co. ("Assignee"), without recourse, representations or warranties of any kind.

Executed this ___ day of January 2025.

By: Michael Lockery
Its: Director

Confidential

# EXHIBIT D



**ASSET SALE AGREEMENT**
**LOANS AND JUDGMENTS**

THIS ASSET SALE AGREEMENT (the "Agreement") is entered into this 5th day of December, 2023, by and between the undersigned Buyer and Seller.

**W I T N E S S E T H**

WHEREAS, Seller owns and desires to sell certain Assets;

WHEREAS, Buyer has reviewed and evaluated the Assets, Asset Documents and records and other information made available by Seller to Buyer's full satisfaction;

WHEREAS, Buyer was the successful bidder for purchase of the Assets for the consideration and under the express terms, provisions, conditions and limitations as set forth herein; and

WHEREAS, Seller is willing, subject to the express terms, provisions, conditions, limitations, waivers and disclaimers as may be expressly set forth herein, to sell, transfer, assign and convey to Buyer all of the Seller's right, title and interest, in, to and under the Assets;

NOW, THEREFORE, in consideration of the mutual promises herein set forth and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Seller and Buyer agree as follows:

**ARTICLE I**
**DEFINITIONS**

For purposes of this Agreement, the following terms shall have the meanings indicated:

**"Agreement"** means this Purchase and Sale Agreement, including all Exhibits and Schedules hereto.

**"Allocated Asset Price"** means the individual price of any Asset sold hereby as provided on Exhibit A.

**"Asset Balance"** means the amount designated as such for the respective Assets as shown on the Asset Schedule, which shall represent the approximate net principal balance of each of the respective Assets as shown on the records of Seller. The Asset Balance may include interest (accrued or unaccrued), costs, fees and expenses. It is possible that payments may have been made by or on behalf of any Obligor prior to the Closing Date or the date of this Agreement, which are not reflected in the Asset Balance. It is also possible that, in the case of Assets where a judgment has been obtained against one or more of the Obligors, the amount of the judgment may be greater or smaller than the Asset Balance reported on the Asset Schedule. This figure may also reflect payments made by or on behalf of any Obligor which have been deposited and credited to the Asset Balance of such Asset, but which may subsequently be returned to Seller due to insufficient funds to cover such payments.

**"Assets"** means the assets identified on the Asset Schedule to be sold by Seller to Buyer under the terms, conditions and provisions of this Agreement and includes for each of the Assets, all obligations owed to Seller from each Obligor with respect to each Asset under or by virtue of a note (including any deficiency thereunder) and/or under or by virtue of any judgment against any such Obligor, all rights, powers, liens or security interests of the Seller with respect to any such note or judgment, and the interest of Seller in any litigation (including, without limitation, any foreclosure) or bankruptcy to which Seller is a party or claimant relating to any of the Assets.

**"Asset Documents"** means those documents that are in Seller's possession and are included in the credit file and the legal file maintained by Seller for each of the Assets, which documents may include any and all of the lists, records, agreements, certificates, legal opinions or other documents or instruments in Seller's possession evidencing, related to

and given or obtained to secure the performance or payment with respect to a particular Asset, as obtained at the time of its origination or subsequent thereto, such as the note, any agreement of any kind, financial and/or operating statements or credit reports.  The Asset Documents may be in the form of original documents or copies thereof, whether by photocopy, microfiche, microfilm or on diskette.

**"Asset Schedule"** means the schedule, attached hereto as **Exhibit A** and made a part hereof setting forth the following information for each Asset: the Seller's loan number, the name of primary Obligor, and the Asset Balance of each Asset.

**"Bid Form"** means the form bid to purchase the Asset(s) submitted by Buyer and accepted by Seller in accordance with the terms of the Offering Overview Package, which accepted Bid Form is made a part hereof by reference.

**"Bid Percentage"** means the percentage of the Asset Balance bid by Buyer and accepted by Seller to purchase the Assets.

**"Bill of Sale and Assignment"** means the document to be delivered to Buyer on or before the Closing Date, in the form attached hereto as **Exhibit B.**

**"Calculation Date"** is defined as the date identified on the Bid Form as the date on which the Asset Balance was calculated.

**"Confidentiality Agreement"** means any confidentiality agreement executed by the Buyer in favor of the Seller relating to the sale of the Asset(s).

**"Closing Date"** means a date no later than seven days following the date hereof, unless otherwise agreed to in writing by Seller and Buyer.

**"Current Balance"** means the Asset Balance of an Asset as set forth in the Asset Schedule.

**"Earnest Money"** means an amount equal to ten (10%) percent of the Purchase Price.

**"Judgment"** means any judgment against an Obligor with respect to any note or any guaranty of such note that is included in the Assets.

**"Obligor"** means any borrower, guarantor or judgment debtor under any Asset.

**"Offering Overview Package"** means the information package prepared by The Debt Exchange, Inc. ("DebtX") and made available to potential bidders containing, among other things, the Asset Schedule, the Confidentiality Agreement, the Terms of Sale Memorandum, a Bid Form and the form of this Agreement, as such package may be amended, supplemented, corrected or otherwise modified.

**"Purchase Price"** means the amount as specified in Section 2.1 below to purchase the Assets.  This amount is equal to the aggregate Asset Balance for the Assets in each Asset pool, multiplied by the Bid Percentage for each Asset pool.

**"Transfer Date"** means the date no later than ten (10) days following the Closing Date, by which date the Asset Documents are to be made available to the Buyer by the Seller.

**"Transfer Documents"** means all documents that are required to be delivered on the Transfer Date by Seller or the Buyer pursuant to Article III.

## ARTICLE II
## PURCHASE AND SALE OF THE ASSETS

Section 2.1.  Agreement to Sell and Purchase Assets.  Seller agrees to sell, and Buyer agrees to purchase, for the amount set forth on the Bid Form, (such amount to be adjusted, if necessary, prior to the Closing Date to account for any errors or omissions in stated Asset Balances or other accounting adjustments, as mutually agreed by Seller and Buyer) for the Assets, subject to the terms, provisions, conditions, limitations, waivers and disclaimers set forth in this Agreement. Seller will sell and the Buyer will purchase the Assets, on the terms and subject to the conditions set forth below.  Buyer has made an independent investigation as Buyer deems necessary as to the nature, validity, collectibility, enforceability and value of the Assets, and as to all other facts that the Buyer deems material to Buyer's purchase.  Buyer enters into this Agreement solely on the basis of that investigation and Buyer's own judgment.  The sale will be without recourse to Seller, except as set forth hereinafter.  Buyer acknowledges that some Assets, or certain transactions posted to some Assets, may be subject to actual or potential claims or disputes by Obligors against Seller.  Except for those liabilities described hereinafter, Buyer purchases those Assets expressly subject to any rights of Obligors, and will not assert those claims, disputes, and rights against Seller.

Section 2.2.  Agreement to Assign/Buyer's Right to Act.  On the Closing Date, Seller shall deliver to Buyer a Bill of Sale and Assignment, in the form of **Exhibit B** hereto, executed by an authorized representative of Seller, which Bill of Sale and Assignment shall sell, transfer, assign, set-over, quitclaim and convey, in each case without recourse to Seller all right, title and interest of Seller in and to each of the Assets so purchased.

Section 2.3.  Asset Schedule.  Seller has provided to Buyer the Asset Schedule setting forth all of the Assets, and the Buyer acknowledges that the same has been reviewed to its full satisfaction.

Section 2.4.  Purchase Price/Payment.  Buyer shall pay to Seller the Purchase Price as follows:

(a) Earnest Money.  Concurrently with its execution of this Agreement, Buyer will deliver the Earnest Money in the form of a wire transfer to the account of the Seller to secure Buyer's performance under this Agreement and as partial payment for the Assets to be purchased.  The Earnest Money shall be nonrefundable except as otherwise expressly set forth hereinafter.

(b)  Balance.  On or before 5:00 p.m., Eastern Time on the Closing Date, Buyer shall pay to Seller the balance of the Purchase Price.  Such payment must be made immediately available United States Dollars and delivered by wire transfer to the wire transfer address designated by Seller for the account of the Seller.

Section 2.5.  Payments Received/Adjustments to Purchase Price.  To the extent that the Seller has received any payments or other consideration received and distributed or paid by or on behalf of an Obligor on or prior to the Calculation Date, Seller has reduced the Current Balance of such Asset for purposes of calculating the Purchase Price. Buyer shall be entitled to a credit against the Purchase Price in an amount equal to the Bid Percentage times the amount of such payments or other consideration to the extent such Asset Balance did not reflect a reduction for such payment. If Seller shall receive any payments or other consideration distributed or paid by or on behalf of any Obligor with respect to the Assets after the Calculation Date, Seller shall make its best efforts to pay over and/or deliver such payments or other consideration to Buyer (without interest thereon from Seller) on or within 60 days of receipt of any such amounts and, if deemed necessary or appropriate by Seller, with an endorsement in the form substantially as follows: "Pay to the order of [BUYER] without representation, warranty, and without recourse." Seller may indicate on the records related to any of the Assets the date of receipt and amount of any payments.  If Seller has deposited payments received from any Obligor and issues a check or payment therefor to Buyer, Buyer shall retain the risk that any such payment so deposited by Seller shall be returned due to insufficient funds.  Seller shall have a period of sixty (60) days after the date Seller delivers to Buyer payments made by or on behalf of any Obligor on or after the date of this Agreement, to notify Buyer in writing that any such payments were returned due to insufficient funds and specifying the amount thereof, whereupon Buyer shall immediately, and not later than ten (10) days following receipt of such notice, pay to Seller the amount of such payment by cashier's or certified check and identifying thereon this Agreement.

3

## ARTICLE III
## TRANSFER OF ASSETS AND DOCUMENTS

Section 3.1. <u>Assignment of Assets and Documents</u>**.**  On the Transfer Date after confirmation by Seller of receipt of the payment of the balance of the Purchase Price, Seller shall deliver to Buyer, at Buyer's expense, the following:

    (a)  The Asset Documents in the possession of the Seller; and

    (b)  The Bill of Sale and Assignment

The Bill of Sale and Assignment shall have the same effect as an individual and separate bill of sale and assignment of each and every Asset referenced therein.  Buyer shall be responsible at its own expense for the recording and/or filing of the originals of any such assignments as it deems necessary or appropriate in its sole, discretion.  Seller reserves the right to retain copies of all or any portion of the Asset Documents.  All expenses of transportation of the Transfer Documents, the Asset Documents and of the other documents, instruments and files to be delivered to Buyer pursuant to this Article III shall be borne by Buyer.

Section 3.2. <u>Additional Documentation.</u>  Buyer further agrees that in the event it requests Seller to execute and deliver, within three (3) months after the Transfer Date, additional assignments or other documents, Buyer shall furnish Seller's counsel, with the same for review, analysis, approval or amendment by Seller in its sole discretion and Buyer shall be responsible for all costs, fees and expenses incurred therefore which shall be payable upon demand from Seller and as a condition precedent to Seller's delivery of any such items.  When requesting additional assignments, Buyer shall furnish Seller's counsel with the loan number or other identifying information as set forth on the Asset Schedule, a copy of the Asset Documents requested to be assigned, copies of any previous assignments of same, and any other information reasonably requested by Seller or its counsel.  The additional assignments shall be without recourse, representation or warranty of any kind or nature.  Such qualifying language on the additional assignments shall not affect, limit or enlarge the obligations of the Seller and the rights, remedies and recourse of the Buyer under this Agreement.   Seller shall have no responsibility or liability for providing any further documentation beyond using its best efforts to provide such information as shall remain in possession of Seller after the Transfer Date since the Asset Documents will have been delivered and transferred to Buyer on the Transfer Date.  Seller shall have no obligation whatsoever to execute or deliver additional assignments or other documents subsequent to three (3) months after the Transfer Date.  Buyer shall be solely responsible for the contents and form of such instruments, and Buyer hereby releases Seller from any loss or damage incurred by Buyer due to the contents of such instruments. Buyer further agrees to indemnify and hold Seller harmless from any cause of action by any Person arising out of the contents or form of such instruments.  Any and all risk relating to the assignment and record transfer of the Asset Documents, the substitution of the Buyer as a litigant or party in litigation or bankruptcy, and the naming of the Buyer as loss payee, mortgagee or additional insured on any policy of insurance, or to the failure to promptly or properly assign to, transfer to, substitute or name the Buyer, is borne solely by the Buyer.

## ARTICLE IV
## CONDITIONS PRECEDENT TO PURCHASE AND SALE OF ASSETS

It shall be a condition precedent to each party's obligations hereunder that as of the Closing Date:

Section 4.1.  <u>Representations and Warranties</u>.  The representations and warranties of Buyer and Seller in this Agreement are true and correct in all material respects.

Section 4.2.  <u>Compliance with Covenants and Agreements</u>.  Buyer and Seller will each have complied in all material respects with each of their respective covenants and agreements in this Agreement.

4

Section 4.3.  Buyer's Credit Reference.  At Seller's request, Buyer will have delivered to Seller letters of reference as to the Buyer's business reputation or creditworthiness that is satisfactory to Seller.

Section 4.4.  Approvals, Consents, and Notices.  All required approvals, consents, and other actions by, and notices to and filings with, any governmental authority, and any other person or entity will have been obtained or made.

## ARTICLE V
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF THE BUYER

Buyer hereby represents, warrants and covenants, as of the date hereof and as of the date of this Agreement and as of the Closing Date that:

Section 5.1.  Due Diligence.  Buyer has been urged, invited and directed to conduct due diligence review and analysis of (i) the Assets, Asset Documentation and such related information as is in Seller's possession, each of which has been made available for review, together with (ii) such records as are generally available to the public from local, county, state and federal authorities, record keeping offices and courts (including, without limitation, any bankruptcy courts in which any Obligor may be subject to any pending bankruptcy proceedings), as the Buyer deemed necessary, proper or appropriate in order to make a complete informed decision with respect to the purchase and acquisition of the Assets.

Section 5.2.  Independent Evaluation. .

(a) Buyer is a sophisticated purchaser, has knowledge and experience in financial and business matters that enable it to evaluate the merits and risks of the transaction contemplated by this Agreement.

(b) Buyer's decision to purchase the Assets pursuant to this Agreement is based upon Buyer's own independent evaluation of information deemed relevant to Buyer.  Buyer has made an independent investigation as Buyer deems necessary as to the nature, validity, collectibility, and value of the Assets, and as to all other facts that Buyer deems material to Buyer's purchase.  Buyer enters into this Agreement solely on the basis of that investigation and Buyer's own judgment and the representations set forth herein, the warranties set forth herein, and the other information set forth herein.

 (c) During the course of Buyer's independent evaluation information was made available to Buyer by Seller or Seller's personnel, agents, representatives or independent contractors, and Buyer was given the opportunity to inspect such information, and the same was to its complete and full satisfaction.  In connection therewith, Buyer acknowledges that no representative or independent contractor of Seller was, is or has been authorized to make, and Buyer has not relied upon, any statements other than those specifically contained in this Agreement.

(d) Seller has attempted to provide accurate information but that Seller has not represented, warranted or insured the accuracy or completeness of any information provided relative to the Assets, or its source of information.

(e) Some Assets, or certain transactions posted to some Assets, are or may be subject to actual or potential claims or disputes by one or more Obligors.  Buyer purchases the Assets subject to any such rights and claims of the Obligors.

Section 5.3.  Organization and Authorization.  Buyer is duly organized and in good standing in the jurisdiction of its organization. Buyer is duly and legally authorized to enter into this Agreement and has complied with all laws, rules, regulations, charter provisions and bylaws to which it may be subject and that the undersigned representative is authorized to act on behalf of and bind Buyer to the terms of this Agreement.

Section 5.4.  Binding Obligations.  Assuming due authorization, execution and delivery by each other party hereto, this Agreement and all of the obligations of Buyer hereunder are the legal, valid and binding obligations of Buyer, enforceable in accordance with the terms of this Agreement.

5

Section 5.5.   No Breach or Default.   The execution and delivery of this Agreement by the Buyer and the Buyer's performance and compliance with the terms of this Agreement will not:

(a)  violate the Buyer's charter documents or bylaws;

(b)  violate any administrative or judicial decree or order or any material law, rule or regulation to which it is subject; or

(c)  constitute a default (or, an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach of, any material contract, agreement or other instrument to which Buyer is a party or which may be applicable to the Buyer or any of its assets, or result in the creation of a lien on any of its assets.

Section 5.6.   Proceedings.   There is no proceeding, action, investigation or litigation pending or, to the best of Buyer's knowledge, threatened against the Buyer which, individually or in the aggregate, may have a material adverse effect on this Agreement or any action taken or to be taken in connection with the Buyer's obligation contemplated herein, or which would be likely to impair materially its ability to perform under the terms of this Agreement.

Section 5.7.   Consent.   No consent, approval, authorization, or order of, registration or filing with, or notice to, any governmental authority or court is required under federal laws, or the laws of any jurisdiction, for the execution, delivery, and performance of or compliance by the Buyer with this Agreement or the consummation of any other transaction contemplated hereby, or if so required the same has been obtained.

Section 5.8.   Sale Does Not Constitute a Securities Transaction.   The transactions contemplated by this Agreement do not involve, nor are they intended in any way to constitute, the purchase of a "security" or "securities" within the meaning of any applicable securities laws, and none of the representations, warranties or agreements of the Buyer shall create any inference that the transactions involve any "security" or "securities".

Section 5.9.         Nondisclosure.   Buyer has entered into a Confidentiality Agreement in favor of Seller (the "Confidentiality Agreement").   Buyer agrees that the terms and conditions of such Confidentiality Agreement are hereby incorporated by reference herein.   Buyer agrees that it will not disclose the terms of this Agreement, the Confidentiality Agreement, or any other agreement or document referenced herein or therein to any third party without the express written consent of Seller.

Section 5.10.   Enforcement/Legal Actions.   Buyer shall not institute any enforcement or legal action or proceeding in the name of Seller, or any subsidiary or affiliate thereof, nor use the name of, make reference to any of the foregoing entities in any written document, correspondence to or communication, oral or in writing, with any particular Obligor or the general public regarding enforcement or collection of the Assets except to disclose that the Asset originated with Seller.   Buyer will not take any enforcement action against any Obligor which would be unlawful or commercially unreasonable and Buyer shall not misrepresent, mislead, deceive, or otherwise fail to adequately disclose to any particular Obligor or guarantor the identity of Buyer as the owner of the Assets.

Section 5.11.   Status of Buyer.   Buyer is (i) in the business of buying and originating or collecting Assets of the type being purchased or (ii) that it otherwise deals in such Assets in the ordinary course of the Buyer's business.

Section 5.12.   Waiver. Buyer is not in a disparate bargaining position relative to the Seller.

Section 5.13.   Survival.   The representations and warranties set forth in this Section 5.1 through 5.12 shall survive the Closing Date, subject to the provisions below with respect to the limitation of remedies.

**ARTICLE VI**
**INJUNCTIVE RELIEF**

6

Section 6.1.  Enforcement of Covenants.  Buyer acknowledges that irreparable injury will result to the Seller, its business and property in the event of Buyer's breach of its covenants contained in this Agreement and that the Seller's willingness to contract and do business with Buyer is based primarily on Buyer's agreeing to the covenants and obligations set forth in this Agreement. Seller shall be entitled, in addition to any other remedies or damages which may be available, to an injunction to restrain the violation thereof by Buyer, its partners, agents, employers, employees and all persons acting for or with Buyer.  Buyer represents and admits that in the event of the termination of this Agreement on account of the breach of any of the covenants in this Agreement by Buyer and the subsequent obtaining of injunctive relief by Seller, Buyer's experience and capabilities are such that it can continue doing business, and therefore, that enforcement of a remedy by way of injunction will not prevent it from otherwise generating business income.

## ARTICLE VII
### REPRESENTATIONS AND WARRANTIES OF THE SELLER

Section 7.1.  Seller hereby represents, warrants, and agrees that:

(a)      Seller is duly and legally authorized to execute, deliver and perform this Agreement, and it has complied with all laws, rules, regulations, charter provisions and by-laws to which it may be subject related to this Agreement.

(b)      Assuming the due authorization, execution and delivery of this Agreement by each party hereto, this Agreement and all of the obligations of Seller hereunder are the legal, valid, and binding obligations of Seller, enforceable in accordance with the terms of this Agreement.

(c)      Seller has title to the Assets, is the lawful holder of the Assets and is duly and legally authorized to sell, transfer, convey and assign its rights therein.  Seller has not modified any of the Assets in any material respect, except as disclosed in the Asset Documents delivered to the Buyer on the Transfer Date.  Except pursuant to collection arrangements pursuant to Section 3.3, Seller has not made any prior assignment, conveyance, transfer or sale of any of its rights or interests in the Assets.

(d)      Seller has had no dealings with any broker or agent in connection with this Agreement except for The Debt Exchange, Inc.

Except for those expressed in this Section 7.1, no warranties or representations, express or implied, have been made by Seller or by anyone acting on its behalf.  Without in any way limiting the generality of the foregoing, no warranties or representations have been made regarding (i) the collectibility of any Assets, (ii) the creditworthiness of any Obligor under any of the Assets, (iii) the completeness, enforceability or validity of any of the Assets or Asset Documents.

## ARTICLE VIII
### BUYER'S INDEMNIFICATION AND INSURANCE

Section 8.1.  Buyer's Indemnification of Seller.  From and after the date of this Agreement, Buyer shall indemnify and hold harmless Seller and its assigns, successors and guarantors against and from any and all liability for, and from and against any and all losses or damages Seller may suffer as a result of, any claim, demand, cost, expense, or judgment or any type, kind, character or nature (including reasonable attorneys' fees), which Seller shall incur or suffer as a result of (i) any act or omission of Buyer or Buyer's agents in connection with the Assets and its purchase or collection of the Assets pursuant to this Agreement, (ii) the material inaccuracy of any of the Buyer's representations or warranties herein, (iii) the breach of any of Buyer's covenants herein.

Section 8.2. Insurance.  At all times that the Buyer owns or handles the Assets, Buyer will maintain standard commercial general liability insurance, including coverage for personal injury and property damage, with a liability

7

limit of not less than $10 million, which also covers Buyer's obligation to indemnify Seller under this Agreement.

Section 8.3.  Survival. Buyer's obligation pursuant to this Article VIII shall survive termination of this Agreement.

## ARTICLE IX
## SELLER'S INDEMNIFICATION

Section 9.1.  Seller's Indemnification of Buyer. From and after the date of this Agreement, Seller shall indemnify and hold harmless Buyer and its assigns, successors and guarantors against and from any and all liability for, and from and against any and all losses or damages Buyer may suffer as a result of, any claim, demand, cost, expense, or judgment or any type, kind, character or nature (including without limitation, attorneys fees and costs of suits, but excluding any usual and customary collections costs or overhead costs associated with collection on the Assets), which Buyer shall incur or suffer as a result of (i) the material inaccuracy of any of the Seller's representations or warranties herein, or (ii) the breach of any of Seller's covenants herein.

Section 9.2.  Survival. Seller's obligation pursuant to this Article IX shall survive termination of this Agreement, but Buyer's remedies shall be limited as set forth in Article XIII.

## ARTICLE X
## CONDUCT OF BUSINESS AFTER THE TRANSACTION DATES

Section 10.1.  Notice to Obligors.  After the Closing Date, Buyer shall provide notice to each Obligor of the transfer of each Obligor's assets to Buyer in the form of a written notice approved by Seller.  Seller may, but will not be obligated to, give any Obligor written or oral notice of the transfer of the Obligor's Asset to Buyer.

Section 10.2.  Retrieval of Asset Documents, Buyer's Requests for Oral Information on Assets.

(a)  Oral Information.  Seller will not be obligated to furnish Buyer with any oral information.  If Buyer requests information and Seller has information that Seller elects to provide, Buyer will reimburse Seller for Seller's actual cost incurred in collecting and communicating to Buyer the information requested. Notwithstanding the foregoing, Buyer, at no cost, may request information which is not legible on computer disks and in such event, Seller's only obligation is to reproduce such information on a disk.

Section 10.3.  Collection of Assets.  If Buyer collects or attempts to collect on an Asset, Buyer will at all times:

(a)  Comply with all state and federal laws applicable to collection of the Assets, including without limitation, the Consumer Credit Protection Act, the Fair Credit Reporting Act and the Fair Debt Collection Practices Act; and

(b)  In connection with any Asset with respect to which the statute of limitations has run, not falsely represent that a lawsuit will be filed if the Obligor does not pay.

Section 10.4.  Seller as Witness.  If Buyer files legal action to collect on an Asset and requests or subpoenas a Seller's officer, employee or agent to appear at a trial, hearing or deposition to testify about the Asset, Buyer will pay for such witness's time in traveling to, attending and testifying at the trial, hearing or deposition, whether or not Seller is called as a witness, at Seller's standard daily rate.  Buyer will also reimburse Seller for its out-of-pocket travel related expenses.

Section 10.5.  Buyer's Duties Regarding Litigation.  If any Asset is or becomes subject to any claim, action, lawsuit, foreclosure action, bankruptcy, or other proceeding, administrative or judicial, or similar action filed by or against any Obligor (collectively, "Litigation"), Buyer shall within ten (10) days after the Closing Date provide Seller and Seller's

8

counsel in connection with each such Litigation with the name of counsel selected by Buyer to represent Buyer's interests in such Litigation.  Buyer shall retain the counsel currently retained by Seller to continue Litigation pending as of the Closing Date if it is commercially reasonable to do so.  Buyer shall, within ten (10) days after the Closing Date, notify the applicable clerk of all applicable courts and all counsel of record that ownership of the Asset was transferred from Seller to Buyer.  Buyer shall have its counsel file appropriate pleadings with all applicable courts within ten (10) days after the Closing Date substituting Buyer's counsel for Seller's counsel, removing Seller as a party to all Litigation and substituting Buyer as the real party in interest in all such Litigation  Seller shall have the right to notify its counsel representing its interests to cease representing Seller in all Litigation upon the Closing Date or any date thereafter. Seller may proceed unilaterally to have such matter dismissed, either with or without prejudice, in the event such substitution of parties and counsel is not so effectuated by Buyer.

## ARTICLE XI
## USE OF SELLER'S NAME

Section 11.1.  <u>Use of Seller's Name</u>. Buyer will not use or refer to the name of Seller or any similar name for any mass advertising (including selling of customer lists) regarding the Assets and will not portray itself as Seller's agent, partner, or joint venturer with respect to the Assets.  However, Buyer may disclose, as reasonably necessary, that an Asset originated with Seller.  In contacting an Obligor, filing suit, or selling Assets, Buyer will not state or represent in any way that Buyer is contacting the Obligor, filing suit or selling loans for or on behalf of Seller.

## ARTICLE XII
## SELLER'S RIGHT TO RETAIN ASSETS PRIOR TO THE TRANSFER DATE

Section  12.1  <u>Right to Retain Asset(s)</u>.  If prior to the Transfer Date, Seller determines in its sole discretion that any of the following circumstances exist with respect to any Asset, then Seller shall have the right, but not the obligation, to refund to Buyer a portion of the Purchase Price pursuant to Section 12.2 and withdraw from the Asset Schedule and retain any such Assets:

(a)  Seller is unable to deliver to Buyer any evidence of indebtedness, whether the original or a copy thereof, or any other document or instrument evidencing an Obligor's financial obligation to Seller; or

(b)  Seller determines that Seller does not own or control the Asset and the servicing of the Asset in its entirety; or

(c) Seller determines that there is a suit, action, arbitration, bankruptcy proceeding or other legal proceeding or governmental investigation, pending or threatened, which could affect the Asset or Seller's interest therein in a manner unacceptable to Seller; or

(d)  Seller determines that the Asset is inextricably related to any asset, claim, or right of action retained by Seller and not expressly transferred to Buyer pursuant to this Agreement; or

(e)  Seller determines that any of the circumstances set forth in Section 13.1 exist with respect to such Asset.

Section 12.2  <u>Refund</u>.  If Seller determines in its sole discretion that any of the circumstances set forth in Section 12.1 exist with respect to any Asset, Seller shall refund to Buyer the Allocated Asset Price for such Asset and shall retain such Asset

## ARTICLE XIII
## CONDITIONAL REFUND BY SELLER, REPURCHASE OPTION OF SELLER AFTER THE TRANSFER

9

**DATE**

Section 13.1.  Buyer's Conditional Right to Partial Refund.  Subject to the provisions of Section 13.2, Seller shall pay to Buyer the Refund/Repurchase Price for any Asset which:

(a)  on or prior to the Calculation Date, Seller received payment in full, but which was not deleted from the Asset Schedule by Seller; or

(b)  on or prior to the Calculation Date, all Obligors have been discharged in no-asset bankruptcy proceedings and there is no collateral in existence from which the debt may be satisfied, in whole or in part; or

(c)  on or prior to the Calculation Date, a court of competent jurisdiction has issued a final ruling (not subject to appeal or an extension of the time to take an appeal) adjudging that the Asset at issue is unenforceable under applicable state or federal law or unenforceable due to a finding that the signatures of all of the Obligors (and all other guarantors and/or sureties of the Asset, if any) were forged; or

(d)  on or prior to the Calculation Date,  Seller has executed and delivered a written release of all of the Obligor(s) from all indebtedness and obligations evidenced by the Note.

Buyer acknowledges and agrees that the right to the refund of the Allocated Asset Price for any Asset which meets the specific circumstances set forth above, is the sole and exclusive remedy of Buyer.  By providing that Buyer may be refunded under the specific terms and conditions of this Section 13.1, Seller is not, and shall not be deemed to be, by negative implication or otherwise, making any representations or warranties as to the existence or nonexistence of any facts or circumstances regarding the status or enforceability of the Assets. Buyer is solely responsible for performing its own due diligence with respect to the existence, status and enforceability of any and all of the Assets and in accepting the Assets is assuming all risks relating to the status and enforceability of the Assets.

Section 13.2. Limitation of Buyer's Right to Refund.  Seller is not and shall not be obligated to a refund under Section 13.1 unless Buyer shall have given Seller written notice of Buyer's election to require a refund within 90 days after the Transfer Date specifying the grounds on which Seller is required to refund under Section 13.1 and accompanied by evidence reasonably acceptable to Seller that establishes such grounds.  Moreover, Seller shall not be required to refund the Allocated Asset Price for any Asset as to which:

(a)  the terms have been modified in any material respect by a written or oral agreement between Buyer and Obligor; or

(b)  Buyer has obtained full payment of the Asset from Obligor or any guarantor or surety therefor, or otherwise accepted partial payment thereof in full satisfaction of the debt evidenced thereby; or

(c)  any of the Obligors have been  released by Buyer.

It is Buyer's obligation to provide, at Buyers expense, any evidence or proof satisfactory to Seller that the conditions set forth in Sections 13.1 are met.

Section 13.3. Seller's Right to Repurchase.  Seller shall have the right, but not the obligation, to repurchase any Asset for which Seller refunds an Allocated Purchase Price pursuant to this Section 13.  In the event that any Asset is related to a loan which is held by the Seller and not subject to this Agreement, the Seller shall have the right, but not the obligation, to repurchase such related Asset upon written notice to Buyer.  If Seller does not opt to repurchase any Asset for which it has refunded an Allocated Asset Price to the Buyer, Buyer shall remain the owner and holder of such Asset and continue to fulfill all obligations of Buyer in relation to the Asset in this Agreement.

Section 13.4. Refund/Repurchase Price.  The Refund/Repurchase Price for any Asset refunded or repurchased pursuant to this Agreement shall be an amount equal to the Allocated Asset Price for such Asset, reduced by the amount of any

10

payments, or other consideration with respect to such Asset, from or on behalf of any Obligor or out of any property that secures such Asset, that were made or distributed after the Calculation Date and before Buyer's receipt of the Seller's notice agreeing to refund or repurchase the Asset.  The repurchase price shall be paid to Buyer within 60 days after Seller's receipt of the documents and instruments required to be delivered pursuant to Section 13.5.

Section 13.5.  <u>Duties and Rights upon Repurchase.</u>   Upon Seller's notice to Buyer of its intention to repurchase an Asset, Buyer shall:

(a)  Render to the Seller a full accounting of the Asset.  Upon such accounting, Buyer may retain any money or value that Buyer received on the Asset before Buyer's receipt of the Seller's notice to repurchase the Asset; provided that, after Buyer has received the Seller's notice, Buyer will immediately cease releasing or compromising the Asset;

(b)  Remit to the Seller all payments received by Buyer from the Obligor(s) subsequent to the Seller's notice;

(c)  Release, or transfer if possible or appropriate, all judgments, liens, garnishments, encumbrances or other legal action that Buyer may have instituted, obtained or attached to the Asset; and

(d)  Deliver all Asset Documents related to such Asset in the Buyer's possession to the Seller.

**ARTICLE XIV**
**NOTICE OF CLAIMS AND INDEMNIFICATION**

Section 14.1.  <u>Procedure for Indemnification</u>.  In the event any claim is made, or any suit or action is commenced, against any party to this Agreement in respect of which indemnification may be sought by such party to this Agreement under Articles VIII or IX (the "Indemnified Party"), the Indemnified Party shall promptly give the party against whom Indemnification is sought (the "Indemnifying Party") notice thereof and the Indemnifying Party shall be entitled to conduct or participate in the defense thereof at the Indemnifying Party's expense, provided, however, that the failure to give such notice shall not relieve the Indemnifying Party of its obligations hereunder, except to the extent the Indemnifying Party is prejudiced thereby.  If the Indemnifying Party elects to conduct any such defense, the Indemnified Party shall be entitled to participate in such defense at the Indemnified Party's expense, provided, however, that the Indemnified Party shall have the right to employ counsel to represent it if, (a) the Indemnifying Party shall not have employed counsel or begun the defense of such claim promptly after such notice of claim (and, in any event prior to the time the first responsive pleading must be filed), or (b) in the reasonable judgment of the Indemnified Party, it is advisable for the Indemnified Party to be represented by separate counsel (i) because of a reasonably apparent conflict of interest between the Indemnifying Party and the Indemnified Party or (ii) because there are specific defenses available to the Indemnified Party which are different from or additional to those available to the Indemnifying Party and which could be materially adverse to the Indemnifying Party, and in the case of either clause (a) or (b) such separate counsel shall have the right to assume and direct the Indemnified Party's defense and enter into settlements or compromises with the consent of the Indemnifying Party (which consent shall not be unreasonably withheld) and the reasonable fees and expenses of one such separate law firm shall be paid by the Indemnifying Party.  The Indemnifying Party may (but need not) conduct or participate in the defense of any such claim, suit or action, but the Indemnifying Party shall promptly notify the Indemnified Party if the Indemnifying Party shall not desire to conduct or participate in such defense.  The Indemnified Party shall notify the Indemnifying Party of its intention to settle or compromise any claim, suit or action in respect of which payments may be sought hereunder, and the Indemnified Party may thereafter settle or compromise any such claim, suit or action unless the Indemnifying Party notifies the Indemnified Party in writing (within 10 days after the Indemnified Party has given the Indemnifying Party written notice of its intention to settle or compromise) that the Indemnifying Party objects to such settlement or compromise or intends to conduct the defense of such claim, suit or action.  Any such settlement or compromise of or any final judgment or decrees entered on or in any claim, suit or action that all parties to this Agreement seeking indemnification under Sections 8.l or 9.1, as the case may be, in respect thereof have agreed to, in accordance herewith shall be deemed to have been consented to by, and shall be binding upon, the Indemnifying Party as fully as if the Indemnifying Party had assumed the defense

11

thereof and a final judgment or decree had been entered in such suit or action, or with regard to such claim, by a court of competent jurisdiction for the amount of such settlement, compromise, judgment or decree.

## ARTICLE XV
## FILES AND RECORDS

Section 15.1.  Conformity to Law.  Buyer agrees, at its sole cost and expense, to abide by all applicable state and federal laws, rules and regulations regarding the handling and maintenance of all Assets and all documents and records relating to the Assets purchased hereunder.  The Buyer agrees to submit all Internal Revenue Service Forms and Information Returns for the Asset(s) for the full year in which the Closing Date occurs and thereafter.

Section 15.2.  Inspection by Seller.  Buyer acknowledges that Seller is highly concerned and interested in the methods Buyer uses to collect said Assets and accordingly, Buyer agrees that all initial correspondence to be sent to Obligors shall first be provided to Seller for its approval thereof, and that Buyer shall at all times comply with all laws relating to the collection of debts from borrowers.  Seller will not unreasonably withhold such consent.  Should Seller determine from any source that Buyer is not using approved correspondence to Obligors, or improper or unlawful tactics with regard to collections of monies from Obligors, Seller may obtain injunctive relief as provided for in Article VI of this Agreement.  Buyer acknowledges any violation of this Section will be of such a nature and magnitude that Seller shall be afforded injunctive relief as provided for in Article VI.  Buyer also covenants that it will reasonably follow up disputes with Obligors in an orderly and businesslike manner.  Buyer further covenants that, in the event it sells any of the Assets after the Closing Date, such purchase and sale agreement shall require the purchaser to comply with all laws relating to collection of debts from borrowers.

## ARTICLE XVI
## LIQUIDATED DAMAGES

Section 16.1.  Liquidated Damages.  IN THE EVENT THAT BUYER OR BUYER'S AFFILIATES, IF ANY, SHOULD FAIL TO CONSUMMATE THE PURCHASE OF THE ASSETS HEREUNDER OR TO PAY THE PURCHASE PRICE FOR THE ASSETS AS PROVIDED HEREIN, SELLER SHALL HAVE THE RIGHT TO RECEIVE AND RETAIN THE EARNEST MONEY OR ANY OTHER SUMS PAID AS LIQUIDATED DAMAGES. THIS PROVISION SHALL NOT BE DEEMED TO LIMIT SELLER'S RIGHT TO SEEK ADDITIONAL DAMAGES (AT LAW OR IN EQUITY) FOR ANY BREACH BY BUYER OF THE OTHER TERMS, COVENANTS AND CONDITIONS SET FORTH HEREIN; INCLUDING SELLER'S RIGHTS UNDER SECTION 16.2 HEREOF.

Section 16.2.  Buyer Failure to Fund.  If the Buyer fails to pay the Earnest Money to the Seller pursuant to Section 2.4(a), then the Seller, in its sole discretion, may (i) terminate this Agreement, in which event the Seller and the Buyer shall have no further duties, obligations or liabilities to each other hereunder, except for the Buyer's duties and obligations under the Confidentiality Agreement which shall continue in full force and effect and/or (ii) pursue all remedies available at law or in equity, including, without limitation, the remedy of specific performance.  If the Buyer fails to tender the balance of the Purchase Price for the Asset(s) on the Closing Date, the Seller may (i) retain the Earnest Money, which is hereby stipulated as the Seller's liquidated damages it being understood and agreed that it is difficult to estimate or otherwise determine the total amount of damages that would be incurred by the Seller should the Buyer default in its obligations under this Agreement or (ii) pursue all remedies available at law or in equity, including, without limitation, the remedy of specific performance.

## ARTICLE XVII
## NOTICES

Section 17.1.  Notices.  Unless otherwise provided for herein, all notices or deliveries required or permitted hereunder shall be in writing and delivered personally or by facsimile or generally recognized overnight delivery service, and shall be deemed given (a) when delivered, if delivered personally or by facsimile, or (b) on the following Business Day, if

12

sent by generally recognized overnight delivery service, in each case to the Seller at the following address, to the Buyer at the address set forth on the signature page below, or such other address as either party may hereafter designate by notice given in compliance with this Section to the other party:

SELLER:

     Michael Lockery
     Santander Bank, N.A.
     3 Huntington Quadrangle
     Melville NY, 11747


     Email Address:   michael.lockery@santander.us

And in each case with a copy to:

     The Debt Exchange, Inc.
     225 Franklin Street, 26th Floor
     Boston, Massachusetts 02110
     Attention:  Kevin J. Kelley, Esq.

     Telephone Number:      (617) 531-3433
     Facsimile Number:      (617) 531-3499

## ARTICLE XVIII
## DISCLAIMER

Section 18.1.   <u>Disclaimer</u>.  Buyer hereby disclaims and waives any right or cause of action it may now or in the future have against Seller and any of its respective officers, directors, employees, attorneys, agents, predecessors in interest, and independent contractors as a result of the purchase of the Assets; provided, however, that this waiver shall not extend to any liability of Seller arising from Seller's failure to perform its obligations in accordance with the terms of this Agreement.

## ARTICLE XIX
## MISCELLANEOUS PROVISIONS

Section 19.1.   <u>Severability</u>.  If any term, covenant, condition or provision hereof is unlawful, invalid or unenforceable for any reason whatsoever, and such illegality, invalidity, or unenforceability does not affect the remaining parts of this Agreement, then all such remaining parts hereof shall be valid and enforceable and have full force and effect as if the invalid or unenforceable part had not been included.

Section 19.2.   <u>Rights Cumulative; Waivers</u>.  The rights of each of the parties under this Agreement are cumulative and may be exercised as often as any party considers appropriate under the terms and conditions specifically set forth.  The rights of each of the parties hereunder shall not be capable of being waived or varied otherwise than by an express waiver or variation in writing.  Any failure to exercise or any delay in exercising any of such rights shall not operate as a waiver or variation of that or any other such right.  Any defective or partial exercise of any such rights shall not preclude any other or further exercise of that or any other such right.  No act or course of conduct or negotiation on the part of any party shall in any way preclude such party from exercising any such right or constitute a suspension or any variation of any such right.

Section 19.3.   <u>Headings</u>.  The headings of the Articles and Sections contained in this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provision hereof.

Section 19.4.  Construction.  Unless the context otherwise requires, singular nouns and pronouns, when used herein, shall be deemed to include the plural of such nouns or pronouns and pronouns of one gender shall be deemed to include the equivalent pronoun of the other gender.

Section 19.5.  Assignment.  This Agreement and the terms, covenants, conditions, provisions, obligations, undertakings, rights and benefits hereof, including the Exhibits and Schedules hereto, shall be binding upon, and shall inure to the benefit of, the undersigned parties and their respective heirs, executors, administrators, representatives, successors and assigns.  Notwithstanding anything herein to the contrary, however, Buyer shall not assign its rights under this Agreement without the prior written consent of the Seller, and in any event no such assignment shall relieve Buyer of any liability hereunder.

Section 19.6.  Prior Understandings.  This Agreement supersedes any and all prior discussions and agreements between Seller and Buyer with respect to the purchase of the Assets and other matters contained herein, and this Agreement contains the sole and entire understanding between the parties hereto with respect to the transactions contemplated herein.

Section 19.7.  Integrated Agreement.  This Agreement and all Exhibits and Schedules hereto constitute the final complete expression of the intent and understanding of the Buyer and the Seller.  This Agreement shall not be altered or modified except by a subsequent writing, signed by Buyer and Seller.

Section 19.8.  Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall constitute one and the same instrument, and either party hereto may execute this Agreement by signing any such counterpart.

Section 19.9.  Non-Merger/Survival.  Each and every covenant hereinabove made by Buyer or Seller shall survive the delivery of the Transfer Documents and shall not merge into the Transfer Documents, but instead shall be independently enforceable.

Section 19.10.  Governing Law/Choice of Forum.  This Agreement shall be construed, and the rights and obligations of Seller and Buyer hereunder determined, in accordance with the laws of the state of New York, without giving effect to any choice of law principles.  The parties agree that any legal actions between the Buyer and Seller regarding the purchase of the Assets hereunder shall be originated in any state or federal court situated in New York, and Buyer hereby consents to the jurisdiction of said court in connection with any action or proceeding initiated concerning this Agreement and agrees that service by mail to the address specified on the signature page of this Agreement shall be sufficient to confer jurisdiction over Buyer in such court.  In the event of litigation under this Agreement, the prevailing party shall be entitled to any award of attorneys' fees and costs.

Section 19.11.  No Third-Party Beneficiaries.  This Agreement is for the sole and exclusive benefit of the parties hereto, and none of the provisions of this Agreement shall be deemed to be for the benefit of any other party or entity.

Section 19.12.  Time of Essence.  Time is of the essence with respect to all provisions of this Agreement.

Section 19.13.  Survival of Representations and Warranties.  All representations and warranties set forth in this Agreement shall survive the Closing Date, subject to the limitation of Buyer's remedies set forth in Article XIII.

[Signatures on Following Page]
[Remainder of Page Intentionally Left Blank]

14

BUYER*: _Gulf Coast Bank & Trust Co_

By: _____

Name: _Joel M. Daste_

Title: _Sr VP_

SELLER:
Santander Bank, N.A.

By: _Michael Lockery_

Name: Michael Lockery

Title: Director

Buyer's Address for Notice:

_200 St Charles Ave_
_New Orleans La 70130_

Attention: _Donna Herrmann_

Telephone Number: _504 841-2854_
Fax Number: _504 412-2060_

&ast;THE BUYER ACKNOWLEDGES AND ACCEPTS THAT THE BID PROCESS SPECIFICALLY REQUIRED THAT THIS AGREEMENT, THE TRANSFER DOCUMENTS AND ALL OTHER DOCUMENTS CONTAINED IN THE BID PACKAGE BE SIGNED WITHOUT MODIFICATION THERETO, AND THAT ANY SUCH MODIFICATIONS, IF MADE BY THE BUYER, ARE OF NO FORCE OR EFFECT. THE BUYER AGREES THAT THE FAILURE OR REFUSAL OF THE SELLER TO ALTER OR MODIFY IN ANY WAY THE TERMS OR CONDITIONS OF THIS AGREEMENT SHALL NOT AFFECT THE OBLIGATIONS OF THE BUYER TO PERFORM HEREUNDER.

DebtX_8915

15

**EXHIBIT A**

**ASSET SCHEDULE**

| DebtX Ref | Customer Name | Facility Number | Calc Date UPB (1 |
|-----------|---------------|-----------------|------------------|



debtx_9468A    HEINE ASSOCIATES P.A.                    00524620530000000018

John Ukegbu, Esq.---005771991
Northeast New Jersey Legal Services, Inc.
574 Summit Avenue
Jersey City, New Jersey 07306-2797
(201) 792-6363 Ext. 3243
Attorneys for Defendant Ali Atshan

|  |  |
|---|---|
| GULF COAST BANK & TRUST CO.,<br><br>Plaintiff,<br><br>vs.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION-CAMDEN COUNTY<br><br>DOCKET NO.: CAM-L-003082-25<br><br>CIVIL ACTION<br><br>ORDER VACATING THE JUDGMENT ENTERED ON DECEMBER 16, 2025, AND TRANSFERING THE CASE TO THE HUDSON VICINAGE |

This matter having been opened by Northeast New Jersey Legal Services, Inc. (John Ukegbu, Esq., appearing) attorneys for the Defendant Ali Atshan in the presence of Saldutti Law Group (Robert L. Saldutti, Esq., appearing) attorney for the Plaintiff and the Court having read and considered the submissions of counsel, it is on this 27th day of ~~February~~ March, 2026.

ORDERED as follows:

The December 16, 2025, judgment is vacated under R. 4:50-1 on the grounds that Defendant Ali Atshan ~~is~~ claims that he a victim of identity theft and ~~that~~ the underlying claim ~~appears~~ is fraudulent.

~~This case shall be transferred to the Hudson Vicinage, where Defendant Ali Atshan resides, within five days of this Order's entry.~~ Motion to change venue to be decided by the Assignment Judge.

Within 20 days of ~~transfer to the Hudson Vicinage,~~ the Assignment Judge's order, Defendant Ali Atshan shall file and serve an Answer.

This Order shall be deemed served upon all counsel of record with its online filing via eCourts in accordance with Rule 1:5-1 (a).

Honorable Frank C. Testa, J.S.C.

Opposed ☒
Unopposed___
ORDER VACATING JUDGMENT AND TRANSFERRING TO HUDSON VICINAGE - 1

"Reasons Set Forth on Record"

10

John Ukegbu, Esq.---005771991
Northeast New Jersey Legal Services, Inc.
574 Summit Avenue
Jersey City, New Jersey 07306-2797
(201) 792-6363 Ext. 3243
Attorneys for Defendant Ali Atshan

| | |
|---|---|
| GULF COAST BANK & TRUST CO.,<br><br>    Plaintiff,<br><br>    vs.<br><br>PRESTIGE INFUSIONS LLC AND ALI ATSHAN,<br><br>    Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION-CAMDEN COUNTY<br><br>DOCKET NO.: CAM-L-003082-25<br><br>CIVIL ACTION<br><br>ORDER VACATING THE JUDGMENT<br>ENTERED ON DECEMBER 16, 2025, AND<br>TRANSFERING THE CASE TO THE<br>HUDSON VICINAGE |

This matter having been opened by Northeast New Jersey Legal Services, Inc. (John Ukegbu, Esq., appearing) attorneys for the Defendant Ali Atshan in the presence of Saldutti Law Group (Robert L. Saldutti, Esq., appearing) attorney for the Plaintiff and the Court having read and considered the submissions of counsel, it is on this 27TH day of ~~February~~ March, 2026.

ORDERED as follows:

The December 16, 2025, judgment is vacated under R. 4:50-1 ~~on the grounds that Defendant Ali Atshan is a victim of identity theft and the underlying claim appears fraudulent.~~ *dveafby Judge TESTA*

This case shall be transferred to the Hudson Vicinage, where Defendant Ali Atshan resides, within five days of this Order's entry, *venue being improper in Camden county*.

Within 30 days ~~of transfer to the Hudson Vicinage,~~ Defendant Ali Atshan shall file and serve an Answer.

This Order shall be deemed served upon all counsel of record with its online filing via eCourts in accordance with Rule 1:5-1 (a).

Opposed ___
Unopposed___

_____
Steven J. Polansky, A.J.S.C.

ORDER VACATING JUDGMENT AND TRANSFERRING TO HUDSON VICINAGE - 1

"Reasons set forth On the Record"

```
HUDSON COUNTY SUPERIOR COURT
HUDSON COUNTY
583 NEWARK AVENUE
JERSEY CITY       NJ 07306
                                        TRACK ASSIGNMENT NOTICE
COURT TELEPHONE NO. (201) 748-4400
COURT HOURS  8:30 AM - 4:30 PM


                        DATE:    APRIL 01, 2026
                        RE:      GULF COAST BANK & TR UST CO   VS PRESTIGE INFUSION
                        DOCKET: HUD L -001304 26


       THE ABOVE CASE HAS BEEN ASSIGNED TO:   TRACK 1.


       DISCOVERY IS   150 DAYS AND RUNS FROM THE FIRST ANSWER OR 90 DAYS
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.


       THE PRETRIAL JUDGE ASSIGNED IS:  HON ANTHONY V. DELIA


        IF YOU HAVE ANY QUESTIONS, CONTACT TEAM       001
AT:  (201) 748-4400 EXT 60097.


       IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A
 CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
       PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE
WITH  R.4:5A-2.
                        ATTENTION:
                                   ATT: ROBERT L. SALDUTTI
                                   SALDUTTI LAW GROUP
                                   1040 KINGS HIGHWAY NORTH
                                   STE 100
                                   CHERRY HILL       NJ 08034


JUJBLA7
```

John Ukegbu, Esq.---005771991
Northeast New Jersey Legal Services, Inc.
574 Summit Avenue
Jersey City, New Jersey 07306-2797
(201) 792-6363 Ext. 3243
Attorneys for Defendant/Third-Party Plaintiff Ali Atshan

| | |
|---|---|
| GULF COAST BANK & TRUST CO., | SUPERIOR COURT OF NEW JERSEY LAW DIVISION-HUDSON COUNTY |
| Plaintiff, | |
| vs. | DOCKET NO.: HUD-L-001304-26 |
| PRESTIGE INFUSIONS LLC AND ALI ATSHAN, | CIVIL ACTION |
| Defendants/Third-Party Plaintiff, | |
| vs. | |
| SANTANDER BANK, N.A., HUMZA KHAN, AREEBA KHAN, AYSHA KHAN, ADBUALLAH ALAQRABAWI, SYED HASSAN, IQRA KHAN, MBF AUTO LLC DOING BUSINESS AS MERCEDES-BENZ OF CALDWELL, DOES 1-10 AND ABC CORPORATIONS 1-10. | ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT WITH DEMAND FOR TRIAL BY JURY |
| Third-Party Defendants. | |

Defendant Ali Atshan whose address is 1210 91st Street, North Bergen, New Jersey, by way of answer to the complaint, says that:

## **ANSWER**

### FIRST COUNT

1. Denied.

2. Defendant is without knowledge or information sufficient to form a belief as to the truth

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 1

of the allegations contained in paragraph 2 and, on that basis, denies the same.

3. Denied.

4. Denied.

5. Denied.

SECOND COUNT

6. Denied.

7. Denied.

8. Denied.

9. Denied.

10. Denied.

THIRD COUNT

11. Denied as to the Defendant agreeing to pay Plaintiff's attorneys' fees.

12. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 and, on that basis, denies the same.

**AFFIRMATIVE DEFENSES**

13. Plaintiff's claim is a product of fraud.

14. Plaintiff has no standing to bring this claim.

15. Plaintiff has failed to state a claim upon which relief can be granted.

16. N.J.S.A. 2A:25-1 subjects Plaintiff to all claims and defenses that Defendant may have against the original creditor.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 2

**STATEMENT OF FACTS**

17. Defendant Ali Atshan (hereinafter "Defendant" or "Mr. Atshan") is a natural person who resides in North Bergen, Hudson County, New Jersey.

18. Plaintiff Gulf Coast Bank & Trust Co., is a Louisiana State Chartered Bank established on June 8, 1990, with its principal place of business located at 200 Saint Charles Avenue, New Orleans, Louisiana. https://ofi.la.gov/depository/banks/bank-websites/  (last visited 02/09/2026).

19. Plaintiff Gulf Coast Bank & Trust Co., is insured by the Federal Deposit Insurance Corporation (hereinafter "FDIC"). https://www.gulfbank.com/ (last visited 02/09/2026).

20. Plaintiff Gulf Coast Bank & Trust Co., (hereinafter "Plaintiff" or "Gulf Coast") has locations in Louisiana, Alabama, Arizonia, Florida, Minnesota, Tennessee, and Texas, however, it has no location in New Jersey. (Exhibit 012).

21. The Plaintiff is not registered with the New Jersey Department of Banking and Insurance (hereinafter "NJDOBI") as a bank, consumer lender, or sales finance company. https://www.nj.gov/dobi/division_banking/index.htm (last visited 02/09/2026).

22. Third-Party Defendant Santander Bank, N.A., (hereinafter "Santander") is a national bank with its primary regulator being the Comptroller of the Currency and the address of the corporate headquarters at 824 North Market Street, Suite 100, Wilmington, Delaware. https://banks.data.fdic.gov/bankfindsuite/bankfind?activeStatus=0%20OR%201&branchOffices=true&name=Santander%20Bank%2C%20N.A.&pageNumber=1&resultLimit=25&searchPush=true (last visited 02/09/2026).

23. Third-Party Defendant Santander is the original creditor of the alleged debt assigned to

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 3

Gulf Coast and that undergirds this collection action.

24. Defendant Prestige Infusions LLC is a New Jersey limited liability company with its main business address as 116 Boonton Avenue, Kinnelon, New Jersey. (Exhibit 019).

25. Third-Party Defendants Areeba Khan, Aysha Khan, Abduallah Alaqrabawi, and Iqra Khan are either registered agents, members, managers, or authorized representatives of Defendant Prestige Infusions LLC. (Exhibit 019).

26. Third-Party Defendant Humza Khan and Syed Hassan are either registered agents, members or managers of Prestige Infusions Mobile LLC. (Exhibit 026).

27. Third-Party Defendant Prestige Infusions Mobile LLC is a New Jersey limited liability company with its main business address at 19 Amira Lane, Kinnelon, New Jersey. (Exhibit 019).

28. Defendant/Third-Party Plaintiff Ali Atshan has identified Third-Party Defendants Aysha Khan, Areeba Khan, and Humza Khan as amongst those individuals who stole his personal identifying information (hereinafter "PII") and misused it for their personal gain. (Exhibit 002).

29. Third-Party Defendant MBF Auto LLC D/B/A Mercedes-Benz of Caldwell is a New Jersey licensed motor vehicle seller and a Florida limited liability company with its principal place of business at 1230 Bloomfield Avenue, Fairfield, New Jersey. https://www-dobi.nj.gov/DOBI_LicSearch/bnkLicenseeSearchServlet (lasted visited 02/09/2026).

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 4

30. Does 1-10, is a fictitious name, the party or parties intended being one or more persons whose identities are presently unknown but will be ascertained during the course of pre-trial discovery.

31. ABC Corporations 1-10, is a fictitious corporate entity, the entity or entities intended being one or more corporate entities whose identities are presently unknown but will be ascertained during the course of pre-trial discovery.

32. The United States has filed a two-count criminal complaint against Third-Party Defendant Humza Khan, charging wire fraud in violation of 18 U.S.C. § 1343 and aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), (Case No. 2:25-MJ-15086-SDA (Exhibits 031–036)).

33. More importantly, the United States has identified Mr. Atshan as a victim of Humza Khan's criminal conduct, specifically the unauthorized use of his personally identifying information to perpetrate a fraudulent scheme against companies without his knowledge or consent (Exhibit 033).

34.   The Promissory Note, Security Agreement, and Guaranty that the Plaintiff relies upon is devoid of a DocuSign "Certificate of Completion" or any corresponding audit trial.

35. There is no evidence of an email address used for delivery, nor any timestamped log demonstrating the documents were ever transmitted to or signed by Mr. Atshan.

36. The absence of biometric or digital metadata demonstrates the documents' fraudulent nature.

37. It is consistent with the pattern of fraud that the North Bergen Police Department and the FBI has identified as Humza Khan's modus operandi. (Exhibits 009, 035).

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 5

## FIRST COUNT OF THE COUNTERCLAIM

## <u>DECLARATORY JUDGMENT</u>

38. Defendant realleges and incorporates herein the allegations of all the preceding and following paragraphs.

39. Defendant seeks relief under the Declaratory Judgment Act, <u>N.J.S.A.</u> 2A:16-50 to-62.

40. The Act allows parties to sue for a judicial declaration to adjudicate and settle the rights and obligations of the parties.

41. Defendant seeks a declaration that the Promissory Note, Security Agreement, and Guaranty are null and void because the alleged electronic signature is fraudulent.

WHEREFORE, Defendant demands judgment against Plaintiff:

    A.  Declaring the Promissory Note, Security Agreement, and Guaranty null and void because the electronic signature is fraudulent;

    B.  Awarding reasonable attorney's fees, and the cost incurred in the pursuit of this action; and

    C.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

## SECOND COUNT OF THE COUNTERCLAIM

## <u>CONSUMER FRAUD ACT</u>

42. Defendant realleges and incorporates herein the allegations of all the preceding and following paragraphs.

43. Plaintiff is a person as defined by <u>N.J. S. A.</u> 56:8-1 (d).

44. Defendant is a person as defined by <u>N.J. S. A.</u> 56:8-1 (d).

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 6

45. The transaction that is the subject of this lawsuit involves a sale as defined by N.J.S.A. 56:8-1 (e).

46. The sale involved merchandise as defined by N.J.S.A. 56:8-1 (c).

47. The Consumer Fraud Act applies to all the parties that employ deception, fraud, pretenses, false promises, misrepresentations, or knowing concealment, suppression, or omission, in connection with the sale of any merchandise. N.J.S.A. 56:8-2.

48. The commercial practices of Plaintiff in this consumer transaction were deceptive, fraudulent, and unconscionable.

49. Plaintiff knew or should have known that the signatures on the Promissory Note, Security Agreement, and Guaranty were fraudulent since there is no evidence of an email address used for delivery, nor any timestamped log demonstrating that the documents were transmitted to or electronically signed by Mr. Atshan.

50. Plaintiff has no record of a DocuSign "Certificate of Completion" or any corresponding audit trail.

51. Plaintiff has failed to demonstrate any compliance with the Electronic Signatures in Global and National Commerce Act (hereinafter "ESIGN"), 15 U.S.C. §§ 7001-7031 and the Uniform Electronic Transactions Act (hereinafter "UETA"), N.J.S.A. 12A:12-1 to-26.

52. Plaintiff knew or should have known that Mr. Atshan has no ownership interest in Prestige Solutions LLC and is nowhere mentioned in the company's formation or management structure.

53. The unlawful commercial practices of Plaintiff in this consumer transaction were deceptive, fraudulent, and unconscionable.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 7

54. Plaintiff's acts and omissions were intentional, deceptive, and unconscionable commercial practices under the CFA.

55. The unlawful commercial practices of Plaintiff in this consumer transaction caused Defendant to suffer ascertainable losses.

WHEREFORE, Defendant demands judgment against Plaintiff:

    A.  Awarding actual damages;

    B.  Awarding consequential damages;

    C.  Awarding treble damages pursuant to N.J.S.A. 56:8-19;

    D.  Awarding reasonable attorney's fees and the cost incurred pursuant to N.J.S.A. 56:8-19; and

    E.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

### THIRD COUNT OF THE COUNTERCLAIM

### COMMON LAW FRAUD

56. Defendant realleges and incorporates herein the allegations of all the preceding and following paragraphs.

57. Plaintiff's conduct constitutes fraud through (a) misrepresentation; (b) concealment; and (c) falsification of the Defendant's electronic signatures.

58. Specifically, Plaintiff willfully and wantonly failed to conduct any kind of due diligence to determine whether Mr. Atshan had any ownership or management interest in Prestige Solutions LLC.

59. Plaintiff willfully and wantonly ignored that that the signatures on the Promissory Note,

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 8

Security Agreement, and Guaranty were fraudulent since there is no evidence of an email address used for delivery, nor any timestamped log demonstrating that the documents were transmitted to or electronically signed by Mr. Atshan.

60. In obtaining the judgment against Mr. Atshan, Plaintiff deliberately failed to submit a DocuSign "Certificate of Completion" or any corresponding audit trial because Plaintiff knew the electronic signature was fraudulent.

WHEREFORE, Defendant demands judgment against Plaintiff:

    A.  Awarding actual damages;

    B.  Awarding consequential damages;

    C.  Awarding Punitive damages; and

    D.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

### FIRST COUNT OF THE THIRD-PARTY COMPLAINT

### THEFT OF IDENTITY AND IMPERSONATION

61. Third-Party Plaintiff realleges and incorporates herein the allegations of all the preceding and following paragraphs.

62. N.J.S.A. 2C:21-17(a)(1) provides that a person commits identity theft by impersonating another or assuming a false identity for the purpose of obtaining a benefit or defrauding another.

63. Third-Party Defendants Aysha Khan, Areeba Khan, and Humza Khan misappropriated Third-Party Plaintiff Ali Atshan's personal identifying information (hereinafter "PII").

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 9

64. They impersonated him and assumed his identity to defraud others, including the alleged original creditor in this lawsuit, Third-Party Defendant Santander Bank.

65. Third-Party Defendant Santander Bank accepted the fraudulent documents in this case despite the irregularities in the electronic signature audit trial.

66. Third-Party Plaintiff Ali Atshan has suffered an ascertainable loss, including out-of-pocket expenses and emotional distress, directly caused by the unlawful conduct of the Third-Party Defendants.

WHEREFORE, Third-Party Plaintiff demands judgment against Third-Party Defendants Aysha Khan, Areeba Khan, and Humza Khan:

    A.  Awarding actual damages;

    B.  Awarding consequential damages;

    C.  Awarding treble damages pursuant to N.J.S.A. 2C:21-17.4(a);

    D.  Reasonable attorney's fees and costs pursuant to N.J.S.A. 2C:21-17.4(a); and

    E.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

**SECOND COUNT OF THE THIRD-PARTY COMPLAINT**

**NEGLIGENT ENABLEMENT OF FRAUD**

67. Third-Party Plaintiff realleges and incorporates herein the allegations of all the preceding and following paragraphs.

68. Third-Party Defendants Santander Bank and Mercedes-Benz of Caldwell owed a duty to exercise reasonable care in verifying the identity of the purchaser and the borrower in connection with the subject motor vehicle transaction and related financing.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 10

69. The transaction at issue was purportedly executed through electronic signatures on a Promissory Note, Security Agreement, and Guaranty, and related financing documents.

70. Given the use of electronic signatures and remote processing, Third-Party Defendants had a heightened duty to implement commercially reasonable identity-verification procedures, including but not limited to verifying government-issued identification, confirming biometric or multi-factor authentication data, cross-checking identifying information, and ensuring that the individual executing the documents was in fact the true purchaser/borrower.

71. Third-Party Defendants failed to employ reasonable verification safeguards and failed to confirm that the individual electronically executing the documents was Mr. Atshan.

72. The transaction was processed and funded without adequate authentication protocols, without meaningful review of identity discrepancies, and without compliance with industry standards designed to prevent identity theft and electronic fraud.

73. As a direct and proximate result of Third-Party Defendants' failure to verify the purchaser's identity, a third party was able to fraudulently obtain financing and possession of the vehicle using Mr. Atshan's identity.

74. Third-Party Defendants' conduct substantially assisted and enabled the fraudulent scheme by providing the instrumentalities—financing approval, documentation, and transfer of the vehicle—without reasonable safeguards.

75. The harm suffered by Mr. Atshan, including financial damage, reputational harm, credit impairment, and related losses, was a foreseeable consequence of Third-Party Defendants' failure to implement and follow adequate identity-verification procedures.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 11

76. Third-Party Defendants' acts and omissions constitute negligence and/or negligent facilitation of fraud and were a substantial factor in causing Mr. Atshan's damages.

WHEREFORE, Third-Party Plaintiff demands judgment against Third-Party Defendants Santander Bank, and Mercedes-Benz of Caldwell:

    A.  Awarding actual damages;

    B.  Awarding consequential damages; and

    C.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

## THIRD COUNT OF THE THIRD-PARTY COMPLAINT

## AIDING AND ABETTING FRAUD

77. Third-Party Plaintiff realleges and incorporates herein the allegations of all the preceding and following paragraphs.

78. A third party committed a fraud by knowingly misrepresenting his identity as Mr. Atshan in order to purchase and finance the motor vehicle from Mercedes-Benz of Caldwell, including executing financing and sale documents through unauthorized electronic signatures.

79. The third party's conduct constitutes common law fraud under New Jersey law in that it involved material misrepresentations of identity, knowledge of falsity, intent that Third-Party Defendants rely upon the misrepresentations, actual reliance, and resulting damages.

80. A party is liable for aiding and abetting when:

(a) a wrongful act has been committed;

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 12

(b) the defendant had knowledge of the wrongful act; and

(c) the defendant knowingly and substantially assisted in the commission of the wrongful act.

81. Third-Party Defendants had knowledge, or were willfully blind to obvious indicators, that the transaction presented clear and significant red flags of identity fraud, including but not limited to irregularities in identifying information, discrepancies in documentation, and the use of electronic signatures without adequate identity authentication procedures.

82. The circumstances surrounding the transaction were sufficiently suspicious that Defendants' continued processing and approval of the transaction constituted knowing participation rather than mere negligence.

83. Despite such knowledge, Defendants knowingly and substantially assisted the fraud by:

(a) Accepting and approving electronically signed financing documents without commercially reasonable authentication safeguards;

(b) Failing to verify government-issued identification or confirm the true identity of the purported purchaser;

(c) Funding the loan and/or transferring possession of the vehicle; and

(d) Providing the instrumentalities necessary to complete the fraudulent transaction.

84. Third-Party Defendants' substantial assistance was a proximate cause of Mr. Atshan's damages, including financial loss, credit impairment, reputational harm, and other consequential damages.

85. As a direct and proximate result of Third-Party Defendants' knowing and/or reckless assistance of the fraud, Mr. Atshan has suffered damages, including but not limited to

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 13

financial loss, credit impairment, reputational harm, emotional distress, and other consequential damages.

86. Third-Party Defendants' conduct was undertaken with reckless indifference to the rights of Mr. Atshan and supports an award of punitive damages under New Jersey law.

WHEREFORE, Third-Party Plaintiff demands judgment against Third-Party Defendants Santander Bank, and Mercedes-Benz of Caldwell:

    A.  Awarding actual damages;

    B.  Awarding consequential damages;

    C.  Punitive damages; and

    D.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

### FOURTH COUNT OF THE THIRD-PARTY COMPLAINT

### NEW JERSEY RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

87. Third-Party Plaintiff realleges and incorporates herein the allegations of all the preceding and following paragraphs.

88. The New Jersey Racketeer Influenced and Corrupt Organizations Act ("NJ RICO"), N.J.S.A. 2C:41-1 to-6.2, provides a civil cause of action to any person injured in his business or property by reason of a violation of N.J.S.A. 2C:41-2.

89. At all relevant times, the Third-Party Individual Defendants (the "RICO Defendants") were persons within the meaning of N.J.S.A. 2C:41-1(a).

90. The RICO Defendants associated together for the common purpose of unlawfully obtaining financing, and/or other property by means of identity theft, fraud, and

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 14

deception.

91. The RICO Defendants constituted an "enterprise" as defined by N.J.S.A. 2C:41-1(c), consisting of an association-in-fact engaged in a course of conduct with a shared purpose, relationships among those associated with the enterprise, and sufficient longevity to pursue the enterprise's objectives.

92. The RICO Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity in violation of N.J.S.A. 2C:41-2(c).

93. The predicate acts of racketeering activity included, but were not limited to:

(a) Identity theft, N.J.S.A. 2C:21-17;

(b) Theft by deception, N.J.S.A. 2C:20-4;

(c) Forgery, N.J.S.A. 2C:21-1;

(d) Falsifying or tampering with records; and/or

(e) Other indictable offenses constituting racketeering activity under N.J.S.A. 2C:41-1(a).

94. The RICO Defendants knowingly and unlawfully used Third-Party Plaintiff's personal identifying information—including but not limited to his name, date of birth, Social Security number, and/or other identifying data—without authorization in order to obtain financing and/or purchase the subject motor vehicle.

95. The racketeering acts were related to one another, shared a common purpose, involved the same victim (Third-Party Plaintiff), and were not isolated events, thereby constituting a "pattern of racketeering activity" under N.J.S.A. 2C:41-1(d).

96. The RICO Defendants' conduct was continuous and posed a threat of ongoing criminal

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 15

activity.

97. As a direct and proximate result of the RICO Defendants' violations of N.J.S.A. 2C:41-2, Third-Party Plaintiff suffered injury to his person and property, including but not limited to financial loss, damage to credit, reputational harm, costs incurred to remediate the identity theft, and other consequential damages.

98. Pursuant to N.J.S.A. 2C:41-4(c), Third-Party Plaintiff is entitled to recover treble damages, costs of suit, and reasonable attorney's fees.

WHEREFORE, Third-Party Plaintiff demands judgment against Third-Party Defendants Humza Khan, Areeba Khan, Aysha Khan, Adbuallah Alaqrabawi, Syed Hassan, and Iqra Khan:

A.  Awarding actual damages;

B.  Awarding consequential damages;

C.  Punitive damages;

D.  Reasonable attorney's fees and costs pursuant to N.J.S.A. 2C:41-4(c); and

E.  Awarding such other and further relief as the Court deems just, proper and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Defendant/Third-Party Plaintiff demands a trial of this action by jury.

## DEMAND FOR DOCUMENTS PURSUANT TO R. 4:18-2

Within five (5) days, you shall furnish the undersigned with a copy of each paper referred to in the complaint. Specifically, documents showing that the Defendant is indebted to Plaintiff. If Plaintiff is suing on an account, it should provide a copy of the application with the Defendant's signature and the last 12 monthly billing statement.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 16

## NOTICE REGARDING THE PRESERVATION OF ELECTRONICALLY STORED INFORMATION

Plaintiff and Third-Party Defendants have a duty to preserve evidence relevant to this action even without a court order. Since electronically stored information (hereinafter "ESI") may be an irreplaceable source of discovery in this matter, it is your duty to preserve all potentially relevant ESI.  Consistent with that duty all ESI should be preserved and maintained in native format. 1) ESI from shared networks including ESI archived in the cloud, zip, or external drives. 2) ESI from personal networks including ESI archived in the cloud, zip, or external drives. 3) ESI from handheld devices, emails/attachments (live and archived), SMS/MMS text messages, and messaging apps like WhatsApp and Telegram. 4) ESI from social media like Facebook, Snapchat, Instagram, Tik-Tok, and Twitter. 5) ESI from portable electronic devices like smartphones, external storage devices like CDs, DVDs, external hard drives and flash drives, personal fitness devices, smart home devices and the Internet of Things (hereinafter "IoT"). 7) The metadata for the items cited hereinabove should be preserved and not altered deleted and/or over-written.

Northeast New Jersey Legal Services, Inc.
Attorneys for Defendant/Third-Party Plaintiff

*John Ukegbu*

_____

Dated: April 15, 2026              John Ukegbu, Esq

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 17

## CERTIFICATION

I certify that a copy of the within Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint with Demand for Trial by Jury was served within the time prescribed by the rules of this court by filing same via eCourts.  I further certify that the matter in controversy is not the subject of any other court proceeding or arbitration and that to the best of my knowledge and belief, no other parties other than those listed on the caption need be joined at this time and no other proceedings are contemplated at this time.

I certify that all confidential personal identifiers have been redacted from all documents submitted to the court and that subsequent documents submitted to the court will not contain confidential personal identifiers per R. 1:38-7 (b).

Northeast New Jersey Legal Services, Inc.
Attorneys for Defendant/Third-Party Plaintiff

*John Ukegbu*

_____
Dated: April 15, 2026                  John Ukegbu, Esq.

ANSWER, AFFIRMATIVE DEFENSES, COUNTERCLAIM, AND THIRD-PARTY COMPLAINT- 18

# Civil Case Information Statement

## Case Details: HUDSON | Civil Part Docket# L-001304-26

**Case Caption:** GULF COAST BANK & TR UST CO  VS PRESTIGE INFUSION

**Case Initiation Date:** 09/16/2025

**Attorney Name:** JOHN N UKEGBU

**Firm Name:** NORTHEAST NJ LEGAL SVCS

**Address:** 574 SUMMIT AVE
JERSEY CITY NJ 07306

**Phone:** 2017926363

**Name of Party:** DEFENDANT : ALI ATSHAN

**Name of Defendant's Primary Insurance Company**
(if known): None

**Case Type:** BOOK ACCOUNT (DEBT COLLECTION MATTERS ONLY)

**Document Type:** Answer W/CounterClaim ,3rd Party Claim W/Jury Demand

**Jury Demand:** YES - 6 JURORS

**Is this a professional malpractice case?**  NO

**Related cases pending:** NO

**If yes, list docket numbers:**

**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: GULF COAST BANK & TRUST CO? NO**

## THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
### CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO

**If yes, is that relationship:**

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
    **If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO  **Title 59?** NO  **Consumer Fraud?** YES  **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

04/15/2026                                                              /s/ JOHN N UKEGBU
Dated                                                                      Signed